STEPHEN S. SMITH (SBN 166539)
SSmith@GreenbergGlusker.com
WILLIAM M. WALKER (SBN 145559)
WWalker@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendant
Verlagsgruppe Georg von Holtzbrinck GmbH

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>� � � � � � Plaintiff,<br><br>v.<br><br>STUDIVZ LTD., VERLAGSGRUPPE GEORG VON HOLTZBRINCK GmbH, HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH, and DOES 1-25,<br><br>� � � � � � Defendant. | Case No. 5:08-CV-03468 JF<br>Assigned To: Hon. Jeremy Fogel<br><br>**DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF OPPOSITION TO FACEBOOK, INC.'S MOTION TO CHANGE TIME UNDER CIVIL L.R. 6-3**<br><br>[Memorandum of Points and Authorities, and Declaration of William M. Walker concurrently filed]<br><br>Complaint Filed: July 18, 2008 |

37106-00002/1655676.3

DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF OPPOSITION TO MOTION TO CHANGE TIME

# DECLARATION OF STEPHEN S. SMITH

I, Stephen S. Smith declare:

1.	I am an attorney at law duly licensed to practice in the State of California, and am a partner at Greenberg Glusker Fields Claman & Machtinger LLP, counsel of record for defendant Verlagsgruppe Georg von Holtzbrinck GmbH ("VGH"). I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto under oath.

2.	On July 18, 2008, Facebook, Inc. ("Facebook") filed this action against VGH and three other defendants, all of whom are located in Germany.

3.	On July 24, 2008, I. Neel Chatterjee of Orrick, Herrington & Sutcliff LLP ("Orrick"), counsel for Facebook, sent a letter to Dr. Anka Reich, the Senior Vice President of VGH, in Stuttgart, Germany. With his letter, Mr. Chatterjee enclosed a Waiver of Service of Process ("Waiver") which provided the defendants 90 days to respond to Facebook's Complaint (as required by FRCP Rule 4(d)(3)) in exchange for them agreeing to waive service. In his letter, Mr. Chatterjee asked Dr. Reich to respond "within 60 days" (the period of time specified in FRCP Rule 4(d)(1)(F)), but requested a sooner response. A true and correct copy of Mr. Chatterjee's July 24, 2008 letter to Dr. Reich and the Waiver are attached hereto as "Exhibit A."

4.	On August 25, 2008, which was 28 days <u>before</u> the deadline in Mr. Chatterjee's letter and 28 days <u>before</u> the deadline under Rule 4(d)(1)(F)), I signed the Waiver on behalf of all defendants just as Mr. Chatterjee had requested. I then

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 900674590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1 wrote a letter to Mr. Chatterjee enclosing the Waiver. A true and correct copy of
2 my August 25, 2008 letter and the Waiver that I signed are attached as "Exhibit B."

4      5.      On August 27, 2008, I received a letter from Warrington S. Parker III,
5 another Orrick attorney, a true and correct copy of which is attached hereto as
6 "Exhibit C." In Mr. Parker's letter, he noted that Orrick had filed the Waiver with
7 the Court and mentioned that he wished to discuss a plan relating to discovery
8 regarding personal jurisdiction.

10      6.      On August 28, 2008, I attempted to telephone Mr. Parker to discuss his
11 August 27, 2008 letter. However, he was not there. I then tried Mr. Chatterjee. He
12 was also not there. I was then transferred to Mr. Avalos, who was there. During
13 my telephone call with Mr. Avalos, we discussed Mr. Parker's suggestion of a
14 discovery plan related to personal jurisdiction. I said that I was representing four
15 different entities and that I was in the process of analyzing how each entity would
16 respond to Facebook's Complaint. I specifically told Mr. Avalos that, with respect
17 to at least one of the defendants (VGH), I thought Facebook would not need any
18 discovery related to personal jurisdiction and would not even request such
19 discovery because the lack of personal jurisdiction over that defendant was so clear
20 and uncontestable. I said that I predicted that Facebook would decide voluntarily to
21 dismiss that defendant. With respect to the other defendants, I said that, while it
22 was likely that they would also move to dismiss for lack of personal jurisdiction, it
23 made more sense to wait to see what motions were in fact filed, for which
24 defendants, and the basis for any such motions before addressing the necessity, or
25 appropriate scope, of any expedited discovery as to personal jurisdiction. Mr.
26 Avalos said that my suggestion made sense, but that he needed to discuss the matter
27 with Mr. Chatterjee and Mr. Parker and get back to me. Mr. Avalos did not agree
28 to anything, and I did not agree to anything.

7. On September 2, 2008, Mr. Chatterjee and Mr. Avalos called me back to further discuss the issue. During that telephone conversation, I again stated that I was open to discussing the possibility of discovery relating to personal jurisdiction but that it did not make sense to engage in such a discussion until after my clients had decided how they intended to respond to Facebook's Complaint. I never stated that all of the defendants were in fact going to move to dismiss for lack of personal jurisdiction. I said only that one defendant would definitely make such a motion (although I did not mention the name of the particular defendant during the call, the defendant I was referring to was VGH, which did in fact file a motion to dismiss for lack of personal jurisdiction on September 10, 2008). I also said that I thought Facebook should decide to voluntarily dismiss the Complaint with respect to that defendant since the lack of personal jurisdiction was so clear. I also told Mr. Chatterjee and Mr. Avalos that I had not yet had time to analyze the issue sufficiently with respect to the other defendants to know for sure whether they would file motions to dismiss for lack of personal jurisdiction, but that I believed one, two or all three of them would likely do so. I specifically noted that the facts with respect to each defendant were different and that, therefore, I could not commit with certainty as to whether the other three defendants would also move to dismiss Facebook's Complaint for lack of personal jurisdiction or, if they did, what the factual basis for each would be. Accordingly, I told Mr. Chatterjee and Mr. Avalos that I thought it made the most sense to wait and see whether or not some or all of the other defendants moved to dismiss for lack of personal jurisdiction, and only then discuss the need for, or scope of, discovery relating to personal jurisdiction. Mr. Chatterjee said that made sense.

