| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | STEPHEN S. SMITH (SBN 166539)<br>SSmith@GreenbergGlusker.com<br>WILLIAM M. WALKER (SBN 145559)<br>WWalker@GreenbergGlusker.com<br>GREENBERG GLUSKER FIELDS<br>CLAMAN & MACHTINGER LLP<br>1900 Avenue of the Stars, 21st Floor<br>Los Angeles, California 90067-4590<br>Telephone: 310.553.3610<br>Fax: 310.553.0687<br><br>Attorneys for Defendant<br>Verlagsgruppe Georg von Holtzbrinck GmbH | |

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>STUDIVZ LTD., VERLAGSGRUPPE GEORG VON HOLTZBRINCK GmbH, HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH, and DOES 1-25,<br><br>    Defendant. | Case No. 5:08-CV-03468 JF<br>Assigned To: Hon. Jeremy Fogel<br><br>**DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF OPPOSITION TO FACEBOOK, INC.'S MOTION FOR EXPEDITED DISCOVERY**<br><br>[Memorandum of Points and Authorities, and (Proposed) Order concurrently filed]<br><br>Complaint Filed: July 18, 2008 |

37106-00002/1657061.2

DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF OPPOSITION TO MOTION FOR EXPEDITED DISCOVERY

# DECLARATION OF STEPHEN S. SMITH

I, Stephen S. Smith declare:

1. I am an attorney at law duly licensed to practice in the State of California, and am a partner at Greenberg Glusker Fields Claman & Machtinger LLP, counsel of record for defendants Verlagsgruppe Georg von Holtzbrinck GmbH ("VGH"), Holtzbrinck Networks GmbH ("Networks"), Holtzbrinck Ventures ("Ventures") and studiVZ, Ltd. ("studiVZ") (collectively "Defendants") in this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto under oath.

2. In the motion for expedited personal jurisdiction discovery (the "Motion") filed by plaintiff Facebook, Inc. ("Facebook") and in the accompanying Declaration of Julio Avalos in support of the Motion, Facebook argues that Defendants have sought to "delay unnecessarily" the "progress of this case." (Opp. at 4:1-3). In making this argument, Facebook misstates and/or mischaracterizes the facts, as follows:

   a. Facebook's July 9, 2008 demand letter, referenced in Mr. Avalos' declaration at paragraph 2, demanded a response "within 7 days" of the date of the letter.

   b. On July 15, 2008, I was retained by studiVZ for the sole purpose of responding to the July 9, 2008 letter. I was not retained by VGH, Networks or Ventures at that time. Although the July 9, 2008 letter had been sent to VGH, Networks and Ventures, it complained of alleged acts and omissions of studiVZ only.

c. Contrary to Mr. Avalos' statement in his declaration at paragraph 3 that I did not respond to the July 9, 2008 letter until the deadline in that letter had "lapsed," in fact, I telephoned I. Neel Chatterjee, counsel for Facebook who had drafted the July 9, 2008 letter, on July 16, 2008, which was still "within" the seven days he had demanded. I telephoned Mr. Chatterjee and left him a voicemail message stating that I had been retained by studiVZ and asked him for 10-14 days of additional time to respond to the letter. I also told Mr. Chatterjee that I would like him to call me back because I had some questions that I wished to discuss.

d. In its opposition, Facebook claims that "Facebook granted [my] request, but there were no discussions." (Opp. at 4:8). That is false. On July 16, 2008, at 2:04 p.m., Mr. Chatterjee emailed me to say that he would give me only 7 days (not the 10-14 I had requested) and would return my call to discuss the claims *only if* I first execute an onerous "standstill" agreement, which among other things would have required studiVZ to agree to exclusive jurisdiction in the United States District Court, Northern District of California. True and correct copies of Mr. Chatterjee's July 16, 2008 e-mail and the attached "standstill" agreement are attached hereto as "Exhibit A."

e. Facebook further claims that I "misrepresented" that I needed additional time until July 18, 2008 to respond to the proposal regarding the standstill agreement. This again is false. As noted above, I received Mr. Chatterjee's July 16, 2008 email at 2:04 p.m. Pacific Time. That was already late at night in Germany. My client, therefore, did not even see the proposed standstill until July 17, 2008, and I had no opportunity to discuss it with studiVZ until that time.

