1  STEPHEN S. SMITH (SBN 166539)
   SSmith@GreenbergGlusker.com
2  WILLIAM M. WALKER (SBN 145559)
   WWalker@GreenbergGlusker.com
3  AARON J. MOSS (SBN 190625)
   AMoss@GreenbergGlusker.com
4  GREENBERG GLUSKER FIELDS
   CLAMAN & MACHTINGER LLP
5  1900 Avenue of the Stars, 21st Floor
   Los Angeles, California  90067-4590
6  Telephone:  310.553.3610
   Fax:  310.553.0687
7
8  Attorneys for Defendants
   Holtzbrinck Networks GmbH and
   Holtzbrinck Ventures GmbH
9

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

10           UNITED STATES DISTRICT COURT

11         NORTHERN DISTRICT OF CALIFORNIA

12             SAN JOSE DIVISION

13

| | |
|---|---|
| 14   FACEBOOK, INC., | Case No.  5:08-CV-03468 JF |
| 15          Plaintiff, | Assigned To:  Hon. Jeremy Fogel |
| 16   v. | **NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS ON BEHALF OF HOLTZBRINCK NETWORKS GmbH AND HOLTZBRINCK VENTURES GmbH; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 17   STUDIVZ LTD., VERLAGSGRUPPE GEORG VON HOLTZBRINCK GmbH, HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH, and DOES 1-25, | |
| 21         Defendant. | [Declarations of Martin Weber, Michael Brehm, Klaus Ikas and Stephen S. Smith, Supporting Exhibits, and (Proposed) Order concurrently filed] |
| | Date:  February 13, 2009
Time:  9:00 a.m.
Dept./Place:  Courtroom 3 |
| | Complaint Filed: July 18, 2008 |

27
28

37106-00002/1659059.7

Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens*

TO PLAINTIFF FACEBOOK, INC. AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 13, 2009 at 9:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 3 of the above entitled Court, located at 280 S. First Street, San Jose CA 95113, defendants Holtzbrinck Networks GmbH ("Networks") and Holtzbrinck Ventures GmbH ("Ventures") will move this Court to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and, in the alternative, to dismiss plaintiff's complaint based on the common law doctrine of *forum non conveniens*.

The motion will be made on the grounds that this forum cannot exercise personal jurisdiction over Networks and Ventures, which are German limited liability companies and do not have the requisite minimum contacts with the State of California, that Germany is an adequate alternate forum for litigation of this matter, and that private and public interests weigh in favor of dismissal.

This Motion to Dismiss is based upon this Notice, the attached Memorandum of Points and Authorities, the Complaint, the separately filed Declarations of Martin Weber, Michael Brehm, Klaus Ikas and Stephen Smith, and all records and pleadings as may be presented at or before the hearing on this motion.

DATED: October 22, 2008     GREENBERG GLUSKER FIELDS CLAMAN
                                      & MACHTINGER LLP


By:    /s Stephen S. Smith
          STEPHEN S. SMITH
          Attorneys for Defendants HOLTZBRINCK
          NETWORKS GmbH and HOLTZBRINCK
          VENTURES GmbH

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.  SUMMARY OF RELEVANT FACTS ..................................................... 2

    A.   Facts Relevant to Personal Jurisdiction ...................................... 2

    B.   Additional Facts Relevant to *Forum Non Conveniens* ................. 3

III. THE COURT CANNOT EXERCISE PERSONAL JURISDICTION
    OVER NETWORKS OR VENTURES ........................................................ 5

    A.   Neither Networks Nor Ventures Has The Necessary
        "Continuous and Systematic Contacts" With California To
        Confer General Jurisdiction Over Them ...................................... 6

    B.   Facebook Cannot Satisfy The Three Part Test For Limited
        Jurisdiction Over Networks or Ventures ...................................... 9

        1.   Networks and Ventures Have Not Purposefully Availed
            Themselves of the Privilege to do Business In California
            or Purposefully Directed their Activities Toward
            California ........................................................................ 10

        2.   Facebook's Claims Do Not Arise Out of, or Result from,
            Any Forum-Related Activities by Networks or Ventures ........ 12

        3.   Exercising Jurisdiction Over Networks and Ventures
            Would Be Unreasonable .................................................. 12

IV.  PLAINTIFF'S COMPLAINT SHOULD ALSO BE DISMISSED
    BASED ON *FORUM NON CONVENIENS* ............................................. 16

    A.   An Adequate Alternative Forum Exists ...................................... 17

    B.   Private and Public Interest Factors Favor Germany ................... 18

        1.   The Private Interest Factors Favor Germany ...................... 18

        2.   The Public Interest Factors Favor Germany ...................... 20

    C.   The Balance of Conveniences Outweighs Facebook's Choice of
        Forum .......................................................................................... 21

V.   CONCLUSION ...................................................................................... 22

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*American Dredging Co. v. Miller,*
510 U.S. 443 (1994) .................................................................. 16

*Asahi Metal Industry Co., Ltd. v. Superior Court,*
480 U.S. 102 (1987) ........................................................ 12, 13, 14

*Bancroft & Masters, Inc. v. Augusta National, Inc.,*
223 F.3d 1082 (9th Cir. 2000) .................................................. 11

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) .................................................................. 10

*Calder v. Jones,*
465 U.S. 783 (1984) .................................................................. 11

*Ceramic Corp. of Amer. v. Inka Maritime Corp.,*
1 F.3d 947 (9th Cir. 1993) ........................................................ 17

*Contact Lumber Co. v. P.T. Moges Shipping Co.,*
918 F.2d 1446 (9th Cir. 1990) ............................................ 21, 22

*Core-Vent Corp. v. Nobel Industries AB,*
11 F.3d 1482 (9th Cir. 1993) ........................................ 13, 14, 15, 16

