| | |
|---|---|
| 1 | I. NEEL CHATTERJEE (STATE BAR NO. 173985) |
| | nchatterjee@orrick.com |
| 2 | JULIO C. AVALOS (STATE BAR NO. 255350) |
| | javalos@orrick.com |
| 3 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | 1000 Marsh Road |
| 4 | Menlo Park, CA 94025 |
| | Telephone: +1-650-614-7400 |
| 5 | Facsimile: +1-650-614-7401 |
| 6 | ANNETTE L. HURST (STATE BAR NO. 148738) |
| | ahurst@orrick.com |
| 7 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | The Orrick Building |
| 8 | 405 Howard Street |
| | San Francisco, CA 94105-2669 |
| 9 | Telephone: +1-415-773-5700 |
| | Facsimile: +1-415-773-5759 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., | Case No. 5:08-cv-03468 JF |
| Plaintiff, | Assigned To: Hon. Jeremy Fogel |
| v. | **DECLARATION OF WARRINGTON S. PARKER IN SUPPORT OF FACEBOOK'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER** |
| STUDIVZ LTD., HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH AND DOES 1-25, | |
| Defendants. | |

I, Warrington S. Parker, declare as follows:

1. I am an attorney with the law firm of Orrick, Herrington and Sutcliffe, counsel for Plaintiff Facebook, Inc. I make this Declaration in support of Facebook's Opposition to Defendants' Motion for Protective Order. I am fully licensed to practice law in California and am in good standing with the California Bar. Except as set forth herein, I have personal knowledge of the facts stated herein and if called as a witness, could and would competently testify thereto.

2. According to news sources, Facebook is the most popular social networking site in the world. (http://www.ft.com/cms/s/0/302914bc-40a7-11dd-bd48-0000779fd2ac.html?nclick_check=1)

3. According to news sources, three-quarters of Facebook users are now outside of the United States. (http://news.cnet.com/8301-13577_3-10084769-36.html?tag=mncol;title)

4. On June 8, 2006, Facebook sent a cease and desist letter to StudiVZ. A true and correct copy of the English translation of same is attached hereto as **Exhibit A**.

5. According to defendant Holtzbrinck Ventures GmBH's own website: "In September 2006, StudiVZ was successfully introduced into further European lands such as Poland, France, Italy and Spain." (http://www.holtzbrinck-ventures.com/?studivz_en)

6. On July 9, 2008, Facebook sent a further cease and desist letter to all Defendants named in this action. A true and correct copy of same is attached hereto as **Exhibit B**.

7. On July 16, 2008, Defendants' local counsel, Stephen S. Smith, called my colleague Neel Chatterjee to request an additional seven (7) days to respond to Facebook's July 9 letter. Accordingly and acting in good faith, Facebook sent Mr. Smith an email attaching a proposed Standstill Agreement.

8. On July 17, 2008, Mr. Smith wrote: "Got your email. Out of the office. Forwarded it to client, but have not hear [sic] back yet. I am sure I will have answer by first thing tomorrow. (They are 9 hours ahead and may be gone now.)"

9. Without further notice or communication from Mr. Smith, the next day, July 18, 2008, StudiVZ initiated a German declaratory action against Facebook in Stuttgart civil court. A true and correct copy of same is attached hereto as **Exhibit C**.

10. Neither Defendants nor Mr. Smith immediately notified Facebook of the filing of the German declaratory action. With no apparent response forthcoming from Mr. Smith or Defendants with respect to Facebook's offer of entering into a Standstill Agreement, Facebook went forward with the filing of its complaint on July 18, 2008.

11. This litigation's Rule 26(f) conference was held on October 9, 2008 via telephone. I, along with my colleague Tina L. Naicker, represented Facebook at the conference. Defendants were represented by Mr. Smith and Bill Walker.

12. At the Rule 26(f) conference, and as summarized in a follow-up letter from Ms. Naicker to Mr. Smith, Facebook represented to opposing counsel that it would be requesting discovery from Defendants relating to: "(1) StudiVZ's corporate structure and organization; (2) marketing by StudiVZ; (3) investments or offers to purchase StudiVZ; (4) contacts with California; (5) access to Facebook's servers, including the number of times it was accessed, by whom, the purpose and the extent of the activities on Facebook; (6) downloading, copying or use of any information from Facebook's website; (7) StudiVZ's design, development, and maintenance of its websites; (8) breach of Facebook's Terms of Use by StudiVZ; (9) damages; [and] (10) consumer (user) confusion."

13. At the conference, Mr. Smith represented that Defendants agreed that Facebook was entitled to some discovery on the issue of personal jurisdiction. However, he also represented that Defendants would not make any initial disclosures—whether or not pertaining to the issues on which Defendants agreed Facebook was entitled to discovery—or respond to any discovery requests that they felt reflected on the merits of this case.

14. On October 13, 2008, in response to Ms. Naicker's October 9 letter, Mr. Smith responded by arguing that Facebook's list of discovery topics "includes issues that have nothing to do with personal jurisdiction" and that it was Defendants' position that "discovery into the merits of the case should be stayed pending the resolution of any motions to dismiss for lack of personal jurisdiction and/or *forum non conveniens*."

