STEPHEN S. SMITH (SBN 166539)
SSmith@GreenbergGlusker.com
WILLIAM M. WALKER (SBN 145559)
WWalker@GreenbergGlusker.com
AARON J. MOSS (SBN 190625)
AMoss@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendants studiVZ Ltd.,
Holtzbrinck Networks GmbH, and
Holtzbrinck Ventures GmbH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> v. <br><br> STUDIVZ LTD., , HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH, and DOES 1-25, <br><br> Defendants. | Case No. 5:08-CV-03468 JF <br> Assigned To: Hon. Jeremy Fogel <br><br> **SUPPLEMENTAL DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER; EXHIBITS D -N** <br><br> [Reply Memorandum of Points and Authorities; Declaration of Dr. Anton G. Maurer (with Exhibit O); and Evidentiary Objections Filed Concurrently] <br><br> Date: December 9, 2008 <br> Time: 10:00 a.m. <br> Dept./Place: Courtroom 2, 5th Floor <br> Hon. Howard R. Lloyd |

37106-00002/1666122.1

SUPPLEMENTAL DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

# SUPPLEMENTAL DECLARATION OF STEPHEN S. SMITH

I, Stephen S. Smith declare:

1. I am an attorney at law duly licensed to practice in the State of California and before the United States District Court for the Northern District of California, and am a partner at Greenberg Glusker Fields Claman & Machtinger LLP, counsel of record for Defendants StudiVZ Ltd., Holtzbrinck Networks GmbH, and Holtzbrinck Ventures GmbH ("Defendants"). I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto under oath.

2. The issue of conducting early, personal jurisdiction *only* discovery first arose on August 27, 2008, when *Facebook* wrote a letter to StudiVZ Ltd.'s German counsel in which Facebook expressed *its* desire to engage in "discovery related to the challenge of personal jurisdiction." Attached hereto as "Exhibit D" is a true and correct copy of that letter.

3. At that time (August 27, 2008), no defendant had responded to the complaint. For that reason, in telephone conversations with Facebook's counsel, Neel Chatterjee and Julio Avalos, on August 28 and September 2 and 3, 2008, I took the position that, while the issue of personal jurisdiction discovery was potentially valid, it was at that time premature because no defendant had yet appeared in the action.

4. On September 3, 2008, Facebook sent another letter in which it stated its intent to serve discovery related to "personal jurisdiction," a true and correct copy of which is attached hereto as "Exhibit E."

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

5. Attached hereto as "Exhibit F" is a true and correct copy of a September 4, 2008 letter I sent to Facebook's counsel, Warrington Parker, in which I explained Defendants' position that "although we *may* be amenable to engaging in expedited discovery on the personal jurisdiction issue when and if that issue is raised by any particular defendant in a motion to dismiss for lack of personal jurisdiction that *may* be filed between now and October 22, 2008, we will not do so before then."

6. On September 5, 2008, counsel for Facebook wrote back disagreeing with Defendants' position.

7. On September 9, 2008, still before any defendant had yet appeared in this action, Facebook filed a motion for expedited discovery seeking permission to take discovery related to personal jurisdictional. Facebook's motion appears on the Docket as Item No. 11.

8. On September 18, 2008, I wrote a letter to Facebook's counsel, a true and correct copy of which is attached hereto as "Exhibit G" and which provides in relevant part as follows:

> "We agree that some amount of discovery related to personal jurisdiction with respect to at least one of the defendants may be appropriate. However, that discovery should be narrowly tailored to address the relevant facts that are in dispute; the scope of such discovery should be decided only once the parties know what facts are actually in dispute, i.e., after the other three defendants have either moved to dismiss for lack of personal jurisdiction or not and, if so, stated the basis for its/their motion(s). Accordingly, I propose the following:
>
> 1. The currently pending motion for expedited discovery shall be taken off calendar without prejudice;
>
> 2. Within 5 days of each defendant's response to the complaint, we meet and confer regarding the appropriate scope of personal jurisdiction discovery to be taken, if any, and commence such discovery immediately thereafter;

>    3. If there remain issues we cannot agree on, those issues shall be submitted to the Magistrate Judge to be heard on a reasonable shortened notice;
>
>    4. Defendants shall set (or continue) the hearing dates on any motions to dismiss for lack of personal jurisdiction far enough out to allow the discovery to be completed and included in Facebook's opposition to the motion(s); and
>
>    5. ***In the interim the remainder of the case, including other discovery, would be stayed***." (emphasis added).

9. Facebook rejected the proposal in my September 18, 2008 letter.

10. On September 23, 2008, Defendants filed their opposition to Facebook's motion for expedited discovery, a true and correct copy of which appears on the Docket as Item No. 22. Defendants argued, *inter alia*, that most of Facebook's discovery requests were inappropriate because they had nothing to do with personal jurisdiction issues and were directed solely to the merits.

