1  STEPHEN S. SMITH (SBN 166539)
   SSmith@GreenbergGlusker.com
2  WILLIAM M. WALKER (SBN 145559)
   WWalker@GreenbergGlusker.com
3  AARON J. MOSS (SBN 190625)
   AMoss@GreenbergGlusker.com
4  GREENBERG GLUSKER FIELDS
   CLAMAN & MACHTINGER LLP
5  1900 Avenue of the Stars, 21st Floor
   Los Angeles, California  90067-4590
6  Telephone:  310.553.3610
   Fax:  310.553.0687
7
   Attorneys for Defendants studiVZ Ltd.,
8  Holtzbrinck Networks GmbH, and
   Holtzbrinck Ventures GmbH
9

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13

14  FACEBOOK, INC.,                    Case No.  5:08-CV-03468 JF
                                       Assigned To:  Hon. Jeremy Fogel
15            Plaintiff,
                                       **DECLARATION OF STEPHEN S.**
16  v.                                 **SMITH IN SUPPORT OF**
                                       **DEFENDANTS' OPPOSITIONS TO**
17  STUDIVZ LTD., , HOLTZBRINCK        **MOTION TO ENLARGE TIME;**
    NETWORKS GmbH,                     **EXHIBITS A-J**
18  HOLTZBRINCK VENTURES
    GmbH, and DOES 1-25,               [Opposition of the Holtzbrinck
19                                     Defendants and Partial Opposition of
              Defendants.              StudiVZ filed Concurrently]
20
                                       Complaint Filed:  July 18, 2008
21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

37106-00002/1662711.2

SMITH DECLARATION IN SUPPORT OF DEFENDANTS' OPPOSITIONS TO MOTION TO ENLARGE TIME

# DECLARATION OF STEPHEN S. SMITH

I, Stephen S. Smith declare:

1.     I am an attorney at law duly licensed to practice in the State of California and before the United States District Court for the Northern District of California, and am a partner at Greenberg Glusker Fields Claman & Machtinger LLP, counsel of record for Defendants StudiVZ Ltd., Holtzbrinck Networks GmbH, and Holtzbrinck Ventures GmbH ("Defendants"). I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto under oath. This declaration is submitted in connection with both the Holtzbrinck defendants' Opposition to Facebook's motion to enlarge time and StudiVZ's *Partial* Opposition to Facebook's motion to enlarge time.

## The Written Discovery

2.     On October 14, 2008 Facebook served interrogatories and document demands on each of the Holtzbrinck defendants and on StudiVZ. Facebook served each defendant with 23 interrogatories, for a total of 69. Facebook served each defendant with 30 document demands, for a total of 90.

3.     Each defendant responded to that written discovery on the initial due date of November 17, 2008. Facebook was dissatisfied with Defendants' responses to that written discovery. Therefore, the parties engaged in multiple meet and confer conversations.

4.     The discovery disputes with respect to the Holtzbrinck defendants were resolved via a meet and confer telephone conversation that occurred on

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   November 26, 2008.  I participated on that call on behalf of Defendants.  After

2   some back and forth, Facebook's counsel, Annette Hurst, and I came to an

3   agreement concerning how the Holtzbrinck defendants would supplement their

4   responses.  The Holtzbrinck defendants served their supplemental responses on

5   December 24, 2008.  Since that time, Facebook's counsel has raised no complaint

6   about the Holtzbrinck defendants' responses to Facebook's interrogatories.  True

7   and correct copies of the Holtzbrinck defendants' supplemental interrogatory

8   responses are attached hereto as Exhibit "A."

9

10      5.      During that same November 26, 2008 telephone call, Ms. Hurst also

11  agreed to withdraw (without prejudice) Facebook's document demands served on

12  the Holtzbrinck defendants -- the words she used were "put a pin in it" -- if the

13  Holtzbrinck defendants agreed to produce the following two categories of

14  documents: (a) any portions of the agreement by which they purchased StudiVZ,

15  and any due diligence documents associated with that acquisition, that made any

16  explicit or implicit mention of Facebook, and (b) any StudiVZ board meeting

17  minutes that contain any implicit or explicit reference to Facebook.  I, on behalf of

18  the Holtzbrinck defendants, said that I would recommend to my clients that they

19  produce those two categories of documents.  I drafted a letter memorializing this

20  agreement and sent it to Ms. Hurst on December 4, 2008.  A true and correct copy

21  of that letter is attached hereto as Exhibit "B."  That letter states that, at that time, I

22  was still waiting for confirmation from the client as to category (b).  However, I

23  subsequently learned that there were no documents in category (b), so it became

24  moot.  The Holtzbrinck defendants have since produced the category (a)

25  documents, and I have informed Facebook's counsel that there are no documents in

