STEPHEN S. SMITH (SBN 166539)
SSmith@GreenbergGlusker.com
WILLIAM M. WALKER (SBN 145559)
WWalker@GreenbergGlusker.com
AARON J. MOSS (SBN 190625)
AMoss@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendants studiVZ Ltd.,
Holtzbrinck Networks GmbH, and
Holtzbrinck Ventures GmbH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>STUDIVZ LTD., , HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH, and DOES 1-25,<br><br>    Defendants. | Case No. 5:08-CV-03468 JF<br>Assigned To: Hon. Jeremy Fogel<br><br>**DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS DUE TO FACEBOOK'S CANCELLATION OF DEPOSITIONS *AFTER* DEFENSE COUNSEL HAD ALREADY FLOWN TO GERMANY; EXHIBITS A-F**<br><br>[Notice of Motion and Memorandum of Points and Authorities, Declaration of William M. Walker, and (Proposed) Order filed concurrently]<br><br>Date:           March 3, 2009<br>Time:          10:00 a.m.<br>Dept./Place:  Courtroom 2, 5th Floor<br>                   Hon. Howard R. Lloyd<br><br>Complaint Filed: July 18, 2008 |

37106-00002/1673804.2

# DECLARATION OF STEPHEN S. SMITH

I, Stephen S. Smith declare:

1. I am an attorney at law duly licensed to practice in the State of California and before the United States District Court for the Northern District of California, and am a partner at Greenberg Glusker Fields Claman & Machtinger LLP, counsel of record for Defendants StudiVZ Ltd., Holtzbrinck Networks GmbH, and Holtzbrinck Ventures GmbH ("Defendants"). I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto under oath. This declaration is submitted in connection with Defendants' motion for sanctions due to Facebook's cancellation of two depositions after defense counsel had already traveled to Germany to attend them.

2. On October 22, 2008, Defendants filed motions to dismiss for lack of personal jurisdiction and *forum non conveniens*. In support of the motions, Defendants submitted, *inter alia*, the declarations of Martin Weber and Michael Brehm. Facebook's counsel, Warrington Parker and Annette Hurst, both asked me to produce Messrs. Weber and Brehm for deposition. I agreed to do so. On or about December 8, 2008, Ms. Hurst and I agreed that the witnesses would be produced for depositions at Ms. Hurst's law firm's office in Frankfurt, Germany on January 12 and 13, 2009.

3. In addition, on January 7, 2009, Facebook also served me with notices of depositions of Messrs. Weber and Brehm, noticing them for Facebook's counsel offices in Frankfurt, Germany at 9:30 a.m. on January 12 and 13, 2009. True and correct copies of those notices are attached hereto as Exhibits "A" and "B."

4. Long before the motions to dismiss were filed, counsel for the parties had been engaged in ongoing "meet and confer" discussions about the appropriate scope of discovery related to personal jurisdiction. On October 14, 2008, Facebook served document demands and interrogatories seeking discovery into various topics. Defendants objected to much of that discovery on the ground that it did not relate to any material issue of personal jurisdiction or venue. During meet and confer, the parties were able to reach tentative agreements as to the interrogatories served on the two Holtzbrinck defendants and most of the interrogatories served on StudiVZ, and Defendants served supplemental interrogatory responses on December 24, 2008. In return for an agreement by the Holtzbrinck defendants to produce certain documents, Facebook also tentatively agreed to withdraw its document demands to those two defendants. Finally, the parties were also able to agree on compromises to many of the document demands served on StudiVZ, which were reflected in a supplemental response served on January 9, 2009.

5. There remained, however, a few areas of disagreement concerning four interrogatories and eight document requests that were served on defendant StudiVZ. Those areas of disagreement had first arisen in October 2008 and were never resolved. In a nutshell, the dispute is whether those requests relate to personal jurisdiction or relate solely to the merits of the case.

6. As the depositions approached, Facebook's discussion about the outstanding written discovery topics began to overlap into a discussion of deposition "topics." As is set forth in the accompanying declaration of my partner, William Walker, on December 30, 2008, Facebook orally asked Mr. Walker whether Messrs. Weber and Brehm were being produced pursuant to Rule 30(b)(6). Facebook had previously served Rule 30(b)(6) notices, but had voluntarily withdrawn them back in November 2008. For that reason, Mr. Walker said that the

witnesses were not formally being produced under Rule 30(b)(6), but added that the witnesses were, in fact, the persons most knowledgeable about personal jurisdiction and forum and would be prepared to testify about any topics related thereto.

