I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
JULIO C. AVALOS (STATE BAR NO. 255350)
javalos@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:    +1-650-614-7400
Facsimile:    +1-650-614-7401

THOMAS J. GRAY (STATE BAR NO. 191411)
tgray@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza
Suite 1600
Irvine, CA 92614-2558
Telephone:    +1-949-567-6700
Facsimile:    949-567 6710

Attorneys for Plaintiff
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., | Case No. 5:08-cv-03468 JF |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO COMPEL COMPLETE INTERROGATORY RESPONSES AND DOCUMENT PRODUCTION FROM STUDIVZ LTD., HOLTZBRINCK VENTURES GMBH AND HOLTZBRINCK NETWORKS GMBH PURSUANT TO CIVIL L.R. 7-1 AND 37-2** |
| v. | |
| STUDIVZ LTD., HOLTZBRINCK NETWORKS GmBH, HOLTZBRINCK VENTURES GmBH, and DOES 1-25, | |
| Defendants. | |
| | Date:      March 3, 2009 |
| | Time:      10:00 a.m. |
| | Room:      Courtroom 2, 5th Floor |
| | Judge:     Honorable Magistrate Judge Howard R. Lloyd, for Discovery Purposes |

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......................................................................................................... 2

II. FACTUAL BACKGROUND ........................................................................................ 2

    A. Facebook's Development ................................................................................. 2

    B. Founding of Facebook Clone By German Student After His Visit to California ........................................................................................................ 3

    C. Defendants Contractually Submit to the Venue and Jurisdiction of the Court ............................................................................................................... 5

    D. Facebook Files Suit Against Defendants ........................................................ 6

    E. Facebook's First Set of Requests for Production of Documents ................... 6

    F. The Parties' Meet and Confer Efforts ............................................................ 8

        1. The November 26 Meet and Confer .................................................... 8

        2. Subsequent Meet and Confers ............................................................ 8

        3. The January 6, 2009 Meet and Confer ............................................... 9

III. ARGUMENT ............................................................................................................. 11

    A. Facebook Requires The Discovery It Seeks Sought In Order To Oppose Defendants' Motions to Dismiss. ................................................................. 11

        1. Discovery Related to the Creation, Design and Development of Defendants' Sites Directly Relates to the Personal Jurisdiction Issues ................................................................................................. 11

    B. It Is An Abuse of Discretion To Refuse Discovery Relevant To Personal Jurisdiction Where Jurisdiction Has Been Challenged ........................................ 14

    C. Defendants Are Improperly Withholding Evidence Relating To Their Accessing of the Facebook Site and Intellectual Property and the Subsequent Development of the StudiVZ Websites – Interrogatories 10, 15, 16; Requests For Production 14, 16, 23, 25, 27, 28, 29 ...................................... 15

    D. Defendants Improperly Seek To Withhold Production of So-Called "Adhesion Contracts" – Interrogatories 1, 2, 9; RFPs 1, 13 ................................ 23

    E. Defendants Should Be Compelled To Testify About Accessing Facebook's Site And Servers As Well As The Design, Development And Implementation Of The StudiVZ Websites. ....................................................... 25

IV. CONCLUSION .......................................................................................................... 25

TABLE OF AUTHORITIES

**Page**

## NOTICE OF MOTION

**TO DEFENDANTS STUDIVZ LTD., HOLTZBRINCK NETWORKS GMBH AND HOLTZBRINCK VENTURES GMBH**

PLEASE TAKE NOTICE that on March 3, 2009 at 10:00 a.m. or as soon thereafter as it may be heard, in Courtroom 2 of this Court, before the Honorable Howard R. Lloyd, Plaintiff Facebook, Inc., pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure, and N.D. Cal. Civil Local Rules 37-1 and 37-2, will and hereby does move for an order compelling complete interrogatory responses and document production from Defendants StudiVZ Ltd., Holtzbrinck Ventures GmbH and Holtzbrinck Networks GmbH. To the extent that Defendants have objected to document requests and interrogatories, Facebook asks that such objections be overruled and that Defendants be ordered to produce all documents in their possession and to respond fully to Facebook's interrogatories. This motion is based on the accompanying Memorandum, the Declaration of Julio C. Avalos, the Declaration of Thomas J. Gray, and all pleadings and papers which are of record and are on file in this case.

## CERTIFICATE PURSUANT TO
## FED. R. CIV. P. 37(a)(2)(B) & N.D. CAL. CIV. L.R. 37-1(a)

Counsel for Facebook, Inc., hereby certifies that pursuant to Fed. R. Civ. P. 37(a)(2)(B) and N.D. Cal. Civ. L. R. 37-1(a) that it has engaged in multiple conferences beginning November 26, 2008 with counsel for Defendants concerning Facebook's position that Defendants respond completely and without objection to the requests for production of documents set forth in Facebook's First Set of Request for Production of Documents Relating to Personal Jurisdiction and that Defendants provide complete responses without objection to Facebook's First Set of Special Interrogatories. *See* Declaration of Julio C. Avalos in support of Facebook's Motion to Compel ("Avalos Decl.") ¶¶ 21 - 35. However, despite the parties' good faith efforts to meet and confer on the subject, they were unable to resolve their differences. *Id.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Facebook has been forced to file this motion to compel because Defendants have refused to produce the discovery necessary to allow Facebook to fully and adequately oppose Defendants' motions to dismiss.  Defendants have produced a minimal amount of discovery related to their contacts with California.  They have refused, however, to respond to discovery that relates to the correct personal jurisdiction standard applicable to this case, the *Calder* effects test, which requires analysis of Defendants' intentional acts aimed at the forum.  At the December 16, 2008 hearing before this Court, Defendants conceded that they were required to respond to discovery that covered both merit and personal jurisdiction issues.  And yet a month later they still refuse to do so.  They cling to their objections that discovery into Defendants' accessing of Facebook's site, servers, and intellectual property and discovery related to the design and development of the StudiVZ sites is purely merits-based and not "intertwined" unless such evidence reveals "copying" of the Facebook site and intellectual property.  But discovery under the Federal Rules of Civil Procedure is far broader than that.  Facebook is entitled to more than "smoking gun" evidence, if any exists.  Under *Calder* Defendants should be required to respond to all discovery related to their intentional access to Facebook's site, its California-based servers, and the infringement of its intellectual property, including all evidence related to the creation, design, development and implementation of Defendants' websites.  Such information directly relates to personal jurisdiction and forum issues, even though it is also intertwined with the merits.  Accordingly, Facebook respectfully requests that the Court grant its motion and compel and require  Defendants to respond fully and completely to Facebook's personal jurisdiction and forum discovery.

## II.   FACTUAL BACKGROUND

### A.    Facebook's Development

Facebook, Inc. ("Facebook"), headquartered in Palo Alto, California, developed and operates www.facebook.com, the most popular social networking service in the world.  Facebook launched in February 2004 as a service limited to Harvard University students.  Avalos Decl. ¶ 2.

