I. NEEL CHATTERJEE (State Bar No. 173985)
nchatterjee@orrick.com
JULIO C. AVALOS (STATE BAR NO. 255350)
javalos@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650-614-7400
Facsimile: 650-614-7401

THOMAS J. GRAY (STATE BAR NO. 191411)
tgray@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza
Suite 1600
Irvine, CA 92614-2558
Telephone: +1-949-567-6700
Facsimile: 949-567 6710

Attorneys for Plaintiff
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STUDIVZ LTD., HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH AND DOES 1-25,<br><br>Defendants. | Case No. 5:08-cv-03468 JF<br><br>**DECLARATION OF JULIO C. AVALOS IN SUPPORT OF FACEBOOK'S MOTION TO COMPEL STUDIVZ LTD., HOLTZBRINCK VENTURES GMBH AND HOLTZBRINCK NETWORKS GMBH TO FULLY RESPOND TO INTERROGATORIES AND TO PRODUCE DOCUMENTS AND THINGS PURSUANT TO CIVIL L.R. 7-1 AND 37-2**<br><br>Date: March 3, 2009<br>Time: 10:00 a.m.<br>Room: Courtroom 2, 5th Floor<br>Judge: Honorable Magistrate Judge Howard R. Lloyd,<br>for Discovery Purposes |

I, Julio C. Avalos, declare as follows:

1. I am an attorney with the law firm of Orrick, Herrington & Sutcliffe LLP, counsel for Plaintiff Facebook, Inc. I make this Declaration in support of Facebook's Motion to Compel StudiVZ Ltd., Holtzbrinck Ventures GmbH and Holtzbrinck Networks GmbH to Permit Inspection of Documents and Things Pursuant to Civil L.R. 7-1 and 37-2. I am an active member in good standing of the California State Bar. Except as set forth herein, I have personal knowledge of the facts stated herein and if called as a witness, could and would competently testify thereto.

2. The Facebook website and service was launched in February 2004 by Mark Zuckerberg while Mr. Zuckerberg was a student at Harvard University. Upon information and belief based on online sources, Facebook's growth in 2004 and subsequent years was unprecedented. (http://www.insidefacebook.com/2008/08/19/mapping-facebooks-growth-over-time/). Upon information and belief, by December 2004, Facebook had reached nearly 1 million active users. (http://www.facebook.com/press/info.php?timeline)

3. Upon information and belief, in June 2004, Facebook relocated to Palo Alto, California. (http://www.facebook.com/press/info.php?timeline)

4. Upon information and belief based on an article from Fortune magazine date November 28, 2005 and located online at http://money.cnn.com/magazines/fortune/fortune_archive/2005/11/28/8361945/index.htm, by the summer of 2005, Facebook had more than six million users. Currently, Facebook has over 150 million users.

5. Attached hereto as **Exhibit 1** is a true and correct copy of the International Herald Tribune Article, "Facebook and StudiVZ battle over Germany," dated August 7, 2008. The article is available at http://www.iht.com/articles/2008/08/07/technology/social.php. The article describes Mr. Bemmann as a "computer programmer" who "helped to design Internet routing equipment in Colorado and California."

6. Attached hereto as **Exhibit 2** is a true and correct copy of a screenshot of the webpage located at http://www.fccm.org/FCCM04.php. The webpage is an itinerary for a

technology conference held from April 20, 2004 through April 23, 2004 in Napa Valley, California. Mr. Bemmann is listed as one of the speakers.

7. Attached hereto as **Exhibit 3** is a true and correct copy of the publicly-available Facebook profile page for Dennis Bemmann found at http://www.facebook.com/home.php#/s.php?init=q&q=dennis%20bemmann&ref=ts&sid=71ea4bac9600b57fec1a2e9c5943c834.

8. Attached hereto as **Exhibit 4** is a true and correct copy of the webpage located at http://www.techcrunch.com/2008/11/11/nimbuzz-strikes-deal-with-studivz-germanys-largest-social-network/ The article, dated November 11, 2008 discusses, among other things, the implementation of a new chat feature on the StudiVZ websites. The article also includes a screenshot of the StudiVZ chat feature at work.

