STEPHEN S. SMITH (SBN 166539)
SSmith@GreenbergGlusker.com
WILLIAM M. WALKER (SBN 145559)
WWalker@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendants studiVZ Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

<table>
<tr><td>

FACEBOOK, INC.,

               Plaintiff,

v.

STUDIVZ LTD., HOLTZBRINCK
NETWORKS GmbH,
HOLTZBRINCK VENTURES
GmbH, and DOES 1-25,

               Defendants.

</td><td>

Case No. 5:08-CV-03468 JF
Assigned To: Hon. Jeremy Fogel

**STUDIVZ'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO FACEBOOK,
INC.'S MOTION TO COMPEL**

Date:    March 3, 2009
Time:    10:00 a.m.
Place:   Courtroom 2, 5th Floor
          Hon. Howard R. Lloyd

[Declarations of Stephen S. Smith and
William M. Walker (and exhibits thereto)
concurrently filed]

Complaint Filed: July 18, 2008

</td></tr>
</table>

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

37106-00002/1674662.10

STUDIVZ'S OPPOSITION TO FACEBOOK, INC.'S MOTION TO COMPEL

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................. 1

II.     BACKGROUND FACTS ....................................................... 3

    A.     Facebook Blatantly Misrepresents Defendants' Discovery Conduct .................................................................................. 3

        1.     The Holtzbrinck Defendants Answered The Discovery ........... 4

        2.     StudiVZ Answered the Large Majority of Facebook's Discovery Requests .................................................................. 5

        3.     Facebook's Counsel Told This Court That The Parties Had "Largely Been Able to Work Out Every Issue." ............... 5

        4.     Facebook Has Been Given Other Information Related to Jurisdiction and Gave Up the Chance to Obtain More ............. 6

III.     ARGUMENT ...................................................................... 6

    A.     Facebook Has Failed to Make a Sufficient Showing to Permit Any Additional Discovery .................................................. 6

    B.     Overbroad, Catch-All Requests Are Improper. ..................... 8

    C.     The Production of the Requested Documents Would Violate German Privacy Laws ......................................................... 9

        1.     The German Privacy Laws Are Much Stricter than U.S. Privacy Laws and Prohibit Disclosure of Any Personal Data ...................................................................................... 9

        2.     Due to the Overbreadth of the Requests, Compliance Would Violate German Law ................................................ 11

    D.     Facebook Does Not Follow Calder v. Jones ....................... 14

    E.     The Requests Violate Each of the Above Proscriptions .................... 15

1.     RFP No. 16 -- "ALL DOCUMENTS RELATED TO the services provided by [all StudiVZ websites] to USERS OF STUDIVZ, including how they are provided." ................. 15

2.     RFP No. 23 -- "ALL versions of COMPUTER CODE YOU wrote, programmed OR helped develop that RELATES TO [all StudiVZ websites]." ................................ 15

3.     RFP No. 25 -- "ALL COMMUNICATIONS that RELATE TO FACEBOOK, its website, OR the servers it uses, used, accesses OR accessed." ......................................... 16

4.     The "Access" Requests -- Interrogatory No. 10 and RFP Nos. 14, 28 and 29 ................................................................ 17

      a.     The Requests Are Overbroad And Facebook Refuses to Tie them to Its Complaint or to Access Aimed At, or That Caused Harm in, California ............. 17

      b.     Facebook's "Terms of Use" Argument Does Not Save These Requests ....................................... 19

5.     Interrogatory 15 -- "IDENTIFY ALL PERSONS responsible in any manner for the design, programming and maintenance of the www.studivz.net website, including without limitation the PERSON, job descriptions, authorities, dates in these positions, duties and responsibilities." ........................................................ 21

6.     The "Adhesion Contracts" Requests ....................................... 23

IV.    CONCLUSION ........................................................................ 24

**Page**

**FEDERAL CASES**

Amcast Indus. Corp. v. Detrex Corp.,
138 F.R.D. 115 (N.D. Ind. 1991) ...................................................................... 2, 8

APL Co. Pte. Ltd. v. Uk Aerosols Ltd.,
2007 AMC 2519, 2007 U.S. Dist. LEXIS 80247 (N.D. Cal. Oct. 30, 2007) ...... 20

Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"
47 Fed.Appx. 73 (3d Cir. 2002) ............................................................................ 8

Cairo, Inc. v. Crossmedia Services, Inc.,
2005 U.S. Dist. LEXIS 8450 (N.D. Cal. April 1, 2005) ..................................... 21

Calder v. Jones,
465 U.S. 783 (1984) ............................................................................... 3, 14, 18

Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.,
334 F.3d 390 (4th Cir. 2003) ............................................................................ 7, 8

Carnival Cruise v. Shute,
499 U.S. 585 (1991) ........................................................................................... 21

Central States, Southeast & Southwest Areas Pension Fund v. Reimer
Express World Corp.,
230 F.3d 934 (7th Cir. 2000) ............................................................................... 6

Claude P. Bamberger Int'l v. Rohm & Haas Co.,
1998 U.S. Dist. LEXIS 11141 (D. N.J. Mar. 31, 1998) ................................... 2, 8

Core-Vent Corp. v. Nobel Industries,
11 F.3d 1482 (9th Cir. 1993) ............................................................................. 19

eMag Solutions, LLC v. Toda Kogyo Corp.,
2006 U.S. Dist. LEXIS 94462 (N.D. Cal. Dec. 21, 2006) .................................. 7

Fireman's Fund Ins. Co. v. Cho Yang Shipping Co.,
131 F.3d 1336 (9th Cir. 1997) ........................................................................... 20

In re Automotive Refinishing Point Antitrust Litig.,
358 F.3d 288 (3d 288 (3d Cir. 2004) ................................................................. 12

In re IBM Peripheral EDP Devices Antitrust Litig.,
77 F.R.D. 39 (N.D. Cal. 1977) ......................................................................... 2, 8

In re Rubber Chemicals Antitrust Litig.,
486 F.Supp.2d 1078 (N.D. Cal. 2007) .............................................................. 12

In re Vitamins Antitrust Litig.,
2001 WL 1049433 (D. D.C. June 20, 2001) ................................................ 12, 13

**TABLE OF AUTHORITIES**

(continued)

Jazini v. Nissan Motor Co.,
  148 F.3d 181 (2d Cir. 1998) ....................................................................7

Micro Motion, Inc. v. Kane Steel Co.,
  894 F.2d 1318 (Fed. Cir. 1990)............................................................. 15

Mitan v. Feeney,
  497 F.Supp.2d 1113 (C.D. Cal. 2007) ....................................................7

Orchid Biosciences, Inc. v. St. Louis Univ.,
  198 F.R.D. 670 (S.D. Cal. 2001) .............................................................7

Protrade Sports, Inc. v. Nextrade Holdings, Inc.,
  2006 U.S. Dist. LEXIS 6631 (N.D. Cal. Feb. 2, 2006)...........................7

Reinsurance Co. of America v. Administratia Asigurarilor de Stat,
  902 F.2d 1275 (7th Cir. 1990) ........................................................ 11, 12

Richmark Corp. v. Timber Falling Consultants,
  959 F.2d 1468 (9th Cir. 1992) ...................................................11, 12, 13

Rivera v. NIBCO, Inc.,
  364 F.3d 1057 (9th Cir. 2004) .................................................................8

S.E.C. v. Ross,
  504 F.3d 1130 (9th Cir. 2007) ............................................................... 20

Schwarzenegger v. Fred Martin Motor Co.,
  374 F.3d 797 (9th Cir. 2004) ........................................................... 23, 24

Societe Internationale Pour Participations Industrielles et Commerciales v.
  Rogers,
  357 U.S. 197 (1958)............................................................................... 11

