STEPHEN S. SMITH (SBN 166539)
SSmith@GreenbergGlusker.com
WILLIAM M. WALKER (SBN 145559)
WWalker@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendants studiVZ Ltd.,
Holtzbrinck Networks GmbH, and
Holtzbrinck Ventures GmbH

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> v. <br><br> STUDIVZ LTD., VERLAGSGRUPPE GEORG VON HOLTZBRINCK GmbH, HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH, and DOES 1-25, <br><br> Defendant. | Case No. 5:08-CV-03468 JF <br> Assigned To: Hon. Jeremy Fogel <br><br> **DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF DEFENDANTS' OPPOSITION TO FACEBOOK, INC.'S MOTIONS TO COMPEL AND FOR SANCTIONS; EXHIBITS A-Y** <br><br> [Memoranda of Points and Authorities, and Declaration of William M. Walker concurrently filed] <br><br> Complaint Filed: July 18, 2008 |

37106-00002/1674571.5

SMITH DECLARATION IN OPPOSITION TO FACEBOOK'S MOTIONS TO COMPEL AND FOR SANCTIONS

# DECLARATION OF STEPHEN S. SMITH

I, Stephen S. Smith declare:

1.    I am an attorney at law duly licensed to practice in the State of California and before the United States District Court for the Northern District of California, and am a partner at Greenberg Glusker Fields Claman & Machtinger LLP, counsel of record for Defendants StudiVZ Ltd., Holtzbrinck Networks GmbH, and Holtzbrinck Ventures GmbH ("Defendants").  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto under oath.  This declaration is submitted in opposition to Facebook's motion for sanctions and motion to compel.

2.    In Facebook's two motions and in the declarations filed in support thereof, Facebook and its counsel declarants repeatedly exaggerate, mischaracterize and misquote statements and actions that they attribute to me.  This declaration corrects those false statements and fills in the gaps in the factual record.  Sections A-B are totally irrelevant to the current discovery dispute that is the subject of Facebook's motion to compel, but are included only because Facebook has seen fit to dredge up long-past event in the case in connection with its motion for sanctions.  Because Facebook has raised the issue, defendants feel compelled to respond.

## A.    Defendants Have *Not* Been Engaged in a "Strategy of Stalling and Delaying the Litigation" Since the "Outset of the Case."

3.    In its Motion for Sanctions, Facebook accuses Defendants of pursuing a strategy of stalling and delaying the litigation "from the outset" of the case.  There

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

is no support for this claim.  (Mot. for Sanctions at 2:7-8)(Docket No. 86).
Facebook has made this claim before only to have it rejected by the Court.

    4.    Facebook first raised this claim in connection with its Motion for
Expedited Discovery and companion Motion to Shorten Time, filed on September
9, 2008.  (Docket Nos. 11 and 13).  In those motions, Facebook sought permission
to take early, expedited discovery related to personal jurisdiction and sought an
order shortening time to have the discovery motion heard on shortened notice.
Alternatively, Facebook sought an order from the Court requiring defendants to
respond to the complaint _early_, before their responses were actually due.

    5.    In the opposition of defendant Verlasgruppe Georg von Holtzbrinck
("VGH"), which was the only defendant who had yet appeared in the case,
defendant pointed out the fallacy of Facebook's argument, as follows:

    6.    On July 24, 2008, six days after the complaint in this action was filed,
Facebook sent a Waiver of Service of Process to defendants and asked them to sign
it.  Under the FRCP, defendants were given 60 days to sign the Waiver.  Facebook
asked defendants to sign it earlier than those 60 days, which defendants did.  I, on
behalf of the defendants, signed it on August 25, 2008, 28 days _early_.  That meant
that defendants had 90 days to respond to the complaint from the date the Waiver
was sent to them.  Because the Waiver had been sent on July 24, 2008, defendants
has until October 22, 2008 to respond.

    7.    Yet, during a call that I had with Facebook's counsel Neel Chatterjee
on September 2, 2008, Mr. Chatterjee took the position that defendants were really
required to respond within 20 days of my signing of the Waiver on August 25,
2008.  That was a blatant falsehood.  It was untrue under the FRCP.  It was

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SMITH DECLARATION IN OPPOSITION TO FACEBOOK'S MOTIONS TO COMPEL AND FOR SANCTIONS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    inconsistent with the Waiver that *he had drafted* and it was inconsistent with the

2    letter *he had drafted* that accompanied that Waiver.  I told Mr. Chatterjee that he

3    was wrong both orally on September 2, 2008 and in a subsequent emailed of the

4    same date.

5

6        8.    That is what then triggered Facebook to file its Motion for Expedited

7    Discovery and Motion to Shorten Time on September 9, 2008.  Facebook in those

8    motions sought to force defendants to either appear in the case *before* the date

9    under the Waiver of Service of Process or submit to discovery before they had even

10   appeared in the case.

11

12       9.    In its opposition to those motions, VGH made the obvious point that

13   Facebook was seeking to renege on its own Waiver and was accusing defendants of

14   "delay" by having done *exactly what Facebook had asked them to do*.

