STEPHEN S. SMITH (SBN 166539)
SSmith@GreenbergGlusker.com
WILLIAM M. WALKER (SBN 145559)
WWalker@GreenbergGlusker.com
AARON J. MOSS (SBN 190625)
AMoss@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendants studiVZ Ltd.,
Holtzbrinck Networks GmbH, and
Holtzbrinck Ventures GmbH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>STUDIVZ LTD., , HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH, and DOES 1-25,<br><br>    Defendants. | Case No. 5:08-CV-03468 JF<br><br>Assigned To: Hon. Jeremy Fogel<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS DUE TO FACEBOOK'S CANCELLATION OF DEPOSITIONS**<br><br>[Supplemental Declaration of Stephen S. Smith (with exhibits) concurrently filed]<br><br>Date: March 3, 2009<br>Time: 10:00 a.m.<br>Dept./Place: Courtroom 2, 5th Floor<br>    Hon. Howard R. Lloyd<br><br>Complaint Filed: July 18, 2008 |

37106-00002/1676136.3

REPLY IN SUPPORT OF MOTION FOR SANCTIONS

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. FACEBOOK WAS *NOT* JUSTIFIED IN CANCELLING ........................... 1

III. FACEBOOK REPEATEDLY MAKES DEMONSTRABLY FALSE STATEMENTS ABOUT THE PARTIES' MEET AND CONFER .............. 6

IV. CONCLUSION ........................................................................................ 10

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 900674590

## I. INTRODUCTION

Facebook fails to demonstrate any justification for cancelling the depositions after Mr. Smith had flown to Germany. All of the facts are admitted by Facebook or are in writing. They establish the following:

1. Facebook knew Mr. Smith was flying "Wednesday evening."
2. Facebook did not threaten to cancel the depositions until after it knew Mr. Smith was in Germany.
3. The reason Facebook cancelled related to only one of the deponents.
4. Just before Facebook cancelled, Mr. Smith said that he would allow "any and all questions that are reasonably related to jurisdiction and/or venue" and would "take an expansive view" of what that meant.
5. Facebook cancelled anyway, ignoring (a) this Court's Standing Order; (b) Civil L.R. 37-1(b); (c) the fact that parties never agree in advance of a deposition about every question to be asked; and (d) Mr. Smith's statement that he would "take an expansive view" and allow "any and all questions that are reasonably related to jurisdiction and/or venue."

Moreover, a close reading of Facebook's *own* papers shows that the reason Facebook cited for cancelling did not exist. Mr. Smith did not renege on any agreement because there never was any agreement.

Accordingly, defendants request that their motion be granted so that they can recoup the attorneys' fees and costs they incurred in connection with flying their counsel to Germany for depositions that Facebook wrongfully cancelled after their counsel had already made the trip.

## II. FACEBOOK WAS *NOT* JUSTIFIED IN CANCELLING.

First, Facebook knew about Mr. Smith's travel plans. On January 5, 2009, Mr. Smith informed Thomas Gray and Julio Avalos that "I am leaving for Germany on Wednesday Evening." (Ex. C) (Docket No. 84-4). Neither Mr. Gray nor Mr.

1  Avalos denies receiving or reading that email.  Facebook ignores this email in its
2  opposition.[1]

3      Second, Facebook admits it "did not 'threaten' to cancel the depositions"
4  before Mr. Smith flew to Germany.  (Opp. at 7:14).  Facebook claims that it
5  "clearly indicated that the scope of the depositions was a critical issue and that if
6  the parties could not resolve the issue it did not make sense to fly to Germany to
7  conduct the depositions."  But Facebook cites *nothing* in support of this claim.
8  (Opp. at 7:14-16).  Messrs. Gray and Avalos do not support this claim in their
9  declarations.  Facebook provides no written communications to support this claim.
10 It is nothing more than revisionist history.

11      Third, Facebook fails to explain why it waited *five hours* on the evening that
12 Mr. Smith was leaving to finally threaten to cancel.  At 4:44 p.m. on January 7,
13 2009, Mr. Smith wrote that "there is no agreement on questions related to access."
14 Mr. Smith sent his email to Messrs. Gray and Avalos.  Neither responded until 9:33
15 p.m., far into the evening.  (Ex. D) (Docket No. 84-5).  They had to know it was
16 very *unlikely* that Mr. Smith would see the 9:33 p.m. email before he left.  They do
17 not explain why they waited so long to tell Mr. Smith that they intended to cancel.

