STEPHEN S. SMITH (SBN 166539)
SSmith@GreenbergGlusker.com
WILLIAM M. WALKER (SBN 145559)
WWalker@GreenbergGlusker.com
AARON J. MOSS (SBN 190625)
AMoss@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendants studiVZ Ltd.,
Holtzbrinck Networks GmbH, and
Holtzbrinck Ventures GmbH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> v. <br><br> STUDIVZ LTD., VERLAGSGRUPPE GEORG VON HOLTZBRINCK GmbH, HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH, and DOES 1-25, <br><br> Defendant. | Case No. 5:08-CV-03468 JF <br> Assigned To: Hon. Jeremy Fogel <br><br> **SUPPLEMENTAL DECLARATION OF STEPHEN S. SMITH IN SUPPORT OF DEFENDANTS' MOTIONS FOR SANCTIONS; EXHIBIT G** <br><br> Complaint Filed: July 18, 2008 |

37106-00002/1676539.2

SUPPLEMENTAL SMITH DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

# DECLARATION OF STEPHEN S. SMITH

I, Stephen S. Smith declare:

1. I am an attorney at law duly licensed to practice in the State of California and before the United States District Court for the Northern District of California, and am a partner at Greenberg Glusker Fields Claman & Machtinger LLP, counsel of record for Defendants StudiVZ Ltd., Holtzbrinck Networks GmbH, and Holtzbrinck Ventures GmbH ("Defendants"). I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto under oath. This declaration is submitted in opposition to Facebook's motion for sanctions and motion to compel.

2. I participated in the November 26, 2008 meet and confer telephone call along with my partner William Walker. Annette Hurst and Julio Avalos participated on behalf of Facebook. The November 26, 2008 meet and confer was detailed and productive. It lasted more than two hours. It was then followed by two more meet and confer telephone calls on December 2 and 3, 2008. During the two December 2008 calls, the parties were able to reach agreement on the great majority of the specific discovery requests served by Facebook.

3. One issue we were not able to agree upon relates to the so-called "Access Issue"[1] -- Facebook's written discovery requests directed to StudiVZ that inquire about all instances when anyone affiliated with StudiVZ accessed Facebook's website. These discovery requests are discussed in some detail in connection with Facebook's motion to compel.

---

[1] The term "Access Issue" is defined in the Motion at 3:20.

4. Throughout Facebook's Opposition to the Motion for Sanctions (and in its Motion to Compel and Motion for Sanctions), and then again in the declarations of Julio Avalos in support of those motions, Facebook and Mr. Avalos misrepresent what I said on November 26, 2008 (and later on January 6, 2009, which is addressed below).

5. I <u>never</u> said that Defendants would simply "stipulate" "that StudiVZ had intentionally accessed the Facebook and 'done what you claim they did.'" (Avalos Decl. in Opposition to Mot. for Sanctions at 2:25-26 ) (Docket No. 100). The discussion about "access" on November 26, 2008 was itself more than one hour of the total two hour long meet and confer conversation. In summary, the following is what I said:

a. Some of Facebook's discovery requests sought information or documents about "YOUR" "access" of Facebook's website. "YOUR" was defined to include all employees of StudiVZ and all of StudiVZ's lawyers (and many other categories of people who might have any relationship to StudiVZ). The definition did not limit "YOU" to those people who were acting within the course and scope of their relationship with StudiVZ. I made that point to Facebook's counsel.

b. "Access" was not defined at all. The interrogatories and document demands that related to "access" made no distinction between personal access or access that might be related to StudiVZ's business. They also made no distinction between access by simply looking at Facebook's home page (which anyone may access by typing www.facebook.com into a web browser) versus access by creating a user account that would allow the user to access pages that are restricted to only users with an account. I made the point that Facebook's discovery requests did not distinguish between one type of access and another and, on their

face, sought discovery into any access by anyone that had a connection to StudiVZ for any and all purposes whatsoever. I made the point that it would include access by me, Stephen Smith, simply typing in www.facebook.com to see what the Facebook website looked like to compare it to what the StudiVZ website looked like the day I was first retained. I said that "as drafted" the requests sought any form of access whatsoever, which was grossly overbroad because not all forms of access are wrongful even under Facebook's theory in the case. I said that I "assumed" or was "virtually certain" that someone falling within the overbroad definition of "YOU" must have "accessed" Facebook's website simply because (1) the definition of "YOU" included a huge number of people, any one of whom may have a *personal* Facebook account or had otherwise looked at www.facebook.com, (2) I had looked at Facebook's website in connection with the case, and/or (3) presumably someone at StudiVZ would have looked at Facebook's website when they received Facebook's demand letters or the Complaint (which arguably would have been within the course and scope of their employment for StudiVZ), simply to understand what Facebook was alleging against StudiVZ. I gave a whole series of different examples and recall, for example, thinking (although I cannot remember whether I gave this example out loud) that the Court would likely "access" Facebook's website when it looks at the exhibits that are attached to the Complaint or a motion.