8. Later during our September 2, 2008 telephone conversation, Mr. Chatterjee said that he believed that defendants were required to respond to Facebook's Complaint within 20 days of August 25, 2008, the date I had signed the

1  Waiver. I said he was wrong and that defendants' responses were due on or before
2  October 22, 2008, which was 90 days after the date he had sent the Waiver to
3  defendants in Germany. Mr. Chatterjee disagreed and asked me to provide him
4  with "authority" for my position. I said in words or substance, "You have to be
5  kidding. Your own Waiver says that defendants have 90 days from the date you
6  sent the Waiver to my clients to respond to the complaint. That is exactly what
7  Rule 4 requires the Waiver to say. I signed that Waiver just as you asked us to and
8  then you filed it with the Court. So how can you now sit here and take the position
9  that they must respond within 20 days of my signing the Waiver?" Mr. Chatterjee
10 continued to insist, incorrectly, that defendants were required to respond to the
11 Complaint within 20 days of the date I had signed the Waiver, contrary to what he
12 himself had written in the Waiver itself and contrary to Rule 4. Needless to say,
13 there were no agreements reached between me, on the one hand, and Mr. Chatterjee
14 and/or Mr. Avalos, on the other hand, during the September 2, 2008 telephone call.

16  9.  Later that same day, I sent to Mr. Chatterjee an email confirming the
17 discussion we had on the telephone and reiterating that defendants had until
18 October 22, 2008 to respond to the complaint per the Waiver that Mr. Chaterjee had
19 drafted, sent to defendants and asked defendants to sign, and which defendants had
20 in fact signed long before the deadline contained in the Waiver itself. A true and
21 correct copy of my September 2, 2008 email is attached hereto as Exhibit "D."

23  10.  The next day, September 3, 2008, I received a letter from Mr. Parker, a
24 true and correct copy of which is attached hereto as "Exhibit E." In Mr. Parker's
25 letter, he stated that Facebook wanted to take discovery regarding personal
26 jurisdiction before the defendants have even responded to Facebook's Complaint.
27 This was the <u>first</u> time that any such request had been made by any of the Orrick
28 lawyers (i.e., Mr. Chatterjee, Mr. Parker and Mr. Avalos -- the "Orrick Lawyers").

11. On September 4, 2008, I wrote a letter to Mr. Parker, a true and correct copy of which is attached hereto as "Exhibit F." In my September 4, 2008 letter, I pointed out that, during my August 28, 2008 and September 2, 2008 conversations with Mr. Chatterjee and Mr. Avalos, they were both in agreement that it made more sense to take any expedited discovery relating to personal jurisdiction only after any motions to dismiss were filed on those grounds because only then could the appropriate parameters of such discovery be defined. I also noted that I did not think it was a coincidence that Facebook was changing its position only after Mr. Chaterjee had been forced to recall and concede (after reading his own Waiver and/or Rule 4) that defendants had until October 22, 2008 to respond to the Complaint. Only after that did Facebook suddenly think that it no longer made sense to wait until any motions to dismiss were filed, which would define the possible scope of any expedited discovery as to personal jurisdiction, if any. Rather, Facebook suddenly wanted to engage in discovery even before any motions were filed.

12. On September 5, 2008, I received another letter from Mr. Parker, a true and correct copy of which is attached hereto as "Exhibit G." In Mr. Parker's letter, he noted that Facebook might file a motion to seek discovery. But Mr. Parker wrote nothing about seeking to have any such motion heard on shortened time. None of the Orrick Lawyers have ever mentioned, let alone met and conferred with me, regarding the possibility of having a motion for expedited discovery heard on shortened time.

13. On September 10, 2008, VGH responded to Facebook's Complaint by filing a Motion to Dismiss for Lack of Personal Jurisdiction. No other defendant has yet responded to Facebook's Complaint, and the response date for each of the

other three defendants remains October 22, 2008 pursuant to the Waiver that Facebook's counsel drafted and <u>asked</u> the defendants to sign.

14. None of the Orrick Lawyers have ever explained to me how Facebook would be harmed or prejudiced by having its motion for expedited discovery heard pursuant to regular notice or why an order shortening time is necessary.

15. On November 16, <u>2006</u> (nearly two years ago), Mark Zuckerberg, the founder and CEO of Facebook, gave a video interview, a true and correct copy of which can be found at http://en.sevenload.com/videos/9cMXu4Y-zuck and can be made available on CD upon request. At approximately 2:40 into the interview, the interviewer asked Mr. Zuckerberg about other social networking websites, including specifically defendant "studiVZ," that some have called "copycats" of Facebook's website. In response, Mr. Zuckerberg does not use or adopt the word "copycat" but instead says, "I think that they're <u>different designs</u> and slightly different products."

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on September 12, 2008.

/s Stephen S. Smith

Stephen S. Smith