f. At 8:39 a.m. on July 17, 2008, Mr. Chatterjee was already demanding a response to his proposed standstill agreement. Less than one hour later, at 9:38 a.m. that same morning, July 17, 2008, I responded by telling him that I had forwarded the email to my client and that I hoped to have a response the next day, July 18, 2008. The next day, I did in fact respond to the proposed standstill agreement by rejecting it in a letter to Mr. Chatterjee, a true and correct copy of which is attached hereto as "Exhibit B."

g. Given that I initially responded to the July 9 letter within the seven days demanded (albeit to ask for a 10-14 day extension so that I could investigate Facebook's claims), that I then responded to Mr. Chatterjee's demand for an onerous standstill agreement within 48 hours of that demand being made, I do not think I can be accused of any kind of egregious delay. Facebook has not submitted any evidence stating that it was truly prepared to file suit on July 16, 2008, which was the deadline set forth in its July 9, 2008 letter. But, even assuming it was, then the total delay I supposedly caused by asking for time to review the standstill agreement was at *most only two days*.

3. Facebook also agues that Defendants have engaged in "gamesmanship" by insisting on the right to respond to the complaint on October 22, 2008. This is also false.

a. Facebook filed this action on July 18, 2008. Although Facebook is correct that it asked me to accept service of the complaint on behalf of the Defendants on July 18, 2008 at 4:52 p.m., Facebook fails to note is that I did *not* represent three of the four Defendants and had been retained only by studiVZ and only for the purpose of responding to the July 9, 2008 letter. I had not been retained to defend the lawsuit and, indeed, did not know that three additional

Defendants were even potentially going to be parties to any lawsuit.  Therefore, at 4:54 p.m. on July 18, 2008, *within 2 minutes of being asked*, I truthfully answered that I was not authorized to accept service.  There was no "gamesmanship" on my part.  It was 1:52 a.m. in Germany at the time of Mr. Chatterjee's request, and the Defendants in Germany were not even aware that they had been sued.  I would have committed a horrendous breach of ethics if I had just assumed that I was authorized to accept service on behalf of all of the Defendants.

      b.      On July 24, 2008, Mr. Chatterjee sent a letter to Dr. Anka Reich, the Senior Vice President of VGH, in Stuttgart, Germany.  Mr. Chatterjee enclosed a Notice of Lawsuit and Request to Waive Service of a Summons (the "Waiver")  Mr. Chatterjee asked Dr. Reich to sign the Waiver "within 60 days," which is the time specified in FRCP Rule 4(d)(1)(F), although he added that he desired to have Defendants sign the Waiver sooner than 60 days after it was sent.

      c.      As required by the Federal Rules of Civil Procedure, Rule 4(d)(3), the Waiver provided the Defendants 90 days to respond to Facebook's Complaint in exchange for them agreeing to waive service.  A true and correct copy of Mr. Chatterjee's July 24, 2008 letter to Dr. Reich and the Waiver are attached hereto as "Exhibit C."

      d.      I was retained to represent Defendants in this action on August 25, 2008.  That same day, which was 28 days <u>before</u> the deadline in Mr. Chatterjee's July 24, 2008 letter and the deadline under Federal Rule of Civil Procedure 4(d)(1)(F), I signed the Waiver on behalf of all Defendants *just as Mr. Chatterjee had requested*.  I then wrote a letter to Mr. Chatterjee enclosing the Waiver.  A true and correct copy of my August 25, 2008 letter and the Waiver that I signed are attached as "Exhibit D."

e. Facebook's characterization of Defendants decision to sign the Waiver as "gamesmanship" is disingenuous. Defendants did *exactly* what Facebook's counsel asked them to do, and they did it much *earlier* than requested.

4. On August 27, 2008, I received a letter from Warrington S. Parker III, another Orrick attorney, a true and correct copy of which is attached hereto as "Exhibit E." In Mr. Parker's letter, he noted that Orrick had filed the Waiver with the Court and mentioned that he wished to discuss a plan relating to discovery regarding personal jurisdiction.