*Creative Technology, Ltd. v. Aztech Syst. PTE Ltd.,*
61 F.3d 696 (9th Cir. 1995) ................................................ 17, 18, 20

*Dean v. Motel 6 Operating L.P.,*
134 F.3d 1269 (6th Cir. 1998) .................................................... 6

*Doe v. American Nat'l Red Cross,*
112 F.3d 1048 (9th Cir. 1997) .................................................. 12

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947) .................................................................. 20

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*
328 F.3d 1122 (9th Cir. 2003) ........................................ 5, 7, 8, 9

*Holland America Line Inc. v. Wartsila North America, Inc.,*
485 F.3d 450 (9th Cir. 2007) ...................................................... 6

*International Shoe Co. v. Washington,*
326 U.S. 310 (1945) .................................................................... 5

*John Doe I v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001) .................................................. 7, 9

37106-00002/1659059.7

iii

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

*Kramer Motors, Inc. v. British Leyland, Ltd.,*
   628 F.2d 1175 (9th Cir. 1980) ..................................................... 6, 8

*Lockman Foundation v. Evangelical Alliance Mission,*
   930 F.2d 764 (9th Cir. 1991) ........................................ 17, 18, 21, 22

*McDonough v. Fallon McElligott, Inc.,*
   1996 U.S. Dist. LEXIS 15139, Civil No. 95-4037
   (S.D. Cal. August 5, 1996).............................................................. 12

*Pebble Beach Co. v. Caddy,*
   453 F.3d 1151 (9th Cir. 2006) ....................................................... 11

*Piper Aircraft v. Reyno,*
   454 U.S. 235 (1981) ................................................................. 17, 22

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ............................................... 6, 10, 11

*Terracom v. Valley Nat'l Bank,*
   49 F.3d 555 (9th Cir. 1995) ........................................................... 13

*Transure, Inc. v. Marsh and McLennan, Inc.,*
   766 F.2d 1297 (9th Cir. 1985) ......................................................... 8

*Tuazon v. R. J. Reynolds Tobacco Co.,*
   433 F.3d 1163 (9th Cir. 2006) ......................................................... 6

*United States v. Bestfoods,*
   524 U.S. 51 (1998) ......................................................................... 8

## STATUTES

Fed. Rule of Civ. Proc. §12(b)(2) ......................................................... i

Fed. Rule of Civ. Proc. §41 ................................................................. 1

## OTHER AUTHORITIES

1 William W. Schwartz, A. Wallace Tashima & James W. Wagstaffe,
   *Federal Civil Procedure Before Trial,* Venue §§ 4:835-4:845 ........................ 16

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Facebook, Inc. ("Facebook") operates the "social networking" website Facebook.com.  Facebook initially filed this lawsuit against four German-based companies – (1) Verlagsgruppe Georg Von Holtzbrink GmbH ("VGH"), (2) Holtzbrinck Networks GmbH ("Networks"), (3) Holtzbrinck Ventures GmbH ("Ventures") and (4) StudiVZ Ltd. ("StudiVZ").  However, Facebook focused its entire complaint on the alleged wrongful acts of StudiVZ only, claiming that StudiVZ unlawfully copied the "look, feel, features and services" of Facebook.com.  Facebook has made no substantive allegations against VGH, Networks or Ventures.

VGH is no longer a party.  VGH filed a motion to dismiss for lack of personal jurisdiction.  After receiving that motion, and before its opposition was due, Facebook filed a stipulation pursuant to Federal Rule of Civil Procedure 41 voluntarily dismissing VGH.

Now, Defendants Networks and Ventures move to dismiss for lack of personal jurisdiction or, in the alternative, *forum non conveniens*.  This motion to dismiss should be granted for the same reason that Facebook voluntarily dismissed VGH.  Just like VGH, Networks and Ventures have no contacts with California that would give rise to personal jurisdiction in this state.  Neither Networks nor Ventures has been accused of any specific wrongdoing in the Complaint.[1] Facebook's claims against these defendants are premised solely upon their ownership interests in StudiVZ.  Networks owns 85% of StudiVZ.  Ventures owns 15% of StudiVZ.  However, Networks, Ventures and StudiVZ are separate and distinct entities.  StudiVZ is not the "alter ego" or "general agent" of Networks or

---

[1] StudiVZ concurrently has filed a separate motion to dismiss for lack of personal jurisdiction and *forum non conveniens*.  Unlike Networks and Ventures, StudiVZ is alleged to have engaged in wrongful acts.  Therefore, the analysis of limited personal jurisdiction for StudiVZ is different than the analysis for Networks and Ventures and, therefore, requires separate consideration.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Ventures. Nor is there any other basis upon which the moving defendants' separate corporate existence may be ignored. Accordingly, there is neither general nor limited personal jurisdiction over Networks or Ventures. Facebook's attempt to achieve an unfair and constitutionally improper advantage by suing these foreign defendants thousands of miles away from their residence should be rejected.

In addition, Facebook's claims against Networks and Ventures should be dismissed based on the doctrine of *forum non conveniens*. The same factors demonstrating that there is no personal jurisdiction over Networks or Ventures also establish that this is not the proper venue for this action. Germany provides an adequate alternative venue, and all of the private and public interest factors that are relevant to a *forum non conveniens* analysis weigh in favor of dismissal.[2]

## II.  SUMMARY OF RELEVANT FACTS

### A.  Facts Relevant to Personal Jurisdiction

Networks and Ventures are both limited liability companies (Gesellschaft mit beschränkter Haftung (GmbH)) organized under German law. (Declaration of Martin Weber ("Weber Decl."), ¶ 4). Each functions as a "holding company," whose corporate purpose is to administer its assets (principally media-related companies) for financial purposes. (Weber Decl., ¶ 4).