15. On October 14, 2008, Facebook served its first set of discovery requests. The requests tracked the issues discussed at the Rule 26(f) conference and were aimed at discovering

information regarding this Court's personal jurisdiction over Defendants.

16. On October 21, 2008, I sent a letter to Mr. Smith enclosing a draft of the Joint Discovery Plan, a draft Joint Case Management Conference statement, a list of proposed discovery search terms and a proposed protective order. I had previously sent to Mr. Smith a stock protective order that was not tailored to the particular facts of this case. The revised protective order sent to Mr. Smith on October 21 made a number of corrections, including the identity of the parties involved in this matter and updated language reflecting the pending litigation instituted by StudiVZ against Facebook in German civil court.

17. On or about October 21, 2008, Mr. Smith and I had a telephone conversation in which Mr. Smith informed me that Defendants would soon be filing a motion to dismiss for lack of personal jurisdiction and *forum non conveniens*. Mr. Smith asked me whether reading Defendants' personal jurisdiction challenges might cause me to narrow the scope of Facebook's outstanding personal jurisdiction discovery requests. I told him that I could not tell him that without reading the motion to dismiss and that I would read the motion.

18. On October 22, 2008, Defendants moved to dismiss for lack of personal jurisdiction and *forum non conveniens*.

19. On October 27, 2008, Mr. Smith and I, along with Mr. Smith's partner Aaron Moss, had a telephonic meet and confer regarding, among other things, Facebook's outstanding discovery requests and the outstanding protective order. With respect to the latter, Mr. Smith stated that he would not stipulate to a protective order unless such protective order prevented the use of discovery produced in this matter from being used in StudiVZ's German lawsuit against Facebook. At first, Mr. Smith claimed that such a limitation was required by "German rules." When I asked what those rules were, Mr. Smith stated that he did not know. When I requested that he find out, Mr. Smith told me that he would oppose the use of discovery materials in Germany irrespective of German law on the topic.

20. With respect to the outstanding discovery requests, Mr. Smith refused to identify any specific discovery requests to which his clients objected. Mr. Smith simply stated that his clients would not produce any discovery not related to personal jurisdiction. He refused to

identify which discovery requests he felt were not related to personal jurisdiction. I asked him whether he would identify the offending requests in a letter, which he agreed to do. Mr. Smith also confirmed that there were areas of discovery to which Defendants did not object, but refused to identify them. During the meet and confer Mr. Smith made a passing reference to the fact that the discovery requests were also overbroad, but he again refused to identify which requests he was referring to.

21. In a follow-up letter sent by me to Mr. Smith on October 28, I confirmed these points and wrote: "As to those matters and requests to which you do not object either entirely or in part, we ask that you comply with the discovery requests. You have no basis to withhold such documents. We expect your letter identifying which requests and items fall into that category by this Wednesday." This letter was never received.

22. On October 29, 2008, Mr. Smith wrote to me and said that he would not be sending any letter identifying specific, objectionable discovery requests. According to Mr. Smith, such a list was inappropriate because "defendants' responses are not even due until November 17, 2008. Needless to say, we are not going to do that." In a footnote, Mr. Smith now claimed that I had misunderstood his prior agreement to send a letter articulating his clients' objections: "I did agree to send you *a* letter, and this is that letter. But I did not agree to provide you with defendants' responses to the propounded discovery before the response date."

23. On October 30, 2008, I sent a letter to Mr. Smith in which I explained that "[g]iven the relevant legal tests for personal jurisdiction for the claims and the nature of the substantive claims, there is bound to be some overlap of the issues." I further advised Mr. Smith that his "attempt to draw a bright line between jurisdiction and merits discovery is unavailing, as your failure to identify any specifically objectionable requests necessarily admits. Your motions [to dismiss] for [lack of] personal jurisdiction, which I offered to consider before the [October 27] meet and confer, does not and did not change this view, as I explained to you during the meet and confer. There are avenues of proof, beyond those raised in the motions to dismiss, that can establish personal jurisdiction. The discovery requested is that which we believe will provide the proof necessary to establish personal jurisdiction."

OHS West:260551387.3 - 4 - DECL. OF WARRINGTON .S. PARKER ISO FACEBOOK'S OPP'N TO DEFS.' MOT. FOR PROTECTIVE ORDER

24. The next day, October 31, 2008, Defendants filed their Motion for Protective Order seeking to stay merits-based discovery and to prevent discovery produced in this matter from being used in any other litigations between the parties.

25. At no point prior to the filing of the Motion for Protective Order did Defendants provide Facebook with a list of the discovery requests they find objectionable.

I declare the foregoing is true and correct to the best of my knowledge.

Executed this 18th day of November, at San Francisco, California.

/s/ Warrington S. Parker /s/
Warrington S. Parker

# **CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 18, 2008.

Dated: November 18, 2008.              Respectfully submitted,

                                       /s/ Julio C. Avalos /s/
                                       Julio C. Avalos