11. On October 9, 2008, counsel for the parties conducted a Rule 26(f) conference. During the conference, I asked Facebook's counsel to stay discovery that was unrelated to personal jurisdiction until any motions to dismiss were decided. Facebook's counsel rejected that offer and claimed that Facebook was entitled to take discovery into issues that had nothing to do with personal jurisdiction. I disagreed and said that, if Facebook persisted in its position, then Defendants would move for a protective order staying discovery that was unrelated to personal jurisdiction until any motions to dismiss were decided. During the Rule 26(f) conference, Facebook's counsel asked Defendants to allow Protected Material disclosed in this case to be used in the German Action. Facebook's counsel stated that Facebook believed that, since it was seeking to alter the District Court form,

then Facebook -- not Defendants -- needed to file a motion for protective order to do so.

12. Also on October 9, 2008, Facebook's counsel sent a letter stating that it intended to seek discovery into 10 different areas of inquiry, most of which had nothing to do with personal jurisdiction, a true and correct copy of which is attached hereto as "Exhibit H."

13. On October 10, 2008, Facebook withdrew its motion for expedited discovery without hearing.

14. On October 13, 2008, I wrote a letter to Facebook's counsel, Tina Naicker, a true and correct copy of which is attached hereto as "Exhibit I" and in which I responded to the contentions of Facebook's counsel in relevant part as follows:

> "Your list of discovery topics includes issues that have nothing to do with personal jurisdiction,. While we have offered (and hereby offer again) to meet and confer about the appropriate scope of personal jurisdiction discovery once the parameters of any motions to dismiss are known, your list is manifestly overbroad under any hypothetical personal jurisdiction motion. . . .As I said during our call, discovery into the merits of the case should be stayed pending the resolution of any motions to dismiss for lack of personal jurisdiction and/or *forum non conveniens*. You told us that Facebook will not agree to stay discovery. We responded by saying that ***defendants will file a motion for protective order seeking a stay of all non-jurisdiction/venue discovery until the case is at issue***." (emphasis added).

15. On October 14 and 15, 2008, Facebook served new sets of discovery. While *some* of that discovery related to personal jurisdiction, much of it was overbroad and directed *solely* to the merits of the case, having nothing to do with personal jurisdiction or the motions to dismiss. Facebook's counsel has not

37106-00002/1666122.1        4
SUPPLEMENTAL DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

1    disputed this fact.  Despite the problems with Facebook's requests, Defendants
2    have conditionally agreed to produce much of what was requested.

4         16.    On October 20 and 21, 2008, I emailed and called Facebook's counsel
5    to schedule a hearing date for Defendants' motions to dismiss.  I specifically asked
6    Facebook's counsel to choose a date based on how much time *Facebook* thought it
7    needed to conduct discovery into the pertinent disputed jurisdictional/venue issues
8    that were raised in connection with the motions to dismiss.  Facebook's counsel
9    asked for a February 2009 hearing date.

11        17.    During the October 21, 2008 telephone call between me and
12   Warrington Parker, I asked Mr. Parker whether Defendants were going to be forced
13   to respond to the October 14-15 discovery as served or whether, instead, Facebook
14   wished to review that discovery to narrow it in light of the motions to dismiss.  Mr.
15   Parker responded that he first wished to review the motions to dismiss for the
16   purpose of identifying the specific jurisdiction/forum issues in dispute, thereby
17   allowing him to narrow the discovery requests to focus on those issues.  We
18   scheduled another telephone call for Monday, October 27, 2008 to discuss how the
19   requests would be narrowed.

21        18.    Defendants' motions to dismiss were filed on October 22, 2008.  The
22   hearing date was set for February 13, 2009, as Facebook had requested.

24        19.    On October 27, 2008, I spoke again with Mr. Parker.  Mr. Parker
25   refused to narrow the discovery requests or explain what material jurisdictional
26   issues were in dispute or what discovery Facebook needed in light of the facts and
27   arguments presented in the motions to dismiss.  Indeed, when I asked Mr. Parker
28   for the basis upon which Facebook alleged personal jurisdiction over Defendants

Holtzbrinck Ventures and Holtzbrinck Networks, he simply refused to answer. I also again asked that Mr. Parker agree to stay discovery that was unrelated to the motions to dismiss. He refused.

20. On October 29, 2008, I sent yet another letter about this issue to Mr. Parker, a true and correct copy of which is attached hereto as "Exhibit J" and which provides in relevant part as follows:

> "A plaintiff *may* be entitled to discovery into personal jurisdiction issues, but only if it either demonstrates a prima facie case of personal jurisdiction or shows that issues related to personal jurisdiction are in dispute. Protrade Sports, Inc. v. Nextrade Holdings, Inc., 2006 U.S. Dist. LEXIS 6631, Case No. C05-04039 MJJ at *9 (N.D. Cal. Feb. 2, 2006); Huang v. Ferrero U.S.A., Inc., 1999 U.S. Dist. LEXIS 5712, Case No. C98-0795 FMS (N.D. Cal. Apr. 15, 1999); Levy v. Norwich Union Ins. Soc'y, 1998 U.S. Dist. LEXIS 13524, Case No. C97-2533 MJJ (N.D. Cal. Aug. 5, 1998). Even Facebook's own authority holds that discovery should be allowed only "where pertinent facts bearing on the question of jurisdiction *are in dispute*." Orchid Biosciences, Inc. v. St. Louis Univ., 198 F.R.D. 670, 672 (S.D. Cal. 2001).
>
> Facebook has made no attempt to show that it is entitled to any of the discovery it has requested. As to Holtzbrinck Ventures and Holtzbrinck Networks, Facebook has not alleged a basis for such discovery. As to all defendants, you have outright refused to identify any facts related to the motions to dismiss that are in dispute. Instead, you seek to place the onus on me and my clients to *guess* what discovery might be appropriate.
>
> The discovery Facebook has propounded is obviously not targeted to any facts in dispute in the motions because Facebook had not even seen the motions at the time it served the discovery. Moreover, the discovery you propounded is facially overbroad no matter what basis Defendants had to contest personal jurisdiction. Just some examples, which are by no means exhaustive, are as follows:
>
> 1. The discovery is directed to a party that has been dismissed;
>
> 2. The discovery defines "YOU" to include the defendant's "directors, officers, parents, subsidiaries, predecessors, successors, assigns, agents, servants, employees, investigators, [and] attorneys," which is antithetical to the concept of discovery related to the *personal jurisdiction* of a defendant;

3. Most of the discovery requests are "fishing expeditions," whereby Facebook casts a wide net looking for any possible contact or communication with anyone or anything in California whether or not it has anything to do with the facts at issue in this case.

4. Facebook seeks discovery into the merits of the dispute or into issues that have nothing to do with this case, let alone issues raised in the motions to dismiss.

This discovery proves that Facebook made no attempt to limit its discovery requests to personal jurisdiction, let alone to the issues actually in dispute (if any) in the motions to dismiss.

We are, and always have been, open to properly-tailored, reasonable-in-scope discovery directed at the issues in the motions *that are in dispute*. But we are not going to do Facebook's work for Facebook. Facebook must identify what issues it believes are in dispute. Only then can we have a discussion about what discovery is appropriate to address those issues. If Facebook continues to refuse to tell us what issues are in dispute, then we will simply respond to the discovery served on the date our responses are due.

21. On October 31, 2008, Defendants filed the motion for protective order.

22. Facebook has engaged in bad faith by suing German residents in the United States knowing full well that Germany was the only proper forum. On June 8, 2006, Facebook sent Defendant StudiVZ a demand letter. It was written by a German law firm. It was written in German. It invoked German law, and it threatened to sue. Attached hereto as "Exhibit K" is, on information and belief, a true and correct copy of a June 8, 2006 demand letter from Lovells (a large U.K.-based law firm with offices in Germany) representing Facebook to studiVZ Ltd. in Berlin. We have had obtained a certified translation of that letter, a true and correct copy of which is attached, along with the certification, as "Exhibit L."

23. On January 3, 2007, Facebook sent Defendant StudiVZ another demand letter. It was drafted by a German law firm, was written in German,

invoked German law, and it threatened to sue.  Attached hereto as "Exhibit M" is, on information and belief, a true and correct copy of that letter.  We have had obtained a certified translation of that letter, a true and correct copy of which is attached, along with the certification, as "Exhibit N."

24. In the Spring of 2008, Facebook attempted to buy StudiVZ from Defendants Holtzbrinck Networks GmBH and Holtzbrinck Ventures GmBH.  When those negotiations broke down in June 2008, Facebook immediately threatened for the first time to sue in the United States.  When I called Facebook's counsel, Neel Chatterjee, one day after being retained, to ask for more time to respond to Facebook's new, American demand letter, Facebook refused to grant any more time unless Defendants first agreed to submit to personal jurisdiction and venue exclusively in the United States District Court for the Northern District of California.

25. On information and belief, on November 16, 2006, Mark Zuckerberg, Facebook's founder and CEO, gave a video interview, a true and correct copy of which can be found at http://en.sevenload.com/videos/9cMXu4Y-zuck and can be made available on CD upon request.  At approximately two minutes and forty seconds (2:40) into the interview, the interviewer asked Mr. Zuckerberg about other social networking websites, including specifically defendant "studiVZ," that some have called "copycats" of Facebook's website.  In response, Mr. Zuckerberg does not use or adopt the word "copycat" but instead says, "I think that they're ***different designs*** and slightly different products." (emphasis added).

26. The concurrently filed document entitled "Declaration of Dr. Anton G. Maurer in Support of Defendants' Motion for Protective Order" (hereinafter, the "Maurer Declaration") was signed with the typed signature "/s Anton G. Maurer."  I

37106-00002/1666122.1                             8
SUPPLEMENTAL DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

have confirmed that the content of the Maurer Declaration is acceptable to Dr. Maurer, and that Dr. Maurer has concurred to the filing of the Maurer Declaration.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on December 2, 2008.

                              /s Stephen S. Smith
                                Stephen S. Smith