26  category (b).  Since this agreement was reached on November 26, 2008, Facebook

27  has never raised any complaint about the Holtzbrinck defendants' document

28  production.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

6. Ms. Hurst and I also agreed to resolve many of the document demands and interrogatories served on StudiVZ. Those agreements are reflected in StudiVZ's supplemental interrogatory responses, which were served on December 24, 2008, and in StudiVZ's supplemental document responses, which were served on January 9, 2009. True and correct copies of those supplemental responses are attached hereto as Exhibits "C" and "D," respectively. Because of these numerous agreements, Ms. Hurst and I represented truthfully to the Court at the hearing on December 16, 2008 that we had "largely" been able to work out "every issue" and that "very few" issues remained. (*See* Exhibit A to Avalos Decl., pages 5-13 of 28 [Reporter's Transcript at pages 4-12]).

7. Since then, Facebook has continued meeting and conferring about only a small number of interrogatories and document demands served on StudiVZ. The last letter received from counsel for Facebook about the remaining written discovery issues was dated January 9, 2009 and referred to only StudiVZ Interrogatory Nos. 10 and 14-16 and StudiVZ Document Demand Nos. 14, 16, 23, 25, 27-30. A true and correct copy of that letter and my January 14, 2009 response thereto are attached as Exhibits "E" and "F," respectively. The main area of dispute involves the issue of whether these particular discovery requests relate to personal jurisdiction and, more specifically the "effects" test of Calder v. Jones, or whether, as StudiVZ contends they relate solely to the merits of the case. I have been meeting and conferring with Facebook's counsel about this issue since mid-October 2008.

8. Facebook propounded only two interrogatories that relate to *forum non conveniens* -- Nos. 20 and 22. They were served on all three Defendants, and all three Defendants answered those interrogatories. Facebook has never complained that the answers were inadequate or incomplete in any way. Indeed, there has never been any mention of them by Facebook at all.

9.      Facebook initially served Rule 30(b)(6) deposition notices on each defendant.  However, Facebook's counsel, Annette Hurst later withdrew them. Although she stated at the time that she intended to serve new Rule 30(b)(6) notices, neither she nor anyone else on behalf of Facebook ever did.

10.      Facebook's counsel Annette Hurst asked me to make the two main declarants in support of the two motions to dismiss available for deposition.  The first witness was Martin Weber, the managing director of the two Holtzbrinck defendants.  The second witness was Michael Brehm, the then-Chief Operating Officer of StudiVZ.  I agreed to do so.  These two witnesses reside in Germany. Accordingly, Ms. Hurst and I agreed that their depositions would take place at her offices in Frankfurt, Germany on January 12 and 13, 2009.  That agreement was memorialized in my December 4, 2008 letter referenced above, Exhibit B, and in an email dated December 8, 2008, a true and correct copy of which is attached hereto as Exhibit "G."  In addition, on January 7, 2009, Facebook formally noticed these two depositions, true and correct copies of which are attached hereto as Exhibit "H."

11.      On January 5, 2009, I sent an email to Facebook's counsel, Tom Gray. Among other things, that email informed Mr. Gray that I would be leaving for the depositions in Germany on "Wednesday evening," which was January 7, 2009.  A true and correct copy of that email is attached hereto as Exhibit "I."  I did in fact leave on a Lufthansa flight from LAX to Munich, Germany, which departed at 9:00 p.m. on Wednesday, January 7, 2009.  That was the latest I could leave in order to arrive in Germany in time to have a meeting with the witnesses (and the Holtzbrinck defendants' general counsel, Dr. Anka Reich), on the last business day before the depositions were scheduled to commence.  Dr. Reich does not reside in

SMITH DECLARATION IN SUPPORT OF DEFENDANTS' OPPOSITIONS TO MOTION TO ENLARGE TIME

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Munich.  The meeting was in Munich, because that is where Mr. Weber resides.  As a result, she also had to fly from her city of residence in Stuttgart, Germany to Munich for that meeting.  In addition, the other witness, Michael Brehm, resides in Berlin, Germany.  Thus, he also was required to fly to Munich for the meeting.

12.  The meeting with my client and the witnesses was scheduled to start at 9:00 a.m. German time on Friday, January 9, 2009.  At 7:57 a.m. German time, which was 10:57 p.m. Thursday, January 8, 2009 in California, Tom Gray sent me an email cancelling the depositions.  Although Mr. Gray and I had been having a disagreement about the scope of *one particular* topic that Mr. Gray wished to ask Mr. Brehm about, prior to me leaving for Germany Mr. Gray had never threatened to cancel the Mr. Brehm's deposition (let alone Mr. Weber's deposition) if that dispute was not resolved in advance of the depositions.  Moreover, this dispute concerned only Michael Brehm and had nothing to do with Martin Weber.  I confirmed that point to Mr. Gray twice before he canceled the depositions.  Mr. Gray never disputed it.  To the contrary, he confirmed *before* cancelling that there was no dispute as to Mr. Weber "presumably bc he doesn't know anything about [the issue of] what StudiVZ did."  A true and correct copy of this entire email string is attached hereto as Exhibit "J."