7. On December 31, 2008 and January 5, 2009, Facebook's counsel, Tom Gray, and I exchanged emails about the previous day's oral meet and confer. True and correct copies of that email string is attached hereto as Exhibit "C." In the first sentence of my January 5, 2009 email, I informed Facebook's counsel that I would be leaving for Germany on "Wednesday evening," January 7, 2009, which happened to also be my 16th wedding anniversary.

8. Another telephonic meet and confer took place at noon on Tuesday, January 6, 2009. William Walker and I participated in that call with Tom Gray and Julio Avalos for Facebook. The call lasted almost two hours. Many issues were discussed, and we all agreed on certain things and disagreed on others. One of the main points of disagreement related to categories of document demands, interrogatories and deposition questions that related to whether or not StudiVZ employees had ever "accessed" Facebook (the "Access Issue"). The Access Issue related solely to the deposition of Michael Brehm, the former Chief Operating Officer of StudiVZ. It did not relate to Mr. Weber because both Mr. Gray and I expressly stated our assumption that Mr. Weber did not have knowledge about whether StudiVZ employees had ever accessed Facebook. Mr. Gray confirmed this understanding in an email to me dated January 7, 2009 at 9:33 p.m. PST. He wrote, *inter alia*, "As to Weber, you seemed comfortable with all questions related to access (presumably bc he doesn't know anything about what StudiVZ did)." A true and correct copy of that email is attached as part of a longer email string discussed in more detail in paragraphs 10-18 below as Exhibit "D" at pages 4-5 of 7.

9.  At no time during this January 6, 2009 call did Mr. Gray indicate any intention to even consider cancelling the depositions as a result of the disagreement regarding the Access Issue. To the contrary, he said that he would be serving me with deposition notices later that same day.

10.  At 4:03 p.m., the next day, Wednesday, January 7, 2009, just as I was about to leave for the airport, Mr. Gray counsel sent an email attaching the deposition notices. The cover email also purported to confirm an agreement regarding the scope of the deposition, specifically related to the Access Issue. A true and correct copy of this email is attached as part of Exhibit D. It is the first email in the string related to Facebook's cancellation of the depositions, so it is found at the end of Exhibit D, page 6 of 7.

11.  I responded to that email within 41 minutes of receiving it by noting that, although there had been discussion into the Access Issue, no agreement had in fact been reached. A true and correct copy of that response is attached hereto as part of Exhibit D at pages 5-6 of 7. I then left for the airport.

12.  My flight took off at 9:00 p.m. on Wednesday evening, January 7, 2009.

13.  At the time I left, I had no idea that Facebook would cancel the depositions. To the contrary, on January 5, 2009, I had implicitly invited Mr. Gray to postpone the depositions so that all depositions could take place on a single trip later in the year. He had not expressed any interest and had, instead, noticed the depositions on January 7, 2009. Although the 4:03 p.m. email on January 7, 2009 indicated (for the first time) that Facebook had <u>considered</u> postponing the depositions, that statement was based on the stated worry that defendants were going to allow the witnesses to testify <u>only</u> about what was in their declarations.

37106-00002/1673804.2    4
SMITH DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

Exhibit D at page 6 of 7. In my 4:44 p.m. response to that email, I explicitly reassured Mr. Gray that the depositions would <u>not</u> be so limited. Rather, I wrote that the deponents would be testifying about anything related to jurisdiction or venue. Exhibit D at page 5 of 7.

14. The only disagreement Mr. Gray cited as a basis for cancelling the depositions was the Access Issue, which was one of many issues that Mr. Gray and I had discussed over the previous three months. However, the Access Issue was not the only issue about which we were in disagreement. Indeed, I had noted explicitly in my January 5, 2009 email that we had not reached agreement about a number of issues. Exhibit C. Yet, at no time prior to me leaving for Germany had Mr. Gray ever said that the depositions would be canceled if the Access Issue (or any other issue) was not resolved in advance.

15. At 9:33 p.m., Wednesday, January 7, 2009, after I was already in the air on my way to Germany, Mr. Gray sent an email stating, *inter alia*, that "it [did] not look good for the depositions going forward" due to the parties disagreement over the Access Issue. I did not see this email until I arrived in Germany. A true and correct copy of that email is attached as part of Exhibit D at pages 4-5 of 7.

16. After arriving at my hotel in Munich, at 12:17 p.m. PST, 9:17 p.m. German time, on Thursday, January 8, 2009, I responded to Mr. Gray's email. Among other things, I wrote, "I do not understand what you are doing. Do you want to cancel the depositions?" I noted that Mr. Gray had known of my travel plans and knew that the disagreement over the Access Issue did not have "anything to do with Martin Weber." I also sought to reassure Mr. Gray that he would be entitled to ask any questions within reason that possibly related to personal jurisdiction or forum.