Four months later, due to its incredible popularity, Facebook opened its site to students from other universities. *Id.* Throughout 2004 and 2005, Facebook continued its unprecedented rise in popularity and exponential growth. By November 2005, Fortune magazine reported that Facebook had eclipsed the six million-user mark. *Id.* ¶ 4. Facebook currently now has over 150 million active users worldwide.

**B.** **Founding of Facebook Clone By German Student After His Visit to California**

Around the same time that Facebook launched and began its meteoric rise in popularity, two young German university students traveled to the United States. The first, Ehssan Dariani, worked at a start-up company named Spreadshirt, Inc.. *See* Declaration of Clemens Mayer-Wegelin In Support of Facebook's Previously-Filed Opposition to Defendants' Motions to Dismiss ("Mayer-Wegelin Decl.") (Dkt. # 73) ¶ 2. Mr. Dariani has admitted that while in the United States, he was "looking for the next big thing." Mayer-Wegelin Decl. ¶ 2. As part of his internship at Spreadshirt, Mr. Dariani was tasked with spending $100,000 in marketing and advertising funds on the ascendant Facebook. *Id.* ¶ 9. While in the U.S., upon looking at Facebook for the first time, Mr. Dariani has admitted to thinking, "Wow, super, it's a lot of fun. I want to have that too, there's no such thing in Germany." *Id.* ¶ 8. According to Mr. Dariani, "That's when I thought, 'That's good, adopt it, do it.'" *Id.* ¶ 2. "When I saw student networks in the USA, I wanted to have that in Germany," Mr. Dariani has further admitted. *Id.* ¶ 5; **Exhibit D**. Shortly thereafter, Mr. Dariani contacted his friend, Dennis Bemmann, and the two started working on their company, defendant StudiVZ, Ltd. ("StudiVZ"). *Id.* ¶ 9.

During this time (approximately March/April 2004 through March/April 2005), Mr. Bemmann was also in the United States. Mr. Bemmann interned at the San Jose, California-based technology company Xilinx, headquartered less than 25 miles from Facebook's Palo Alto headquarters. Avalos Decl. ¶ 5; **Exhibit 1**. According to the International Herald Tribune, Mr. Bemmann was "[a]n accomplished computer programmer." As an intern at Xilinx, he "helped to design Internet routing equipment in Colorado and California." *Id.* Working with a Silicon Valley-based company Mr. Bemmann had opportunity to travel to—and work in—California. In

- 3 -

1    April 2004, he attended a technology conference in Napa Valley, California presenting a paper he

2    had co-written with other Xilinx employees.  *Id.* ¶ 6; **Exhibit 2**.

3         According to StudiVZ's responses to Facebook's interrogatories, it was during this time—

4    "in 2005" that StudiVZ first learned that Facebook resided in California.  *Id.* ¶ 30; **Exhibit 9**.

5    The evidence suggests that it was also during this time that Messrs. Dariani and Bemmann began

6    to gain access to Facebook in order to copy Facebook's intellectual property and business model.

7    Avalos Decl., ¶ 7, Ex. 3.

8         In the summer or fall of 2005, Messrs. Bemmann and Dariani returned to Germany.  A

9    few months later, in October 2005, they co-founded StudiVZ, Ltd. ("StudiVZ") in Berlin,

10   Germany and promptly launched a Facebook clone located at www.studivz.net.  StudiVZ was

11   virtually a one-to-one knockoff of Facebook, making only nominal changes such as swapping

12   Facebook's blue color scheme with a red one.  *See* Avalos Decl. at **Exhibit 8**.  The layout of the

13   two sites was identical.  "The Wall" feature on Facebook, an online application that allows users

14   to post public messages on another user's Facebook profile page, was copied wholesale and

15   renamed "The Board," or, in some translations, perhaps even "The Wall."  The popular "Poke"

16   feature on Facebook, which permits users to "poke" other users, to send an electronic notification

17   to get the other user's attention, was lifted directly from Facebook and copied into StudiVZ.  Mr.

18   Dariani, who has admitted that StudiVZ "may have oriented ourselves along the lines of the

19   Facebook layout," *see* Compl. ¶ 31, explained that in copying Facebook, StudiVZ was especially

20   sensitive to avoid "mindless Anglicisms," i.e., wholesale copying of idiomatic American

21   Facebook terms and phrases.  Thus, "poke" was renamed "gruscheln," a German neologism that

22   neatly captures the meaning of Facebook's "poke."  (The word combines the German verb "to

23   hug" with the German word meaning "to get someone's attention.")

24        In the development of the StudiVZ website, Defendant StudiVZ continuously trespassed

25   to the Facebook site and its servers in excess of their authorization and in violation of the

26   Facebook Terms of Use in order to steal Facebook's intellectual property, such as Facebook's

27   protectable trade dress and, quite possibly, as has been reported by independent third-party

28   watchdogs, Facebook's programming code.  Compl. at 10:4 – 11:11.  Since its launch, StudiVZ

has continued to copy Facebook's innovations and alterations to its trade dress, most recently copying Facebook's implementation of a chat feature into its service. Avalos Decl. ¶ 8; Exhibit 4.

In the winter of 2006, StudiVZ began to expand its international network. It launched sites in France (www.studiqg.fr), Italy (www.studiln.it), Spain (www.estudiln.net) and Poland (www.studentix.pl). These new sites also infringed Facebook's trade dress and intellectual property. In February 2007, StudiVZ launched a site for high school students (www.schuelervz.net) and the now primarily English-language site, www.meinvz.net, which, like Facebook, is open to all adults with a valid e-mail address. These sites retained Facebook's look and feel, but once again shifted the color palette, to orange in the case of meinvz.net and pink for shuelervz.net, further increasing the likelihood that consumers would mistake the blue Facebook site as but one in a related web of variegated social networking sites.

In January 2007, StudiVZ was acquired by Defendants Holtzbrinck Networks GmbH and Holtzbrinck Ventures GmbH (the "Holtzbrinck Defendants"), who have knowingly continued to oversee, contribute to, and indeed expand StudiVZ's infringing activities.

Since its founding, the StudiVZ websites operated by Defendants have entered into thousands of commercial contracts with California users. Avalos Decl. ¶ 30. They have also updated, revised, and reprogrammed the sites' source code (operating code) in order to interact with and cater to thousands of American users. *Id*. ¶¶ 39-41. Across the United States, StudiVZ's contracts likely number in the tens of thousands.

**C.    Defendants Contractually Submit to the Venue and Jurisdiction of the Court**

Only registered users are permitted to access the Facebook service. In order to register, users must agree to Facebook's Terms of Use. Under the Terms of Use, registrants contract that they "understand that the [Facebook] Web site is available for your personal, non-commercial use only." Compl. ¶ 23. Registrants are further required to acknowledge their understanding that:

> All content on Web site, including but not limited to design, text, graphics, other files, and their selection and arrangement (the "Content") are the proprietary property of Thefacebook or its licensors. . . . All trademarks, logos, trade dress and service marks on the Web site are either trademarks or registered trademarks of Thefacebook or its licensors and may not be copied, imitated, or used, in whole or in part,                with the prior written

permission of Thefacebook.