9. On July 18, 2008, Facebook brought the instant suit against StudiVZ Ltd., Holtzbrinck Ventures GmbH and Holtzbrinck Networks GmbH for trade dress infringement, violation of the Computer Fraud and Abuse Act, violation of California Penal Code section 502(c), breach of contract and breach of the covenant of good faith and fair dealing. Facebook notified Defendants' local counsel via email that the lawsuit had been filed. Defendants' counsel responded by advising Facebook that StudiVZ had earlier in the day filed its own action for declaratory judgment in German civil court.

10. Facebook had sent its first cease and desist letter to StudiVZ on June 8, 2006. Attached hereto as **Exhibit 5** is a true and correct copy of that letter.

11. Facebook had sent its second cease and desist letter to StudiVZ on January 3, 2007. Attached hereto as **Exhibit 6** is a true and correct copy of that letter.

12. Facebook had sent its third cease and desist letter to StudiVZ on July 9, 2008. Attached hereto as **Exhibit 7** is a true and correct copy of that letter.

13. Attached hereto as **Exhibit 8** is a true and correct copy of screenshots depicting an exemplar Facebook profile page and an exemplar StudiVZ profile page.

14. On August 28, 2008, I had a telephonic conversation with Defendants' counsel, Stephen Smith. Mr. Smith confirmed that Defendants would challenge this Court's personal

DECLARATION OF JULIO C. AVALOS IN SUPPORT OF MOTION TO COMPEL DISCOVERY

jurisdiction over StudiVZ. On September 2, 2008, I, along with Neel Chatterjee, again spoke to Mr. Smith and he again confirmed that Defendants would move to dismiss for lack of personal jurisdiction.

15. On October 9, 2008, the parties held the obligatory Rule 26(f) conference via telephone. At the conference, Mr. Smith represented that Defendants agreed that Facebook was entitled to some discovery on the issue of personal jurisdiction. However, he stated that Defendants would not respond to any discovery requests that they felt reflected on the merits of this case.

16. On October 13, 2008, in response to an October 9 letter from my colleague Tina Naicker, Mr. Smith wrote that Facebook's list of discovery topics "includes issues that have nothing to do with personal jurisdiction" and that it was Defendants' position that "discovery into the merits of the case should be stayed pending the resolution of any motions to dismiss for lack of personal jurisdiction and/or *forum non conveniens*."

17. On October 14, 2008, Facebook propounded its First Set of Discovery Requests.

18. On October 27, 2008, counsel for the parties attempted to have a meet and confer to discuss outstanding discovery issues. With respect to the outstanding discovery requests, Mr. Smith refused to identify any specific discovery requests to which his clients objected as going to the merits of the case. Mr. Smith simply stated that his clients would not produce any discovery not related to personal jurisdiction. He refused to identify which discovery requests he felt were not related to personal jurisdiction. Mr. Smith confirmed to my colleague Warrington S. Parker that there were areas of discovery to which Defendants did not object, but refused to identify them.

19. On October 31, 2008, Defendants filed a Motion for Protective Order seeking to stay merits-based discovery and to prevent discovery produced in this matter from being used in any other litigation between the parties.

20. On November 17, 2008, while the Motion for Protective Order was still pending, Defendants responded to Facebook's First Set of Discovery Requests with uniform, blanket objections. With respect to some of the discovery requests, Defendants stated that they would

DECLARATION OF JULIO C. AVALOS IN SUPPORT OF MOTION TO COMPEL DISCOVERY

agree to respond following resolution of the pending Motion for Protective Order.

21. On November 26, 2008, parties' counsel conducted the first substantive meet and confer with respect to Facebook's discovery requests. The meet and confer lasted nearly two hours and the parties went through the discovery requests one-by-one. With respect to discovery requests aimed at evidence relating to StudiVZ's accessing and copying of the Facebook website, Mr. Smith stated that he was considering stipulating to the fact that StudiVZ had intentionally accessed the Facebook website and "done what you claim they did." He stated that he would agree to produce the names, Facebook user accounts and other information related to StudiVZ's accessing of Facebook. Specifically, Mr. Smith stated, that he was "willing to give accounts used in the scope of StudiVZ, not all employees who have a Facebook account."