Societe Nationale Industrielle Aerospatiale v. United States District Court,
  482 U.S. 522 (1987) ......................................................................... 11, 12

Strauss v. Credit Lyonnais, S.A.,
  249 F.R.D. 429 (E.D.N.Y. 2008)........................................................... 13

Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico,
  2008 U.S. Dist. LEXIS 1352 (S.D. Cal. Jan. 8, 2008)...................... 12

Tuazon v. R. J. Reynolds Tobacco Co.,
  433 F.3d 1163 (9th Cir. 2006) ............................................................... 24

Westinghouse Elec. Corp. Uranium Contracts Litig.,
  563 F.2d 992 (10th Cir. 1977)................................................................ 11

**Page**

<u>**STATE CASES**</u>

<u>Hunt v. Superior Court</u>,
  81 Cal.App. 4th 901 (2000)......................................................................20

<u>Richbell Info Servs., Inc. v. Jupiter Partners L.P.</u>,
  816 N.Y.S.2d 470 (N.Y. App. Div. 1st Dep't 2006) ........................13

<u>Volkswagen, A.G. v. Valdez</u>,
  909 S.W.2d 900 (Tex. 1995)................................................................12, 13


<u>**STATUTES AND RULES**</u>

F.R.C.P. 30(b)(6) ......................................................................................6


<u>**OTHER AUTHORITIES**</u>

Restatement (Third) of Foreign Relations Law,§ 442(1)(c) ...................11

Restatement (Third) of Foreign Relations Law,§ 442 comment c ..........12

Restatement (Third) of Foreign Relations Law,§ 442 comment a ..........13


<u>**GERMAN PRIVACY LAWS**</u>

German Federal Data Protection Act

  § 1(5)......................................................................................................9

  § 3(1)....................................................................................................10

European Community Data Protection Directive 95/46/EC

  Art. 2....................................................................................................10

  Art. 4......................................................................................................9

  Art. 7....................................................................................................10

German Criminal Code, § 206................................................................10

German Telecommunications Act § 88....................................................10

German Civil Code (Buergerliches Gesetzbuch), ¶¶ 164(1), 167(1)
  177(1) ..................................................................................................20

Legislative History BT-Drs. 13/3609, p. 53 ........................................................... 10

Baslmeier/Weissnicht, K&R 2005, 537, 540 ......................................................... 10

Fetzer in Arndt/Fetzer/Scherer, TKG 1st ed., Berlin 2008 § 3, para 23 .................. 10

Eckhardt in Spindler/Schuster, Das Recht der elektronischen Medien,
    1st ed., Munich 2008; § 88, para 32 ................................................................ 10

Schimmelpfennig/Wenning, DB 2006, 2290, 2291 ............................................... 10

Ellinghaus in Arndt/Fetzer/Scherer, TKG, 1st edition, Berlin 2008,
    § 88, para 39-40 .............................................................................................. 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Facebook's attempt to paint a picture of dilatory, uncooperative defendants, who seek to prevent discovery related to personal jurisdiction, utterly fails.

StudiVZ answered the large majority of Facebook's interrogatories and document requests.  The Holtzbrinck defendants answered _every_ interrogatory that Facebook demanded they answer and produced _every_ document that Facebook demanded they produce, either as framed in the discovery requests or as modified during meet and confer.[1]  Defendants' compliance with Facebook's demands led Facebook's counsel to tell the Court on December 16, 2008 that the parties have "largely been able to work out every issue," and that "very few issues" remained. (Exhibit A to Avalos Decl. at pp. 5-6 of 28 [Reporter's Transcript at 4:23-5:4]) (Docket No. 78-2).  The motion to compel concerns only those "very few issues."

The reason for the continuing dispute over the remaining "very few issues" is obvious from even a cursory reading of the discovery requests at issue:

RFP No. 16 -- "ALL DOCUMENTS RELATED TO the services provided by [all StudiVZ websites] to USERS OF STUDIVZ, including how they are provided."

RFP No. 23  -- "ALL versions of COMPUTER CODE YOU wrote, programmed OR helped develop that RELATES TO [all StudiVZ websites]."

RFP No. 25 -- "ALL COMMUNICATIONS that RELATE TO FACEBOOK, its website, OR the servers it uses, used, accesses OR accessed."

Interrogatory Nos. 10 and RFP Nos. 14, 28 and 29 -- Seek all documents and facts related to every instance when any person affiliated with StudiVZ ever accessed Facebook's website in any manner for any reason.

Interrogatory 15 -- "IDENTIFY ALL PERSONS responsible in any manner for the design, programming and maintenance of the www.studivz.net website, including without limitation the PERSON, job descriptions, authorities, dates in these positions, duties and responsibilities."

Interrogatory Nos. 1, 2 and 9 and RFP Nos. 1 and 13 -- Seek all adhesion contracts that StudiVZ ever had with a California addressee.

---

[1]  This opposition makes arguments that apply to all defendants.  The Holtzbrinck defendants are filing a separate opposition that makes arguments that apply only to them.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1     These requests are an obvious "fishing expedition," designed to catch anything

2 Facebook might have missed in the requests defendants already answered. "Instead

3 of using rod and reel, or even a reasonably sized net, [Facebook] would drain the

4 pond and collect the fish from the bottom," and would do so "without even knowing

5 whether there were any fish in the pond." <u>Amcast Indus. Corp. v. Detrex Corp.</u>, 138

6 F.R.D. 115, 121 (N.D. Ind. 1991) (<u>quoting</u> <u>In re IBM Peripheral EDP Devices</u>

7 <u>Antitrust Litig.</u>, 77 F.R.D. 39, 41-42 (N.D. Cal. 1977)); <u>Claude P. Bamberger Int'l v.</u>

8 <u>Rohm & Haas Co.</u>, 1998 U.S. Dist. LEXIS 11141 at *4-*6 (D. N.J. Mar. 31, 1998).

9     This discovery is supposed to relate to <u>*jurisdiction*</u>. That is the word on the

10 caption page of the discovery; that is what Facebook argues. But the discovery

11 obviously does <u>*not*</u> relate to jurisdiction, except in the sense that it is so wide-

12 ranging that any documents that might possibly relate to jurisdiction necessarily

13 would be caught up in the net. Rather, these requests literally seek from each

14 defendant every document that defendant possesses -- all hard copy documents and

15 all electronically created or stored documents for the whole company.

16     The fact that a request is so broad that it necessarily would uncover pertinent

17 evidence, if such evidence exists, is not a valid justification for the request. Most

18 obviously, it places a burden on the responding party that is grossly out of proportion

19 to the likelihood that something relevant might be discovered. That constitutes an

20 abuse of the discovery process and is, simply, not fair to the responding party.

21     These normal discovery rules become all the more important when the

22 discovery arises from a challenge to jurisdiction, the entire premise of which is that

23 the defendant should not be forced to litigate in the forum at all. Thus, courts asked

24 to deal with personal jurisdiction discovery are much more stringent about the scope

25 of such discovery. Most courts will not allow <u>*any*</u> discovery unless the plaintiff first

26 proves a *prima facie* case that personal jurisdiction exists. Those few courts that do

27 allow such discovery to go forward place strict limits on its scope, requiring that it be

28 targeted specifically to personal jurisdiction issues that are in dispute.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Facebook ignores these well-established limitations and jumps right to the conclusion that its overbroad requests are proper *because* they are overbroad. Because they are so broad, by definition, they would capture anything relevant that might exist. Facebook does not care that defendants are burdened with searching for and producing *everything* just so that Facebook might discover some narrow set of relevant information, if it even exists. That is exactly what the law prohibits.