15

16       10.    The Court denied Facebook's Motion for Shorten Time by Order dated

17   September 15, 2008.  (Docket No. 20).

18

19   **B.    Facebook's Statements About the Rule 26(f) Conference Are**

20       **Totally False.**

21

22       11.    In its Motion for Sanctions, Facebook writes that Defendants "initially

23   refused to hold the obligatory Rule 26(f) conference," and that Facebook was

24   therefore "forced the file a Motion for Expedited Discovery."  (Mot. for Sanctions

25   at 4:10-12) (Docket No. 86).  Facebook then claims that Defendants only "agreed to

26   hold the conference in return for the withdrawal of the motion and the voluntary

27   dismissal without prejudice of defendant Verlasgruppe Georg von Holtzbrinck."

28   ("VGH").  (Id. at 4:12-14).  In support of these statements, Facebook cites to the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

declaration of Julio Avalos at paragraphs 3 and 4.  As set forth herein, Facebook's and Mr. Avalos' statements are false.

12.    First, Facebook did not file its Motion for Expedited Discovery due to my alleged refusal to hold a Rule 26(f) conference.  As noted above, Facebook filed its Motion for Expedited Discovery on September 9, 2008.  (Docket No. 11).  Facebook asked for a Rule 26(f) conference *for the first time* in a letter dated September 10, 2008, which was not actually sent to me until September 11, 2008, a true and correct copy of which is attached here to as Exhibit "A."  Prior to that time, the issue had never been raised by either party.  Thus, the Motion for Expedited Discovery was <u>not</u> caused by my alleged refusal to hold the Rule 26(f) conference.

13.    Second, I never "refused" to hold the conference.

a.    When Facebook's counsel, Warrington Parker, sent me his Thursday, September 11, 2008 letter asking for a Rule 26(f) conference, I responded via email the next day, September 12, 2008, by explaining that I had been out of the office on Thursday and was out that Friday because of my wife's out patient surgery, but that I would respond on September 15, 2008.  A true and correct copy of my September 12, 2008 e-mail is attached hereto as Exhibit "B."

b.    Then, on September 15, 2008 at 4:32 p.m., before Mr. Parker and I actually spoke, he sent me another letter via e-mail following up on his September 11th request to hold a Rule 26(f) conference, a true and correct copy of which is attached hereto as Exhibit "C."  After I received Mr. Parker's September 15, 2008 letter, I telephoned him and we spoke.  As far as I am aware, Julio Avalos was not on that call.  I *agreed* to have a Rule 26(f) conference at the appropriate time but said that I thought it was "premature" given that only one defendant had

appeared in the case and that the other defendants date to respond was October 22, 2008. I also told Mr. Parker that I was not aware of any looming deadline to hold the conference. Mr. Parker responded by telling me that he thought there was a specific Court Order setting a Case Management Conference that did, under the FRCP, require us to hold the Rule 26(f) conference by a particular date. I had not seen any such Order because Facebook had not yet served it on me. However, I said I would look on the Court's website for such an Order and get back to him once I had reviewed it. Facebook's counsel later sent me the Order on September 17, 2008. A true and correct copy of the email from Facebook's counsel attaching a copy of the Order is attached hereto as Exhibit "D."

c. The next day, September 16, 2008, I looked on the Court's website and saw that there was an Order setting the Case Management Conference for November 7, 2008. (Docket No. 5). Under the FRCP, that required the parties to file their Case Management Conference Statement and Joint Rule 26(f) report by October 31, 2008, which meant that counsel were required to conduct the Rule 26(f) conference before that date. After seeing the Order, I telephoned Mr. Parker. I told him that my statement the day before that a Rule 26(f) conference was "premature" was incorrect in light of the Court Order setting the Case Management Conference for November 7, 2008. Mr. Parker and I then discussed whether to hold the conference and, if so, when to hold the conference.

d. The "whether" to hold the conference portion of the conversation related to the fact that Facebook already had pending a motion for expedited discovery, which was scheduled to be heard before October 31, 2008, and Mr. Parker said that Facebook was considering asking for an "Administrative Conference" via motion. Therefore, the open question was whether Facebook

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

would go forward with that process prior to and potentially in lieu of the Rule 26(f) conference.

e.     The "when" to hold the conference portion of the conversation related to the fact that Facebook was supposedly considering dismissing defendant VGH and Mr. Parker and I agreed that it made sense to hold the conference only after that decision had been made so that I, as defense counsel, knew whether or not I needed to obtain information required by the Court's Case Management Order for that particular defendant.

f.     This conversation (albeit without all of this detail) was confirmed by me in a letter I drafted and sent later that same day, a true and correct copy of which is attached hereto as Exhibit "E."   Mr. Parker never sent any letter disagreeing with my confirmation of our conversation and never accused me of refusing to agree to hold such the Rule 26(f) conference.  It was also Mr. Parker's idea to re-visit the issue of whether and when to hold the conference *after* Facebook had decided whether to dismiss VGH and go forward with a motion for an Administrative Conference.  That was not my idea, because until Mr. Parker said that Facebook was considering dismissing VGH, I had no idea that it would consider doing so.  I had asked Facebook's counsel, Mr. Chatterjee and Mr. Parker, to dismiss VGH before VGH filed its motion to dismiss.  They had not agreed to do so and had, thus, forced me to file that motion to dismiss.  Until Mr. Parker raised the fact that Facebook might dismiss VGH after all, I thought Facebook had irretrievably made the decision not to do so.