18      Fourth, the reason Facebook gave for cancelling did not relate to Mr. Weber.
19 Although Facebook claims it was "justified in believing that Mr. Weber's deposition
20 would be as much a waste of time as Mr. Brehm's" (Opp. at 15:16-18), this claim is
21 contradicted by Facebook's own admissions.  Mr. Avalos notes that the parties had
22 no disagreement about Mr. Weber's deposition.  (Avalos Decl., ¶ 13).  *Before*
23 cancelling, Mr. Gray wrote: "As to Weber, you seemed comfortable with all
24 questions related to access (presumably bc he doesn't know anything about what
25 StudiVZ did)."  *Before* Facebook cancelled, Mr. Smith responded by confirming
26 that "[n]one of this discussion has anything to do with Martin Weber."  (Ex. D)

---

[1] Mr. Gray claims he did not know Mr. Smith "had flown" to Germany until Mr. Smith was in Germany.  (Gray Decl., ¶ 5).  But he never denies seeing Mr. Smith's January 5 email.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

(Docket No. 84-5).[2]  Only then did Facebook cancel.

Fifth, Facebook's argument that it was justified in cancelling Mr. Weber's deposition because the parties had generally been "unable to agree on the scope of personal jurisdiction discovery" (Opp. at 15:8-18) is also false.  It is undisputed that there had *never* been an agreement on the scope of personal jurisdiction discovery.  Facebook admits that Mr. Smith said, on January 6, 2009, that the parties had reached an "impasse" and "Facebook should move to compel."  (Avalos Decl., ¶ 15).  Facebook noticed Mr. Weber's deposition *after* that conversation. (Exs. A-C) (Docket Nos. 84-2, 84-3, 84-4).

Sixth, Facebook ignores the communication Mr. Smith sent just *before* Facebook cancelled.  Mr. Smith agreed to allow questions about "any and all issues that are reasonably related to jurisdiction and/or venue."  Mr. Smith wrote that he would take an "expansive view" of what that meant.  Mr. Smith agreed to allow questions that "go somewhat beyond" personal jurisdiction and venue.  He said he would object only if Facebook approached an area that related "solely" to the merits.  He offered to "do my best to work with you so that you get what you need for jurisdiction and venue without the deposition turning into a free for all about the case as a whole."  Facebook cancelled in its very next email.  (Ex. D) (Docket No. 84-5).

Seventh, Facebook ignored Civil L.R. 37-1 and this Court's "Standing Order Re: Initial Case Management."  Local Rule 37-1 provides that, if the parties have a discovery dispute that they are unable to resolve, and if there is the opportunity to save expense or time, then counsel may contact the assigned District Judge or Magistrate Judge to ask if he is available to address the issue.  Paragraph 9 of the Court's Standing Order provides as follows:  "Finally, in emergencies during discovery events (such as depositions), any party may contact the Court to ask if the

---

[2] Facebook criticizes defendants for submitting copies of counsel's communications, relying on Paragraph 9 of this Court's Standing Order, which discourages the practice.  While defendants prefer not to attach such communications, they have no real choice as those writings prove that Facebook misrepresents the record and are the best record of what occurred.

37106-00002/1676136.3         3
REPLY IN SUPPORT OF MOTION FOR SANCTIONS

Judge is available to address the problem pursuant to Civil L.R. 37-1(b)." Facebook received Mr. Smith's email mid day on Thursday, in plenty of time to avail itself of this Rule and Order. But Facebook *waited* until 10:56 p.m. PST to cancel. (Ex. D) (Docket No. 84-5).

Finally, Mr. Smith never reneged on any agreement because there never was any agreement. Facebook admits that the discussion about the documents (no agreement) and interrogatories (no agreement) bracketed the discussion about Mr. Brehm's deposition. (Opp. at 8:25-28). So, Facebook must argue that Mr. Smith agreed on the issue as to the deposition *just after* having disagreed on the exact same issue as to the documents and *just before* disagreeing on the exact same issue as to the interrogatories.