      c.    I then said that, if Facebook intended to litigate this case on those types of broadly defined access, there would be no need to do so because it would be virtually without dispute that some form of "access" falling within such an all-encompassing definition had occurred.

      d.    But I then distinguished that type of access from the allegations in Facebook's complaint and I argued that the requests were overbroad and should be narrowed to focus on what was truly at issue in the case and specifically

narrowed to focus on how any such access might establish personal jurisdiction over StudiVZ or not.

e. I *never* said that I would stipulate to the wrongful acts that Facebook has alleged in its complaint. I *never* said that defendants would stipulate to "copying" material from Facebook's website.

f. I never said that Facebook would receive information or documents related to the Access Issue absent an agreement between counsel as to the scope of this issue. To the contrary, I repeated over and over again that I did not think it would be fair for me to make a proposal and then produce facts and documents within that proposal, only to have Facebook move to compel anyway. I wanted to reach an agreement. Until we did, this issue remained unresolved. Also, contrary to Facebook's assertion, I also never admitted to being in possession of documents relating to StudiVZ's alleged use of Facebook's intellectual property in the development, implementation and/or maintenance of StudiVZ's websites.

g. At the end of this long discussion of the Access Issue, I told Ms. Hurst and Mr. Avalos that "access" had to be narrowed to seek only information and documents that were related to some form of allegedly wrongful access and that would have some tendency to prove or disprove personal jurisdiction or Facebook's theory about alleged intentional acts aimed at, and that purportedly caused Facebook harm in, California. If those conditions could be met, I would recommend to my client that the information and documents, as narrowed, be produced. Ms. Hurst was not then willing to agree to such a limitation. Thus, at the conclusion of this discussion, Ms. Hurst and I both agreed to further think about how to deal with this issue further. No agreement was reached.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

6. On December 4, 2008, I wrote a letter to Ms. Hurst memorializing those issues on which counsel had agreed, a true and correct copy of which is attached hereto as Exhibit "G." There is no mention of any agreement as to the Access Issue in that letter. Neither Ms. Hurst nor any other Facebook lawyer ever wrote back to say that I had omitted some agreement about the Access Issue from my letter. On December 8 and 11, 2008, Ms. Hurst did send me at least two different emails about what she claimed had been agreed during the November 26, 2008 and December 2 and 3, 2008 meet and confers. In neither communication did she mention anything about the Access Issue. The issue remained unresolved.

7. On December 17, 2008, Ms. Hurst informed me that she would no longer be working on this case. She also informed me that Tom Gray would be taking over the lead counsel role for Facebook on the case.

8. On December 20, 2008, I went on vacation with my family for the holidays.

9. On December 19, 2008, the day before I left for my vacation, Mr. Gray asked for a meet and confer to take place on December 22, 2008. I was available to participate telephonically that day, and agreed to do so despite the fact that I was on vacation. I set up a Roll Call conference call-in number so that I could easily participate from my parents' home where I was going to be vacationing with my family. On December 20, 2008, Mr. Gray sent me an email saying that he had "goofed" and asked that the meet and confer be moved to December 23, 2008. I was not available on December 23, 2008 because I already had personal plans with my family scheduled for that day. However, my partner William Walker, was available on December 23, 2008. The discussion of what occurred during that meet

37106-00002/1676539.2                 5
SUPPLEMENTAL SMITH DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

and confer is set forth in Mr. Walker's declaration in opposition to Facebook's motion to compel and motion for sanctions. (Docket No. 98).

10. An additional meet and confer occurred on December 30, 2008, when I was still on vacation. Again, Mr. Walker participated in my stead. That meet and confer is also addressed in Mr. Walker's declaration. (Docket No. 98).