5. On August 28, 2008, I attempted to telephone Mr. Parker to discuss his August 27, 2008 letter. However, he was not there. I then tried Mr. Chatterjee. He was also not there. I was then transferred to Mr. Avalos, who was there. During my telephone call with Mr. Avalos, we discussed Mr. Parker's suggestion of a discovery plan related to personal jurisdiction. I said that I was representing four different entities and that I was in the process of analyzing how each entity would respond to Facebook's Complaint. I specifically told Mr. Avalos that, with respect to at least one of the defendants (VGH), I thought Facebook would not need any discovery related to personal jurisdiction and would not even request such discovery because the lack of personal jurisdiction over that defendant was so clear and uncontestable. I said that I predicted that Facebook would decide voluntarily to dismiss that defendant. With respect to the other defendants, I said that, while it was likely that they would also move to dismiss for lack of personal jurisdiction, it made more sense to wait to see (a) what motions were in fact filed, (b) which defendant(s) filed any such motion, and (c) the basis for any such motions, before addressing the necessity, or appropriate scope, of any expedited discovery as to personal jurisdiction. Mr. Avalos said that my suggestion made sense, but that he

needed to discuss the matter with Mr. Chatterjee and Mr. Parker and get back to me. Mr. Avalos did not agree to anything, and I did not agree to anything.

6. On September 2, 2008, Mr. Chatterjee and Mr. Avalos called me back to further discuss the issue. During that telephone conversation, I again stated that I was open to discussing the possibility of discovery relating to personal jurisdiction but that it did not make sense to engage in such a discussion until after my clients had decided how they intended to respond to Facebook's Complaint. I never stated that all of the defendants were in fact going to move to dismiss for lack of personal jurisdiction. I said only that one defendant would definitely make such a motion (although I did not mention the name of the particular defendant during the call, the defendant I was referring to was VGH, which did in fact file a motion to dismiss for lack of personal jurisdiction on September 10, 2008). I also said that I thought Facebook should decide to voluntarily dismiss the Complaint with respect to that defendant since the lack of personal jurisdiction was so clear. I also told Mr. Chatterjee and Mr. Avalos that I had not yet had time to analyze the issue sufficiently with respect to the other defendants to know for sure whether they would file motions to dismiss for lack of personal jurisdiction, but that I believed one, two or all three of them would likely do so. I specifically noted that the facts with respect to each defendant were different and that, therefore, I could not say with certainty whether the other three defendants would also move to dismiss Facebook's Complaint for lack of personal jurisdiction or, if they did, what the factual basis for each would be. Accordingly, I told Mr. Chatterjee and Mr. Avalos that I thought it made the most sense to wait and see whether or not some or all of the other defendants moved to dismiss for lack of personal jurisdiction, and only then discuss the need for, or scope of, discovery relating to personal jurisdiction. Mr. Chatterjee said that made sense.

7.      Later during our September 2, 2008 telephone conversation, Mr. Chatterjee said that he believed that defendants were required to respond to Facebook's Complaint within 20 days of August 25, 2008, the date I had signed the Waiver. I said he was wrong and that defendants' responses were due on or before October 22, 2008, which was 90 days after the date he had sent the Waiver to defendants in Germany. Mr. Chatterjee disagreed and asked me to provide him with "authority" for my position. I said in words or substance, "You have to be kidding. Your own Waiver says that defendants have 90 days from the date you sent the Waiver to my clients to respond to the complaint. That is exactly what Rule 4 requires the Waiver to say. I signed that Waiver just as you asked us to and then you filed it with the Court. So how can you now sit here and take the position that they must respond within 20 days of my signing the Waiver?" Mr. Chatterjee continued to insist, incorrectly, that defendants were required to respond to the Complaint within 20 days of the date I had signed the Waiver, contrary to what he himself had written in the Waiver itself and contrary to Rule 4. Needless to say, there were no agreements reached between me, on the one hand, and Mr. Chatterjee and/or Mr. Avalos, on the other hand, during the September 2, 2008 telephone call.

8.      Later that same day, I sent to Mr. Chatterjee an email confirming the discussion we had on the telephone and reiterating that defendants had until October 22, 2008 to respond to the complaint per the Waiver that Mr. Chatterjee had drafted, sent to defendants and asked defendants to sign, and which defendants had in fact signed long before the deadline contained in the Waiver itself. A true and correct copy of my September 2, 2008 email to Mr. Chatterjee is attached hereto as Exhibit "F."