Neither moving defendant is registered or qualified to do business in California. Neither has any officers, directors, employees or independent contractors based in California. Neither has a California agent for service of process. Neither directs any advertising toward California residents. (Weber Decl., ¶ 6).

---

[2]  Indeed, the first line of Facebook's complaint shows that Ventures and Networks were simply added to the case as an afterthought: "Plaintiff Facebook, Inc. alleges against defendants StudiVZ Ltd. and Does 1-25 inclusive (collectively, the "Defendants") as follows. . . ." (Complaint at 1:1-2). There is no mention of Ventures or Networks. It must be assumed that they were not even included in earlier drafts of the complaint. And for good reason. Putting aside the fact that there is no substantive basis for them to have been sued in the first place, there is clearly no personal jurisdiction over them, and even if there were, this is not the appropriate forum for the suit by Facebook against them.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Networks and Ventures both have offices in Germany, but no offices or

2    facilities in California, nor do they have any telephone or facsimile listings or

3    mailing addresses in California.  (Weber Decl., ¶ 7).

4    These entities do not maintain any books or records in California.  They have

5    no bank accounts or tangible personal or real property in California.  They have no

6    sales in California, have had no California income and have not paid any California

7    income tax.  (Weber Decl., ¶ 8).

8    None of the entities' officers, directors or employees reside or are domiciled

9    in California.  No meetings of Networks' or Ventures' respective management

10   boards or equity holders have been held in California.  (Weber Decl., ¶ 9).

11   Facebook has not made any specific allegations of wrongdoing against either

12   Networks or Ventures in its Complaint.  Instead, Networks appears to have been

13   named as a defendant solely as a result of its 85% ownership interest in defendant

14   StudiVZ Ltd.  Likewise, Ventures has been sued because it owns the remaining

15   15% of StudiVZ Ltd.  (Weber Decl., ¶ 5).

16   However, as discussed below, neither Ventures nor Networks exercises any

17   type of control over the day-to-day activities of StudiVZ.  (Weber Decl. ¶ 10).

18   StudiVZ has its own management team, offices and bank accounts, and is

19   separately (and sufficiently) capitalized from the moving defendants.  (Declaration

20   of Michael Brehm ("Brehm Decl."), ¶ 19).  In short, StudiVZ has a completely

21   separate corporate existence from Networks and Ventures.  StudiVZ also does not

22   act as a general agent of either Networks or Ventures.  (Brehm Decl., ¶ 19).

23   **B.**    **Additional Facts Relevant to _Forum Non Conveniens_**

24   Ventures and Networks acquired their equity ownership interests in StudiVZ

25   Ltd in August 2006 and October 2007, respectively.  (Weber Decl., ¶ 5).  The

26   wrongful conduct alleged in Facebook's complaint concerns the creation of

27   StudiVZ's website, which undisputedly occurred in "October 2005" -- i.e., _before_

28   either Ventures and Networks ever had any interest in StudiVZ.  (Complaint ¶ 28).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

This in part explains why Facebook does not (and cannot) make any substantive allegations against Ventures and Networks.

As discussed below, there is no California jurisdiction over Ventures and Networks merely by virtue of their acquisition and ownership of StudiVZ. But even if there were jurisdiction, the "private" and "public" factors that are analyzed for *forum non conveniens* purposes all weigh in favor of Germany as the more appropriate forum.

Germany and Europe are the only locations of the acts alleged by Facebook in its complaint. Facebook alleges that StudiVZ.net was launched "by two students from Berlin." (Complaint ¶ 28). Facebook affirmatively alleges that the harm it has supposedly suffered has been suffered in Germany and other parts of Europe. (*Id.* ¶ 41). All of the people who could have possibly engaged in the alleged wrongful conduct were, and are, located in Germany. Those witnesses speak German as their native language. Most would require translators to testify in a United States legal proceeding. Almost all of the documents related to Facebook's claims are located in Germany The vast majority of these documents are written in the German language, thus requiring huge translation costs to be used in United States legal proceedings. (Weber Decl., ¶ 15).

Moreover, as discussed in more detail in the Motion to Dismiss concurrently filed by StudiVZ, Facebook has already recognized that Germany is the appropriate forum for its dispute against StudiVZ. As early as June 2006, Facebook's counsel asserted claims against StudiVZ under German law in demand letters written in German, to StudiVZ's German lawyers. (Declaration of Klaus Ikas ("Ikas Decl."), ¶¶ 3-4, Exhs. A and B). These demand letters were based on the same facts that Facebook now alleges give rise to the claims raised in this lawsuit.

Thereafter, in May and June 2008, Facebook negotiated with Ventures and Networks to purchase their interests in StudiVZ. Those negotiations concluded without the parties reaching any agreement in late June 2008. (Weber Decl., ¶ 13).

Just after the negotiations broke down, on July 9, 2008, Facebook wrote a demand letter to Networks and Ventures (which by that time were the owners of StudiVZ), threatening to sue based on the exact same types of claims that Facebook had raised in *Germany* against StudiVZ in June 2006 and January 2007. (Weber Decl. ¶ 14).

Because, as Facebook's own demand letters showed, Germany is clearly the more appropriate forum for the resolutions of such disputes, on July 18, 2008, StudiVZ filed a declaratory relief action against Facebook in Germany (the "German Action"). In the German Action, StudiVZ seeks a declaratory judgment that it has not engaged in any of the wrongful conduct alleged by Facebook in its prior demand letters. Facebook has appeared in the German Action. Trial is scheduled to begin in the German Action on December 16, 2008. To the extent Facebook believes it can state any claims against Ventures and Networks related to the conduct of StudiVZ, such claims may proceed in Germany. (Ikas Decl., ¶¶ 5-6; Exh. C).