13.  In addition, the single issue about which Mr. Gray and I were disagreeing was only one topic among potentially scores of topics that Mr. Gray could have asked Mr. Brehm about.  In my last communication to Mr. Gray before he canceled, which I sent to him at 9:17 p.m. German time on January 8, 2009, I wrote as follows:

"This is the bottom line.  I will be at your office in Frankfurt at 9:30
a.m. on Monday morning and again on Tuesday morning with Messrs.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  Brehm and Weber.  They will testify about any and all issues that are

2  reasonably related to jurisdiction and/or venue.  I will do everything

3  possible to take an expansive view of those issues within reason,

4  because I believe that it is obvious that there is no personal jurisdiction

5  here and that venue is much better in Germany.  If you approach an

6  area that goes into a solely merits based arena, then I will object.  And

7  if there is some ambiguity, I will do my best to work with you so that

8  you get what you need for jurisdiction and venue without the

9  deposition turning into a free for all about the case as a whole.  But

10  since we do not have any pre-established agreement, and because I

11  have not yet heard the questions and have not seen you lay any

12  foundation yet, I am not going to simply agree to allow you to ask

13  anything you want about the case in advance.  I do not think that is

14  even required in a normal case where jurisdiction is not an issue.

15  Indeed, it is a very rare case where counsel have agreed in advance

16  about all proper versus improper deposition topics or questions."

17

18  (Exhibit J).  Despite these assurance, Mr. Gray canceled the depositions.

19

20  **Defendants *Believe*, But they Are Not Sure, that Facebook Also Wishes to**

21  **Depose Two Other Witnesses Who Facebook Has Previously Said May Have**

22  **Relevant Knowledge as to Personal Jurisdiction Over StudiVZ**

23

24       14.     In her December 8, 2008 email, Ms. Hurst also wrote that Facebook

25  intended to try to depose Messrs. Essan Dhariani and Dennis Bemmann during the

26  week of January 12, 2009.  (Exhibit G).  On or about December 8, 2008, I told Mr.

27  Hurst that neither of these witnesses were under StudiVZ's control as they had both

28  stopped working for StudiVZ prior to the filing of this lawsuit. As a result, a few

days later Ms. Hurst told me that Facebook would attempt to depose those two witnesses under the Hague Evidence Convention, and would not be able to do so by the week of January 12, 2009.

15.     Then, Ms. Hurst informed me via email on December 17, 2008 that she would no longer be working on the matter and that her colleague, Tom Gray, would be taking over. Since Ms. Hurst announced that she would no longer be working on the matter, I am not aware of any efforts Facebook has made to depose Messrs. Dhariani or Bemmann. From December 17, 2008 until January 16, 2009, Facebook did not tell me whether it was attempting to notice these depositions through the Hague (or otherwise). I began to think that Facebook may have decided not to depose these two witnesses. However, upon reading Facebook's opposition to the motions to dismiss, which mentions these witnesses repeatedly, I assume that Facebook still wishes to depose them. I have previously told Ms. Hurst that defendants do not object to Facebook taking these depositions.

## The Discussions About Enlarging Time

16.     On or about October 20 and 21, 2008, the day or two before defendants filed their motions to dismiss, I discussed with Facebook's counsel, Warrington Parker, the appropriate hearing date for those motions. He asked for the motions to be scheduled for hearing in February 2009 so that Facebook would have time to obtain discovery related thereto. I agreed, and the motions were therefore set for February 13, 2009.

17.     As noted above, the written discovery issues were resolved well before the January 16, 2009 due date of Facebook's opposition. However, because Messrs. Weber's and Brehm's depositions were not scheduled to commence until

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  January 12 and 13, 2009, Facebook asked for more time to incorporate into its

2  opposition to the Holtzbrinck motion to dismiss what it learned at Mr. Weber's

3  deposition and into its opposition to the StudiVZ motion what it learned at Mr.

4  Brehm's deposition.  This discussion first occurred with Annette Hurst in or around

5  early December 2008, at or about the time that Ms. Hurst and I agreed to scheduled

6  those depositions for January 12 and 13, 2008.  I was agreeable to moving the

7  hearing date of the motions for a short period of time *for that purpose*.

8

9  18.    After Mr. Gray took over the case from Ms. Hurst, Mr. Gray then also

10  discussed with me the issue of potentially moving the hearing date of the motions to

11  dismiss.  I told him what I had told Ms. Hurst, but also added that I was willing to

12  consider a longer continuance as to StudiVZ's motion *because of the ongoing*

13  *discovery dispute regarding personal jurisdiction as to that defendant*.