> "[The witnesses] will testify about any and all issues that are
> reasonably related to jurisdiction and/or venue. I will do everything
> possible to take an expansive view of those issues within reason . . . .
> If you approach an area that goes into a solely merits based arena, then
> I will object. And if there is some ambiguity, I will do my best to
> work with you so that you get what you need for jurisdiction and
> venue without the deposition turning into a free for all about the case
> as a whole. But since we do not have any pre-established agreement,
> and because I have not yet heard the questions and have not seen you
> lay any foundation yet, I am not going to simply agree to allow you to
> ask anything you want about the case in advance."

A true and correct copy of that email is also attached as part of Exhibit D at page 2-4 of 7.

17. I then went to bed.

18. The next morning, at 7:57 a.m. German time (10:57 p.m. PST), on Friday, January 9, 2009, Mr. Gray responded to my email by cancelling the depositions. A true and correct copy of that email is also attached as part of Exhibit D at pages 1-2 of 7.

19. I would <u>not</u> have flown to Germany had I had any reason to suspect that the depositions would be canceled. First, January 7, 2009 was my 16th wedding anniversary. The last thing I wanted to do was fly half way around the world on my anniversary. Second, my clients' in-house counsel, Dr. Anka Reich, and one of the witnesses, Mr. Brehm, had to travel to Munich (the location of Mr. Weber) for the deposition preparation meeting on Friday, January 9, 2009. I would

not have had my own clients go to that inconvenience for nothing. Indeed, given my email on Thursday evening, where I agreed to allow Mr. Gray to ask questions concerning "any and all issues that are reasonably related to jurisdiction and/or venue" and that I would "do everything possible to take an expansive view of those issues within reason," I fully believed at the time I went to bed Thursday night that Mr. Gray would go forward with the depositions.

20. Although Mr. Gray and I were having an ongoing disagreement as to certain areas of scope, that disagreement had existed for *months* and had involved multiple issues, not just the Access Issue. It was also already known to Mr. Gray that Facebook would need to make a second trip to Germany later in the year in order to depose other witnesses that it hoped to depose. From November through mid-December, 2008, counsel for Facebook, Annette Hurst and Warrington Parker, repeatedly told me that Facebook also seeks to depose Ehssan Dariani and Dennis Bemmann. Ms. Hurst told me that she was unable to get them noticed via the Hague Evidence Convention for the week of January 12, 2009 and that, therefore, they would need to be deposed later in the year in Germany. Accordingly, it was always understood by both parties that they would be making two trips to Germany for Facebook to take depositions of witnesses who reside there. I had implicitly invited Facebook to postpone the depositions of Messrs. Weber and Brehm "until April" so that the parties would only have to make one trip to Germany to take depositions about personal jurisdiction and venue issues. Facebook did not accept that invitation and continued to insist (as was its right) on taking the depositions on January 12 and 13, 2009 as defendants had agreed. It even served Defendants with deposition notices on Wednesday, January 7, 2009.

21. My expenses to travel to Germany total $7,729.72. Attached hereto as Exhibit "E" are true and correct copies of the receipts related to my travel to

SMITH DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

Germany. When Facebook cancelled, I looked into flying back to the United States through Paris, so that I could see another client who is located in Paris. Because it was *less expensive* to do so, that is what I did. I have *not* included the flight from Munich to Paris or the hotel room, food, etc. related to my trip to Paris in Exhibit E.

22. I spent 5 hours preparing to defend the depositions. I spent 28.50 hours traveling to Munich, Germany and back from Paris, France. I record my billable time on my computer, using a program called DTE. A true and correct copy of my time records for my preparation and travel time is attached hereto as Exhibit "F." (One 3.00 hour entry on January 5, 2009 is cut off and did not print in full, so it does not reflect that the time spent was in preparation for the depositions. But it was and the time entry ends "review of documents in preparation for trip to Germany.") I also anticipated spending 16 hours in the depositions of the two witnesses on January 12 and 13, 2009.

23. Upon returning to the United States, I met and conferred with Facebook's counsel on January 13 and 14, 2009 about the cancellation of the depositions and defendants intent to file the instant motion. On January 20 and 21, 2009, Tom Gray and I agreed that this motion would be set for hearing on March 3, 2009. I also directly asked Mr. Gray if Facebook would pay for the expenses and fees incurred in connection with the depositions. Mr. Gray rejected that request.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on January 27, 2009.

           /s Stephen S. Smith
           Stephen S. Smith