*Id.* ¶ 24. By assenting to Facebook's Terms of Use, Facebook users also "consent to, and waive all defenses of lack of personal jurisdiction and forum non conveniens with respect to, venue and jurisdiction in the state and federal courts of California." *Id.* ¶ 25.

Defendants' founders have publicly admitted to accessing Facebook for the purpose of developing a competing social networking service. Mayer-Wegelin Decl. ¶ 5. In order to access Facebook, Defendants were required to agree to the previous provisions. Additionally, Defendants have conceded that a number of StudiVZ employees are Facebook users and access Facebook for "commercial purposes" for their jobs at StudiVZ.

### D. Facebook Files Suit Against Defendants

On July 9, 2008, Facebook sent its third cease and desist letter to StudiVZ. Avalos Decl., Ex. 7. The letter notified StudiVZ that it was infringing on Facebook's intellectual property and other rights under U.S. law. *Id.* On July 18, 2008, after a series of communications between the parties failed to result in an amicable resolution, Facebook filed the instant lawsuit.

### E. Facebook's First Set of Requests for Production of Documents

In the weeks following the filing of this complaint, counsel for Defendants repeatedly stated that they intended to move for lack of personal jurisdiction. Avalos Decl. ¶ 14. On October 9, 2008, the parties engaged in the Rule 26 conference, officially beginning this case's discovery period. *Id.* ¶ 15. Although Facebook could have propounded discovery on merits-based issues since no jurisdictional motion had yet been filed, it instead propounded discovery requests relating solely to personal jurisdiction. For each of the three defendants, these requests consisted of thirty (30) Requests for Production and twenty-three (23) Special Interrogatories. Requests that could arguably go to the merits of this action, such as those relating to damages or instances of confusion, were omitted.[1] One week later, Defendants filed their Motions to

---

[1] Discovery requests relating to instances of confusion between StudiVZ and Facebook were left out of the first round of discovery in the good faith attempt to advance discovery and this litigation. Although such requests arguably go to the merits of this action, they might also relate to personal jurisdiction, as might be the case if Defendants had received instances of confusion from users residing in the United States. Facebook does not concede that such discovery is purely merits-based and hereby reserves the right to propound personal jurisdiction discovery requests relating to consumer confusion.

Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens*.

Defendants subsequently advised Facebook that they objected to any and all discovery requests that did not go to material issues in dispute raised by Defendants' Motions to Dismiss. *Id*. ¶ 18. Defendants refused to properly meet and confer on this point and refused even to identify which discovery requests they felt ran afoul of this standard. *Id*.

On October 31, 2008, Defendants moved this Court for a Protective Order seeking first to stay all discovery not relating to "disputed material issues raised by the Motions to Dismiss" and, second, precluding Facebook from using the discovery it obtains in this action in the pending German action between Facebook and StudiVZ.

On November 17, 2008, while their Motion for Protective Order was pending, Defendants responded to Facebook's First Set of Discovery Requests with uniform, blanket objections. Avalos Decl. ¶ 20. With respect to some of the discovery requests, Defendants stated that they would agree to respond following resolution of their Motion for Protective Order. *Id*. ¶ 30.

On December 16, 2008, this Court held a hearing on Defendants' Motion for Protective Order. During the course of the hearing, Defendants' counsel withdrew its request to stay discovery, stating that Facebook had "misunderstood" the scope of Defendants' motion. Importantly, Defendants' conceded that Facebook is entitled to discovery that goes to "intertwined" issues of personal jurisdiction and the merits of the case. Avalos Decl., Ex. 14. Facebook, relying in good faith on this representation and others made by Defendants' counsel during the meet and confer process that preceded the hearing, *see* Section F.1, *infra*, agreed that the parties had made progress and resolved many of the outstanding discovery disputes. *Id*.

Defendants' counsel soon reneged on the concessions made at the December 16 hearing and those made during the meet and confer process. *Id*. Two days after the hearing, Defendants produced a limited number of documents but did not serve responses to Facebook's interrogatories. Avalos Decl. ¶ 28. The production from Defendant StudiVZ consisted of only 198 pages made up mostly of one contract with a California software company. The production contained no emails, letters, or communications of any kind, no programming code, no documents relating to the history, development, or implementation of the StudiVZ websites and

no documents relating to any accessing of the Facebook website or service, and none of the thousands of contracts it has entered into with its California and American users. *Id.* The production from the Holtzbrinck Defendants consisted all of nine, heavily redacted pages from the Stock Purchase Agreement between StudiVZ and the Holtzbrinck defendants. On January 9, 2009, StudiVZ supplemented its document production, but this production was similarly devoid of documents relating to the development of StudiVZ or the accessing of Facebook. *Id.*

**F.** **The Parties' Meet and Confer Efforts**

**1.** **The November 26 Meet and Confer**

The first proper meet and confer between the parties regarding Facebook's First Set of Discovery Requests took place telephonically on November 26, 2008. *Id.* ¶ 21. The parties appeared to make some headway in settling their discovery disputes. *Id.* During the session, Defendants' counsel stated that Defendants still felt that discovery responses relating to the accessing of Facebook and the subsequent development of StudiVZ went only to the merits of this action and would thus not be produced. *Id.* ¶ 24. Notably, Defendants' lead counsel, Stephen S. Smith, went on to state that it was possible that StudiVZ might stipulate to having "done what Facebook claims they did." *Id.* In other words, and as Mr. Smith has attempted to clarify in a later conference, StudiVZ might stipulate to having accessed Facebook's site in the course and conduct of StudiVZ's business. *Id.* Mr. Smith stated that StudiVZ possessed evidence relating to its repeated accessing of Facebook's site. *Id.* He vacillated between, on the one hand, agreeing that such evidence would be produced and, on the other hand, arguing that the production would be withheld unless Facebook agreed, sight unseen, to be satisfied with whatever StudiVZ chose to produce. *Id.* Facebook's counsel refused to waive its right to compel future discovery and repeatedly stated that under the *Calder* effects test, any evidence that might bear on StudiVZ's unlawful accessing of Facebook servers in California and the use of Facebook intellectual property in the development of the StudiVZ websites was relevant to personal jurisdiction. *Id.* Mr. Smith agreed to "think about" the outstanding disputes. *Id.*

**2.** **Subsequent Meet and Confers**

The parties held a follow-up meet and confer on December 23, 2008 and then again on

December 30. *Id.* ¶ 29. Mr. Smith was on holiday vacation and unavailable for these conferences. *Id.* His partner, William Walker, was generally unable to offer any substantive discussion on Defendants' discovery responses and merely delayed the process until Mr. Smith returned on January 6, 2009.

On December 24, Defendants supplemented their Interrogatory Responses. The supplemental responses once again failed to respond to various key interrogatories and contained no information regarding the accessing of Facebook or the development of StudiVZ. Among other objections—and despite this Court's unequivocal denial of Defendants' Motion for Protective Order—Defendants continued to object to Facebook's discovery requests "on the grounds that Facebook seeks the right to use evidence obtained in this action in the action pending between Facebook and StudiVZ in Germany." *Id.* ¶ 19. Indeed, this objection was placed prominently at the top of StudiVZ's General Objections.