22. During the conference, issues arose over several specific discovery requests. With respect to Facebook Interrogatory No. 10, Mr. Smith stated, that he was "willing to compromise." I'm willing to say that they did access Facebook within the course and scope of their employment and identify why."

23. Regarding Facebook Interrogatory No. 15, Mr. Smith first objected that it effectively covered every single StudiVZ employee. This, Mr. Smith said, "I don't intend to give you." Ms. Hurst requested that at the very least, StudiVZ first provide Facebook with an organizational chart so that the parties could better negotiate discovery limitations and possible depositions. Mr. Smith stated, "I will try to do that. I've gotten push back [from the client]." Ms. Hurst said, "We'll move to compel on this," and Mr. Smith responded, "I told you I'll push at the client." Defendants did ultimately produce an organizational chart, but the chart does not state which employees were responsible for the initial creation, development and implementation of the StudiVZ websites.

24. Regarding Facebook Request for Production No. 14, Ms. Hurst stated that the discovery sought related to the jurisdictional basis for Facebook's Computer Fraud and Abuse Act claim, its California Penal Code 502(c) claim and other jurisdictional factors. Mr. Smith stated, "My major problem is that I think this is where you cross from jurisdiction into merits. I think given the causes of action you've plead, you're entitled to know whether there are contacts

with California related to the claims that you have plead." Ms. Hurst stated that there was no way to sort out the merits from the jurisdictional issues. Mr. Smith then said, "I think it's going to be undisputed that those people that had user accounts and used them in connection with their employment did at least what you claim they did. We'll have a huge fight as to whether that violates the anti-hacking statute. It's going to be undisputed that there were some users who accessed Facebook." Ms. Hurst then said, "Just because you're willing to stipulate to it, doesn't mean that I don't want to conduct jurisdiction discovery on it. I can't examine witnesses without documents." Mr. Smith said, "Let me think about it." Regarding RFP 16, Mr. Smith stated, "16 is just horribly broad." Ms. Hurst said, "I agree with you. Let me think about it."

25. Regarding RFP 17, Ms. Hurst stated, "I want documents about forming a company." Mr. Smith responded, "I think if you limit it to anything related to Facebook, I can sell that." Ms. Hurst stated, "I would need to see that." Mr. Smith stated that there was a problem regarding the scope of electronic discovery. Ms. Hurst responded that it was just two people's documents. Mr. Smith stated that he would consider it. Regarding Request for Production No. 25, Defendants' counsel stated that production would be prohibitively expensive. Facebook stated that it might consider splitting the cost if StudiVZ explained why it was necessary.

26. On December 2, 2008, the parties engaged in a follow-up meet and confer.

27. On December 16, 2008, this Court held a hearing on Defendants' Motion for Protective Order. I attended the hearing along with my colleague Annette Hurst. At the hearing, Mr. Smith represented that he felt that Facebook had misunderstood the nature of StudiVZ's motion. Mr. Smith stated that Defendants did not disagree that Facebook was entitled to discovery that involved intertwined issues of personal jurisdiction and the merits of this case. When this Court asked Mr. Smith whether he wished to withdraw his request to stay discovery, Mr. Smith answered in the affirmative.

28. On December 18, 2008, Defendants produced a first round of documents but did not serve supplemental responses to Facebook's interrogatories. Defendant StudiVZ Ltd. produced 198 pages consisting mostly of one contract. Defendant Holtzbrinck Networks

produced a total of 9, heavily-redacted pages. The production contained no emails, letters, or communications of any kind. The production also contained no programming or source code. Despite Mr. Smith's November 26 representations regarding forthcoming evidence of StudiVZ's accessing and copying of Facebook's intellectual property, no such discovery was produced.

29. Following this production, the parties again met and conferred on December 23, 2008. Mr. Smith was unable to attend the conference and Defendants were represented by Mr. Smith's colleague, Bill Walker. Mr. Walker was only generally aware of the Defendants' positions on various outstanding discovery issues and stated that he would try to contact Mr. Smith (who was out on holiday vacation) prior to a follow-up meet and confer scheduled for December 30, 2008.