Facebook also seeks to justify its requests by creating a classic red herring. Facebook argues that it is entitled to wide-ranging discovery into the "merits" of the case because those merits overlap with personal jurisdiction under the so-called "effects test" of <u>Calder v. Jones</u>, 465 U.S. 783 (1984). But immediately after invoking that test, Facebook ignores it. Even a summary reading of the requests demonstrates that they do <u>*not*</u> focus on <u>*any*</u> of the three required elements of the <u>Calder</u> effects test. And when defense counsel asked Facebook to modify the requests to focus on those elements, Facebook refused to do so.

Accordingly, the motion should be denied.

## II.    <u>BACKGROUND FACTS</u>

### A.    <u>Facebook Blatantly Misrepresents Defendants' Discovery Conduct.</u>

Facebook makes two blatant misrepresentations to the Court. First, Facebook claims that "defendants" (*plural*) have refused to produce what Facebook asked for in discovery, when it is without dispute that the Holtzbrinck defendants fully complied with the requests as originally propounded or as Facebook modified them during meet and confer. Second, Facebook argues that defendants have only produced a "minimal" amount of responsive facts or documents, when in fact the Holtzbrinck defendants have given Facebook everything it asked for and StudiVZ has given Facebook the vast majority of what it asked for.

///

///

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1      **1.      The Holtzbrinck Defendants Answered The Discovery.**

2           Facebook falsely claims that there is an open dispute about the Holtzbrinck

3      defendants' responses to Facebook's discovery.  (Motion at 1:9) (Docket No. 91).

4      Although the falsity of this claim is discussed in more detail in the Holtzbrinck

5      defendants' separate opposition, a brief word must be included here.

6           Since November 26, 2008, there has not been any disagreement between the

7      parties concerning the Holtzbrinck defendants' discovery responses.  During the

8      meet and confer on that date, all issues were resolved.  Facebook withdrew the

9      document demands in return for the Holtzbrinck defendants' agreement to produce

10     a limited set of documents, which have since been produced or which do not exist.

11     Facebook asked for supplemental responses to interrogatories, narrowed in scope

12     during meet and confer, which supplemental responses were served on December

13     24, 2008.  Before filing the motion to compel, Facebook raised _no_ issues about the

14     Holtzbrinck defendants' compliance with these agreements.

15          This point is confirmed by the District Court's January 28, 2009 Order.

16     Facebook moved to enlarge time on all defendants' motions to dismiss.  Facebook

17     argued that it needed more time to obtain jurisdiction-related discovery.  Facebook

18     did _not_ show (or argue) that there were any pending discovery disputes regarding

19     the Holtzbrinck defendants.  In the Holtzbrinck defendants' opposition to that

20     motion, they pointed out that there were no discovery disputes.  In its Order, the

21     Court noted that although there may be a legitimate discovery dispute regarding

22     StudiVZ, there was no showing of any such dispute with respect to the Holtzbrinck

23     defendants.  For that reason, the District Court concluded:

24          "Facebook has failed to demonstrate any reason to continue the February

25          13, 2009 hearing as to either defendant with respect to _forum non_

26          _conveniens_, or as to Holzbrinck with respect to personal jurisdiction."

27     (Order at 2:15-17) (Docket No. 92).  The Court ruled that Facebook was "permitted

28     to file a supplemental opposition with respect to whether this Court has personal

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

jurisdiction over StudiVZ." (Id. at 2:20-22) (Docket No. 92) (emphasis added). The Court did *not* grant Facebook's request for a supplemental opposition to the Holtzbrinck defendants' motion to dismiss.

There is no dispute regarding the Holtzbrinck defendants.[2]

## 2. **StudiVZ Answered the Large Majority of Facebook's Discovery Requests.**

Facebook also claims that defendants have produced only a "minimal" amount of information concerning their contacts with California. That is not only false as to the Holtzbrinck defendants, it is also false as to StudiVZ. Facebook served 30 document demands and 23 interrogatories. StudiVZ answered 22 of the document demands (73%) and 18 of the interrogatories (78%) to Facebook's satisfaction.[3]

## 3. **Facebook's Counsel Told *This* Court That The Parties Had "Largely Been Able to Work Out Every Issue."**

This Court was a party to the discussion about the state of discovery in this case on December 16, 2008, during the hearing on defendants' motion for protective order. That motion had been filed on October 31, 2008. Thereafter, the parties met and conferred many times. By December 16, 2008, all issues with respect to the Holtzbrinck defendants and the large majority of issues with respect to StudiVZ were resolved. As Facebook's own counsel represented to the Court:

"We have largely been able to work out *every* issue, and there remain, I believe, Your Honor, *very few issues* that would come back before this court . . . ."

(Exhibit A to Avalos Decl. at pp. 5-6 of 28 [Reporter's Transcript at 4:23-5:4]) (Docket No. 78-2) (emphasis added).

---

[2] Facebook's motion focuses entirely on StudiVZ, not the Holtzbrinck defendants. Although Facebook continually uses the term "defendants," whenever any alleged fact is mentioned (pure conjecture that it is), it is always a fact about StudiVZ, not the Holtzbrinck defendants.

[3] Facebook supposedly moves to compel further responses to nine document demands. But one, RFP 27, was answered in full, "no documents." Plus, there is no argument about RFP 27 in Facebook's motion. Accordingly, StudiVZ assumes that its inclusion was a mistake.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

4. **Facebook Has Been Given Other Information Related to Jurisdiction and Gave Up the Chance to Obtain More.**

Facebook was given sworn declarations from the two people affiliated with defendants who are most knowledgeable about personal jurisdiction. Those declarations, submitted in support of the pending motions to dismiss, contain the facts showing that personal jurisdiction does not exist. The declarants were made available for deposition. Facebook noticed the depositions, only to cancel them after defense counsel had already traveled to Germany to defend them.[4]

Facebook also noticed Rule 30(b)(6) depositions for each defendant on the issues it claimed were relevant to personal jurisdiction, but then withdrew those notices voluntarily. It did so for the stated purpose of serving new Rule 30(b)(6) notices that were to be more narrowly targeted to issues that related to personal jurisdiction. However, Facebook never served any such notices.

In sum, the entire premise underlying Facebook's motion to compel is false. The parties were "largely able to work out every issue," and "very few" issues remain. As explained immediately below, these few issues remain only because the remaining requests are horribly overbroad and *not* targeted to personal jurisdiction.

## III. ARGUMENT

### A. Facebook Has Failed to Make a Sufficient Showing to Permit Any Additional Discovery.

Most courts require a plaintiff to make either a "*prima facie*" or "colorable" showing of evidence establishing the existence of personal jurisdiction before being allowed to take jurisdictional discovery. Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000) ("Foreign nationals should not be subjected to extensive discovery in order to

---

[4] The facts related to this cancellation are explained in much more detail in defendants' motion for sanctions, which is scheduled to be heard the same day as this motion to compel.

determine whether personal jurisdiction over them exists."); <u>Jazini v. Nissan Motor Co.</u>, 148 F.3d 181, 185-86 (2d Cir. 1998) (denying discovery where the plaintiff "did not establish a prima facie case that the district court had jurisdiction"); <u>Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 402-03 (4th Cir. 2003); <u>Mitan v. Feeney</u>, 497 F.Supp.2d 1113, 1118 (C.D. Cal. 2007) ("In order to obtain discovery on jurisdictional facts, the plaintiff must at least make a 'colorable' showing that the Court can exercise personal jurisdiction over the defendant."); <u>Protrade Sports, Inc. v. Nextrade Holdings, Inc.</u>, 2006 U.S. Dist. LEXIS 6631, Case No. C05-04039 MJJ at *9 (N.D. Cal. Feb. 2, 2006) (a plaintiff is not entitled to early discovery concerning personal jurisdiction unless it first makes a "colorable" showing of personal jurisdiction); <u>eMag Solutions, LLC v. Toda Kogyo Corp.</u>, 2006 U.S. Dist. LEXIS 94462, Case No. C02-1611 PJH at *10 (N.D. Cal. Dec. 21, 2006) (granting plaintiffs' request for jurisdictional discovery only because plaintiffs had "provided some evidence" of the defendant's California contacts).[5]