14.     Third, I did not place conditions on holding the Rule 26(f) conference. Facebook's claim that I agreed to hold that Rule 26(f) conference only in "return

for withdrawal of the motion [for expedited discovery] and the voluntary dismissal without prejudice of defendant [VGH]" is also false.

a. As my September 16, 2008 letter (Exhibit E) makes clear, Facebook had told me that it was *considering* dismissing VGH on September 15 or 16, 2008, but it had not committed to doing so yet. On September 29, 2008, 13 days after I had agreed that we were required to hold the Rule 26(f) conference by Court Order, Mr. Parker told me for the first time that Facebook would, in fact, dismiss VGH. Mr. Parker, on behalf of Facebook, offered to dismiss VGH on my agreement to a "date certain" for the Rule 26(f) conference, and I immediately accepted that offer. Mr. Parker and I discussed the issue the same day and agreed to hold the conference on October 9, 2008, which was then confirmed in an email from me to Mr. Parker, a true and correct copy of which is attached as Exhibit "F."

b. I also never conditioned my agreement to hold a Rule 26(f) conference on Facebook first agreeing to withdraw its Motion for Expedited Discovery. On September 16, 2008, I had acknowledged to Mr. Parker that the parties were required to hold the Rule 26(f) conference before October 31, 2008. As of September 16, 2008, Facebook had not agreed to withdraw its Motion for Expedited Discovery. To the contrary, on September 18, 2008, I wrote a letter to Mr. Parker, making an offer to resolve the issues raised in Facebook's Motion for Expedited Discovery, a true and correct copy of which is attached hereto as Exhibit "G." The next day, Mr. Parker *rejected* my proposal. A true and correct copy of that letter is attached as Exhibit "H." On September 23, 2008, Defendants filed their oppositions to Facebook's Motion for Expedited Discovery, which remained on calendar.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

c. Mr. Parker and I then held the Rule 26(f) conference on October 9, 2008 as we had agreed on September 29, 2008. (Rule 26(f) Report and Discovery Plan, ¶ 1) (Docket No. 50) (stating that the parties held the Rule 26(f) conference on October 9, 2008). Facebook's Motion for Expedited Discovery was still on calendar. I had not demanded that it be withdrawn, and Facebook had not offered to withdraw it.

d. During the Rule 26(f) conference, Mr. Parker told me *for the first time* that Facebook was *considering* withdrawing the Motion for Expedited Discovery, though he did not tell me why. Also, during the Rule 26(f) conference, Mr. Parker told me that it was Facebook's position that it could commence discovery into the merits of the case irrespective of whether such discovery had anything to do with personal jurisdiction or forum. I said that I disagreed.

e. The next day, October 10, 2008, Facebook did in fact withdraw the Motion for Expedited Discovery, again without telling me why. I obviously did *not* condition holding the Rule 26(f) conference on Facebook's withdrawal of the Motion for Expedited Discovery since Facebook withdrew its motion (on October 10) *after* the Rule 26(f) conference had already taken place (on October 9).

**C.** **Defendants Did Meet and Confer with Facebook *Before* Its Responses to the Discovery Were Due and Agreed to Set the Hearing Date of the Motions to Dismiss Four Months After They Were Filed to Allow Facebook Time to Complete That Discovery**

15. Facebook served its first set of document demands and interrogatories on the remaining defendants on October 14, 2008. True and correct copies of that discovery are attached hereto as Exhibits "I" through "N." As of that date, the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    remaining defendants in the case -- StudiVZ, Holtzbrinck Ventures and Holtzbrinck

2    Networks -- had not yet responded to the Complaint.[1]

3

4         16.    On October 20 and 21, 2008, just prior to filing the remaining

5    defendants filing motions to dismiss, I met and conferred with Mr. Parker about

6    proposed hearing dates.  He asked for a hearing date in February 2009 so that

7    Facebook would have an opportunity to take jurisdictional discovery prior to having

8    to file oppositions to the Motions to Dismiss.  I agreed, and the date selected was

9    February 13, 2009, almost four months after the motions to dismiss were to be filed.

10

11        17.    During our October 21, 2008 telephone call, I offered to meet and

12   confer with Mr. Parker regarding the discovery Facebook had served on October

13   14, 2008.  Mr. Parker said he wanted to have such a meet and confer but was not

14   prepared to do so yet.  Instead, he wished to review the Motions to Dismiss (to be

15   filed the next day) and _reconsider_ the discovery that had been served on October

16   14, 2008 in light of those motions to dismiss to determine if the discovery requests

17   needed to be revised or altered in light of the motions.  For that reason, we agreed

18   to have a follow up call to discuss that issue on October 24, 2007.

19

20        18.    On October 22, 2008, the defendants filed their Motions to Dismiss for

21   lack of personal jurisdiction and _forum non conveniens_.  (Docket Nos. 41 and 42).

22

23        19.    On October 23, 2008, Mr. Parker called and asked me to delay the

24   meet and confer scheduled for Friday October 24, 2008 to Monday, October 27,

25   2008.