That defies common sense. Facebook admits that Mr. Smith said he would not produce "any discovery" related to the issue of access unless Facebook agreed to his proposed limitation because he did not want Facebook to file a motion to compel in the future seeking more than what had been offered. Facebook refused. The parties were at an impasse. Mr. Smith said that Facebook would need to move to compel. (Avalos Decl., ¶ 15). How is the explicit refusal to produce "any" discovery an agreement?[3]

But if there were any doubt that Facebook is wrong, one need only read Facebook's own words:

> "Mr. Smith *seemingly* relented *a bit* and stated that he *might try* to limit any testimony regarding the accessing of Facebook to that which also had the additional predicate act such as copying.. . . Mr. Smith then stated that it didn't necessarily have to be 'copying' but that testimony relating to access of Facebook or the development of the

---

[3] One need only read Facebook's motion to compel to see that no agreement had been reached. Facebook seeks an order compelling *more* than what Mr. Smith offered, not just as to the document demands and not just as to the interrogatories, *but also* as to the depositions. (Mot. to Compel at 25:1-12) (Docket No. 91). Facebook does not claim in that motion to have agreed to Mr. Smith's proposed limitation.

37106-00002/1676136.3                     4
REPLY IN SUPPORT OF MOTION FOR SANCTIONS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

> StudiVZ website would have to 'link' in some way with causes of action plead in Facebook's complaint. Therefore, it *appeared* to Facebook's counsel that some relevant testimony would be gained regarding the *Calder* effects test issues and the depositions could go forward."

(Opp. at 8:17-19) (emphasis added). That is not an agreement. (Facebook itself calls it only an "apparent" or "seeming" agreement) (Opp. at 8:25; 9:7-9).

Mr. Smith's statement was an offer. And *nowhere* in the declarations of Messrs. Gray and Avalos do they ever state that they agreed to Mr. Smith's proposal. In their *opposition* brief, Facebook claims that it "agreed" to Mr. Smith's limitation. (Opp. at 9:28, fn. 2). But Facebook provides *no* evidence to support that claim, and Messrs. Gray and Avalos do *not* say that anywhere in their declarations.[4]

Facebook wanted what Mr. Smith offered, but only if it did not have to agree in return to Mr. Smith's limitation, which is *exactly* the point that Mr. Smith made in his January 7, 2009 email:

> " Second, you are again mischaracterizing what I offered to do as an 'agreement.' I do not know how many more times I could have possibly repeated the point -- I was willing to agree to a limitation on scope along the lines of what you describe below <u>if and only if</u> you also agreed. I am not and have never been willing to agree, only to have you not agree and move to compel anyway. I have said that to you (and to Warrington and Annette before you) more times than I can

---

[4] A close reading of the declarations of Messrs. Avalos and Gray proves the point. They both say that they "believed" there was an agreement. (Avalos Decl., ¶ 16 at 7:7-8; Gray Decl., ¶ 2 at 2:15-16). But neither one of them says that they ever actually *expressed* any agreement to Mr. Smith's proposed limitation. In fact, as Mr. Avalos' own declaration states, Facebook's counsel expressed *disagreement* with Mr. Smith proposed limitation. (Avalos Decl., ¶ 15; see also Supplemental Declaration of Stephen Smith, ¶ 12(f)-(g)).

Messrs. Avalos and Gray do not even agree on what Mr. Smith proposed. Mr. Avalos claims that Mr. Smith agreed to allow questioning about access tied to "copying." (Avalos Decl., ¶ 16 at 7:5-7). Mr. Gray claims that Mr. Smith agreed to allow questioning about access for the much broader "commercial purposes." (Gray Decl., ¶ 2 at 2:15). So they supposedly "believed" in different agreements.