11. I returned from vacation on January 5, 2009. Mr. Gray and I were scheduled to have another meet and confer on January 6, 2009. In anticipation of that meet and confer, Mr. Gray had sent me a lengthy email on December 31, 2008, listing the issues he wanted to discuss. I responded to that email with a lengthy email of my own on Monday, January 5, 2009, my first day back in the office. (Docket No. 84, Exhibit C).

12. William Walker and I (on behalf of StudiVZ) and Tom Gray and Julio Avalos (on behalf of Facebook) all participated in another two hour long meet and confer on January 6, 2009. There were two main areas of disagreement discussed during that meet and confer. The first related to the Access Issue discussed in detail above. The second related to Facebook's request for all documents concerning the "design, development and implementation" of the StudiVZ websites. There was also a short discussion concerning Facebook's requests for computer source code.

    a. I will focus on the January 6, 2009 discussion of the Access Issue, as that was the issue that Facebook's counsel later cited as the basis to cancel the depositions.

    b. During the January 6, 2009 meet and confer, the substance of the Access Issue tracked what had been discussed on November 26, 2008. The position

SUPPLEMENTAL SMITH DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

I espoused was identical to what I had said on November 26, 2008, except that I had thought about the issue more and made a proposal of how to define "access" narrowly enough to allow discovery into the issue. Just as I had on November 26, 2008, I went through example after example of "access" that could not be considered wrongful under any possible theory. Again, I did this for the purpose of illustrating that "access" as broadly defined by Facebook was too broad. But then, I proposed a compromise -- that "access" should be limited to what Facebook was claiming was wrongful, i.e., any access that resulted in "copying" of Facebook intellectual property. Again, I did not say that the defendants had done what Facebook had alleged or had engaged in any such copying. I did not even say that documents related to copying existed. I simply said that if the parties could define access narrowly enough to include only those wrongful acts that Facebook alleged occurred (i.e., copying), then I would recommend to Defendants that they agree to produce such documents, *if any existed*. Mr. Gray expressly rejected that proffered compromise.

c. Contrary to what Mr. Avalos has declared at paragraph 14 of his declaration, I never "agreed in principle" that documents about access were relevant to the *Calder v. Jones* effects test. Rather, I said only that I understood Facebook's position and was willing to consider producing a limited subset of "access" documents (to the extent any existed) if counsel could reach an agreement as to scope so as to avoid discovery motion practice.

d. During the January 6, 2009 meet and confer, the parties also discussed the Access Issue as it related to the depositions of Martin Weber and Michael Brehm.

e. There was no disagreement about Martin Weber's deposition. As Mr. Avalos admits in his declaration, I did agree to allow questioning of Mr. Weber about this issue because I presumed, given that he worked for the Holtzbrinck defendants and not for StudiVZ, that he likely new nothing about the issue.

f. As to the deposition of Michael Brehm, the issue was discussed in detail. In that discussion, I expressed the exact same position as I had with respect to the written discovery directed to the issue. I offered to allow the questioning if Facebook agreed to my proposed limitation. My limitation was simple. I insisted that Facebook link the questions of access (and narrow its written discovery requests about access) to the allegations of wrongdoing in the complaint. I noted specifically that the main area of wrongdoing in the complaint was "copying." So I said that I would allow questioning into any form of access that also might have resulted in copying if Facebook would agree to limit the scope of inquiry to that issue. I said that I would interpret the term "copying" broadly. I also told Mr. Gray to let me know if there was some other wrongful type of access alleged in the complaint, and I would consider it as well. But I said that I would object to wide-ranging questioning into any form of access, as Facebook had requested in its written discovery. Mr. Gray rejected my proposed limitation (just as he had with respect to the written discovery).

g. I do not understand how Mr. Avalos or Mr. Gray could have possibly "believed" that we had reached agreement on the issue. (Avalos Decl. at 7:7-8; Gray Decl. at 2:15-16). I said over and over again that I would not agree to open up a line of inquiry (whether written discovery or the depositions) only to have Facebook not agree and move to compel more than I had offered to provide. I said that I viewed such a resolution as no resolution at all. I expressly stated my position that meet and confer was about reaching a bi-lateral agreement so that

37106-00002/1676539.2                        8
SUPPLEMENTAL SMITH DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

motion practice could be avoided.  I did not believe that I was supposed to agree (in response to grossly overbroad written requests or deposition questions) to a one-sided compromise, only to have Facebook move to compel everything else anyway.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on February 17, 2009.

/s Stephen S. Smith<br>Stephen S. Smith

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590