9.      The next day, September 3, 2008, I received a letter from Mr. Parker, a true and correct copy of which is attached hereto as "Exhibit G." In Mr. Parker's

letter, he stated that Facebook wanted to take discovery regarding personal jurisdiction before the defendants had even responded to Facebook's Complaint. This was the <u>first</u> time that any such request had been made by any of the Orrick lawyers (i.e., Mr. Chatterjee, Mr. Parker and Mr. Avalos -- the "Orrick Lawyers").

10. On September 4, 2008, I wrote a letter to Mr. Parker, a true and correct copy of which is attached hereto as "Exhibit H." In my September 4, 2008 letter, I pointed out that, during my August 28, 2008 and September 2, 2008 conversations with Mr. Chatterjee and Mr. Avalos, they were both in agreement that it made more sense to take any expedited discovery relating to personal jurisdiction only after any motions to dismiss were filed on those grounds because only then could the appropriate parameters of such discovery be defined. I also noted that I did not think it was a coincidence that Facebook was changing its position only after Mr. Chatterjee had been forced to recall and concede (after reading his own Waiver and/or Rule 4) that defendants had until October 22, 2008 to respond to the Complaint. Only after that did Facebook suddenly think that it no longer made sense to wait until any motions to dismiss were filed, which would define the possible scope of any expedited discovery as to personal jurisdiction, if any. Rather, Facebook suddenly wanted to engage in discovery even before any motions were filed.

11. On September 5, 2008, I received another letter from Mr. Parker, a true and correct copy of which is attached hereto as "Exhibit I." In Mr. Parker's letter, he noted that Facebook might file a motion to seek discovery.

12. On September 10, 2008, VGH responded to Facebook's Complaint by filing a Motion to Dismiss for Lack of Personal Jurisdiction. No other defendant has yet responded to Facebook's Complaint, and the response date for each of the

other three defendants remains October 22, 2008 pursuant to the Waiver that Facebook's counsel drafted and <u>asked</u> the defendants to sign.

13. On September 18, 2008, I wrote another letter to Mr. Parker, making an offer to resolve the issues raised in the Motion. I proposed that (1) the Motion be taken off calendar without prejudice; (2) within 5 days of each Defendant's response to the complaint, counsel meet and confer regarding the appropriate scope of personal jurisdiction discovery to be taken, if any, and commence such discovery immediately thereafter; (3) if there remained issues we could not agree on, those issues would be submitted to the Magistrate Judge to be heard on a reasonable shortened notice; (4) Defendants would set (or continue) the hearing dates on any motions to dismiss for lack of personal jurisdiction far enough out to allow the discovery to be completed and included in Facebook's opposition to the motion(s); and (5) in the interim the remainder of the case, including other discovery, would be stayed. A true and correct copy of my September 18, 2008 letter to Mr. Parker is attached hereto as "Exhibit J."

14. On September 19, 2008, Mr. Parker wrote back rejecting my offer. A true and correct copy of that letter is attached hereto as "Exhibit K."

15. Attached hereto as "Exhibit L" is, on information and belief, a true and correct copy of a June 8, 2006 demand letter from Lovells (a large U.K.-based law firm with offices in Germany) representing Facebook, Inc. to studiVZ Ltd. in Berlin. We have had obtained a certified translation of that letter, a true and correct copy of which is attached, along with the certification, as "Exhibit M."

16. On information and belief, on November 16, <u>2006</u> (nearly two years ago), Mark Zuckerberg, Facebook's founder and CEO, gave a video interview, a true and

37106-00002/1657061.2      9
DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF OPPOSITION TO MOTION FOR EXPEDITED DISCOVERY

correct copy of which can be found at http://en.sevenload.com/videos/9cMXu4Y-zuck and can be made available on CD upon request. At approximately two minutes and forty seconds (2:40) into the interview, the interviewer asked Mr. Zuckerberg about other social networking websites, including specifically defendant "studiVZ," that some have called "copycats" of Facebook's website. In response, Mr. Zuckerberg does not use or adopt the word "copycat" but instead says, "I think that they're <u>different designs</u> and slightly different products."

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on September 23, 2008.

　　　　　　　　　　　　　　　　　　　/s Stephen S. Smith
　　　　　　　　　　　　　　　　　　　Stephen S. Smith