## III. The Court Cannot Exercise Personal Jurisdiction Over Networks or Ventures.

As plaintiff, Facebook bears the burden of proving that minimum contacts exist between Networks and Ventures, on the one hand, and California, on the other hand, so as to justify an exercise of personal jurisdiction over these defendants. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003).

An inquiry into personal jurisdiction centers on a defendant's contacts with the forum state, and is dictated by due process concerns. As the United States Supreme Court has long held, the assertion of personal jurisdiction over a nonresident defendant will comport with constitutional due process only if the defendant has sufficient "minimum contacts" with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**A.**     <u>Neither Networks Nor Ventures Has The Necessary "Continuous</u> <u>and Systematic Contacts" With California To Confer General</u> <u>Jurisdiction Over Them.</u>

If a foreign defendant engages in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state, general jurisdiction may be exercised. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id. See also Tuazon v. R. J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (noting that the standard for establishing general jurisdiction is high, and requires that the defendant's contacts with the forum state "approximate physical presence").

As shown in the Summary of Relevant Facts and the accompanying declaration of Martin Weber, Networks and Ventures are both German limited liability companies organized under German law. (Weber Decl., ¶ 4). They do not even come close to engaging in the "continuous and systematic" activities necessary to confer general jurisdiction in California.

Notably, Facebook does not even allege in its complaint that these entities maintain significant, continuous, and/or systematic contact with California. Facebook apparently bases its claim to personal jurisdiction on the ownership relationship between the entities. This is not a sufficient basis for jurisdiction.

"[W]here a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other." *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 459 (9th Cir. 2007). *See also Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998) ("[A] company does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction").

For example, in *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   1177 (9th Cir. 1980), the Ninth Circuit held that there was no jurisdiction in this

2   forum over a British company even though it owned a U.S. subsidiary, had general

3   executive control over that subsidiary, placed several of its own directors on the

4   subsidiary's board, and approved the U.S. marketing proposal from which the

5   plaintiff's injuries allegedly arose.

6          There are two exceptions to the general rule that a parent-subsidiary

7   relationship is insufficient to attribute the contacts of the subsidiary to the parent for

8   jurisdictional purposes.  A subsidiary's contacts may be imputed to the parent

9   where the subsidiary is the parent's *alter ego*, or where the subsidiary acts as the

10  "*general agent*" of the parent.  *Harris Rutsky*, 328 F.3d at 1134.  Neither exception

11  is satisfied here.

12         It is Facebook's burden to establish a prima facie case of alter ego liability

13  under California law in order to confer jurisdiction over Networks and Ventures.

14  To do so, Facebook must show: "(1) that there is such unity of interest and

15  ownership that the separate personalities [of the two entities] no longer exist and (2)

16  that failure to disregard [their separate identities] would result in fraud or injustice."

17  *Harris Rutsky*, 328 F.3d at 1134-35.  Facebook must show that Networks and

18  Ventures exercise such control over StudiVZ so as to "render the latter the mere

19  instrumentality of the former."  *Id.*

20         There is no basis for finding that StudiVZ is the alter ego of either Networks

21  or Ventures.  As discussed in the declaration of Michael Brehm, in support of

22  StudiVZ's concurrently filed Motion to Dismiss, StudiVZ has its own management

23  team and offices, separate from that of Networks and Ventures.  It also has its own

24  separate bank account, which is well-capitalized.  (Brehm Decl., ¶ 19).

25         The only oversight that Networks and Ventures exercise over StudiVZ is

26  consistent with their status as investors in the company.  *See John Doe I v. Unocal

27  Corp.*, 248 F.3d 915, 926 (9th Cir. 2001).  While Networks and Ventures monitor

28  StudiVZ's financial performance (as they would any investment), they do not

exercise any type of day-to-day control over StudiVZ – either operational control or control over strategic decisions. The two managing directors of Networks and Ventures, Martin Weber and Konstantin Urban, are also company directors of StudiVZ. However, these individuals merely function in a supervisory capacity, not as officers who are responsible for the day-to-day activities of StudiVZ. (Weber Decl., ¶ 10).

The mere existence of a parent-subsidiary relationship is an insufficient basis on which to acquire personal jurisdiction over the parent, even if the subsidiary has the requisite minimum contacts with the forum (which StudiVZ, Ltd. in this case does not). *Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985). Ninth Circuit law is clear that the bare fact that a parent and subsidiary are operated by the same senior officers and directors does not warrant an alter ego finding. *Harris Rutsky*, 328 F.3d at 1135. As the U.S. Supreme Court also explained:

> "[I]t is entirely appropriate for directors or a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts. This recognition that the corporate personalities remain distinct has its corollary in the well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent two corporations separately, despite their common ownership."

*United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (citations omitted).

Courts have found that no jurisdiction exists even when the parent exercises much greater control over its subsidiary than is the case here. For example, in *Kramer Motors*, 628 F.2d at 1177-78, the Ninth Circuit held that there was not jurisdiction in this forum over a British company even though it owned a U.S. subsidiary, had general executive control over that subsidiary, and approved the U.S. marketing plan from which the plaintiff's injuries allegedly arose.

Not only is the alter ego exception not satisfied here, but neither does StudiVZ act as the "general agent" of either Networks or Ventures. To satisfy the

agency test, Facebook must make a prima facie showing that the subsidiary was established for, or is engaging in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself. *Harris Rutsky*, 328 F.3d at 1135.