14

15  19.    When Mr. Gray cancelled the deposition of Mr. Weber (the *sole*

16  Holtzbrinck deponent), the reason for a continuance of the Holtzbrinck motion to

17  dismiss went away.  Nonetheless, Mr. Gray continued to ask for more time to

18  oppose the Holtzbrinck motion to dismiss (and the StudiVZ motion to dismiss as

19  well).  On January 13, 2009 (my first day back in the office after my trip to

20  Germany), I responded by offering to move the hearing date of the motions on the

21  following terms: (a) the continuance of the Holtzbrinck motion had to be short, I

22  believe I suggested two weeks, (b) the *forum non conveniens* portion of StudiVZ's

23  motion to dismiss would be heard at the same time as the Holtzbrinck motion to

24  dismiss because there was no outstanding issue as to *forum non conveniens*, and

25  (c) the personal jurisdiction portion of the StudiVZ motion could be continued for

26  as long as Facebook reasonably needed to resolve the open personal jurisdiction

27  discovery issues that related to that defendant.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    20.    On January 14, 2009, Mr. Gray rejected that proposal.  During that call,

2  I asked Mr. Gray why he would not agree to only a short continuance of the

3  Holtzbrinck defendants' motion to dismiss (as opposed to the 90 days Facebook

4  currently seeks) and why Facebook was unwilling to have the *forum non conveniens*

5  portion of StudiVZ's motion heard at the same time as the Holtzbrinck motion.  All

6  he said was that there were open issues regarding *forum non conveniens*.  I then

7  asked him "what issues?"  He did not answer.  I also have never received any

8  explanation as to why Facebook seeks to continue the Holtzbrinck motion to dismiss

9  for 90 days.

10

11    21.    On January 21, 2009, I offered to stipulate to a later hearing date on the

12  personal jurisdiction portion of the StudiVZ motion to dismiss, while allowing

13  Facebook to still seek all of the other relief it seeks via the instant motion.  In other

14  words, Facebook would get at least "1/4 of what you want (and it is the biggest

15  quarter) without asking for anything in return."  (*See* Ex. A to Gray Decl. at page 2

16  of 7) (Docket No. 79-2).  I made this offer, in part, so that defendants would not

17  have to file a totally unnecessary reply in support of the personal jurisdiction

18  portion of StudiVZ's motion to dismiss now, which I would then "throw in the

19  trash when the court grants that part of your motion, which I am not opposing."

20  (Id. at page 4 of 7).  Mr. Gray rejected that offer as well.

21

22    ## The Conversation in Which I "Cursed"

23

24    22.    Facebook has also seen fit in its motion to lambaste me for supposedly

25  "losing [my] temper" and "cursing" Mr. Gray.  Although this has nothing to do

26  with the issues raised in the instant motion, I feel obliged to respond.

27

28

SMITH DECLARATION IN SUPPORT OF DEFENDANTS' OPPOSITIONS TO MOTION TO ENLARGE TIME

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    23.    Facebook fails to tell the Court *why* I lost my temper and cursed.

2  January 7, 2009 was my 16th wedding anniversary.  That was the night I had to fly

3  to Germany for the two depositions that Facebook noticed.  I was very unhappy that

4  Mr. Gray had cancelled the deposition <u>after I had already made the trip</u>, especially

5  given that I had informed him in writing when I would be leaving and given that he

6  knew I was already in Germany when he cancelled.[1]  During the call with Mr. Gray

7  on January 14, 2009, Mr. Gray and I were involved in what I understood to be

8  fairly normal, but heated banter about Facebook's motives for cancelling the

9  depositions.  Mr. Gray reiterated his purported reason for cancelling, which made

10  no sense to me, so I described Mr. Gray's argument in colorful terms.  I did not

11  curse Mr. Gray himself.  I simply attacked his argument.  The next day, I

12  apologized in writing for using such language and explained that I was angry given

13  that it had been my anniversary and I had been put through the inconvenience of

14  having to travel half way around the world that day only to have Facebook later

15  (and wrongfully) cancel the depositions.

16

17    I declare under penalty of perjury under the laws of the State of California

18  and the United States that the foregoing is true and correct, and that this declaration

19  was executed in Los Angeles, California on January 26, 2009.

20

21    _____  /s Stephen S. Smith  _____

22    Stephen S. Smith

23

24

25

26

---

27  [1]  Facebook's improper, last minute cancellation of the depositions inconvenienced both
me and my clients, caused my clients to incur substantial fees and costs for nothing, and is the

28  subject of a Motion for Sanctions that is going to be filed on January 27, 2009.