### 3. The January 6, 2009 Meet and Confer

The parties held another meet and confer session on January 6, 2009, for which Mr. Smith was able to participate. The meet and confer touched on several outstanding discovery issues, including Facebook's interrogatories, document requests and the depositions of two "personal jurisdiction" witnesses that StudiVZ had agreed to produce in Germany. Although there were several outstanding disputes between the parties, the major theme running through all of them was the proper scope of "personal jurisdiction discovery." While paying lip service to the fact that they still believed that Facebook was entitled to some personal jurisdiction discovery that was intertwined with merits issues, Defendants effectively objected to any discovery that also went to the merits of this case. Although Mr. Smith stated that he was in possession of 12 terabytes of documents, at least some of which he said were directly relevant to StudiVZ's accessing of Facebook's servers in conjunction with the development of the StudiVZ websites, he stated that such production would be withheld until an agreement was made as to the proper scope of personal jurisdiction discovery. *Id.* Specifically, Mr. Smith wanted an assurance that once one round of proper production went out, Facebook would waive its right to compel future production. *Id.* Facebook counsel suggested that Defendants produce whatever "access"

documents Defendants themselves felt were relevant to personal jurisdiction and the parties could reserve their respective rights to debate the proper scope of the intertwined jurisdictional discovery. *Id.* Defendants flatly rejected this offer. During the meet and confer Mr. Smith bluntly stated that his goal was to get his clients dismissed without producing any discovery. *Id.*

The parties also discussed the upcoming depositions of two "personal jurisdiction" witnesses that StudiVZ and the Holtzbrinck Defendants had agreed to produce. Facebook counsel expressed concern that, given that the parties were at a significant impasse with respect to the scope of personal jurisdiction discovery, the depositions would be an unnecessary waste of time, money and resources. *Id.* ¶ 33; *see also* Declaration of Thomas Gray In Support of Facebook's Motion to Compel Discovery Responses ("Gray Decl.") ¶ 2-3. Defendants' counsel stated that he would allow his witnesses to discuss StudiVZ's accessing of Facebook for "commercial purposes." *Id.* Facebook, once again taking Defendants' counsel at his word, expressed optimism that the depositions would go forward. *Id.* Counsel for Facebook sent an email memorializing the agreements reached during the meet and confer. *Id.* Defendants' counsel responded by claiming that he believed no such agreements had been reached during the previous days call. This was the first time he mentioned this to Facebook's counsel. *Id.*[2] Incredibly, despite his purported belief that no agreement had been reached, Defendants' counsel still boarded a plane to Germany. *Id.* Due to the lack of agreement regarding the scope of deposition testimony, Facebook was forced to cancel the depositions.

---

[2] Defendants have repeatedly violated the Court's rule instructing parties not to attach correspondence between counsel as evidentiary exhibits. In Facebook's attempt to stay true to the spirit of the local rule, relevant communications between counsel are quoted in the affidavits and declarations filed in support of this Motion to Compel, but are not attached.

III.    **ARGUMENT**

    A.    **Facebook Requires The Discovery It Seeks Sought In Order To Oppose Defendants' Motions to Dismiss.[3]**

        1.    **Discovery Related to the Creation, Design and Development of Defendants' Sites Directly Relates to the Personal Jurisdiction Issues.**

Facebook has asserted a number of claims related to Defendants' intentional copying of the Facebook site, including computer trespass claims under California Penal Code section 502(c) and the federal Computer Fraud and Abuse Act, as well as trade dress violations under the Lanham Act. *See* Compl. at 12:5 – 15:17.  These claims are based on StudiVZ's purposeful accessing of Facebook's site and to create a network of Facebook knockoffs. *Id.*

Under *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984), jurisdiction is established if a defendant (1) commits an intentional act; (2) expressly aimed at the forum state; and (3) causes harm that the defendant knows is likely to be suffered in the forum state.  Here, Facebook has brought suit in the Northern District of California, the forum in which it resides.  Defendant StudiVZ has admitted that it had knowledge as early as 2005 that Facebook resided in California. Avalos Decl., Ex. 9. Therefore, evidence related to Defendants' intentional acts aimed at Facebook's site and servers – in California - is directly relevant to the personal jurisdiction analysis.  Facebook is entitled to all evidence regarding how Defendants created, designed, implemented,  and updated their websites to make them look virtually identical to the Facebook site.  Under the  *Calder* effects test, evidence of even one intentional act expressly aimed at California that causes harm would be sufficient to establish personal jurisdiction over the Defendant for a claim arising out of that harm.  *See Columbia Pictures Television v. Krypton*, 106 F.3d 284, 289 (9th Cir. 1997) (rev'd on other grounds, 523 U.S. 340, 118 S.Ct. 1279 (1998)).

While the question of whether Defendants improperly accessed Facebook's site, servers, and intellectual property goes to the merits, it is significantly intertwined with the personal jurisdiction analysis.  *See Licciardello v. Lovelady*, 2008 U.S. App. LEXIS 21376, *20, Case No.

---

[3] As more fully set forth in Facebook's Motion to Enlarge Time filed on January 23, 2009 before Judge Fogel, Defendants' reneged on their agreement to give Facebook more time and forced Facebook to file its opposition papers in two days.  Facebook did so, but has requested additional time to conduct the discovery at issue in Facebook's motion to compel and to file supplemental opposition papers.

07-14086 (11th Cir. October 10, 2008) (holding that the out-of-state Defendant's unauthorized use of the plaintiff's trademark and misappropriation of his name and reputation for commercial gain satisfied the *Calder* effects test); *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321-22 (9th Cir.1998) (affirming the exercise of jurisdiction in a trademark infringement action over a nonresident defendant whose sole contact with the forum was his posting of plaintiff's trademarks on his internet website); *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1248-49 (10th Cir. 2000) (holding that out-of-state defendant's continued transmission of email over plaintiff's servers caused injury to plaintiff in its home state); *Peridyne Tech. Solutions, LLC v. Matheson Fast Freight, Inc.,* 117 F. Supp. 2d 1366, 1371-73 (N.D. Ga. 2000) (exercising jurisdiction over non-resident defendants who accessed plaintiff's computer system over the Internet in furtherance of their tortious activity); *Flowserve Corp. v. Midwest Pipe Repair,* 2006 U.S. Dist. LEXIS 4315, *10, Case No. 3:05-cv-1357-N (N.D. Tex. 2006) (jurisdiction proper over a "hacker" who accessed plaintiff's servers, where the servers were related to plaintiff's claims). StudiVZ should be required to respond to all discovery to the design, development, and implementation of the StudiVZ sites, including its computer code.