30. On December 24, 2008, Defendants served Supplemental Interrogatory Responses. The first General Objection in these Supplemental Interrogatory Responses stated that Defendants objected to Facebook's discovery requests on the grounds that discovery obtained through those requests would be used in the pending German action between the parties. In response to Interrogatory No. 5, Defendants admitted that they had 11,013 StudiVZ users in California as of October 22, 2008, an increase of nearly 1,000 California users in just one week. In the same Interrogatory response, StudiVZ admitted to having 10,272 California users as of October 14, 2008. In response to Interrogatory No. 12, Defendants admitted that they had knowledge that Facebook was headquartered in California as early as "2005." Attached hereto as **Exhibit 9** is a true and correct copy of Defendants' relevant Supplemental Interrogatory Responses.

31. On December 30, 2008, the parties once again met and conferred. Defendants were once again represented by Bill Walker, who represented that in the time since the last meet and confer he had not been able to speak to Mr. Smith or Defendants and that he had no additional information with respect to various outstanding discovery disputes.

32. During this meet and confer, my colleague Tom Gray asked Mr. Walker whether it was Defendants' position that Facebook was not entitled to any discovery that touched simultaneously on jurisdictional and merits-related issues. Mr. Walker stated that this was not Defendants' position, but that neither he nor Defendants was persuaded that discovery relating to

DECLARATION OF JULIO C. AVALOS IN SUPPORT OF MOTION TO COMPEL DISCOVERY

the development and implementation of the StudiVZ website was relevant to personal jurisdiction analysis. When Mr. Gray stated that central to Facebook's jurisdictional argument was the notion that StudiVZ had reached out to California, submitted to California law, venue and jurisdiction and then stole intellectual property located in the state, Mr. Walker stated that he was still not persuaded and that in any event we should wait to speak to Mr. Smith. Mr. Walker stated that although he could not speak with absolute certainty regarding many of Defendants' discovery positions, he was fairly certain that Defendants would under no circumstances produce source code. Facebook offered to limit several discovery requests, including Request for Production No. 16, but Mr. Walker stated that the request was "irredeemably broad."

33. On January 6, 2008, the parties held a final meet and confer. Mr. Smith was in attendance. The conference first touched on the upcoming depositions of two "personal jurisdiction" witnesses that StudiVZ and the Holtzbrinck defendants had agreed to produce. Given the disagreement as to the scope of what "personal jurisdiction" discovery meant, Mr. Gray sought to clarify the topics that these witnesses would be prepared to testify to. Mr. Smith indicated that the Holtzbrinck witness, Martin Weber, would be able to testify to his knowledge of StudiVZ's accessing of Facebook, which Mr. Smith stated he probably knew nothing about. Mr. Gray stated, "I don't want to fly to Germany and find out that I'm not going to get answers. It sounded from my conversations with Bill [Mr. Walker], that these guys were only going to testify about stuff in their declarations [in support of Defendants' Motions to Dismiss for Lack of Personal Jurisdiction. We want to ask him about his knowledge about Bemmann, Dariani, if they had access to Facebook source code to develop the site, etc." Mr. Smith answered, "Well – I'm willing to allow – No, you know what, I'm willing to allow him to testify about that fully. Period. I think I'm willing to allow him to testify about that. I could fight you on this, but I don't have any particular reason to." With respect to Mr. Brehm, the StudiVZ "personal jurisdiction" witness, Mr. Smith stated that he might try to limit any testimony regarding the accessing of Facebook to "copying," but that "I'm using a broad definition of copying. I'm not going to slice it that thinly."