Facebook has presented no competent evidence of a *prima facie* or colorable case of personal jurisdiction. Facebook has presented bare allegations, conjecture, and hearsay that is, at best, unsubstantiated speculation. Facebook's sole "evidence" is in the form of declarations from its lawyers and hearsay exhibits. On this incompetent record, Facebook wildly speculates that the two German founders of StudiVZ copied Facebook's website <u>*before*</u> returning to Germany to form StudiVZ. In other words, even assuming something wrongful occurred from within the United States, Facebook admits that they were <u>*not*</u> the acts of StudiVZ, which had not even been formed yet. Such flimsy, unsubstantiated evidence is not a *prima facie* or

---

[5] Admittedly, there is contrary authority, which holds that a *prima facie* or colorable case of personal jurisdiction need not be established to take jurisdictional discovery. <u>See, e.g.</u>, <u>Orchid Biosciences, Inc. v. St. Louis Univ.</u>, 198 F.R.D. 670, 672-673 (S.D. Cal. 2001). But even <u>Orchid</u> held that such discovery should be "limited" to issues relating only to personal jurisdiction. <u>Id.</u> Although StudiVZ believes that the majority rule is the better rule, there is no need for the Court to resolve this conflict because, under either rule, Facebook's remaining discovery requests are improper. As explained below, Facebook does not present evidence establishing a *prima facie* or colorable case of personal jurisdiction. Even if it did, the requests at issue are overwhelmingly <u>*not*</u> limited to personal jurisdiction, but are instead improper, blanket "catch all" requests.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

colorable showing of evidence necessary to establish any right to jurisdictional discovery. See Carefirst of Maryland, 334 F.3d at 402-03 (jurisdictional discovery should be denied when plaintiff "offers only speculation or conclusory allegations").

Facebook also ignores the undisputed fact that its founder and CEO, Mark Zuckerberg, gave an interview two years ago in which he *refused* to call StudiVZ's website a "copycat" of Facebook, instead stating, "I think that they're *different designs* and slightly different products." http://en.sevenload.com/videos/9cMXu4Y-zuck (Smith Decl., ¶ 54) (CD available upon request). This is not hearsay; it is Facebook's CEO saying the words out of his own mouth.

Facebook's motion should be denied for this reason alone.

**B.  Overbroad, Catch-All Requests Are Improper.**

It is well-established that "courts need not condone the use of discovery to engage in 'fishing expeditions.'" Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004). Courts express this rule in ever more colorful terms as the discovery at issue broadens in scope: "Instead of using rod and reel, or even a reasonably sized net, [Facebook] would drain the pond and collect the fish from the bottom." Amcast Indus. Corp. v. Detrex Corp., 138 F.R.D. 115, 121 (N.D. Ind. 1991) (quoting In re IBM Peripheral EDP Devices Antitrust Litig., 77 F.R.D. 39, 41-42 (N.D. Cal. 1977)). And it would do so "without knowing whether there were any fish in the pond." Claude P. Bamberger Int'l v. Rohm & Haas Co., 1998 U.S. Dist. LEXIS 11141, at *4-*6 (D. N.J. Mar. 31, 1998).

This uncontroversial rule applies with even greater force when the discovery relates specifically to personal jurisdiction. "And where, as here, the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis for jurisdiction, we see no reason to overturn the district court's exercise of discretion [denying it]." Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory," 47 Fed.Appx. 73, 77, n.3 (3d Cir. 2002).

///

37106-00002/1674662.10

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Moreover, the overly broad nature of the requests is not simply a relevance issue. It is also an issue of undue burden and expense.

At the outset of the case, StudiVZ hired KPMG to preserve all hard drives and databases that could possibly store any documents that might relate to this case. 11.9 terabytes of data were preserved. (Smith Decl., ¶ 37). On October 21, 2008, Facebook sent defendants a list of _**189**_ terms to be searched in connection with its discovery requests. (Id.). StudiVZ obtained an estimate to search for only 20-30 terms. (Id.). That estimate was $1.6 million. (Smith Decl., ¶¶ 55-56; Exs. X-Y). That does not include attorney time or translation costs, which will be very high given that StudiVZ operates almost entirely in German. (Smith Decl., ¶ 37). By insisting on these overbroad requests, Facebook seeks to force StudiVZ to incur a huge expense that is disproportionate to the amount of relevant data that Facebook argues _might_ exist. For this additional reason, the motion should be denied.

C. **The Production of the Requested Documents Would Violate German Privacy Laws.**

All of the requested documents are located in Germany. (Brehm Decl. in Support of Motion to Dismiss, ¶ 18) (Docket No. 47). For that reason, StudiVZ has objected to the requests under the privacy laws of the German Constitution, the German Federal Data Protection Act (BDSG), the German Telecommunications Act (TKG), the German Tele Media Act (TMG), the European Community Data Protection Directive 95/46/EC (95/46/EC), Data Protection Directive for Electronic Communication 2002/58/EC and the E-Commerce Directive 2000/31/EC (collectively the "German Privacy Laws").

1. **The German Privacy Laws Are Much Stricter than U.S. Privacy Laws and Prohibit Disclosure of Any Personal Data.**

German Privacy Laws apply to any "personal data" that is collected, stored or processed by an entity with a place of business in Germany. BDSG § 1(5); 95/46/EC, Art. 4. Personal data is defined as any information concerning the

1   personal or material circumstances of an identified or identifiable natural person.

2   BDSG § 3(1); 95/46/EC, Art. 2.  This includes, for example, the name, address,

3   appearance or profession of the person and his or her relationship to other parties

4   *even if the information is found within business documents*.  As a general principle

5   the transfer of personal data is only permissible if either justified by law or with the

6   consent of the data subject.  95/46/EC, Art. 7.  According to the relevant data

7   protection authority of Berlin there is no statutory justification for transfer of

8   personal data in pre-trial discovery proceedings.  2007 Annual Report by the

9   Supervisory Authority for Data Protection of Berlin, p. 187 et seq.  A violation of the

10  data protection laws is subject to an administrative fine of up to €250,000.

11  Furthermore, all e-mail communication sent from a business e-mail account is

12  subject to the secrecy of telecommunication if the e-mail account is also used by the

13  employees or legal representatives for private communication and, therefore, may not

14  be disclosed. Id.; TKG, § 88; Fetzer in Arndt/Fetzer/Scherer, TKG 1st ed., Berlin

15  2008, § 3, para. 23; Eckhardt in Spindler/Schuster, Das Recht der elektronischen

16  Medien, 1st ed., Munich 2008; § 88, para 32, Legislative History BT-Drs. 13/3609,

17  page 53.; Baslmeier/Weissnicht, K&R 2005, 537, 540; Schimmelpfennig/Wenning,

18  DB 2006, 2290, 2291; Ellinghaus in Arndt/Fetzer/Scherer, TKG, 1st edition, Berlin

19  2008, § 88 para 39-40.  A violation of the secrecy of telecommunication can be a

20  criminal misdemeanor under section 206 of the German Criminal Code (StGB),

21  subjecting the violator to up to five years in prison.  StGB §206(1).