26

27

28
         [1]  Facebook had dismissed VGH on September 30, 2009. (Docket No. 27).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

20.     On October 27, 2008, Mr. Parker and I (along with my partner Aaron Moss) had our first meet and confer about the discovery that Facebook had served on October 14, 2008.  I was disappointed in the progress of that call.  Even though Mr. Parker had asked for the additional time to review the Motions to Dismiss before holding the meet and confer so that he could determine what was in dispute, he explicitly refused to explain what relevant matters were in dispute or what discovery Facebook actually needed in light of the facts and arguments presented in the motions.  For example, when my partner, Mr. Moss, asked Mr. Parker for the basis upon which Facebook claimed that the Holtzbrinck defendants were subject to jurisdiction in California, Mr. Parker refused to answer.  Mr Parker insisted that Facebook was entitled to all of the discovery served on October 14 and 15, 2008 without any whatsoever.  I recall specifically noting that Mr. Parker's position was inappropriate because many of the requests were horribly overbroad on their face.  I also recall telling Mr. Parker that the interrogatories served on Holtzbrinck Networks and Holtzbrinck Ventures did not define "YOU" as either defendant, but instead defined "YOU" as VGH, who had been dismissed.  I noted that as an example of why Facebook was required to fix at least those interrogatories.  But Mr. Parker held with his position to stand by the discovery exactly as it had been drafted.

21.     Shortly thereafter, I wrote a letter to Mr. Parker confirming what had occurred during our October 27, 2008 meet and confer.  A true and correct copy of that letter is attached as Exhibit "O."  In that letter I pointed out, *inter alia*, specific and general problems with the discovery as drafted by Facebook.  For example, I pointed out (again) that the interrogatories served on Holtzbrinck Networks and Holtzbrinck Ventures defined "YOU" as Verlasgruppe Georg von Holtzbrinck, which was the defendant that Facebook had previously dismissed.  I also pointed out that most of the requests, as phrased, sought information and documents that

1    had nothing to do with personal jurisdiction and instead were directed solely to the

2    underlying merits of the case.

3

4        22.    In his declaration, Mr. Avalos writes that I "refused to identify which

5    requests or portions thereof that [I] found objectionable."  That is not true.  My

6    letter dated October 28, 2008 specifically delineated many of the problems with the

7    requests.  (Exhibit O).  But, as my letter also explained (and as I had explained on

8    the October 27, 2008 telephone call), given Mr. Parker's refusal to narrow or

9    modify the requests *in any way*, I was not going to re-draft Facebook's voluminous

10   and overbroad discovery requests.  I explained that, without Facebook's

11   cooperation, I was simply going to respond to the discovery as drafted on the due

12   date, which I did.  Mr. Avalos seems to imply that Defendants were required to

13   respond to the discovery requests early and, indeed, within only 13 days of having

14   been served with them via overnight mail.  That is neither reasonable nor required

15   by the Court's Rules and given Mr. Parker's refusal to modify them in any way,

16   there was nothing left to do other than respond as required under the Rules.

17

18       23.    Defendants responded timely to the discovery requests on November

19   17, 2008 without asking for any extension of time.  The responses were served by

20   email so that Facebook's counsel would have them right away.

21

22   **D.     The Parties Were "Largely Able to Work Out Every Issue"**

23          **Related to Facebook's Discovery Requests.**

24

25       24.    Given that Mr. Parker had refused on October 27, 2008 to modify the

26   discovery as it was originally drafted and served on October 14, 2008, Defendants

27   original responses contained many objections.  Those objections were not "uniform,

28   blanket objections," as Facebook argues, but rather raised specific problems with

respect to whichever request was at issue in the response. Moreover, Facebook's implicit argument that Defendants' objections were improper is inconsistent with Facebook's own subsequent decision to limit, narrow or withdraw altogether virtually *every single request*. In sum, the meet and confer narrowing process that followed proves that even Facebook believes that almost all of Defendants' objections were valid.

25. On November 21, 2008, Facebook's counsel Annette Hurst asked for a meet and confer on "Tuesday or Wednesday" of the next week. I agreed and it was scheduled for Wednesday, November 26, 2008 at 9:30 a.m. During the November 21, 2008 telephone call, Ms. Hurst and I had a brief preview meet and confer about some of the issues with the discovery, which led Mr. Hurst to draft a meet and confer letter to me dated November 21 (but sent November 25), 2008 in anticipation of our more formal meet and confer, a true and correct copy of which is attached hereto as Exhibit "P."

26. I participated in the November 26, 2008 meet and confer telephone call along with my partner William Walker. Ms. Hurst and Julio Avalos participated on behalf of Facebook. The November 26, 2008 meet and confer was detailed and productive. It lasted more than two hours. It was then followed by two more meet and confer on December 2 and 3, 2008. During these two calls, the parties were able to reach many agreements related to the specific discovery requests served by Facebook.