37106-00002/1676136.3 5

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

|   |   |
|---|---|
| 1 | count.  What I said was that I would not agree to discovery (i.e., |
| 2 | documents, facts or deposition testimony) as to 'access' generally |
| 3 | which, among other things, is grossly overbroad.  Then we discussed |
| 4 | narrowing that issue further.  You wanted access related to 'design, |
| 5 | development and creation.'  That was as far as you were willing to |
| 6 | 'narrow' it.  I offered a further narrowing to access that led to copying. |
| 7 | You <u>refused</u> to agree to that.  I then invited you to come back with |
| 8 | something that was between your offer and my offer for me to |
| 9 | consider.  You have not done that.  So at the moment, there is no |
| 10 | agreement on questions related to access." |

(Ex. D) (Docket No. 84-5).  This email expressed accurately what counsel had said on the subject during the conversation on January 6, 2009.  (Supplemental Declaration of Stephen S. Smith ["Supp. Smith Decl."], ¶ 12(f)-(g)).

The falsity of Facebook's unsupported claim is demonstrated by the parties January 7-8, 2009 communications.  If Facebook had truly agreed to Mr. Smith's proposed limitation, then the deposition never would have been cancelled!  Mr. Gray would have written back to Mr. Smith to clarify that Facebook was, in fact, agreeable to Mr. Smith's proposed limitation.  Had he done that, there would have been no issue.  But he did not do that, and he never claims that he did.

There was never any agreement, and Facebook knows it.  There was an offer, which Facebook rejected.  Facebook initially wanted to go forward anyway and noticed the depositions.  It changed its mind and cancelled only after it knew that Mr. Smith was already in Germany.

### III. FACEBOOK REPEATEDLY MAKES DEMONSTRABLY FALSE STATEMENTS ABOUT THE PARTIES' MEET AND CONFER.

Facebook devotes much of it opposition to a discussion of the parties' meet and confer communications from November 26, 2008 through January 5, 2009, just

37106-00002/1676136.3       6
REPLY IN SUPPORT OF MOTION FOR SANCTIONS

before the events that are the direct subject of the motion for sanctions. Facebook feels the need, as it should, to explain to the Court why it waited until the day before Mr. Smith left for Germany to try resolve this "central" issue. (Opp. at 3:7; 14:22-15:3).

So Facebook claims that it believed the issue had been resolved on November 26, 2008, only to discover on December 17, 2008 that Mr. Smith "reneged." (Opp. at 3:14; 4:17-18; 5:13-18:). Facebook claims that <u>*only then*</u> did it become "clear to Facebook's counsel that confirmation was needed regarding the scope of testimony of Messrs. Brehm and Weber would be permitted to offer at their respective depositions." (Opp. at 5:16-18). But, then, Mr. Smith went on vacation and was unavailable until January 6, 2009. (Opp. 5:20; 6:27-28). In the interim, Facebook met and conferred with Mr. Smith's partner, William Walker. But he had only "an imperfect understanding of the status of the case and the outstanding disputes." (Opp. at 5:21-22). So nothing could be resolved prior to January 6, 2009, giving "the parties a very small window of opportunity to resolve their differences as to the scope of the deposition testimony." (Opp. at 7:2-3). That is Facebook's story. All of it is false.

First, defendants did not agree or represent on November 26, 2008 that they would produce access-related discovery, and Facebook was not surprised on December 17, 2008 that no such discovery was produced. Mr. Smith did not renege on any agreement because (again) there was no agreement.

The proof is in Facebook's own papers. Just before making the false claim that Mr. Smith "agreed" and "represented" that this discovery would be "forthcoming," Facebook writes as follows: "Mr. Smith stated that he [sic] '<u>*think about' whether*</u> he would agree to produce discovery evidence related to his representations [about access.]" (Opp. at 4:5-6) (emphasis added). Similarly, Mr. Avalos declares that Mr. Smith ended the November 26, 2008 meet and confer by saying only "Let me think about it." (Avalos Decl., ¶ 5).

37106-00002/1676136.3  7
REPLY IN SUPPORT OF MOTION FOR SANCTIONS

In addition, Mr. Smith sent a letter to Facebook's counsel, Annette Hurst, on December 4, 2008 confirming what defendants had agreed to produce during the meet and confers of November 26 and December 2 and 3, 2008. Access-related documents or interrogatory responses were *not* listed among the items defendants agreed to produce. Mr. Smith wrote: "We are still investigating or considering the other categories you mentioned during the meet and confer." (Ex. G). No counsel for Facebook ever wrote back to say, "wait you also agreed to produce access documents." (Supp. Smith Decl., ¶ 6).