Ventures and Networks operate as "holding companies" for their respective investments. (Weber Decl., ¶ 4). In such cases, a subsidiary like StudiVZ conducts business not as an *agent* of the parent, but merely as its *investment*. "The business of the parent is the business of investment, and that business is carried out entirely at the parent level." *Doe v. Unocal*, *supra*, 248 F.3d at 929. StudiVZ is by no means "merely the incorporated department of its parent." *Id.* at 928. Here, there is absolutely no evidence that if StudiVZ did not exist, Ventures and Networks would perform its services, i.e., operate its social networking sites. Rather, they could simply hold another type of subsidiary or investment, "in which case imputing the subsidiaries' jurisdictional contacts to the parent would be improper." *Id.* at 929. This is confirmed by the fact that both Networks and Ventures own a whole array of different media-related businesses. (Weber Decl., ¶ 12).

Accordingly, California may not exercise general personal jurisdiction over Networks or Ventures.

**B.**    **<u>Facebook Cannot Satisfy The Three Part Test For Limited Jurisdiction Over Networks or Ventures.</u>**

If, as is usually the case, a foreign defendant's activities within the state are not so pervasive as to justify the exercise of general jurisdiction, the Court may exercise "limited" or "specific" personal jurisdiction, but only if *each* part of the following three prong test is satisfied:

(1) the non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

1  (2) the claim must be one which *arises out of or relates to the defendant's*
2  *forum-related activities*; and

3  (3) the exercise of jurisdiction must comport with *fair play and substantial*
4  *justice*, i.e., it must be reasonable.

5  *Schwarzenegger*, 374 F.3d at 802.

6  The plaintiff bears the burden of satisfying the first two prongs of the test.
7  *Schwarzenegger*, 374 F.3d at 802. If the plaintiff fails to satisfy either of these
8  prongs, personal jurisdiction is not established in the forum state. If the plaintiff
9  succeeds in satisfying both of the first two prongs, the burden then shifts to the
10 defendant to "present a compelling case" that the exercise of jurisdiction would not
11 be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

12 Here, none of the three prongs of the limited jurisdiction test is satisfied.

13 **1.** **Networks and Ventures Have Not Purposefully Availed**
14 **Themselves of the Privilege to do Business In California or**
15 **Purposefully Directed their Activities Toward California.**

16 "Purposeful availment" and "purposeful direction" are two distinct concepts.
17 Purposeful availment is "most often used in suits sounding in contract" and
18 "typically consists of evidence of the defendant's actions in the forum, such as
19 executing or performing a contract there" by which a defendant "purposefully
20 avails itself of the privilege of conducting activities within the forum state, thus
21 invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at
22 802 (citations omitted).

23 Facebook cannot satisfy this test. Neither Networks nor Ventures received
24 any "benefit, privilege, or protection from California in connection with [the claims
25 asserted in the lawsuit], and the traditional quid pro quo justification for finding
26 purposeful availment thus does not apply." *Id.* at 803. Unquestionably, they did
27 not and could not have reasonably expected to be haled into court here. As these
28 entities could not have reasonably foreseen defending a lawsuit in California, they

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

are not subject to personal jurisdiction in California.

In contrast to "purposeful availment," the "purposeful direction" standard is most often used in suits sounding in tort. *Schwarzenegger*, 374 F.3d at 802 (citations omitted). This showing "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803.

The purposeful direction test is evaluated under the three-part "effects" test based on *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984). The test "requires that the defendant allegedly have: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (citations omitted).

The Ninth Circuit has noted that referring to the *Calder* test as an "effects" test can be misleading. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). For this reason, it has warned courts not to focus too narrowly on the test's third prong – the effects prong – holding that "something more" is needed in addition to a mere foreseeable effect. In other words, the defendant's conduct must be "*expressly aimed*" at the forum state. *Id.*

Facebook cannot show that Networks or Ventures committed any alleged intentional act that was "expressly aimed" at California, because there was no "individualized targeting" of California residents by these entities with respect to the claims at issue. *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

Here, neither Networks or Ventures owns or operates the StudiVZ website that is at the center of Facebook's complaint. It is highly doubtful whether StudiVZ itself, which operates a German social networking website (and not a commercial site directed at California residents), has sufficient California contacts to give rise to jurisdiction here. But Networks and Ventures, which do not operate the StudiVZ.net website, certainly do not.

2.    **Facebook's Claims Do Not Arise Out of, or Result from, Any**
**Forum-Related Activities by Networks or Ventures.**

Facebook also does not satisfy the second prong of the limited jurisdiction test, which requires it to show that, but for Networks' or Ventures' California contacts, Facebook's claims would not have arisen. *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997). As discussed above, neither moving defendant is alleged to have engaged in any conduct in California, so they necessarily did not cause any harm that occurred in California. In any event, the national (or international) distribution of allegedly infringing works does not fulfill the "but for" requirement, because the alleged infringement would have occurred even if StudiVZ's websites were not accessible in California. *McDonough v. Fallon McElligott, Inc.*, 1996 U.S. Dist. LEXIS 15139, Civil No. 95-4037 at *16-*17 (S.D. Cal. August 5, 1996).

3.    **Exercising Jurisdiction Over Networks and Ventures Would**
**Be Unreasonable.**

Finally, plaintiff should not be permitted to hale defendants into court in California because it would be unreasonable for the Court to exercise jurisdiction under the circumstances presented. The unique burdens on foreign defendants, which arise from having to defend themselves within the forum state, are entitled to "significant weight" in assessing reasonableness. *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987). This requirement defeats jurisdiction even if Networks or Ventures had participated in activities in California that gave rise to Facebook's claims, which they did not. *Id.*

The Court should consider the following seven factors in determining the reasonableness of exercising personal jurisdiction over Networks and Ventures:

> (i) the extent of the defendants' purposeful interjection into the forum state's affairs; (ii) the burden on the defendant of defending in the forum; (iii) the extent of conflict with the sovereignty of the defendant's state; (iv) the forum state's interest in adjudicating the dispute; (v) the most efficient judicial resolution of the controversy;

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

(vi) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (vii) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). None of these factors is dispositive in itself; the Court must balance all seven. *Id.* at 1488.