Additionally, the Ninth Circuit has held that defendants' willful infringement of plaintiff's intellectual property, combined with defendants' knowledge that plaintiff had its principal place of business in California, satisfies the *Calder* effects test. *See Columbia Pictures Television v. Krypton*, 106 F.3d 284, 289 (9th Cir. 1997) (rev'd on other grounds, 523 U.S. 340, 118 S.Ct. 1279 (1998)). As *Columbia Pictures* noted, "[Plaintiff] alleged, and the district court found, that [defendant] willfully infringed copyrights owned by [plaintiff], which, as [defendant] knew, had its principal place of business in the Central District. This fact alone is sufficient to satisfy the 'purposeful availment' requirement." *Id.*, s*ee also Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1141 (N.D. Cal. 2005) (noting that under *Columbia Pictures*, "the Ninth Circuit essentially deemed the effects/purposeful direction test satisfied when the defendant is being sued for copyright infringement, the plaintiff brings suit in the forum where the plaintiff resides, and the defendant knows that the plaintiff resides there."). In light of the vast similarities between the Facebook site and the Defendants' site, Defendants should be required to

produce the computer code for the StudiVZ websites. Facebook should be allowed to determine whether StudiVZ had access to any portions of Facebook's code and if they copied it. If so, personal jurisdiction will be established.

Moreover, StudiVZ has admitted to having 11,013 California users. *Id.* at Exhibit 9, Interrogatory No. 5. StudiVZ entered into a commercial contract with each and every one of those users by way of the StudiVZ Terms of Use. StudiVZ altered its source code and websites so as to cater to users in California and across the country. *Id.* ¶¶ 39 - 41. It is well-established that "an interactive website through which the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet justifies a court's exercise of personal jurisdiction." *Life Alert Emergency Response, Inc. v. Lifealert Security, Inc.*, 2008 U.S. Dist. LEXIS 105851, at *9-*10, Case No. CV 08-3226 AHM (C.D. Cal. Dec. 29, 2008); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997), citing, *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (finding purposeful availment based on defendant's interactive website and contracts with 3000 individuals and seven Internet access providers in Pennsylvania allowing them to download electronic messages that formed the basis of the suit); *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328, 1332-33 (E.D. Mo. 1996) (cited in *Cybersell*, 130 F.3d at 418) . And yet, StudiVZ refuses to produce these contracts, and any information related to the changes to the StudiVZ sites, which so clearly would establish this Court's personal jurisdiction.

Finally, discover related to Defendants' accessing Facebook's site would establish how many of Defendants' employees are Facebook users, and have agreed to Facebook's Terms of Use. In addition, it would reveal how often they went on Facebook's site for "commercial purposes," whether they improperly used information from Facebook's site, and whether they did so at the direction of StudiVZ and/or Holtzbrinck. All of these issues relate directly to the personal jurisdiction issues.

StudiVZ has conceded that it is required to produce discovery for which the jurisdictional issues are intertwined with the merits. Yet, it has improperly tried to limit such discovery to materials that evidence the "copying" of the Facebook site. Avalos Decl. ¶ 34. They have

refused to produce any "access" or "development" documents unless Facebook agrees that StudiVZ must produce only those "access" or "development" documents that also contain evidence of some additional predicate act "related to Facebook's claims," such as "copying." *Id*. However, this limitation would make Defendants arbiters of actionable activity. An email from a StudiVZ programmer discussing the Facebook "poke" feature might not, on its own, be sufficient to establish personal jurisdiction over StudiVZ. However, in the context of a series of emails evidencing the accessing of Facebook and written at a time when the "poke"/"grusheln" feature was being added into the StudiVZ source code, such an email would be highly material to jurisdiction. Facebook should not have to settle for only "smoking gun" documents, if any, in which StudiVZ explicitly describes copying Facebook's intellectual property. [4] This is not the only evidence that would support jurisdiction over Facebook's causes of action.

### B. It Is An Abuse of Discretion To Refuse Discovery Relevant To Personal Jurisdiction Where Jurisdiction Has Been Challenged

It is an abuse of discretion to refuse discovery regarding personal jurisdiction where jurisdiction has been the subject of an initial challenge by way of motion to dismiss. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). A party may obtain discovery regarding any matter that is (1) "not privileged" and (2) "relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). The scope of discovery under the Federal Rules is extremely broad. A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The question of relevance should be construed "liberally and with common sense" and discovery should be allowed unless the information sought has no conceivable bearing on the case. *Miller v. Pancucci*, 141 F.R.D 292, 296 (C.D. Cal. 1992). Because the right is so broad, a party that refuses to comply with discovery requests must "carry a heavy burden of showing why discovery

---

[4] Obviously, such evidence would also go far in proving Facebook's claims themselves. But Facebook is entitled to discovery even if it also touches on the merits of the case. *See Lofton v. Bank of America Corp.*, 2008 U.S. Dist. LEXIS 41005, *4-*5, Case No. C 07-05892 SI (N.D. Cal. May 12, 2008) (Illston, J.) (holding that plaintiff was entitled to any merits discovery that "may inform" its opposition to defendant's jurisdictional challenge). In this case, Defendants conceded this fact at the December 16, 2008 hearing. Avalos Decl. ¶ 27.

was denied." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**C.** **Defendants Are Improperly Withholding Evidence Relating To Their Accessing of the Facebook Site and Intellectual Property and the Subsequent Development of the StudiVZ Websites – Interrogatories 10, 15, 16; Requests For Production 14, 16, 23, 25, 27, 28, 29**

**SPECIAL INTERROGATORY NO. 10:** [5]

IDENTIFY occurrences when YOU AND/OR ANY PERSON on YOUR behalf, including without limitation, Ehssan Dariani and Dennis Bemmann, accessed the website, www.facebook.com OR www.thefacebook.com, AND the purposes of each access, including without limitation, ANY COMMUNICATIONS that RELATE TO ANY of the occurrences AND IDENTIFY the USER OF FACEBOOK OR registrant accounts OR email addresses used to access the facebook.com website.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**
StudiVZ hereby incorporates by reference the general objections set forth above. StudiVZ further objects to this request on the grounds that a plaintiff is not entitled to take discovery on personal jurisdiction as a matter of right. In order to do so, Facebook must either make a *prima facie* showing of jurisdiction over StudiVZ, or it must identify material jurisdictional issues that are in dispute. Facebook has done neither.[6] StudiVZ further objects to this request on the grounds that the definition of "YOU" is grossly overbroad. StudiVZ further objects to this request on the grounds that it is unlimited as to time, and is so overbroad as to be unduly burdensome and harassing. StudiVZ further objects to this request on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. StudiVZ further objects to this interrogatory on the grounds that it is not limited to access that occurred within the authorized course and scope of StudiVZ's business.

This Interrogatory is the first in a series of disputed "access" and "development" requests that Defendants argue do not touch on Facebook's jurisdictional arguments. The obvious connection between "access" and "development" evidence and Facebook's jurisdictional case is described above. *See* Section III.A.1, *supra*. During the November 26, 2008 meet and confer, counsel for Defendants stated that he was "willing to compromise" with respect to Interrogatory No. 10. *See* Avalos Decl. 22. Counsel stated that he was willing to identify persons associated with StudiVZ, their accessing of the Facebook website within the course and scope of their employment and the Facebook user accounts they used to access the Facebook site. Avalos Decl. ¶ 21. Based on this representation, Facebook stated at the December 16, 2008 hearing that the

---

[5] The discovery requests served on each of the three named defendants were substantively identical. Unless otherwise noted, quoted discovery request excerpts are taken from those propounded to StudiVZ, but this should not be read to limit this Motion to the StudiVZ defendant.
[6] Each of Defendants' individual discovery responses reiterate identical objections before making specific reference to the individual request. Given the number of disputed discovery requests, subsequent citations to Defendants' responses quote only that language relevant to the material disputes between the parties.

parties had reached agreement with respect to many outstanding discovery issues. *Id*. However,

Defendants soon exposed their "compromises" as bad faith attempts to forestall discovery

production and to waste Facebook's time and resources. The above-quoted Supplemental

Response served on December 24, 2008 contained none of this responsive information,

unavailable from any source other than Defendants.