34. With respect to the outstanding discovery requests, the parties were unable to

DECLARATION OF JULIO C. AVALOS IN SUPPORT OF MOTION TO COMPEL DISCOVERY

reach an agreement regarding the proper scope of personal jurisdiction discovery. Mr. Smith stated that most discovery going to access or the development of StudiVZ did not have to do with personal jurisdiction or, the corollary, dealt only with the merits of the case. He stated that he would fight this "all the way to the Supreme Court if I have to." Mr. Smith argued that Facebook was not entitled to any and all discovery that related to StudiVZ's accessing of Facebook in the course and conduct of StudiVZ's business. Mr. Smith stated that no "access" or "development" documents would be produced unless those documents also evidenced some additional predicate act related to Facebook's causes of action, such as "copying." He also stated that no documents would be produced unless Facebook first agreed that it would waive its right to move to compel future production. My colleague Tom Gray suggested that Defendants produce whatever access and development documents they felt did go to personal jurisdiction and that a resolution could then be more productively made. Mr. Smith refused. Mr. Gray argued that access and development documents were relevant to Facebook's *Calder* effects argument. Mr. Smith agreed in principle, but stated that the discovery would be withheld barring an agreement as to future discovery and the understanding that no documents that did not evidence the additional predicate act such as "copying" would be produced.

35. At the end of the meet and confer, the parties discussed continuing the upcoming hearing on Defendants' Motions to Dismiss. Mr. Smith stated that he probably had no problem in taking the hearing off-calendar with respect to StudiVZ, but that he would like simply if Facebook voluntarily dismissed the Holtzbrinck Defendants instead. Mr. Smith then said, "Listen, my goal here is to get my client dismissed without having to give up any discovery."

36. The following day, January 7, 2009, my colleague Mr. Gray sent an email to Mr. Smith regarding the upcoming personal jurisdiction depositions. The email stated, in relevant part, "I might add that I was concerned that we might not go forward with the depositions based on the meet and confer that I had with Bill Walker last week. Based on Bill's statements, it seemed like you were only going to allow Messrs. Brehm and Weber to testify about the issues raised in their declarations filed in support of the defendants' motion. It makes sense to go forward with the depositions, however, based on your comments yesterday that you would allow

the witnesses to testify about whether StudiVZ's [sic] accessed the Facebook site or IP in order to copy (to be loosely defined) the Facebook site or in furtherance of the other claims alleged by Facebook in the complaint. I appreciate your clarification regarding that issue."

37. Mr. Smith then responded, "You are again mischaracterizing what I offered to do as an 'agreement.' I do not know how many more times I could have possibly repeated the point – I was willing to agree to a limitation on scope along the lines of what you describe below <u>if and only if</u> you also agreed. I am not and have never been willing to agree, only to have you not agree and move to compel anyway . . . So at the moment, there is no agreement on questions related to access." Accordingly, as there was no agreement on questions related to access, Mr. Gray cancelled the depositions in Frankfurt, Germany.

38. A true and correct copy of Defendants' Responses to Facebook's Request for Production, which cite in full Facebook's Requests for Production, is attached hereto as **Exhibit 10**.

39. Attached hereto as **Exhibit 11** is a true and correct copy of a screenshot of the StudiVZ Registration page.

40. Attached hereto as **Exhibit 12** is a true and correct copy of a screenshot of the Spanish-language StudiVZ Registration page.

41. Attached hereto as **Exhibit 13** is a true and correct copy of a screenshot of the Spanish-language StudiVZ Registration page. The screenshot depicts a help page from the site. Translated, the site states, "I wanted to register, but my university doesn't appear! Unfortunately we do not have a complete list of all universities/jobs. But with your help, this will little by little be a problem of the past. When you register, the best thing to do is for you to select another university. You will be able to change this later but you will be able to begin now! Send us an email with the complete name of your university, its acronym, the country, state, city and webpage."

42. Attached hereto as **Exhibit 14** is a true and correct copy of the transcript of the December 16, 2008 hearing before Magistrate Judge Lloyd.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my

DECLARATION OF JULIO C. AVALOS IN SUPPORT OF MOTION TO COMPEL DISCOVERY

knowledge.

Executed this 27th day of January, at Menlo Park, California.

/s/ Julio C. Avalos /s/
Julio C. Avalos

# **CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 27, 2009.

Dated: January 27, 2009          Respectfully submitted,

/s/ Julio C. Avalos /s/
Julio C. Avalos

OHS West:260573915.5
16069-2005 J6A/V2C

- 1 -     DECLARATION OF JULIO C. AVALOS IN SUPPORT OF MOTION TO COMPEL DISCOVERY