22      These laws are clearly implicated here.  Indeed, these overbroad requests

23  would also violate the less stringent U.S. and California privacy laws because they

24  call for totally private, irrelevant information.  Almost all of the requests use the

25  term "YOU" and/or "STUDIVZ."  Facebook defines "STUDIVZ" and "YOU" to

26  include "agents, servants, employees, investigators [and] attorneys," *whether or not*

27  they were acting in the course of their relationship with StudiVZ.  Thus, for

28  example, all "computer code YOU wrote" (RFP No. 25) includes computer code

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   that a StudiVZ employee may have written on his/her own time that has nothing to

2   do with StudiVZ.  The requests asking for all documents related to instances "when

3   YOU accessed" Facebook's website would include instances where people

4   affiliated with StudiVZ accessed Facebook using their own personal user accounts

5   *from home*.  Almost every request asks for this type of personal data.

6   **2.   Due to the Overbreadth of the Requests, Compliance Would**

7   **Violate German Law.**

8   When discovery is sought regarding matters protected from discovery by

9   foreign law, a U.S. court may block enforcement of a discovery request that would

10  compel a party to violate foreign law by complying with it.  Societe Internationale

11  Pour Participations Industrielles et Commerciales v. Rogers, 357 U.S. 197 (1958)

12  ("Societe Internationale").  A court faced with a discovery request or order that

13  violates a foreign "blocking statute" must balance the court's interest in discovery

14  against the consequences to the party affected and the foreign country's interest in its

15  own laws.  Societe Nationale Industrielle Aerospatiale v. United States District

16  Court, 482 U.S. 522, 544 (1987) ("Aerospatiale").

17  The Supreme Court endorsed the test in the Restatement (Third) of Foreign

18  Relations Law § 442(1)(c), which requires the court to balance the following factors

19  in deciding whether to permit such discovery:

20  "(1) the importance to the . . . litigation of the documents or other

21  information requested; (2) the degree of specificity of the request;

22  (3) whether the information originated in the United States; [6] (4) the

23  availability of alternative means of securing the information; and

24  (5) the extent to which noncompliance with the request would

25  _____

26  [6] Thus, "[t]he fact that all of the information to be disclosed (and the people who will be deposed or who will produce the documents) are located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business."  Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1475 (9th Cir. 1992), (citing Reinsurance Co. of America v. Administratia Asigurarilor de Stat, 902 F.2d 1275, 1281 (7th Cir. 1990); Westinghouse Elec. Corp. Uranium Contracts Litig., 563 F.2d 992, 998 (10th Cir. 1977)).

STUDIVZ'S OPPOSITION TO FACEBOOK, INC.'S MOTION TO COMPEL

1    undermine important interests of the United States, or compliance with

2    the request would undermine important interests of the state where the

3    information is located."

4  <u>Aerospatiale</u>, 482 U.S. at 544 n.28.  The last factor is the most important.  <u>Richmark</u>

5  <u>Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1476 (9th Cir. 1992).  U.S.

6  courts have long recognized that "every foreign state has strong interests in enforcing

7  its secrecy laws."  <u>Reinsurance Co. of America v. Administratia Asigurarilor de Stat</u>,

8  902 F.2d 1275, 1280-81 (7th Cir. 1990).  In assessing the strength of a foreign

9  country's interests in nondisclosure, the Court should consider "'expressions of

10 interest by the foreign state,' 'the significance of disclosure in the regulation . . . of

11 the activity in question,' and 'indications of the foreign state's concern for

12 confidentiality *prior to the controversy*.'"  <u>Richmark</u>, 959 F.2d at 1476 (<u>quoting</u>

13 Restatement (Third) of Foreign Relations Law § 442, Comment *c*) (emphasis in

14 original); <u>In re Rubber Chemicals Antitrust Litig.</u>, 486 F.Supp.2d 1078, 1084 (N.D.

15 Cal. 2007) (balance of national interests favored nondisclosure where "a foreign

16 entity has taken a clear position and articulated reasons why it believes production of

17 the requested documents would harm its interests").[7]

18      American courts have already determined that "individuals have a

19 presumptively legitimate interest under German law in the nondisclosure of their

20 personal information to residents of countries with non-equivalent personal data

21 protection standards."  <u>In re Vitamins Antitrust Litig.</u>, 2001 WL 1049433 at *9 (D.

22 D.C. June 20, 2001); <u>see also</u> <u>Volkswagen, A.G. v. Valdez</u>, 909 S.W.2d 900 (Tex.

23 1995).  Similarly, the German State Commissioners for Data Protection have made

24 themselves available to file Advisory Opinions when German litigants have been

25 presented with discovery requests that might force them to violate German laws.

26

27      [7] This analysis applies to both jurisdictional discovery and merits discovery.  <u>Synthes</u>
   <u>(U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico</u>, 2008 U.S. Dist. LEXIS 1352, at *10

28 (S.D. Cal. Jan. 8, 2008) (<u>citing</u> <u>In re Automotive Refinishing Paint Antitrust Litig.</u>, 358 F.3d 288
   (3d Cir. 2004)).

See In re Vitamins, 2001 WL 1049433, at *7; Volkswagen, 909 S.W.2d at 902.
The German government's sensitivity to these issues and consistent engagement
with American courts facing them shows the strong German interest in compliance
with its privacy laws in American courts.

   Courts also typically use a more stringent test to assess relevance for
international discovery requests than the "relevant or calculated to lead to the
discovery of admissible evidence" test governing purely domestic discovery.  See,
e.g., Richbell Info Servs., Inc. v. Jupiter Partners L.P., 816 N.Y.S.2d 470, 475–76
(N.Y. App. Div. 1st Dep't 2006).  Given the differences in discovery standards, and
the concerns about comity in international discovery, "[b]efore issuing an order for
production of documents, objects, or information located abroad, the court . . .
should scrutinize a discovery request more closely than it would scrutinize
comparable requests for information located in the United States."  Restatement
(Third) of Foreign Relations Law, § 442, Comment a; see also In re Vitamins, 2001
WL 1049433, at *10 n.20 (in light of the "significant comity concerns" of requiring
disclosure that would violate German privacy laws, the Court should be satisfied
that "it is clear that the requested discovery is necessary").

   Therefore, courts that allow discovery in contravention of foreign law typically
look for very specific information that is "crucial" to the litigation.  See, e.g.,
Richmark, 959 F.2d at 1475; Strauss v. Credit Lyonnais, S.A., 249 F.R.D. 429, 439–
40 (E.D.N.Y. 2008).  "Generalized searches for information, the disclosure of which
is prohibited under foreign law, are discouraged."  Richmark, 959 F.2d at 1475.

   Facebook fails to address this objection in its motion because it has no
adequate response to it.  The requests on their face seek personal data that would
clearly cause defendants to violate German law if they complied with them as
drafted or as Facebook has offered to modify them.  Again, one need only look at
the definition of "YOU."  That definition includes all employees and is not limited
to acts that occurred or documents that were created within the course and scope of

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

their employment.  Defendants raised this issue with Facebook on October 27, 2008, _before_ defendants' responses were even due.  Defendants re-raised that issue in the responses.  Facebook has refused to correct this obvious problem.

### D.  Facebook Does _Not_ Follow _Calder v. Jones_.

Facebook argues that it may propound its overbroad discovery because the "merits" of the case sometimes overlap with jurisdiction under the "effects test" of Calder v. Jones, 465 U.S. 783 (1984).  While StudiVZ agrees with the general proposition that jurisdiction may overlap with the merits under the effects test, that principle does not "cure" the obvious problem with Facebook's requests.