27. First, after some back and forth, Ms. Hurst and I came to agreement concerning how the Holtzbrinck defendants would supplement their interrogatory responses. Those agreements are actually confirmed as such in the Holtzbrinck defendants' supplemental interrogatory responses, which were served by my office

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   on Facebook on December 24, 2008.  True and correct copies of those supplemental

2   responses are attached hereto as Exhibits "Q" and "R."  Since that time, Facebook's

3   counsel _never_ raised a _single_ complaint about the Holtzbrinck defendants'

4   responses to Facebook's interrogatories (until it filed its motion to compel on

5   January 27, 2009).

6

7       28.     Second, after some back and forth, Ms. Hurst also tentatively agreed to

8   _withdraw_ Facebook's document demands served on the Holtzbrinck defendants -- the

9   words she used were "let's put a pin in it" -- in return for the Holtzbrinck defendants'

10  agreement to produce the following two categories of documents: (a) any portions of

11  the agreement by which they purchased StudiVZ, and any due diligence documents

12  associated with that acquisition, that made any explicit or implicit mention of

13  Facebook, and (b) any StudiVZ board meeting minutes that contained any implicit or

14  explicit reference to Facebook.  I said that I would recommend to my clients that they

15  produce those two categories of documents.  I drafted a letter memorializing this

16  agreement and sent it to Ms. Hurst on December 4, 2008.  A true and correct copy of

17  that letter is attached hereto as Exhibit "S."  That letter states that, at that time, I was

18  still waiting for confirmation from the client as to category (b).  However, I later

19  learned that there were no documents in category (b), so the issue became moot.  The

20  Holtzbrinck defendants have since produced the category (a) documents, and I have

21  informed Facebook's counsel that there are no documents in category (b).  Since this

22  agreement was reached on November 26, 2008, and since my letter dated December

23  4, 2008, Facebook _never_ raised any complaint about the Holtzbrinck defendants'

24  document production (again, until they filed the motion to compel on January 27,

25  2009).

26

27      29.     Third, Ms. Hurst and I were also able to resolve our disagreements

28  about many of the document demands and interrogatories served on StudiVZ.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   Those agreements are reflected in my letter dated December 4, 2008 and in

2   StudiVZ's supplemental interrogatory responses, which were served on December

3   24, 2008, and in StudiVZ's supplemental document responses, which were served

4   on January 9, 2009.  True and correct copies of those supplemental responses are

5   attached hereto as Exhibits "T" and "U."

6

7       30.     Thus, as of December 4, 2008, _all_ discovery issues with respect to the

8   two Holtzbrinck defendants (interrogatories and document demands) and _most_ of

9   the discovery issues with respect to StudiVZ had been resolved by agreement

10  among counsel.

11

12      31.     During this same November-early December time period, the parties

13  also resolved many other pending discovery issues.  First, Facebook insisted that

14  defendants serve initial disclosures despite the pendency of the motions to dismiss,

15  which defendants did on December 2, 2008.  I have not heard any further word

16  from Facebook about that issue.  Second, Facebook had served Rule 30(b)(6)

17  deposition notices, but Mr. Hurst later informed me, at the Case Management

18  Conference on November 7, 2008 (later confirmed in emails between us) that

19  Facebook had withdrawn those notices.  Ms. Hurst said that she intended to re-draft

20  the topics in those notices and re-serve them, but neither she nor anyone else ever

21  did.  Third, in early December 2008, Ms. Hurst and I agreed to schedule the

22  depositions of Martin Weber and Michael Brehm to occur at Facebook's counsel's

23  office in Frankfurt, Germany on January 12 and 13, 2009.  Fourth, Ms. Hurst told

24  me that she also wanted to depose Ehassan Dariani and Dennis Bemmann, two of

25  StudiVZ's founders, who were no longer affiliated with StudiVZ and therefore not

26  within the Defendants' control to produce for deposition.  Ms. Hurst stated that she

27  intended to seek to compel their appearance at deposition in Germany through the

28

SMITH DECLARATION IN OPPOSITION TO FACEBOOK'S MOTIONS TO COMPEL AND FOR SANCTIONS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   Hague Evidence Convention and asked Defendants to agree not to object.  I agreed

2   that Defendants would not object.

3

4       32.     For the above reasons, when the parties appeared at the hearing of

5   Defendants' Motion for Protective Order on December 16, 2008, much of the

6   impetus for that motion had been resolved by agreement.  Ms. Hurst and I

7   represented truthfully to the Court at the hearing on December 16, 2008 that we had

8   "largely been able to work out every issue" and that "very few" issues remained.

9   (*See* Exhibit 14 to Avalos Decl. in Support of Motion to Compel, pp. 5-13 of 28

10  [Reporter's Transcript ("RT"), pp. 4-12]) (Docket No. 90-15).

11

12      33.     As Ms. Hurst accurately told the Court on December 16, 2008, the

13  "very few issues" that remained related to issues of "burden versus relevance" and

14  whether the discovery was for "personal jurisdiction or merits purposes."  (Id. at pp.

15  5-6 of 28 [RT, pp. 4-5]).

16

17      **E.      Mr. Avalos Has Misrepresented the Content of My Statements**

18              **Made During the November 26, 2008 Meet and Confer.**

19

20      34.     Throughout Facebook's Motion to Compel and Motion for Sanctions,

21  and then again in the declarations of Julio Avalos in support of those motions,

22  Facebook and Mr. Avalos misrepresent what I said on November 26, 2008 (and

23  later on January 6, 2009, which is addressed below).

24

25      35.     I never said that Defendants would simply "stipulate" to the "fact that

26  it had indeed accessed Facebook and 'done what Facebook claims it did.'"