Facebook magically transforms the statements "let me think about whether to produce" and "we are still investigating and considering the other categories" into a representation and agreement to produce. The duplicity is manifest. There was no agreement. Facebook was not surprised about what it received on December 17, 2008. Mr. Smith communicated clearly and did not renege on anything.[5]

Second, Mr. Smith's vacation did not mean that the parties had only a "very small window of opportunity" to resolve their differences. On December 17, 2008, Annette Hurst was replaced by Mr. Gray. On Friday, December 19, 2008, Mr. Gray asked for a meet and confer for Monday, December 22, 2008. Mr. Smith was to be on vacation, but he agreed to interrupt his vacation on December 22, 2008 to participate in the call. (Supp. Smith Decl., ¶ 9). But on Saturday, December 20, 2008, Mr. Gray said he "goofed" and needed to move the meet and confer to December 23, 2008. Mr. Smith could not participate on that date because he had pre-arranged plans with his family. So his partner, William Walker participated in his stead. (Id.) Mr. Walker recalls very well what was said, and has prepared a declaration recounting what said. Among the topics discussed was the Access Issue.[6] Mr. Walker stated defendants' position that the access-related requests were

---

[5] As is set forth in the Supplemental Declaration of Stephen S. Smith, the claims Facebook makes about what Mr. Smith said during the November 26, 2008 meet and confer before he said "Let me think about it," are also false. (Supp. Smith Decl., ¶ 5(a)-(g)).

[6] The term "Access Issue" is defined in the Motion at 3:20.

37106-00002/1676136.3        8

REPLY IN SUPPORT OF MOTION FOR SANCTIONS

overbroad and improper. (Walker Decl., ¶ 3(a)-(h)) (Docket No. 98).

There was then another meet and confer on December 30, 2008. During this call, the parties continued to disagree about the Access Issue. That discussion related primarily to the written discovery, but the depositions were also discussed. Facebook admits that it understood the parties were "at an impasse" relating to the meaning of "personal jurisdiction discovery" as it concerned these depositions and were in disagreement about the Access Issue specifically. (Opp. at 6:4-13).

So, again, there was no ambiguity. Defendants had repeatedly expressed their position, and there was *no* agreement. The "window" of opportunity to try to resolve this issue had been open from November 26 through December 30, 2008. The issue was not resolved. If Facebook intended to cancel the depositions over this disagreement it was on clear notice to do so. But it did not do so and did not even threaten to do so. Mr. Gray's December 31, 2008 email expressed a desire to "iron out" what the witnesses would be prepared to testify about. But the Access Issue specifically was not even mentioned. And Mr. Gray did not communicate any intention to cancel the deposition if that issue was not resolved. (Ex. C) (Docket No. 84-4).

Finally, Facebook ignores entirely Mr. Smith's email on January 5, 2009, which was the last communication going into the January 6, 2009 meet and confer. Mr. Smith told Messrs. Gray and Avalos that he was leaving for Germany on Wednesday evening. He expressly noted that the scope of the witnesses' testimony was not resolved. He noted: "Our position has been pretty clearly explained via the numerous meet and confers regarding the interrogatories and document requests." (Ex. C) (Docket No. 84-4).

In sum, Facebook's story about what occurred from November 26, 2008 through January 5, 2009 is false and incomplete. It was *always* clear that there was an unresolved dispute between the parties concerning the Access Issue, whether that issue arose in the context of written discovery or the depositions. Defendants

never agreed to produce what Facebook has requested. Defendants always took the position that "access" generally was grossly overbroad and needed to be significantly narrowed. That is the exact same position Mr. Smith took on January 6, 2009. Facebook refused to narrow the requests as Mr. Smith had proposed, but it expressly stated an intent to go forward with the depositions nonetheless. It knew when Mr. Smith was leaving. It changed its mind and cancelled after Mr. Smith was already there.

## IV. CONCLUSION

Facebook noticed depositions to take place in Germany, and then wrongfully cancelled after defense counsel had already made the trip. Defendants respectfully request that the Court grant the motion.

DATED: February 17, 2009

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP


By: /s/ Stephen S. Smith
    STEPHEN S. SMITH
Attorneys for Defendants studiVZ Ltd.,
Holtzbrinck Networks GmbH, and
Holtzbrinck Ventures GmbH