An analysis of each of these factors demonstrates the unreasonableness of haling foreign entities such as Networks or Ventures into this forum:

(i) <u>Purposeful Interjection</u>. "[T]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Core-Vent*, 11 F.3d at 1488 (citation omitted). As set forth above, neither Networks nor Ventures has purposefully engaged in any activities in California and neither has established any presence or contacts in the forum. Accordingly, this factor favors a finding that the exercise of jurisdiction would be unreasonable.

(ii) <u>Burden On Defendant</u>. "The law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). In cases with overseas defendants, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114. Here, the burden on Networks and Ventures is considerable, given that they have no offices, personnel or other ties to this forum. *See* Summary of Relevant Facts, *supra*. And, given that the lawsuit concerns whether a German website violates Facebook's rights, the evidence and witnesses are in Germany, not California.

*Core-Vent* is instructive. There, a California corporation sued four Swedish doctors for defamation based on an article they wrote in an international dental journal that was distributed worldwide, including in California. 11 F.3d at 1483-84. The Ninth Circuit found that even if the doctors had "purposefully interjected"

1   themselves into California, their forum-related activities were minimal.  Forcing

2   them to litigate in California would both impose substantial burdens on them and

3   impose on Sweden's sovereignty.  That, plus the fact that Sweden was available as

4   an alternative forum, outweighed any California interest in the dispute.  *Id.* at 1490.

5       Here, as discussed above, all of the conduct at issue in Facebook's complaint

6   involved German entities and occurred in Germany, and Networks and Ventures

7   face the same substantial burdens of litigating here that the Swedish doctors faced

8   in *Core-Vent*.  Requiring Networks or Ventures to come here to litigate would

9   conflict with German sovereignty just as forcing the Swedish doctors to litigate

10  here would have conflicted with Swedish sovereignty.  Germany is available as an

11  alternative forum, just as Sweden was available to the California corporation in

12  *Core-Vent*.

13      (iii) <u>Conflict With Sovereignty</u>.  "Great care and reserve should be exercised

14  when extending our notions of personal jurisdiction into the international field."

15  *Asahi*, 480 U.S. at 115.  U.S. foreign relations are "best served by a careful inquiry

16  into the reasonableness of the assertion of jurisdiction [here], and an unwillingness

17  to find the serious burdens on an alien defendant outweighed by minimal interests

18  on the part of the plaintiff or the forum State."  *Id.*  Litigation against a foreign

19  defendant creates "a higher jurisdictional barrier than litigation against a citizen

20  from a sister state" because of concerns regarding conflicts with sovereignties.

21  *Core-Vent*, 11 F.3d at 1489.  Networks and Ventures are limited liability companies

22  existing under German law.  The German government clearly has an interest in

23  assuring that disputes involving its citizens are fairly adjudicated in courts

24  convenient to its citizens.  The matters at issue in these motions should be litigated

25  in Germany, not here, and for this court to assume jurisdiction would impinge

26  German sovereignty.

27      (iv) <u>Forum State's Interest</u>.  In contrast, California has no interest in

28  adjudicating this dispute.  While plaintiff has its principal place of business in

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  California, the claim itself arises from the alleged conduct of a third party outside

2  the state (i.e., in Germany).  The StudiVZ website over which Facebook has sued is

3  produced and emanates from Germany.  But more importantly, *Networks and*

4  *Ventures do not own or operate StudiVZ.net*, and therefore, as to these defendants,

5  California does not have even a colorable interest in adjudicating the dispute.

6      (v) <u>Efficient Resolution of the Controversy</u>.  To evaluate this factor, the

7  Court should primarily consider where witnesses and the evidence are likely to be

8  located.  *Core-Vent*, 11 F.3d at 1489.  As noted above, Networks and Ventures have

9  insufficient ties to this forum.  The StudiVZ website is produced and is distributed

10  from Germany, *but not by Networks or Ventures*.  All of the developers of the

11  website are located in Germany, and they will be the witnesses in what is

12  essentially a claim that StudiVZ copied the "look and feel" of Facebook.  All of the

13  documents regarding the creation and development of StudiVZ are located in

14  Germany and almost all of them are in German.  Almost all of the witnesses are

15  Germans living in Germany who speak German as a native language; few, if any,

16  will be sufficiently comfortable with testifying in English.  Instead, most will need

17  the assistance of interpreters.  The translation and interpretation costs will be

18  enormous.  Requiring the litigation to go forward in California would be highly

19  inefficient and simply makes no sense.

20      (vi) <u>Plaintiff's Interest in Effective Relief</u>.  Plaintiff cannot demonstrate that

21  it would be unable to seek effective relief in another forum.  Even if, however,

22  litigating in a different forum might present some difficulties for plaintiff, those

23  burdens weigh at least as heavily on Networks and Ventures, which maintain no

24  books, records, offices or employees in California.  Instead, as discussed above,

25  almost all of the books and records are in German, almost all of the witnesses speak

26  German, and everything and everyone is in Germany.

27      (vii) <u>Existence of an Alternative Forum</u>.  Plaintiff bears the burden of

28  proving that an alternative forum is unavailable.  *Core-Vent*, 11 F.3d at 1490.  It is

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

not sufficient that plaintiff would prefer not to sue Networks or Ventures in another forum. *Id.* As set forth above, plaintiff cannot demonstrate that it would be precluded from pursuing its remedies elsewhere. Indeed, there is already a lawsuit between StudiVZ and Facebook regarding these same issues pending in Germany. As it will already be litigating this case in Germany, Facebook would not be unduly burdened by litigating there against Networks and Ventures, assuming it has any viable claims at all against these entities. While Ventures and Networks are not plaintiffs in that declaratory judgment action (because they had nothing to do with the creation of StudiVZ), Facebook may file a counterclaim against StudiVZ and join Networks and Ventures as parties in the German Action if Facebook believes that they should be held jointly and severally liable for any wrongful acts arising out of the creation and/or operation of StudiVZ. (Ikas Decl. ¶ 5).