**SPECIAL INTERROGATORY NO. 15:**

> IDENTIFY ALL PERSONS responsible in any manner for the design, programming and maintenance of the www.studivz.net website, including without limitation the location of the PERSON, job descriptions, authorities, dates in these positions, duties AND responsibilities.

**SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

> StudiVZ further objects to this interrogatory on the grounds that it is unlimited as to time, and is so overbroad as to be unduly burdensome and harassing. StudiVZ further objects to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding the foregoing objections, and pursuant to agreements reached during the parties' "meet and confer," StudiVZ responds as follows: StudiVZ is concurrently producing to Facebook two partial organizational charts, showing the employees who were heads of the company departments in charge of design, programming, operations and marketing as of July 18, 2008 and January 1, 2009. Those charts are attached hereto and incorporated herein as Exhibit "A."[7]

At no time during the parties' meet and confer efforts did counsel for Facebook agree that

a "partial organizational chart, showing the employees who were heads of the company

departments in charge of design, programming, operations and marketing" at the time that

Facebook filed this lawsuit would satisfy Interrogatories Nos. 15 and 16. *See* Avalos Decl. at ¶

23. These charts offer no information regarding persons responsible for the original design of the

StudiVZ.net websites. *Id*. The individuals running a certain StudiVZ department in the summer

of 2008 would likely not have been employed by StudiVZ at the time that StudiVZ was being

developed and would have no knowledge of the details regarding that development. Given the

nature of Facebook's jurisdictional arguments, the identity of persons responsible for designing

StudiVZ is highly relevant and material. These individuals would have knowledge regarding the

accessing of the Facebook website, the extent to which StudiVZ was modeled after Facebook and

---

[7] Special Interrogatory No. 16 asks for identical information but with respect to the international and umbrella StudiVZ websites. Defendants' response to No. 16 was identical to that given for No. 15.

whether any Facebook programming code was stolen.  Nor would the identification of such individuals pose an undue burden on StudiVZ.  Indeed, at the November 26 meet and confer Mr. Smith agreed to provide Facebook with a list responsive to this interrogatory.  Avalos Decl. ¶ 28. The only purpose in not providing this information is to hinder or delay Facebook's ability to notice depositions for the proper individuals.  Given the high materiality and relevance of this Interrogatory to Facebook's jurisdictional arguments and the relatively low burden it would place on Defendants, Defendants should be compelled to produce this information as soon as possible.

### FACEBOOK REQUEST FOR PRODUCTION NO. 14:

ALL DOCUMENTS RELATED TO instances when YOU accessed [the] FACEBOOK website, www.facebook.com OR www.thefacebook.com.

### SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

StudiVZ further objects to this request on the grounds that the definition of "YOU" is grossly overbroad.  StudiVZ further objects to this request on the grounds that it is so overbroad as to be unduly burdensome and harassing.  StudiVZ further objects to this request on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Despite numerous conferences with counsel to meet and confer in an attempt to narrow this request, the parties have been unable to come to an agreement on the appropriate scope of this request.

During the November 26 meet and confer, counsel for Defendants once stated that it was likely "going to be undisputed" that there were some employees of StudiVZ who accessed Facebook and did "what Facebook claimed they did."  *See* Avalos Decl. at ¶ 21.  At the January 6, 2009 meet and confer, Defendants' counsel sought to clarify the "context" in which this statement had been made, and stated that he was referring to access of Facebook in the authorized course of StudiVZ employment.  *Id*.  During the meet and confer, Defendants' were concerned that the wording of this request might require production of documents relating to any accessing of Facebook, including innocuous personal use by employees.  Facebook's counsel made clear that the documents sought under this request related to the development of StudiVZ, and any accesses made to copy Facebook's site or other intellectual property.  This material is highly relevant to Facebook's jurisdictional claims and, with the limitations offered by Facebook, would not pose an undue burden on Defendants.  Any burden is outweighed by the material nature of these documents.  Defendants still refuse to produce any documents.

**FACEBOOK REQUEST FOR PRODUCTION NO. 16:**

ALL DOCUMENTS RELATED TO the services provided by www.studivz.net, www.meinvz.net, www.studiqg.fr, www.studiln.it, www.estudiln.net, www.studentix.pl, AND www.schuelervz.net to USERS OF STUDIVZ, including how they are provided.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

StudiVZ hereby incorporates by reference the general objections set forth above. StudiVZ further objects to this request on the grounds that a plaintiff is not entitled to take discovery as a matter of right. In order to do so, Facebook must either make a *prima facie* showing of jurisdiction over StudiVZ, or it must identify material jurisdictional issues that are in dispute. Facebook has done neither. StudiVZ further objects to this request on the grounds that it is unlimited as to time, and is so overbroad as to be unduly burdensome and harassing. StudiVZ further objects to this request on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

At the November 26 meet and confer, counsel for Facebook agreed to limit the request. Avalos Decl. ¶ 24. At subsequent meet and confer sessions, Facebook counsel clarified that the request sought documents relating to the design, development and implementation of the services provided by the StudiVZ websites. *Id.* Defendants' counsel has ignored Facebook's limitation and maintains that the request was "irredeemably broad." *Id.*

In relevant part, Federal Rule 26(b)(2)(C) states that a court must "limit the . . . extent of discovery otherwise allowed by these rules or by local rule if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, consider the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." A balance of these factors militates in favor of Facebook's right to the documents it seeks. The first two factors weigh in Facebook's favor. Facebook has not previously had opportunity to seek this discovery, cannot obtain the discovery from another, less burdensome or less expensive source, and has not propounded unreasonably cumulative or duplicative requests. The third factor also weighs strongly in Facebook's favor. Facebook should be granted discovery relating to the development and implementation of the StudiVZ websites in order to fully and adequately oppose Defendants'

1  pending motions to dismiss.  Evidence relating to StudiVZ's development and subsequent

2  implementation is central to jurisdictional and forum issues.  StudiVZ copied not only Facebook's

3  look and feel, but also its features and even some of the names for those features.  It is likely that

4  a production relating to the design and implementation of the StudiVZ websites will reveal

5  communications or other documents demonstrating that StudiVZ purposefully copied Facebook's

6  look, feel and features.  In addition, such discovery may reveal other connections between

7  Defendants and the United States, further confirming that this is a proper forum.  Any burden felt

8  by Defendants is outweighed by the high materiality of these documents to Facebook's

9  jurisdictional and forum arguments.