According to Facebook, "[t]he Calder effects test has three elements: the defendants must have (1) committed an intentional act (2) expressly aimed _at the forum state_, (3) causing harm, the brunt of which is suffered -- and which the defendants knows is likely to be suffered -- _in the forum state_." (Facebook Opp. to Mot. to Dismiss at 6:18-22) (Docket No. 76) (emphasis added).  Yet, Facebook's requests, either as originally drafted or as Facebook has offered to modify them, have no connection to these elements of the test.  Facebook does not limit the requests to any intentional act that is alleged to have caused Facebook harm, let alone acts that were aimed at or caused harm in California.  When defendants asked Facebook to so limit the requests, Facebook refused.  (Smith Decl., ¶ 35(f)).

In one breath, Facebook purports to rely on the holding in Calder v. Jones.  But in the next breath, Facebook ignores it entirely.  As is explained in more detail in Section III-E-4 below, during meet and confer, Facebook _refused_ to narrow its requests to be targeted to the allegations in the complaint of intentional, harmful acts (such as "copying"), let alone acts that were aimed at or caused such harm in California.  (Smith Decl., ¶ 35).  As a result, Facebook's requests are _not_ tied to the actual elements of the Calder effects test.  Rather, Facebook intentionally seeks to conduct wholesale discovery into the merits of the case.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1

E.    **The Requests Violate Each of the Above Proscriptions.**

2

1.    **RFP No. 16 -- "ALL DOCUMENTS RELATED TO the**

3

**services provided by [all StudiVZ websites] to USERS OF**

4

**STUDIVZ, including how they are provided."**

5

StudiVZ's only business is the operation of websites.  (Brehm Decl. in

6

Support of Motions to Dismiss, ¶ 5) (Docket No. 47).  Thus, this request literally

7

seeks "all" documents related to StudiVZ's operations.  Facebook expressly admits

8

that this request is "horribly broad."  (Avalos Decl., ¶ 24) (Docket No. 90).  But it

9

has proposed no reasonable limitation.  Facebook says it wants "documents relating

10

to the design, development and implementation of the services provided by the

11

StudiVZ websites."  (Mot. to Compel at 18:12-13) (Docket No. 91).  However, that

12

is no limitation at all because StudiVZ's websites are ever-changing.  The design,

13

development and implementation started on day one and has continued ever since.

14

If anything, Facebook's "limitation" expands the scope of the request.

15

Facebook argues that this request "likely . . . will reveal communications or

16

other documents demonstrating that StudiVZ purposefully copied Facebook's look,

17

feel and features." (Mot. to Compel at 19:3-6).  But there is no support for this

18

claim.  Plus, as explained above, "[t]hat discovery might uncover evidence showing

19

that a plaintiff has a legitimate claim does not justify the discovery requests."

20

Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1326 (Fed. Cir. 1990).[8]

21

2.    **RFP No. 23  -- "ALL versions of COMPUTER CODE YOU**

22

**wrote, programmed OR helped develop that RELATES TO**

23

**[all StudiVZ websites]."**

24

This request literally seeks all computer code that StudiVZ ever created.

25

Facebook has not offered to narrow this request.  (Smith Decl., ¶ 38).  Facebook

26

---

[8]  StudiVZ answered Interrogatory No. 13, which asked it to "IDENTIFY the services

27

provided through [all StudiVZ websites] to USERS OF STUDIVZ, including without limitation, how the services are provided."  Facebook has not complained about this answer.  Facebook thus knows the services StudiVZ provides.  To ask for "all documents" related to those services is a

28

wholly different thing and would require a monumental undertaking that is not appropriate.

argues that the request is proper because it would, by definition, include within it any code showing that StudiVZ did something wrong, if such code exists. Again, this is "fishing" by draining the pond without even knowing whether any fish exist. It is improper and the motion should be denied as to this request.[9]

### 3. RFP No. 25 -- "ALL COMMUNICATIONS that RELATE TO FACEBOOK, its website, OR the servers it uses, used, accesses OR accessed."

This request seeks all documents that relate to Facebook. There is no limit as to subject matter or time. Facebook does not even argue that this request seeks relevant information. Facebook's sole argument is that StudiVZ objected only on the basis of burden and "expense," which Facebook argues is without merit.

Facebook is wrong. StudiVZ's response included objections for lack of relevance and overbreadth. In addition, the issue of the gross overbreadth of this request was discussed in the meet and confer conversations of November 26, December 3 and 23 and January 6. (Smith Decl., ¶ 37; Walker Decl., ¶ 3(h)).

The overbreadth issue is real. First, Facebook fails to tell the Court that Facebook tried to buy StudiVZ two different times, once in late 2006 and again in the Spring of 2008. (Weber Decl. in Support of Motions to Dismiss, ¶ 13) (Docket No. 46). Second, Facebook operates its social networking site in Germany and, thus, is a competitor of StudiVZ in Germany. Documents that "relate to Facebook" would include all kinds of normal, every day communications by one competitor about another. As a result, there are many documents that "relate to Facebook," but which do not relate to the case and do not relate to personal jurisdiction.

Further, the expense objection is well-founded. To cull through 11.9 terabytes of data for every document that "relates to Facebook" would be extremely

---

[9] As noted above, StudiVZ answered the more narrowly tailored Request No. 27, which asked for "A copy of ALL versions of COMPUTER CODE (including, without limitation, source code, object code and scripts) YOU wrote, which YOU used OR use, OR for which YOU paid that was designed to extract information from any website, including thefacebook.com OR facebook.com." The answer was that there were no responsive documents.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  time consuming and expensive, and most (if not all) of the documents would have

2  no relevance.  This is why courts do not compel responses to overbroad requests.

3  **4.  The "Access" Requests -- Interrogatory No. 10 and RFP**

4  **Nos. 14, 28 and 29**

5  Facebook moves to compel further responses to four requests that relate to

6  "accessing" Facebook's websites.

7  *a.  The Requests Are Overbroad And Facebook Refuses to*

8  *Tie them to Its Complaint or to Access Aimed At, or*

9  *That Caused Harm in, California.*

10  Interrogatory No. 10 asks StudiVZ to identify every occurrence when StudiVZ

11  accessed Facebook's website.  Request No. 14 seeks all documents related to

12  instances when StudiVZ accessed Facebook's website.  Request No. 28 asks for all

13  documents related to any account StudiVZ created to access Facebook's website.

14  Request No. 29 asks for all documents that relate to the use by StudiVZ of any

15  server to access Facebook's website.

16  These requests are not limited to any particular type of access or by time.

17  They are also not limited to "StudiVZ."  As noted above, Facebook defines

18  "STUDIVZ" and "YOU" to include "directors, officers, parents, subsidiaries,

19  predecessors, successors, assigns, agents, servants, employees, investigators [and]

20  attorneys," *whether or not* they were acting as agents of StudiVZ.

21  Thus, these requests are also terribly broad.  They seek information and

22  documents about any and all instances of "access" by anyone connected to

23  StudiVZ, whether such access had anything to do with StudiVZ's business, whether

24  or not such access has any connection to the harm alleged in the complaint, and

25  whether or not such access was aimed at, or caused harm in, California.  Facebook

26  made no effort (and, indeed, has refused) to tie the requests to the complaint's

27  ///

28  ///

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    allegations or to the factors relevant to the effects test of <u>Calder v. Jones</u>.[10]

2        During meet and confer, StudiVZ asked Facebook to limit the requests to any

3    form of access that Facebook's complaint alleged is "wrongful."  Facebook refused,

4    and also refused to limit these requests to access that was aimed at California or

5    which caused harm in California.  (Smith Decl., ¶ 35(f)).