27  (Facebook Mot. for Sanctions at 5:6-6:2) (Docket No. 86).  The discussions about

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

"access" on November 26, 2008 was itself more than one hour of the total two hour long meet and confer conversation. In summary, the following is what I said:

        a.     Some of Facebook's discovery requests sought information or documents about "YOUR" "access" of Facebook's website. "YOUR" was defined to include all employees of StudiVZ and all of StudiVZ's lawyers (and many other categories of people who might have any relationship to StudiVZ). The definition did not limit "YOU" to those people who were acting within the course and scope of their relationship with StudiVZ. I made that point to Facebook's counsel.

        b.     "Access" was not defined at all. The interrogatories and documents demands that related to "access" made no distinction between personal access or access that might be related to StudiVZ's business. They also made no distinction between access by simply looking at Facebook's home page (which anyone may access by typing in www.facebook.com into a web browser) versus access by creating a user account that would allow the user to access pages that are restricted to only users with an account. I made the point that Facebook's discovery requests did not distinguish between one type of access and another and, on their face, sought discovery into any access by anyone that had a connection to StudiVZ for any and all purposes whatsoever. I made the point that it would include access by me, Stephen Smith, simply typing in www.facebook.com to see what the Facebook website looked like to compare it to what the StudiVZ website looked like the day I was first retained. I said that "as drafted" the requests sought any form of access whatsoever, which was grossly overbroad because not all forms of access are wrongful even under Facebook's theory in the case. I said that I "assumed" or was "virtually certain" that someone falling within the overbroad definition of "YOU" must have "accessed" Facebook's website simply because (1) the definition of "YOU" included a huge number of people, any one of whom may have a *personal*

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Facebook account or had otherwise looked at www.facebook.com, (2) I had looked at Facebook's website in connection with the case, and/or (3) presumably someone at StudiVZ would have looked at Facebook's website when they received Facebook's demand letter or the Complaint (which arguably would have been within the course and scope of their employment for StudiVZ), simply to understand what Facebook was alleging against StudiVZ. I gave a whole series of different examples and recall for example thinking (although I cannot remember whether I gave this example out loud) that the Court would likely "access" Facebook's website when it looks at the exhibits that are attached to the Complaint or a motion.

c. I then said that, if Facebook intended to litigate this case on those types of broadly defined access, there would be no need to do so because it would be virtually without dispute that some form of "access" falling within such an all-encompassing definition had occurred. It would be incredible to believe no such broadly defined access had ever occurred.

d. But I then distinguished that type of access from the allegations in Facebook's complaint and I argued that the requests were overbroad and should be narrowed to focus on what was truly at issue in the case and specifically narrowed to focus on how any such access might establish personal jurisdiction over StudiVZ or not.

e. I _never_ said that I would stipulate to the wrongful acts that Facebook has alleged in its complaint. I _never_ said that defendants would stipulate to "copying" material from Facebook's website. Mr. Avalos is essentially stating that I offered to "stipulate" to a judgment in his client's favor in the case. Why would I ever say something like that? Facebook's wrongful attribution to me of such statements makes no sense.

SMITH DECLARATION IN OPPOSITION TO FACEBOOK'S MOTIONS TO COMPEL AND FOR SANCTIONS

f.	At the end of this long discussion of the issue, I told Ms. Hurst and Mr. Avalos that "access" had to be narrowed to seek only information and documents that were related to some form of allegedly wrongful access and that would have some tendency to prove or disprove personal jurisdiction or Facebook's theory about alleged intentional acts aimed at, and that purportedly caused Facebook harm in, California. If those conditions could be met, I would recommend to my client that the information and documents, as narrowed, be produced. Ms. Hurst was not then willing to agree to such a limitation. Thus, at the conclusion of this discussion, Ms. Hurst and I both agreed that we both needed to think about how to deal with this issue further. No agreement was reached.

g.	I never said that Facebook would receive information or documents related to this "access" issue absent an agreement between counsel as to the scope of this issue. To the contrary, I repeated over and over again that I did not think it would be fair for me to make a proposal and then produce facts and documents within that proposal, only to have Facebook move to compel anyway. I wanted to reach an agreement. Until we did, this issue remained unresolved. And this was one of the "very few issues" that remained unresolved as of the hearing on December 16, 2008. Also, contrary to Facebook's assertion, I also <u>never</u> admitted to being in possession of documents relating to StudiVZ's alleged use of Facebook's intellectual property in the development, implementation and maintenance of StudiVZ's websites.

h.	If I had agreed to produce "access" facts and documents, then it would have been mentioned in my December 4, 2008 letter, which was written to memorialize those issues on which counsel had agreed. There is no mention of any agreement as to that issue in that letter. Facebook's counsel never wrote back to say that I had left some agreement about the access issue out of my letter. Facebook's

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

counsel did send me at least two different emails about what she claimed had been agreed during the November 26, 2008 and December 2 and 3, 2008 meet and confers, true and correct copies of which are attached as Exhibit "V." In neither communication did she mention anything about the access issue. The issue remained unresolved.