Thus, each of the seven factors discussed above compels the conclusion that exercising jurisdiction over Networks and Ventures in this forum would be unreasonable.

## IV. Plaintiff's Complaint Should Also be Dismissed Based on *Forum Non Conveniens.*

For many of the same reasons articulated in Section III.B.3 above, in the event this Court finds personal jurisdiction over Networks and Ventures, it should still dismiss this action against them based on the common law doctrine of *forum non conveniens*. This doctrine applies when the defendant is, like Networks and Ventures, a foreign entity. Under this doctrine, courts have broad discretion to decline jurisdiction in favor of a more convenient forum outside the United States. *See generally,* 1 William W. Schwartz, A. Wallace Tashima & James W. Wagstaffe, *Federal Civil Procedure Before Trial,* Venue §§ 4:835-4:845; *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994).

A party moving to dismiss on grounds of *forum non conveniens* must show: (1) the existence of an adequate alternative forum; and (2) that the balance of

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1 private and public interest factors weighs in favor of dismissal. *Piper Aircraft v.*

2 *Reyno*, 454 U.S. 235, 238 (1981); *Creative Technology, Ltd. v. Aztech Syst. PTE*

3 *Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995). Each of these elements is readily

4 established in this case.

5         A.   **An Adequate Alternative Forum Exists.**

6      The threshold inquiry is whether there is an adequate alternative forum

7 available for adjudication. *Ceramic Corp. of Amer. v. Inka Maritime Corp.,* 1 F.3d

8 947, 949 (9th Cir. 1993). The requirement of an adequate alternative forum is

9 usually satisfied if the defendant is amenable to service of process in the other

10 jurisdiction. *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764,

11 767 (9th Cir. 1991). A proposed forum is deemed unavailable only if its law

12 effectively denies the plaintiff any remedy whatsoever. The fact that substantive

13 law in the alternate forum is less favorable is irrelevant unless the remedy provided

14 is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper,* 454

15 U.S. at 254; *see also Lockman,* 930 F.2d at 769 (possible unavailability of statutory

16 claims in Japanese court did not make Japan an inadequate forum because plaintiff

17 could bring other causes of action). Less favorable procedural law also does not

18 make a forum inadequate. *Id.* at 768 (Japan was adequate forum despite different

19 discovery procedures).

20      Networks and Ventures are German limited liability companies and are

21 subject to service of process in Germany. Assuming Facebook has any viable

22 claims at all against these entities, it is undisputed that Germany provides a valid

23 forum for deciding those claims. Indeed, Facebook retained German counsel in

24 2006 and 2007, who researched the German law applicable to Facebook's claims

25 and asserted such claims in demand letters to StudiVZ in June 2006 and January

26 2007. (Ikas Decl. ¶¶ 3-4, Exhs. A and B).

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**B.** **Private and Public Interest Factors Favor Germany.**

1. **The Private Interest Factors Favor Germany.**

Most important in determining whether to grant a forum non conveniens motion are private interest factors, which fall into three categories: (1) relative ease of access to sources of proof; (2) availability of witnesses; and (3) all other practical factors favoring an expeditious and inexpensive trial. *Lockman,* 930 F.2d at 769-770; *Creative Tech.,* 61 F.3d at 703. Where, as here, the majority of witnesses and documents are located in an alternate forum, the action should be dismissed. *Creative Tech.,* 61 F.3d. at 703 (dismissal upheld in copyright action where design and manufacture of both parties' computer software took place in Singapore, so that most of the witnesses and documents were located there).

Here, there can be no dispute that Germany provides better access to sources of proof, the relevant witnesses and is a much more expeditious and inexpensive forum for the resolution of the instant disputes.

Facebook admits in its Complaint that the allegedly wrongful conduct engaged in by defendants took place in and from Germany and that the primary harm Facebook suffered was suffered in Germany. (Complaint, ¶¶ 1, 3-6, 12, 28, 40-41). Facebook admits and alleges that each of the defendants is located in Germany. (*Id.,* ¶¶ 3-6). Facebook admits that StudiVZ launched its website from "Berlin, Germany." (*Id.,* ¶28). Facebook admits that the harm it has allegedly suffered consists of consumer confusion and damage to Facebook's reputation *in the "European Market."* (*Id.,* ¶ 41). This is all the more true because, as noted above, Networks and Ventures do business only in and from Germany, and they do not operate a social networking website at all. They have no offices or places of business in California, and none of their employees, officers or directors reside in California. The StudiVZ website is operated from Germany (*Id.,* ¶ 1) and was built by German residents from computers in Germany in "October 2005" (*Id.,* ¶ 28), prior to Networks' and Ventures' acquisition of the equity interests in StudiVZ.

(Weber Decl. ¶ 5).

Moreover, Facebook seeks to hold each of Networks and Ventures liable based on its alleged relationship as "partner, contractor joint venturer or agent of one of more of the other named Defendants." (Complaint, ¶¶ 5-6). Yet, the acts and omissions that would have created or not created such alleged relationships, by definition, also would have occurred in Germany, where each of the "named Defendants" is located.