10  **FACEBOOK REQUEST FOR PRODUCTION NO. 23:**

11  ALL versions of COMPUTER CODE YOU wrote, programmed OR helped develop that
    RELATES TO www.studivz.net, www.meinvz.net, www.studiqg.fr, www.studiln.it,
12  www.estudiln.net, www.studentix.pl, AND www.schuelervz.net.

13  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

14  StudiVZ hereby incorporates by reference the general objections set forth above. StudiVZ
    further objects to this request on the grounds that a plaintiff is not entitled to take
15  discovery on personal jurisdiction as a matter of right.  In order to do so, Facebook must
    either make a *prima facie* showing of jurisdiction over StudiVZ, or it must identify
16  material jurisdictional issues that are in dispute.  Facebook has done neither.  StudiVZ
    further objects to this request on the grounds that the definition of "YOU" is grossly
17  overbroad.  StudiVZ further objects to this request on the grounds that it is unlimited as to
    time, and is so overbroad as to be unduly burdensome and harassing.  StudiVZ further
18  objects to this request on the grounds that it seeks information that is not relevant nor
    reasonably calculated to lead to the discovery of admissible evidence.
19
    This is yet another reason Defendants should be required to produce their computer code.
20
21  If, as appears likely, StudiVZ used Facebook source code in the development of the StudiVZ

22  sites, then production of StudiVZ's code is the only means by which to uncover StudiVZ's theft.

23  Given the protective order soon to be entered into by the parties, there is no threat of public

24  disclosure of StudiVZ's code.  *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 686 (N.D. Cal.

25  2006) (finding that "[t]he selective disclosure of protectable trade secrets is not per se

26  unreasonable and oppressive, when appropriate [protective] measures are imposed") (*citing Heat*

27  *& Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1025 (Fed. Cir. 1986)).  Other than the

28  bare assertion that StudiVZ's code is not relevant to jurisdiction, Defendants' counsel has

maintained simply that StudiVZ does not wish to produce its source code.  This desire falls far

short of the "heavy burden" of showing why production of the code should be denied.  *See*

*Blankenship*, 519 F.2d at 429 (9th Cir. 1975).  StudiVZ's computer code is highly relevant to

Facebook's jurisdictional arguments and should be produced.  Also, StudiVZ's own websites

demonstrate that the code is altered each and every time that a user from a new American

university seeks to join one of the StudiVZ sites.  Avalos Decl. ¶¶ 39-41.

### FACEBOOK REQUEST FOR PRODUCTION NO. 25:

ALL COMMUNICATIONS that RELATE TO FACEBOOK, its website, OR the servers
it uses, used, accesses OR accessed.

### SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

StudiVZ hereby incorporates by reference the general objections set forth above.
StudiVZ further objects to this request on the grounds that a plaintiff is not entitled
to take discovery as a matter of right.  In order to do so, Facebook must either
make a *prima facie* showing of jurisdiction over StudiVZ, or it must identify material
jurisdictional issues that are in dispute.  Facebook has done neither.  StudiVZ further
objects to this request on the grounds that it is unlimited as to time, and is so overbroad as
to be unduly burdensome and harassing.  StudiVZ further objects to this request on the
grounds that it seeks information that is not relevant nor reasonably calculated to lead to
the discovery of admissible evidence.

Defendants produced no documents responsive to this discovery request.  During the

November 26 meet and confer, counsel for StudiVZ stated that Defendants' actual objection to

this request centered on the fact that a search for responsive documents would be too expensive.

*See* Avalos Decl. at ¶ 25.  It is well-established that Defendants bear the burden of cost in

producing documents.  *See*, *e.g.*, *IO Group, Inc. v. Veoh Networks, Inc.*, 2007 U.S. Dist. LEXIS

3163, *19, Case No. 2:06-00114 (N.D. Cal. 2007) (finding that the responding party must bear

the cost of production unless an undue burden is demonstrated);  *see also*, *Compaq Computer

Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 339 (N.D. Cal. 1995) (observing that

"party witnesses must generally bear the burden of discovery costs").  Further, while the Federal

Rules provide that a party may object to production because of the undue burden or expense, the

party refusing discovery has the burden to show the basis for its objections. Fed. R. Civ. P. 26(c)

(a party may move for a protective order in order to protect a party from "annoyance,

embarrassment, oppression, or undue burden or expense"); *see also Cable & Computer*

*Technology, Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997) ("The party who resists discovery has the burden to show that discovery should not be allowed") Defendants have completely failed to carry their burden.

In the course of half a dozen meet and confer sessions, Defendants' counsel has not offered specifics as to why a targeted search for documents responsive to this request would be unduly expensive. Despite the fact that Defendants bear the burden for their production costs, at the November 26 meet and confer Facebook's counsel stated that if Defendants were able to provide adequate support for their contention that a search for documents responsive to Facebook's Request for Production No. 26 would be unduly expensive, Facebook might agree to cover some of the cost of that production. Avalos Decl. 25. At the January 6 meet and confer, Facebook offered to limit this request to a select group of individuals responsible for the development of the StudiVZ site. *Id.* Defendants still refuse to produce such documents.

### FACEBOOK REQUEST FOR PRODUCTION NO. 28:

ALL DOCUMENTS related to any account YOU created to access any FACEBOOK website, including thefacebook.com AND fakebook.com.

### SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 28:

StudiVZ hereby incorporates by reference the general objections set forth above. StudiVZ further objects to this request on the grounds that a plaintiff is not entitled to take discovery as a matter of right. In order to do so, Facebook must either make a *prima facie* showing of jurisdiction over StudiVZ, or it must identify material jurisdictional issues that are in dispute. Facebook has done neither. StudiVZ further objects to this request on the grounds that the definition of "YOU" is grossly overbroad. StudiVZ further objects to this request on the grounds that it is unlimited as to time, and is so overbroad as to be unduly burdensome and harassing. StudiVZ further objects to this request on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

At the November 26 meet and confer, Defendants' counsel stated Defendants would produce documents responsive to this request. Avalos Decl. ¶ 21. Later, counsel stated that at the very least Facebook would receive a list of the names on the Facebook accounts used by Defendants to access Facebook. *Id.* At the January 6 meet and confer, Facebook once again reiterated that this request did not target Defendant Facebook accounts that had been used for personal use. Nevertheless, Defendants' counsel insisted that unless Facebook agreed to limit the request to accounts that had specifically been used to "copy" Facebook information, the request

did not touch on personal jurisdiction.  As explained above, *see* Section III.A.1, *supra*, evidence

that does not explicitly relate to "copying" might nevertheless be relevant to Facebook's *Calder*

analysis and establish jurisdiction under Facebook's various causes of action.  In addition, it is

likely to provide evidence that Defendants and their employees agreed to the jurisdiction and

forum selection clauses set forth in Facebook's Terms of Use.  Any burden felt by Defendants in

producing these documents is outweighed by the fact that the discovery is not available from any

other source and its high relevance to Facebook's ability to survive Defendants' jurisdictional

challenge.

### FACEBOOK REQUEST FOR PRODUCTION NO. 29:

ALL COMMUNICATIONS OR DOCUMENTS concerning or that RELATE TO the use
of any server, including proxy server, to access FACEBOOK's server(s) OR website(s).

### SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 29:

StudiVZ hereby incorporates by reference the general objections set forth above.
StudiVZ further objects to this request on the grounds that a plaintiff is not entitled
to take discovery as a matter of right.  In order to do so, Facebook must either
make a *prima facie* showing of jurisdiction over StudiVZ, or it must identify material
jurisdictional issues that are in dispute.  Facebook has done neither.  StudiVZ further
objects to this request on the grounds that it is unlimited as time, and is so overbroad as to
be unduly burdensome and harassing.  StudiVZ further objects to this request on the
grounds that it seeks information that is not relevant nor reasonably calculated to lead to
the discovery of admissible evidence.

Similar to Request No. 28, Defendants' counsel has stated that Facebook would receive

documents responsive to this request, and that they would most likely already be encompassed

within the documents responsive to request No. 28.  Avalos Decl. ¶ 24-25.  Counsel has also

stated that information relating to specific IP and server addresses would be produced if obtaining

such information was not "horribly hard."  *Id*.  Defendants now argue that this information is not

related to the merits of this action. Defendants are flatly wrong.  Evidence relating to Defendants'

access of Facebook's servers or website relates directly to Facebook's *Calder* effects test and is

thus highly relevant to Facebook's jurisdictional defense.  The burden to Defendants from

producing documents within the narrow band of this request would be minimal and certainly

outweighed by the benefit to Facebook.

### D. Defendants Improperly Seek To Withhold Production of So-Called "Adhesion Contracts" – Interrogatories 1, 2, 9; RFPs 1, 13

**SPECIAL INTERROGATORY NO. 1:**

Describe in detail AND IDENTIFY ALL contacts AND COMMUNICATIONS YOU have had with PERSONS (including without limitation, USERS OF STUDIVZ AND USERS OF FACEBOOK) currently OR formerly residing OR domiciled in California. In doing so, IDENTIFY the PERSONS contacted, the location AND time where any such contact OR event occurred, AND the subject matter of the contact OR COMMUNICATION.

**SPECIAL INTERROGATORY NO. 2:**

Describe in detail AND IDENTIFY ALL contacts AND COMMUNICATIONS YOU have had with businesses (including without limitation, Internet search engines providers such as Google Inc. AND Yahoo! Inc., server providers, advertising agencies, advertisers, Internet service providers, computer equipment providers, YOUR licensors AND licensees) currently OR formerly located, licensed, based, OR incorporated in California. In doing so, IDENTIFY the PERSONS contacted, the location AND time where any such contact OR event occurred, AND the subject matter of the contact OR COMMUNICATION.

**SPECIAL INTERROGATORY NO. 9:**

IDENTIFY ALL contracts AND agreements involving YOU in which California law governs AND/OR in which the parties to the contract OR agreement agreed as to the jurisdiction of California state courts AND/OR United States federal courts located in California.

**Relevant Response to The Above Interrogatories**

"To StudiVZ's knowledge, after engaging in due diligence to determine the answer, the only other contracts that StudiVZ had with any possible residents of California that were in effect as of July 18, 2008 were adhesion contracts, such as form license agreements that one must accept when purchasing software or when software is included with purchased hardware."

**REQUEST FOR PRODUCTION NO. 1:**

ALL DOCUMENTS that RELATE TO ANY contracts OR agreements between YOU AND ANY business licensed, located, based, OR incorporated in California OR ANY PERSON currently OR formerly residing OR domiciled in California.

**REQUEST FOR PRODUCTION NO. 13**

ALL contracts involving YOU in which California law governs.

**Relevant Response to the Above Requests for Production**

"Networks will agree to produce non-confidential portions, if any, of the negotiated

contracts (i.e. not adhesion contracts) to which it was a party"

Defendants' unilateral exclusion of "adhesion" contracts is improper. Contacts, communications or contracts with California would be highly relevant to Facebook's ability to survive Defendants' Motions to Dismiss and are reasonably calculated to lead to the discovery of admissible evidence, especially if such contracts happen to be the Facebook Terms of Use presumably agreed to by whichever StudiVZ agents accessed Facebook's website or the thousands of commercial contracts StudiVZ has entered into with American users. Requiring Defendants to fully respond to interrogatories regarding these contracts and to then produce the contracts—which are all already found in electronic format—would not be unduly burdensome nor is production of such information available from another source.

The production of such so-called adhesion contracts is likely to lead to the discovery of admissible evidence. Indeed, courts routinely look to such contracts in determining personal jurisdiction and forum issues. *See*, *e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-95 (1991) (upholding forum selection clause printed on cruise ship ticket); *Securities and Exchange Comm'n v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) (observing that "consent to jurisdiction sometimes occurs unwillingly or even inadvertently," including through a "variety of legal arrangements" such as "a forum selection clause in a contract"); *Hunt v. Superior of San Diego County*, 81 Cal. App. 4th 901, 908 (2000) ("Although the forum selection clause here is contained in an adhesion contract, that clause in an adhesion contract is enforceable even though the defendant did not actually read it."). Defendants must be required to produce the contracts responsive to Facebook's discovery requests, including any that may have been entered into in an online context. *See*, *e.g.*, *Cairo, Inc. v. Crossmedia Services, Inc.*, 2005 U.S. Dist. LEXIS 8450, *12-14, Case No. C 04-04825 JW (N.D. Cal. Apr. 1, 2005) (enforcing adhesive forum selection clause even when target website was accessed by automated program). These requests are not duplicative of previous discovery, nor is the discovery sought available from any other sources. Any burden to Defendants in producing such contracts, more than likely already in electronic format, is outweighed by the benefit to Facebook.

**E.** **Defendants Should Be Compelled To Testify About Accessing Facebook's Site And Servers As Well As The Design, Development And Implementation Of The StudiVZ Websites.**

Prior to the scheduled depositions of Messrs. Brehm and Weber, Defendants' counsel refused to agree to allow Defendants' witnesses to testify about Defendants' accessing of Facebook's website, servers and intellectual property. Because of Defendants' improper position, Facebook was forced to cancel the depositions and seek this Court's intervention on this issue.

As set forth extensively above, Defendants should be required to respond and produce all discovery related to the personal jurisdiction and forum issues. Defendants' access to and use of Facebook's site, servers, and intellectual property, as well as the design and development of Defendants' sites, bears directly on such issues. Accordingly, this Court should require that Defendants' witnesses testify fully and completely as to such issues and prohibit Defendants' counsel from instructing Defendants' witnesses from answering such questions.

**IV.** **CONCLUSION**

Accordingly, this Court should compel Defendants to produce documents and fully respond to Facebook's discovery requests and testify completely about accessing Facebook's site and the design and development of Defendants' sites..

Dated:  January 27, 2009                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                             /s/ Thomas J. Gray
                                             THOMAS J. GRAY
                                             Attorneys for Plaintiff
                                             FACEBOOK, INC.

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 27, 2009.

Dated: January 27, 2009          Respectfully submitted,

                                 /s/ Thomas J. Gray
                                 Thomas J. Gray