6        The problems created by Facebook's refusal to agree to such limitations are

7    real.  There are many examples of "access" that potentially fall within these over-

8    broad requests, but that do not concern the allegations in the case or jurisdiction.  For

9    example, because Facebook is a very popular website, it is possible (even virtually

10   certain) that one or more StudiVZ employee has "accessed" Facebook using their

11   own personal account for private purposes having nothing to do with StudiVZ or this

12   case.  Such access is not relevant to anything, let alone personal jurisdiction, and is

13   not discoverable under German privacy laws.  It is also conceivable (indeed, likely)

14   that StudiVZ, as Facebook's direct competitor in Germany, has looked at Facebook's

15   website.  (Just as we know for a fact that Facebook's counsel, Julio Avalos, has

16   looked at and created his own user account on StudiVZ's website).  (Ex. 8 to Avalos

17   Decl.) (Docket No. 90-9).  This form of access could be as simple as typing

18   "facebook.com" into an internet browser and hitting the "enter" key.  Such "access"

19   is not wrongful nor relevant and has no probative value as to personal jurisdiction.[11]

20

21       [10] Facebook drafted a different "access" request reasonably related to potentially wrongful
     access: Request No. 27 asked for any code that StudiVZ used to "extract information from any
22   website, including thefacebook.com or Facebook.com."  StudiVZ answered that request.

23       [11] When Facebook claims that defense counsel, Stephen Smith, said that StudiVZ "might
     stipulate to having 'done what Facebook claims they did,'" Facebook refers to meet and confer
24   conversations in which Mr. Smith provided examples of possible or likely access that are not
     even alleged to be wrongful. Mr. Smith said in substance, "if that is the type of access you are
25   looking for, you do not need discovery into it because we would probably stipulate to that, *but
     that is not wrongful and is not alleged to be wrongful by Facebook in its complaint*."  Mr. Smith
26   did <u>not</u> say that StudiVZ did the copying for which Facebook was suing StudiVZ.  To the
     contrary, he said that, if Facebook was trying to discover whether these types of non-actionable
27   access occurred, he presumed they did.  Simply looking at facebook.com from Germany cannot
     be wrongful and cannot create personal jurisdiction.  If the judge presiding over the parallel case
28   in Germany were to "access" Facebook's website to compare it to StudiVZ's website, would that
     make him/her subject to personal jurisdiction in the United States? (<u>See</u> Smith Decl., ¶ 35(b)).

STUDIVZ'S OPPOSITION TO FACEBOOK, INC.'S MOTION TO COMPEL

1    These examples of the overbreadth problem, and many others like them,

2    were discussed in detail during the numerous meet and confer conversations

3    between the parties.  (Smith Decl., ¶¶ 21-51).  Facebook refused to tie access to any

4    conduct that was alleged to be wrongful in the complaint, let alone any conduct that

5    might have been aimed at or caused harm in *California*.  (Smith Decl., ¶ 35(f)).  For

6    that reason, the motion should be denied.

7              **b.      Facebook's "Terms of Use" Argument Does Not Save**

8                        **These Requests.**

9        Facebook separately argues that it is entitled to a response to these requests

10   because they might capture examples of StudiVZ employees creating user accounts

11   on facebook.com.  Facebook argues that such information is relevant because its

12   user accounts are subject to "Terms of Use" that contain a forum selection and

13   jurisdiction provision.  (Mot. at 5:21-6:9).  This argument fails for many reasons.

14       First, Facebook again seeks to use an overly broad set of requests to try to

15   discover only a narrow category of information that it speculates might exist.  As

16   noted above, this is improper.  If Facebook wanted to discover this category of

17   potential information, it should have served a request that asked for it.  It did not do

18   so even after defendants explained in writing on October 27, 2008 and again on

19   November 17, 2008, and during meet and confer from November 26, 2008 through

20   January 6, 2009, that these requests were overbroad.

21       Second, Facebook has access to its own users' accounts.  By definition, any

22   such user account is created within Facebook's own website.  So, if any such

23   evidence existed, Facebook could have presented it to the Court.  It has not done so.

24       Third, Facebook has presented no evidence that any such user accounts that

25   might have been created by StudiVZ *employees* were created on behalf of or bind

26   StudiVZ (as opposed to the employees as individuals).  <u>Core-Vent Corp. v. Nobel</u>

27   <u>Industries</u>, 11 F.3d 1482, 1486, n.3 (9th Cir. 1993) (jurisdiction over employee of a

28   corporation and jurisdiction over the corporation itself are <u>not</u> the same thing).  And

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    under German law, an employee may not bind his/her employer without a written

2    power of attorney. German Civil Code (Buergerliches Gesetzbuch), ¶¶ 164(1),

3    167(1) and 177(1). This makes all of the difference in the world, not only because of

4    the obvious privacy concerns, but also because such accounts are not relevant to

5    anything alleged in Facebook's complaint. As to privacy, defendants would violate

6    German law, subjecting themselves to potential criminal prosecution, if they were to

7    produce this information. As to relevance, there is simply no conceivable reason for

8    Facebook to seek information and documents about private accounts.

9        Fourth, even if a StudiVZ employee created a user account and used it in

10   connection with his/her work for StudiVZ, such use would not bind StudiVZ to

11   Facebook's Terms of Use. Facebook admits that its Terms of Use are an "adhesion"

12   contract. (Mot. to Compel at 24:2-10). Those Terms of Use do _not_ purport to relate

13   to or bind anyone other than the individual user him/herself. They do not purport to

14   bind the user's employer, nor do they state that anyone who uses their account in a

15   commercial way is deemed to bind the commercial concern for whom he/she is

16   acting. The law in the Ninth Circuit is clear that adhesion contracts are _strictly_

17   construed against the drafter and in favor of the other party. See, e.g., Fireman's

18   Fund Ins. Co. v. Cho Yang Shipping Co., 131 F.3d 1336, 1338 (9th Cir. 1997); APL

19   Co. Pte Ltd. v. UK Aerosols Ltd., 2007 AMC 2519, 2007 U.S. Dist. LEXIS 80247,

20   Case No. No. C 05-0646 MHP at *7 (N.D. Cal. Oct. 30, 2007). So Facebook's

21   attempt to bind StudiVZ to potential accounts that individuals associated with

22   StudiVZ might have created fails as a matter of law.[12]

23   _____

24   [12] Facebook wrongly claims that "courts routinely look to [adhesion] contracts in
     determining personal jurisdiction and forum issues." (Mot. at 24:11-21). But those cases all

25   involve the enforcement of the clause against the person who actually entered into the adhesion
     contract, not some other entity on whose behalf the individual was allegedly acting. And many of

26   those cases found the adhesion contract totally unenforceable. Hunt v. Superior Court, 81 Cal.App.
     4th 901, 909 (2000) (forum selection clause _invalid due to its lack of notice_ to non-drafting party;

27   case thus supports StudiVZ's argument that lack of notice and lack of assent invalidate an otherwise
     enforceable forum selection clause); S.E.C. v. Ross, 504 F.3d 1130, 1149 (9th Cir. 2007) (did not

28   involve a forum selection clause, examined whether intervening party (_continued on next page_)

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    Fifth, it is undisputed that Facebook has waived any jurisdiction/forum clause

2    in its Terms of Use.  This Court has already noted that Facebook filed its own lawsuit

3    over "substantially similar (if not identical)" issues as are raised in this lawsuit in

4    Germany.  (Reporter's Transcript at 4:27-28 [Docket No. 68]; Walker Decl. in

5    Support of Motion to Dismiss, ¶¶ 4-6; Ex. F, pp. 2-3 [Docket No. 70]).  That lawsuit

6    includes, specifically, claims for breach of Facebook's _Terms of Use_.  Facebook may

7    not, on the one hand, claim that defendants are bound by the jurisdiction/forum

8    provision in its Terms of Use while, on the other hand, Facebook is not.[13]

9        Facebook has provided _no_ evidence to support its theory and _no_ authority for

10   the enforcement of the adhesion contract against these company defendants.

11   **5.      Interrogatory 15 -- "IDENTIFY ALL PERSONS responsible**

12   **in any manner for the design, programming and maintenance**

13   **of the www.studivz.net website, including without limitation**

14   **the PERSON, job descriptions, authorities, dates in these**

15   **positions, duties and responsibilities."**

16   This interrogatory literally asks for the identity of all employees who work

17   for StudiVZ (except maybe human resources personnel).  Facebook's counsel,

---

18   (_continued from previous page_)

19   consented to personal jurisdiction by intervening; court held contesting party _had not_ consented to
     personal jurisdiction); Carnival Cruise v. Shute, 499 U.S. 585, 590 (1991) (court enforced forum

20   selection clause in cruise ticket adhesion contract against the actual individual traveler who bought
     the ticket; and moreover said "we do not address the question of whether respondents had sufficient

21   notice of the forum selection clause before entering the contract for passage.  Respondents
     essentially have conceded that they had notice of the forum-selection provision.").  StudiVZ,

22   however, does _not_ concede that it had notice of Facebook's forum selection provision.

23       Facebook's reliance on Cairo, Inc. v. Crossmedia Services, Inc., 2005 U.S. Dist. LEXIS 8450,
     Case No. C 04-04825 JW (N.D. Cal. April 1, 2005), is also unavailing.  In that case, there was no

24   dispute that the _company defendant had created_ an automated "spider" program on its computer
     system to invade the plaintiff's computer to look for data.  That is not the case here.  Indeed, StudiVZ

25   answered RFP 27, which asked about such programs, by stating that there were no such documents.

26       [13]  In any event, mere access of an internet server, without more, would obviously be
     insufficient to create jurisdiction.  Given the vast number of internet servers in California that are

27   accessible to anyone in the world with an internet connection, such a rule would mean that nearly
     every person in the world would be subject to jurisdiction here merely for having visited the

28   website from their home outside the United States.  That cannot be the law.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Annette Hurst, recognized the problem with this request, and agreed to accept, as a complete answer, the names of the current heads of StudiVZ's operational divisions and a partial organizational chart showing those people and their positions.

Facebook's claim that it never agreed to that compromise is demonstrably false. On November 26, 2008, Ms. Hurst asked for the heads of each StudiVZ operational division. On December 2, 2008, defense counsel gave Ms. Hurst those names. (Smith Decl., ¶ 36). Ms. Hurst requested the names again in a December 4, 2008 e-mail: "Can you send me a document with the names and titles we discussed yesterday so I can figure out what we need to do here and call you back?" (Ex. V). Defense counsel immediately re-identified the people that he had identified "yesterday." His email ended: "Customer service, CFO, Legal and HR I understand you do not care about, but tell me if I am wrong." (Ex. V). That same day, defense counsel wrote to Ms. Hurst, confirming that StudiVZ would produce "an organizational chart showing the heads of the various departments of the company." (Ex. S). StudiVZ then produced two organizational charts showing the heads of each operational division as of July 18, 2008 and as of January 1, 2009. Ms. Hurst _never_ requested an organizational chart showing the people who were responsible for the design, programming and maintenance of StudiVZ when StudiVZ was formed. (Smith Decl., ¶ 36). The request does not even read that way. It asks for current information (using the present tense "responsible") and does _not_ ask for past information (i.e., "were responsible").[14]

Facebook again seeks to justify this overbroad request on the ground that it _might_ result in the identification of _someone_ who _might_ have knowledge of _something_ relevant. That is improper and should not be allowed.

[14]  A close reading of Mr. Avalos' declaration tells the story. He states only that Ms. Hurst asked for an "organizational chart." He does not describe the requested chart, who would be on it or what it would show. He admits that Mr. Smith agreed to recommend to his client that it produce the chart. The chart was then produced. Mr. Avalos concludes: "but the chart does not state which employees were responsible for the _initial_ creation, development and implementation of the StudiVZ websites." (Avalos Decl., ¶ 23) (emphasis added). But Mr. Avalos never states that defendants were ever asked to produce such a chart or that they ever agreed to do so.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

6.    **The "Adhesion Contracts" Requests**

Interrogatory Nos. 1, 2 and 9 and Request for Production Nos. 1 and 13 seek information about StudiVZ's California contacts.  They are overbroad in some respects, but StudiVZ answered each request to the extent it was reasonable, providing Facebook with most of the information it wanted.  As of January 9, 2009, StudiVZ thought this issue had been resolved because it was not even mentioned in Facebook's last meet and confer letter dated January 9, 2009.  (Smith Decl., ¶ 53).

These requests concern general jurisdiction.  They seek information about StudiVZ's general contacts with California.  The evidence that StudiVZ produced, which Facebook does not dispute, proves that StudiVZ is not subject to general jurisdiction and has no contacts with California.  StudiVZ has already stated that it had no accounts receivable or payable with any California resident on the date the case was filed (which is the relevant date for general jurisdiction purposes).  It answered that it had only one _negotiated_ contract in effect with a California resident or that called for the application of California law as of July 18, 2008.  It answered the other interrogatories directed to its contacts, or lack thereof, with California.  It objected only to "adhesion" contracts -- contracts that were not negotiated in any way but were given to StudiVZ on a take it or leave it basis when StudiVZ purchased software or some other ubiquitous product that was accompanied by "terms of use," an "end user license agreement," or some other form contract.

The objection is well-founded.  The burden of having to search for, gather and produce every adhesion contract StudiVZ has ever had, and then reviewing all of those contracts to see if they are with a California addressee or contain a California choice of law provision, greatly outweighs any probative value such contracts could possibly have as to jurisdiction.  No number of adhesion contracts could establish general jurisdiction over StudiVZ because they have no tendency to prove "continuous or systematic general business contacts within the state" that "approximate[] physical presence." Schwarzenegger v. Fred Martin Motor Co.,

374 F.3d 797, 801 (9th Cir. 2004). The standard for establishing general jurisdiction is high, and requires that the defendant's contacts with the forum state "approximate physical presence." <u>Tuazon v. R. J. Reynolds Tobacco Co.</u>, 433 F.3d 1163, 1169 (9th Cir. 2006).[15] Adhesion contracts are not probative on that issue.

As a total red herring, Facebook makes a new argument that it never raised in meet and confer -- that a request for all adhesion contracts is proper because such a request would necessarily scoop up StudiVZ's and Facebook's <u>own</u> Terms of Use. This is a red herring because both parties already possess and have instant public access to both parties' Terms of Use. Both parties' Terms of Use are available online to the world. Either party can print the other parties' Terms of Use at any time. Facebook's argument makes no sense. But, if Facebook wants StudiVZ to produce a copy of its Terms of Use or Facebook's Terms of Use, it will do so.

## IV.  **CONCLUSION**

For the above reasons, StudiVZ respectfully requests that Facebook's motion be denied in its entirety.


DATED: February 10, 2009              GREENBERG GLUSKER FIELDS
                                      CLAMAN & MACHTINGER LLP


                                      By:    /s Stephen S. Smith
                                      STEPHEN S. SMITH
                                      Attorneys for Defendants studiVZ Ltd.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

---

[15] Like virtually all businesses, StudiVZ presumably uses Adobe Acrobat software to read .pdf documents. Adobe is a California-based company. The fact that StudiVZ probably uses Acrobat, which presumably includes terms of use or an end user license agreement, does not tend to prove that StudiVZ is subject to general jurisdiction in California. In fact, Facebook has already conceded that StudiVZ is <u>not</u> subject to general personal jurisdiction in California because it has completely failed to argue the contrary in its opposition to StudiVZ's Motion to Dismiss.