36.     Mr. Avalos raises another false implication in his declaration. He notes that Defendants "ultimately produce[d] an organizational chart" for StudiVZ as Ms. Hurst had requested, but then adds: "but the chart does not state which employees were responsible for the initial creation, development and implementation of the StudiVZ websites." (Avalos Decl., ¶ 23) (Docket No. 90). Yet, a careful reading of the remainder of that paragraph reflects that Ms. Hurst _never even asked_ for a chart that identifies the employees who were responsible for the initial creation, development and implementation of StudiVZ's websites. Rather, on November 26, 2008, Ms. Hurst asked only for an organizational chart of the company. It was not phrased as a chart from any past time. Rather, Ms. Hurst asked for a chart showing the _current_ top level executive in each operational division of the company. She specifically said that I did not need to include lower level employees. On December 2, 2008, I gave Ms. Hurst those names by telephone. Ms. Hurst then requested the names again in a December 4, 2008 e-mail, asking "Can you send me a document with the names and titles we discussed yesterday so I can figure out what we need to do here and call you back?" (Exhibit V). I responded that same day by re-identifying the people that he had identified "yesterday." My email ended: "Customer service, CFO, Legal and HR I understand you do not care about, but tell me if I am wrong." (Id.). That same day, I wrote a letter to Ms. Hurst confirming that StudiVZ would produce "an organizational chart showing the heads of the various departments of the company." (Exhibit S). StudiVZ did produce two such charts -- one showing the two-level executives of

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

each operational group as of July 18, 2008, the date the lawsuit was filed, and as of January 1, 2009, when some structural changes were being made. Ms. Hurst never requested an organization chart showing the people who were responsible for the design, programming and maintenance of StudiVZ as of the date StudiVZ was formed. Prior to receiving Facebook's motion to compel, neither Ms. Hurst nor any other Facebook lawyer had ever raised a single complaint about the charts that were produced.

37. Facebook argues in its motion to compel that the only objection raised by me and William Walker during the November 26, 2008 meet and confer regarding Request for Production No. 25 was about cost. In support, Facebook cites to paragraph 25 of Mr. Avalos' declaration. Although cost was a big issue and was discussed, the whole point of *why* it was so costly was because of the grossly overbroad nature of the request (I made this same point during later meet and confers that took place on December 3, 2008 and January 6, 2009). The request seeks all documents related to Facebook. I made the point that all parties were well aware that Facebook had twice tried to purchase StudiVZ. Therefore, this request would require the production of those documents, which were entirely irrelevant. I also made the point the parties were competitors. So anytime anyone at StudiVZ mentioned Facebook as its competitor in Germany, the document, which would be totally irrelevant, would be responsive. I also informed Mr. Hurst that we had preserved 11.9 terabytes of electronic data and that to search through all of that data would be extremely expensive. I cannot remember if I gave her the exact figure we had obtained from an outside vendor to search for 20-30 search terms, which was $1.65 million. But I know that I told Tom Gray that figure during the January 6, 2009 call discussed below. The $1.65 million estimate also not include any attorney time or translation expenses, which will be very high given that StudiVZ operates almost entirely in German. (Previously, on October 21, 2008, Facebook

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

sent me a list of <u>189 proposed search terms</u> in connection with its discovery requests.)

38.    During the November 26, 2008 meet and confer, we also discussed Request No. 23, which seeks all of StudiVZ's computer code. I pointed out that this request was overbroad and not tied to anything in the case or to time. Facebook's counsel has never agreed or offered to limit this Request.

**F.    <u>Ms. Hurst Left the Case and Was Replaced by To Gray Who Particpated in Meet and Confers *Without My Participation* on December 23 and 30.</u>**

39.    Ms. Hurst informed me that she would no longer be working on this case on December 17, 2008. She also informed me that Tom Gray would be taking over the lead counsel role for Facebook on the case. Prior to Ms. Hurst, Mr. Parker was lead counsel for Facebook on the case, and before him it was Neel Chatterjee.

40.    I went on vacation for the holidays on December 20, 2008.

41.    On December 19, 2008, Mr. Gray asked for a meet and confer to take place on December 22, 2008. I was available to participate telephonically that day, and agreed to do so despite the fact that I was on vacation. I set up a Roll Call conference call-in number so that I could easily participate from my parent's home where I was going to be vacationing. On December 20, 2008, Mr. Gray sent me an email saying that he had "goofed" and asked that the meet and confer be moved to December 23, 2008. I was not available on that day because I already had personal plans with my family scheduled for that day. However, my partner William

37106-00002/1674571.5

21

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Walker, was available on December 23, 2008. The discussion of what occurred during that meet and confer is set forth in Mr. Walker's declaration.

42.    An additional meet and confer occurred on December 30, 2008, when I was still on vacation. Again, Mr. Walker participated in my stead. That meet and confer is also addressed in Mr. Walker's declaration.

43.    As is explained in more detail in Mr. Walker's declaration, as of the end of 2008, Facebook was still not raising any issue whatsoever with respect to either the Holtzbrinck defendants supplemental interrogatories or the document demands served on the Holtzbrinck defendants, which Ms. Hurst had previously withdrawn back on November 26, 2008.

## G.    The January 6, 2009 Meet and Confer

44.    I returned from vacation on January 5, 2009. Mr. Gray and I were scheduled to have another meet and confer on January 6, 2009. In anticipation of that meet and confer, Mr. Gray had sent me a lengthy email on December 31, 2008, listing the issues he wanted to discuss. I responded to that email with a lengthy email of my own on Monday, January 5, 2009, my first day back in the office. A true and correct copy of Mr. Gray's email to me and my response to him is attached hereto as Exhibit "W."

45.    William Walker and I (on behalf of StudiVZ) and Tom Gray and Julio Avalos (on behalf of Facebook) all participated in another two hour long meet and confer on January 6, 2009. There were two main areas of disagreement discussed during that meet and confer. The first related to the "access" issue discussed in

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    detail above.  The second related to Facebook's request for all documents

2    concerning the "design, development and implementation" of the StudiVZ websites.

3

4        46.    The substance of the "access" issue tracked what had been discussed on

5    November 26, 2008.  The position I espoused was identical to what I had said on

6    November 26, 2008, except that I had thought about the issue more and made a

7    proposal of how to define "access" narrowly enough to allow discovery into the

8    issue.  Just as I had on November 26, 2008, I went through example after example of

9    "access" that could not be considered wrongful under any possible theory.  Again, I

10   did this for the purpose of illustrating that "access" as broadly defined by Facebook

11   was too broad.  But then, I proposed a compromise -- that "access" should be limited

12   to what Facebook was claiming was wrongful, i.e., any access that resulted in

13   "copying" of Facebook intellectual property.  Again, I did not say that the

14   defendants had done what Facebook had alleged or had engaged in any such

15   copying.  I did not even say that documents related to copying existed.  I simply said

16   that if the parties could define access narrowly enough to include only those

17   wrongful acts that Facebook alleged occurred (i.e., copying), then I would

18   recommend to Defendants that they agree to produce such documents, *if any existed*.

19   Mr. Gray rejected that proffered compromise.

20

21       47.    Contrary to what Mr. Avalos has declared at paragraph 36 of his

22   declaration, I never "agreed in principle" that documents about access were relevant

23   to the *Calder v. Jones* effects test.  Rather, I said only that I understood Facebook's

24   position and was willing to consider producing a limited subset of "access"

25   documents (to the extent any existed) if counsel could reach an agreement as to

26   scope so as to avoid discovery motion practice.

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

48.     I also never said that my goal was to get any of the Defendants dismissed "without having to give up discovery." (Avalos Decl. ¶ 35).  Such a statement would not even make sense given that each defendant had already "given up" a lot of discovery and were discussing "giving up" more.  What Mr. Avalos is misremembering is my statement that *forum non conveniens* could be decided without the need for any more discovery because none of the ongoing meet and confer even related to *forum non conveniens* issues.  This had to do with Facebook's request that defendants continue the hearing of the motions to dismiss.  I said that I did not want to continue the hearing of the *forum non conveniens* portion of StudiVZ's motion to dismiss because it could be decided, and StudiVZ could be dismissed, without the need for any further discovery *on that issue*.

49.     The discussion concerning all documents related to the "design, development and implementation" of the StudiVZ websites was shorter.  I took the position that this remained way too broad of a category and was, in fact, broader than any written request as originally drafted.  I made the point that this would include virtually every document related to StudiVZ's business and that I would, therefore, not agree to it.

50.     There was also a brief discussion about computer source code.  I agreed to provide a supplemental response to document demand No. 27, which asked for any code that was used to extract data from Facebook's websites (so-called "spider" programs), but I refused to produce any other code on the ground that it did not relate in any way to personal jurisdiction of forum issues.

51.     Again, at no time during this January 6, 2009 meet and confer did Messrs. Gray or Avalos ever raise any complaint with respect to the Holtzbrinck defendants' document production or supplemental interrogatory responses.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

52.    Finally, the discussions about the depositions of Mr. Weber and Mr. Brehm are set forth in excruciating detail in my declaration filed in support of Defendants' Motion for Sanctions based on Facebook's wrongful and last-minute cancellation of those depositions.

53.    As of January 9, 2009, I thought the issue of adhesion contracts had been resolved because it was not even mentioned in Facebook's last meet and confer letter dated January 9, 2009.

54.    On November 16, 2006, Mark Zuckerberg, the founder and CEO of Facebook, gave a video interview, a true and correct copy of which can be found at http://en.sevenload.com/videos/9cMXu4Y-zuck and can be made available on CD upon request.  At approximately 2:40 into the interview, the interviewer asked Mr. Zuckerberg about other social networking websites, including specifically defendant "studiVZ," that some have called "copycats" of Facebook's website.  In response, Mr. Zuckerberg does not use or adopt the word "copycat" but instead says, "I think that they're different designs and slightly different products."

55.    Defendants hired KPMG to assist them in this case in matters related to electronic discovery and its preservation.  Helmut Brechtken, the Manager of the Advisory -- Forensic Department of KPMG in Cologne, Germany, has been in charge of those efforts on behalf of KPMG.  Attached hereto as Exhibit "X" is a true and correct copy of a November 6, 2008 letter from Mr. Brechtken to Dr. Anka Reich, a copy of which was also sent to me.  Among other things, in the letter, KPMG provides an estimate of what it would cost to perform, among other things, various tasks with respect to the electronic materials preserved by KPMG, including running searches.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

56.     Attached hereto as Exhibit "Y" is a true and correct copy of an English translation of Mr. Brechtken's November 6, 2008 letter to Dr. Reich along with the certification.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on February 10, 2009.

/s Stephen S. Smith
Stephen S. Smith