Because the events at issue in the Complaint took place in Germany, the vast majority of discovery in this action will come from, and take place in, Germany. That is where almost all of the defendants' documents are located. That is where all of the defendants' witnesses are located. The case does *not* center on conduct allegedly engaged in by Facebook. Therefore, comparatively little discovery will come from witnesses or documents located in California.

The lawyers for the parties would have to travel to Germany to take depositions, and will have to incur the expense of flying those same witnesses to California for trial. Also, most of the witnesses will require German interpreters, which will further compound the time and expense of the trial.

Moreover, virtually all of defendants' documents are written in the German language. To use those documents in this California proceeding, they would need to be translated, and the translations certified as accurate. This will cause a monumental expense. For example, Facebook stated in connection with its motion for expedited discovery (which it later voluntarily withdrew) that the cost to translate the Complaint into German for purposes of service of process was $20,000. (Declaration of Julio C. Avalos in Support of Motion for Expedited Personal Jurisdiction Discovery, ¶ 10) (Docket No. 12). Given the wide-ranging discovery that Facebook has already stated that it intends to seek in this action (*See* Declaration of Stephen S. Smith, ¶ 3, Exh. E), the parties could incur millions of dollars in translation costs alone if the action were to stay in California.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

These translation issues will also cause a tremendous amount of delay. It will take much longer to review the documents, much longer to conduct a deposition and much longer to try the case. The aforementioned costs and delay would be avoided completely if the case were litigated in Germany.

Finally, Facebook has a presence in Germany. It operates its business in Germany and operates a separate German-language Facebook website. Indeed, that is why it claims to have been harmed in Germany and Europe. Facebook will be litigating in the German Action regardless of where this action proceeds, and it has German counsel. Accordingly, the inconvenience to Facebook of litigating its claims in Germany pales in comparison to the inconvenience to defendants of litigating in California.

### 2. The Public Interest Factors Favor Germany.

Public interest factors include the burden on local courts and juries, the local interest in having the matter decided locally, interest in having a case tried in a forum familiar with the applicable law; avoidance of unnecessary problems in conflicts of law; and pending litigation in an alternate forum. *Creative Tech.,* 61 F.3d at 703-04. These factors also weigh in favor of dismissal on *forum non conveniens* grounds.

The burden on this Court and the jury would be extreme in this case because the witnesses are located in Germany and speak German, and the documents are located in Germany and written in German. Interpretation of the testimony of every key witness and translation of every document from German into English, to make the evidence comprehensible to the jury, will greatly prolong the trial. This is especially problematic when the federal court system is already congested. The Supreme Court noted that "[a]dministrative difficulties follow for courts when litigation is piled up in congested centers…" *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).

Because the events that gave rise to this litigation took place in Germany, not

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens*

California, and Facebook alleges the harm to its reputation took place in Germany and other parts of Europe, not California, there is likewise no local interest in having this matter resolved in California.

Moreover, there will be highly-complex disputes over choice of law given that all of the alleged acts were committed in, and from, Germany. The best evidence of this is Facebook's own demand letters to StudiVZ in 2006 and 2007, which asserted these very same claims *under German law.*

Given the absolute lack of nexus between moving defendants and California or between Facebook's claims and California; the crowded federal dockets; the problems presented by German-speaking witnesses and German documents; the complex choice of law issues; and the risk of inconsistent judgments, it would be an inefficient use of judicial resources for this case to proceed in California. Instead, it should be combined with Facebook's claims in the German Action. When there is a related action pending in an alternative forum, dismissal is favored to avoid duplicative litigation and inconsistent outcomes. *Contact Lumber Co.*, 918 F.2d 1446, 1452 (9th Cir. 1990) ("There are significant advantages in having all the parties . . . assert their claims in one forum, not only to avoid inconsistent factual findings, but also to spare the litigants the additional costs of duplicate lawsuits."). There is no need to litigate this matter separately in both forums, burdening a California court and jury with an action based on events that took place outside of the United States.

### C.    The Balance of Conveniences Outweighs Facebook's Choice of Forum

Facebook may argue that dismissal would deprive a California company of access to its home forum. While a plaintiff's choice of forum may often be respected, "[t]he deference due to plaintiff[]...is far from absolute." *Lockman,* 930 F.2d at 767. As the Supreme Court noted, "[a] citizen's forum choice should not be given dispositive weight . . . [I]f the balance of conveniences suggests that trial in

the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft*, 454 U.S. at 256 n.23, This is why "[i]n practice, 'the cases demonstrate that defendants *frequently* rise to the challenge' of showing an alternative forum is the more convenient one." *Lockman,* 930 F.2d at 767 (*quoting Contact Lumber Co. v. P.T. Moges Shipping Co.,* 918 F.2d 1446, 1449 (9th Cir. 1990)) (emphasis added).

As set forth above, the substantial burden on defendants of litigating in California far outweighs the relatively minimal inconvenience to Facebook of litigating in Germany. Indeed, any complaint of inconvenience on the part of Facebook is belied by the fact that it does business Germany; it has counsel in Germany that has researched its purported German legal claims and asserted them in two demand letters; the harm it alleges to have suffered has been suffered in Germany; its German demand letters show that it is ready to litigate in Germany, and it will be litigating in Germany *regardless* of whether it is permitted to proceed with this action.

## V. **CONCLUSION**

For the foregoing reasons, Networks and Ventures respectfully request that their motion to dismiss be granted in its entirety.


DATED: October 22, 2008          GREENBERG GLUSKER FIELDS CLAMAN
                                 & MACHTINGER LLP


                                 By:    /s Stephen S. Smith
                                    STEPHEN S. SMITH
                                    Attorneys for Defendants HOLTZBRINCK
                                    NETWORKS GmbH and HOLTZBRINCK
                                    VENTURES GmbH

Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens*