STEPHEN S. SMITH (SBN 166539)
SSmith@GreenbergGlusker.com
WILLIAM M. WALKER (SBN 145559)
WWalker@GreenbergGlusker.com
AARON J. MOSS (SBN 190625)
AMoss@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendants StudiVZ Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> v. <br><br> STUDIVZ LTD., , HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH, and DOES 1-25, <br><br> Defendants. | Case No. 5:08-CV-03468 JF <br> Assigned To: Hon. Jeremy Fogel <br><br> **REPLY IN SUPPORT OF STUDIVZ LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS*** <br><br> [Holtzbrinck's Reply Brief; Supplemental Declarations of Stephen S. Smith, William M. Walker and Martin Weber (and Exhibits Thereto) Filed Concurrently] <br><br> Date: April 10, 2009 <br> Time: 9:00 a.m. <br> Place: Courtroom 3 <br><br> Complaint Filed: July 18, 2008 |

37106-00002/1673761.9

STUDIVZ'S REPLY IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

I. STUDIVZ IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA ................................................................................................................1

    A. Facebook Concedes StudiVZ is Not Subject to *General* Personal Jurisdiction ..............................................................................................1

    B. StudiVZ is Not Subject to *Specific* Personal Jurisdiction in California ................1

        1. Facebook has Failed to Present *Any* Competent Evidence ........................1

        2. Facebook Has Not Established "Purposeful Direction." ............................2

            a. There is No Evidence that StudiVZ Expressly Aimed Any Allegedly Wrongful Actions Toward California ............................2

            b. Facebook Has Failed to Establish that the *Brunt* of Any Alleged Harm was Suffered in California ......................................4

        3. Exercising Jurisdiction over StudiVZ Would Not Be Reasonable .............5

        4. StudiVZ Did *Not* Contractually Submit to Jurisdiction in California .........7

II. THE COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS* ...............................................................................................................10

    A. Facebook's German Lawsuit Proves Germany is an Adequate Alternative Forum ...................................................................................................................10

    B. Any Differences Between German and U.S. Law are Irrelevant .........................11

    C. Facebook's Choice of Forum is Not Determinative .............................................12

    D. The Private Interest Factors Favor Germany .......................................................12

    E. The Public Interest Factors Also Favor Germany ................................................14

    F. Facebook's German Lawsuit Moots its Terms of Use Argument ........................14

III. CONCLUSION .................................................................................................................15

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES**

Advanta Corp. v. Dialogic Corp.,
  2006 U.S. Dist. LEXIS 28214 (N.D. Cal. May 2, 2006) ................................................. 15

American Home Assurance Co. v. TGL Container Lines, Ltd.,
  347 F.Supp. 2d 749 (N.D. Cal. 2004) .............................................................................. 15

Asahi Metal Indus. Co. v. Superior Court of Cal.,
  480 U.S. 102 (1987) ........................................................................................................... 9

Autodesk, Inc. v. RK Mace Eng'g, Inc.,
  2004 WL 603382 ................................................................................................................ 2

Boschetto v. Hansing,
  539 F.3d 1011 (9th Cir. 2008) ........................................................................................... 1

Brayton Prucell LLP v. Recordon & Recordon,
  361 F.Supp. 2d 1135 (N.D. Cal. 2005) ............................................................................ 2

Cairo, Inc. v. Crossmedia Services, Inc.,
  2005 U.S. Dist. LEXIS 8450 (N.D. Cal. April 1, 2005) ................................................ 9

Calder v. Jones,
  465 U.S. 783 (1984) ............................................................................................ 2, 3, 4, 5

Carnival Cruise v. Shute,
  499 U.S. 585 (1991) ........................................................................................................... 9

Ceramic Corp. v. Inka Maritime Corp.,
  1 F.3d 947 (9th Cir. 1993) .............................................................................................. 11

Cheng v. The Boeing Co.,
  708 F.2d 1406 (9th Cir. 1983) ........................................................................................ 12

Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.,
  106 F.3d 284 (9th Cir. 1997) ............................................................................................ 2

Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.,
  918 F.2d 1446 (9th Cir. 1990) ........................................................................... 11, 12, 13

Core-Vent Corp. v. Nobel Indus. AB,
  11 F.3d 1482 (9th Cir. 1993) ................................................................................ 2, 5, 6, 7

Corporacion Mexicana v. The M/T Respect,
  89 F.3d 650 (9th Cir. 1996) ............................................................................................ 15

Creative Technology, Ltd. v. Aztech Systems Pte., Ltd.,
  61 F.3d 696 (9th Cir. 1995) ............................................................................................ 11

# TABLE OF AUTHORITIES
(continued)

                                                **Page**

EFCO Corp. v. Aluma Systems USA, Inc.,
   145 F.Supp.2d 1040 (S.D. Iowa 2000) ............................................................................. 12

Feldman v. Google, Inc.,
   513 F.Supp.2d 229 (E.D. Pa. 2007) .................................................................................... 8

Fielding v. Hubert Burda Media, Inc.,
   2004 WL 532714 (N.D. Tex. Feb. 11, 2004) .............................................................. 3, 4, 5

Flex-N-Gate Corp. v. Wegen,
   2008 U.S. Dist. LEXIS 105781 (S.D.N.Y. Dec. 29, 2008) ........................................ 11, 12

Flynt Distributing Co. v. Harvey,
   734 F.2d 1389 (9th Cir. 1984) ............................................................................................ 1

Gonzalez v. Chrysler Corp.,
   301 F.2d 377 (5th Cir. 2002) ............................................................................................ 11

Holland Am. Line, Inc. v. Wartsila N. Am., Inc.,
   485 F.3d 450 (9th Cir. 2007) ....................................................................................... 1, 15

Huang v. Ferrero U.S.A., Inc.,
   1999 U.S. Dist. LEXIS 5712 (N.D. Cal. Apr. 15, 1999) .................................................... 1

In re Broadcast.com, Inc.,
   2000 U.S. Dist. LEXIS 22899 (E.D. Tex. Aug. 30, 2000) ................................................. 8

Kearney v. Litton Precision Gear,
   1988 WL 236112 (C.D. Cal. 1988) .................................................................................. 11

Levy v. Norwich Union Ins. Soc'y,
   1998 U.S. Dist. LEXIS 13524 (N.D. Cal. Aug. 5, 1998) ................................................... 1

Lockman Foundation v. Evangelical Alliance Mission,
   930 F.2d 764 (9th Cir. 1991) ..................................................................................... 11, 12

Love v. Mail on Sunday,
   2006 U.S. Dist. LEXIS 95469 (C.D. Cal. July 18, 2006) ............................................. 3, 4

Lueck v. Sundstrand Corp.,
   236 F.3d 1137 (9th Cir. 2001) .......................................................................................... 11

McNeil v. Stanley Works,
   33 Fed.Appx. 322 (9th Cir. 2002) .................................................................................... 15

Nolan v. Boeing Co.,
   762 F.Supp. 680 (E.D. La. 1989) ..................................................................................... 11

Panavision Int'l, L.P. v. Toeppen,
   141 F.3d 1316 (9th Cir. 1998) ............................................................................................ 3

# TABLE OF AUTHORITIES
(continued)

Page

Pebble Beach Co. v. Caddy,
 453 F.3d 1151 (9th Cir. 2006) ............................................................................................. 3, 4

Piper Aircraft Co. v. Reyno,
 454 U.S. 235 (1981) ........................................................................................................ 11, 12

Real Good Toys, Inc. v. XL Machine Ltd.,
 163 F.Supp.2d 421 (D. Vt. 2001) ............................................................................................ 2

Royal Bed & Spring Co. v. Famossul,
 906 F.2d 45 (1st Cir. 1990) .................................................................................................... 15

S.E.C. v. Ross,
 504 F.3d 1130 (9th Cir. 2007) ................................................................................................. 9

Schwarzenegger v. Fred Martin Motor Co.,
 374 F.3d 797 (9th Cir. 2004) ............................................................................................... 1, 5

Specht v. Netscape Communications Corp.,
 306 F.3d 17 (2nd Cir. 2002) .................................................................................................... 8

Terracom v. Valley Nat'l Bank,
 49 F.3d 555 (9th Cir. 1995) ..................................................................................................... 5

Ticketmaster v. Tickets.com, Inc.,
 2000 U.S. Dist. LEXIS 12987 (C.D. Cal. Aug. 10, 2000) ....................................................... 8

Universal City Studios, Inc. v. Film Ventures Int'l, Inc.,
 543 F.Supp. 1134 (C.D. Cal. 1982) ......................................................................................... 2

Vogt-Nem, Inc. v. M/V Tramper,
 263 F.Supp.2d 1226 (N.D. Cal. 2002) ................................................................................... 15

**OTHER CASES**

Bundesgerichtshof [BGH] [Federal Court of Justice] June 4, 1992,
 118 Entscheidungen des Bundesgerichtshofes in Zivilsachen [BGHZ] 312 (F.R.G.) ............ 14

Hunt v. Sup. Ct.,
 81 Cal.App. 4th 901 (2000) .................................................................................................. 7, 9

**STATUTES**

Cal. Civ. Proc. Code § 410.10............................................................................................................ 9

Cal. Penal Code § 502 ........................................................................................................................ 9

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

I. **STUDIVZ IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA.**

A. **Facebook Concedes StudiVZ is Not Subject to *General* Personal Jurisdiction.**

Facebook does not argue that StudiVZ is subject to "general" jurisdiction in California.

B. **StudiVZ is Not Subject to *Specific* Personal Jurisdiction in California.**

1. **Facebook has Failed to Present *Any* Competent Evidence.**

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (emphasis added); accord *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). It may not "simply rest on the bare allegations of its complaint." *Schwarzenegger, supra*, 374 F.3d at 800. *Accord Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 457, n.5 (9th Cir. 2007). "If there is a dispute about the jurisdictional facts, the plaintiff will have to establish them by a preponderance of the evidence." *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). Even at this early stage, a plaintiff "is charged with making at least a *prima facie* showing of evidence which, if *believed*, would be sufficient to establish the existence of personal jurisdiction." *Huang v. Ferrero U.S.A., Inc.*, 1999 U.S. Dist. LEXIS 5712, Case No. C98-0795 FMS at *3 (N.D. Cal. Apr. 15, 1999) (italics in original; other emphasis added). When a plaintiff fails to make a *prima facie* showing of evidence, the defendant's motion to dismiss must be granted. This is especially true when a defendant has submitted evidence refuting minimum contacts, such as declarations from its officers, and even in the face of a plaintiff's request to take additional discovery. *See, e.g., Huang, supra*, at *2-*5; *Levy v. Norwich Union Ins. Soc'y*, 1998 U.S. Dist. LEXIS 13524, Case No. C97-2533 MJJ at *1, *16, n.8 (N.D. Cal. Aug. 5, 1998).

Facebook's only evidence are declarations from its lawyers. They lack personal knowledge, make statements on "information and belief" and cite news articles and other inadmissible hearsay.[1] Such "evidence" does not overcome StudiVZ's motion to dismiss. *See Holland Am. Line,* 485 F.3d at 458 (plaintiff failed to establish prima facie case of personal jurisdiction because plaintiff's claims "rest[ed] on flimsy evidence," namely "an unsubstantiated and vague statement") (emphasis added).

---

[1] The only non-hearsay evidence Facebook cites is a statement that defense counsel, Stephen S. Smith, supposedly made during meet and confer. (Opp. at 5:7-8). Mr. Smith has disputed that point already in detail in connection with Facebook's motion for sanctions. (Docket No. 97, ¶ 35 at 15:25-17:28).

37106-00002/1673761.9     1

STUDIVZ'S REPLY IN SUPPORT OF MOTION TO DISMISS

1 | As Facebook has failed to make "at least a *prima facie* showing of evidence" sufficient to establish personal jurisdiction, StudiVZ's motion must be granted.

### 2. Facebook Has Not Established "Purposeful Direction."

Facebook seeks to establish jurisdiction over StudiVZ under the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984). Under *Calder*, the "purposeful direction" part of the specific jurisdiction analysis requires that the claims arise out of the defendant's (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered -- and which the defendant knows is likely to be suffered -- in the forum state. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993). Facebook fails to establish either that StudiVZ expressly aimed any actions toward California or that the brunt of any harm was suffered in California.

#### a. There is No Evidence that StudiVZ Expressly Aimed Any Allegedly Wrongful Actions Toward California.

Facebook first argues that StudiVZ's alleged accessing and copying of Facebook's website constitutes an action expressly aimed at California. In support thereof, Facebook claims that "there is no question that StudiVZ did in fact commit several torts aimed at the state, almost certainly while in the United States." (Opp. at 9:17-18).

Facebook's argument is without merit or any basis in fact. First, Facebook wrongly claims that its "allegations that StudiVZ intentionally committed a series of torts to Facebook's servers are enough to meet the *Calder* 'effects' test." (Opp. at 9:27-28) (emphasis added). As discussed above, bare allegations are not enough.[2] Second, Facebook's unsupported claim in its opposition that the alleged wrongs "almost certainly" took place in California or the United States is contradicted by Facebook's own complaint, which alleges that the wrongs were initiated from Germany and other places outside California. (Complaint, ¶ 12). Even if Facebook could support this allegation with

---

[2] That Facebook has presented only its bare allegations is also what distinguishes this case from the cases Facebook has cited. *See, e.g.*, *Autodesk, Inc. v. RK Mace Eng'g, Inc.*, 2004 WL 603382, Case No. C-03-5128 VRW at *5 (N.D. Cal. March 11, 2004) (plaintiff "presented adequate evidence" of all three prongs of the *Calder* "effects" test); *Brayton Prucell LLP v. Recordon & Recordon*, 361 F.Supp. 2d 1135, 1141 (N.D. Cal. 2005) (the plaintiff "ma[de] a prima facie showing that [defendant] willfully infringed the copyrights owned by [plaintiff]."); *Real Good Toys, Inc. v. XL Machine Ltd.*, 163 F.Supp.2d 421, 424-25 (D. Vt. 2001) (plaintiff made a "prima facie showing" of evidence of minimum contacts).
Likewise, *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 1997) (cited by Facebook) is distinguishable because there the district court had already found that the defendant had, in fact, willfully infringed copyrights owned by the plaintiff. *Id.* at 289 (emphasis added). There has been no such finding in the instant case. Similarly, *Universal City Studios, Inc. v. Film Ventures Int'l, Inc.*, 543 F.Supp. 1134 (C.D. Cal. 1982) was decided in the context of a motion for a preliminary injunction wherein the court made findings of fact.

a *prima facie* showing of evidence, it would still not suffice for jurisdiction over StudiVZ under *Calder*. *Fielding v. Hubert Burda Media, Inc.*, 2004 WL 532714, Case No. Civ.A.3:03-CV-0872, at *5 (N.D. Tex. Feb. 11, 2004) (holding that "conduct based wholly in Europe is not sufficient to invoke specific jurisdiction under *Calder*").

Facebook also argues that the mere existence of StudiVZ's websites is an action "expressly aimed" at California because the websites infringe Facebook's intellectual property (Opp. at 7:7-18) and because the websites contain drop-down menus that users can use to identify California as a place of residence or university locale. (Opp. at 10-13). Both arguments are wrong.

The Ninth Circuit has held that the mere existence of a website that infringes a California resident's intellectual property does not confer jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157 (9th Cir. 2006). There, the court held that the defendant engaged in no "individualized targeting" by registering the domain name "pebblebeach-uk.com" and operating a website at that domain, even though he knew that plaintiff resided in the forum. The court held that the operation of an infringing website that is not expressly aimed at California did not give rise to jurisdiction. *Id.*; *see also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).[3]

In addition, the Central District of California Court has held that the inclusion of "California" menus on a foreign website is not an action "expressly aimed" at California. *Love v. Mail on Sunday*, 2006 U.S. Dist. LEXIS 95469, Case No. CV 05-7798 ABC (PJWx), at *11-*12, *21 (C.D. Cal. July 18, 2006). There, the court declined jurisdiction over a defendant that operated an interactive travel website, even though it allowed users to search for and check availability for hotels and restaurants in California. The court held that the "effects" test was not satisfied because defendant did not specifically direct its websites at California residents, even though it was accessible in California and searchable by California as a criterion. *Id.*[4]

---

[3] Facebook mischaracterizes *Panavision*, claiming that the court affirmed jurisdiction over a nonresident defendant "whose sole contact with the forum was his posting of plaintiff's trademarks on his internet website." (Opp. at 7:28-8:3). However, in *Panavision*, the Court only upheld jurisdiction because the defendant did "considerably more" than simply post the plaintiff's trademark on his website. He registered Panavision's marks as his domain names as part of a "scheme" to extort money from Panavision, including sending an extortive letter to the plaintiff in California. 141 F.3d at 1318.

[4] Likewise, when one accesses StudiVZ's websites from California, there is nothing that would indicate any connection to California. All but one site are in foreign languages and are clearly not directed at English speakers anywhere. Although MeinVZ is available in English, the evidence is undisputed that it is directed to users who speak two different non-English languages but who wish to communicate using English as a common (*continued on next page*)

37106-00002/1673761.9     3

STUDIVZ'S REPLY IN SUPPORT OF MOTION TO DISMISS

StudiVZ cited both *Pebble Beach* and *Mail on Sunday* in its Motion. Facebook makes no attempt to distinguish either case in its opposition.

### b. **Facebook Has Failed to Establish that the *Brunt* of Any Alleged Harm was Suffered in California.**

Facebook admits that the brunt of its harm, if any, was suffered in Europe, not California. First, Facebook alleges it has "been hampered from entering and competing fairly in the European market." (Complaint, ¶¶ 28, 41) (emphasis added).[5] Second, Facebook acknowledges that StudiVZ runs "a German language site that competed directly against Facebook in German speaking countries." (Docket No. 76, at 1:10-11) (emphasis added). Facebook does not allege that any particular harm, let alone the brunt of harm, was suffered in California.

In *Fielding*, *supra*, 2004 WL 532714, plaintiffs (former Swiss ambassador to Germany and his wife, a Texan) sued defendants (German companies that publish German magazines) in Texas over an alleged campaign to impugn plaintiffs' reputations. Although the articles were published by the German media, some statements set forth therein were published in the U.S. *Id*., *1. Defendants moved to dismiss for lack of personal jurisdiction. Plaintiff opposed, claiming defendants' actions satisfied the "effects" test of *Calder v. Jones*. The court granted the motion to dismiss because the "bulk of Plaintiffs' harm was suffered in Europe, where Plaintiff Borer lost his job as Swiss Ambassador to Germany and Plaintiff Fielding lost her unborn child." *Id.*, *4. The same is true here.

The plaintiffs in *Fielding*, like Facebook, also tried to rely on the fact that the German magazines had some distribution in Texas. However, the court rejected that argument, noting that "the articles published by Defendants were published in Germany, in the German language" and with less than one tenth of one percent of the magazines at issue are distributed to Texas: "In this

---

(*continued from previous page*) lingua franca. The English language version of MeinVZ represents less than 1% of MeinVZ's total traffic. The evidence is also undisputed that StudiVZ targets neither the U.S. in general nor California in particular and that none of its sites markets or advertises in either the U.S. or California. (Docket No. 47, ¶¶ 8-10).

The fact that someone (located anywhere) can give a California address or California university affiliation on StudiVZ's sites is no different that the users of the travel website in *Mail on Sunday* being able to access that site from anywhere to then search for hotels or restaurants in California, including Californians who may be traveling within the state. Although the California-located users were presumably a distinct minority of the *Mail on Sunday* site's total users, that is also true of the California-identified users of StudiVZ's websites, who represent less than .01% of StudiVZ's total users.

[5] Facebook claims that StudiVZ is a "copycat" of Facebook. (Complaint, ¶¶ 27, 41). But, in an interview two years ago, Facebook's founder and CEO, Mark Zuckerberg, refused to call StudiVZ's website a "copycat" (despite the reporter trying to get Mr. Zuckerberg to do so), and instead said, "I think that they're ***different designs*** and slightly different products." http://en.sevenload.com/videos/9cMXu4Y-zuck (emphasis added) (CD available upon request).

case, only a fraction of a percent of Defendants' magazines are distributed in Texas each month. This is a far cry from the twelve percent figure in *Calder*." *Id.* at *5. Likewise, less than 1/10th of one percent of StudiVZ's users are identified with California. (Docket No. 47, ¶ 17). This is simply not enough for California to be considered the location of the brunt of the harm.

### 3. Exercising Jurisdiction over StudiVZ Would *Not* Be Reasonable.

Facebook argues that the "reasonableness" requirement is "but one factor a court should consider and is not determinative by itself." (Opp. at 15:15-18). Facebook is wrong. Reasonableness is a required element. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The seven factors that go into the analysis prove that exercising jurisdiction over StudiVZ would be unreasonable. *Core-Vent*, *supra*, 11 F.3d at 1487-88.

**(i) Purposeful Availment**: Facebook argues that StudiVZ "trespassed" Facebook's servers and has 11,000 users in California. Facebook presents no evidence of the alleged "trespass." It also fails to note that the 11,000 users are .094% of StudiVZ total users. (Docket No. 47, ¶ 17).

**(ii) Burden on Defendant:** Facebook claims there is no burden because "[d]efendants are part of one of the largest and wealthiest media conglomerates in the world, Verlagsgruppe Georg von Holtzbrinck." (Opp. at 16:11-12).[6] Of course, Facebook is pretty wealthy itself. "Where the burdens are equal, the second factor tips in favor of [the moving party] because the law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).[7] Here, the burden on StudiVZ is considerable given (1) it has no offices, personnel or other ties to this forum, (2) the lawsuit concerns whether its German-based websites, trafficked almost entirely by consumers in Europe, violate Facebook's rights and (3) the vast majority of the evidence is in Germany and is written in (or speaks primarily) German.

**(iii) Conflict with Sovereignty:** Facebook fails to distinguish *Core-Vent* with respect to this factor. As *Core-Vent* held, the conflict is created as a result of the fact that StudiVZ is a foreign

---

[6] Facebook sued Verlagsgruppe Georg von Holtzbrinck ("VGH") in this case only to dismiss it in the face of a motion to dismiss for lack of personal jurisdiction. (Docket Nos. 15, 27). In support of that motion, VGH submitted undisputed evidence that VGH has no ownership interest in StudiVZ. (Docket No. 16, ¶ 8).

[7] Facebook claims the law is primarily concerned with the defendant's burden only when the defendant is smaller than the plaintiff. (Opp. at 16:4-10). Facebook is wrong. The Ninth Circuit has unambiguously held that when the burdens are "equal" this factor "tips in favor of" the defendant because the law is "primarily concerned with the defendant's burden." *Terracom*, 49 F.3d at 561. *Accord Core-Vent*, 11 F.3d at 1489.

national with no U.S. based relationships. 11 F.3d at 1489 ("Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist.") Facebook does not even attempt to dispute that fact, but instead argues that it is "outweighed" by the reason" that "Defendants trespassed to California property and committed willful intellectual property theft on a massive unabashed scale." (Opp. at 17:1-5). But *Core-Vent* does not allow such weighing (at least as to this factor) and, as noted above, there is no evidence supporting Facebook's claim.

**(iv) Forum State's Interests:** Facebook has failed to support its claim that California has any interest in this action. Facebook has provided no competent evidence regarding Facebook allegedly residing in California or its servers allegedly being located in California.[8] Plus, even Facebook acknowledges that StudiVZ was developed and launched in Germany and that StudiVZ was not in existence at the time StudiVZ's founders were in the U.S. (Opp. at 3:22-25). Facebook also ignores the fact that the <u>brunt</u> of any alleged harm necessarily occurred outside this forum and that 99.9% of StudiVZ users are outside of California. (Brehm Decl., ¶ 17.) Finally, Facebook's argument is also severely diminished by the fact that Facebook itself has sued StudiVZ in Germany. (Docket No. 69). Accordingly, this factor also weighs in favor of dismissal.

**(v) Efficient Resolution of the Controversy:** For this factor, the court will look "primarily at where the witnesses and the evidence are likely to be located." *Core-Vent*, 11 F.3d at 1489. Facebook argues that <u>some</u> witnesses and documents are in California. But it cannot be disputed that the vast majority of witnesses and documents are in Germany.

**(vi) Plaintiff's Interest in Effective Relief:** Facebook does not address this factor. It simply groups it together with the "existence of alternative forum" factor and then cites to its discussion on *forum non conveniens*. (Opp. at 17:28-18:1). But in the *forum* section, Facebook does not address this factor. In any event, if there was any doubt about Facebook being able to obtain "effective relief," in Germany, Facebook's Cologne lawsuit removes such doubt. *See* Section II.A below.

**(vii) Existence of Alternative Forum:** Facebook also does not address this factor in its argument about the reasonableness, but instead incorporates by reference its argument about *forum*.

---

[8] Facebook is obligated to present admissible evidence even of those facts that may not seriously be in dispute.

(Opp. at 17:28-18:1). As a result, Facebook misstates the burden. In the context of jurisdiction, the burden is on Facebook to prove that no alternative forum exists. *Core-Vent*, 11 F.3d at 1490. Facebook does not meet that burden. Facebook's own actions prove that an alternative forum exists, as Facebook has filed the same lawsuit in Cologne, Germany. *See* Section II.A below.

In sum, the *Core-Vent* factors show that the exercise of jurisdiction would be unreasonable.

### 4. **StudiVZ Did *Not* Contractually Submit to Jurisdiction in California.**

Facebook argues that StudiVZ agreed to jurisdiction in California because (1) StudiVZ employees may have Facebook accounts and (2) Facebook's Terms of Use provide for jurisdiction in California. (Docket No. 76, at 14:11-26). This argument is without merit.

First, Facebook presents no evidence that StudiVZ employees accessed Facebook's website as agents of StudiVZ (and not just in their individual capacities). *Core-Vent*, 11 F.3d at 1486, n.3 (jurisdiction over an employee of a corporation is <u>not</u> the same as jurisdiction over the corporation).

Second, even if StudiVZ employees acted as agents of StudiVZ when joining Facebook.com, Facebook presents no evidence that they had actual or apparent authority to bind StudiVZ.

Third, even if StudiVZ employees acted as agents of StudiVZ when they joined Facebook.com and had authority to bind StudiVZ, StudiVZ still did not consent to jurisdiction in this Court because it had no notice of, and never assented to, the jurisdiction clause. *See, e.g. Hunt v. Sup. Ct.*, 81 Cal.App. 4th 901, 909 (2000) (forum selection clause held *invalid due to its lack of notice* to non-drafting party).

Fourth, the exhibits to Facebook's Complaint show that, up until at least June 28, 2005, Facebook's Terms of Use provided that its users "agree to personal jurisdiction by and venue in the state and federal courts of the State of <u>Massachusetts</u>, City of <u>Boston</u>." (Docket No. 1 at p. 26) (emphasis added). Only on or after June 28, 2005 did Facebook Terms of Use contain a consent to jurisdiction in California. (Docket No. 1 at pp. 29 and 31 of 114). Thus, even if someone had agreed to the Terms of Use as StudiVZ's agent, with authority and with notice (all of which is conjecture), it is entirely possible that they would have only consented to jurisdiction in Massachusetts.

Fifth, courts routinely refuse to enforce this type of jurisdiction/forum clause. Facebook's Terms of Use and its forum selection/jurisdiction clause are internet "browsewrap" agreements. These are different from more enforceable internet "clickwrap" agreements because, while

"browsewrap" agreements "*allow*[] the user to view the terms of the agreement" such as by "simply providing a link to view the terms and conditions," they do "not *require* the user to take any affirmative action before the website performs its end of the contract," such as by clicking a "Yes, I agree to the above terms and conditions" button. *Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 236, n.1, 237 (E.D. Pa. 2007) (internal quotation omitted; emphasis added).

A user of Facebook's site is not required to click an "I accept" or "Yes" button showing they assented to Facebook's Terms of Use before registering for, and entering, Facebook's website. (March 27, 2009 Supplemental Declaration of Stephen S. Smith ["Supp. Smith Decl."], ¶ 2). Thus, Facebook's Terms of Use are a "browsewrap" agreement similar to the one at issue in *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 35 (2nd Cir. 2002), where, applying California common law contract principles, the court held:

> "[C]onspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms . . . are essential if electronic bargaining is to have integrity and credibility . . . . [A] reasonably prudent offeree in plaintiffs' position would not have known or learned, prior to acting on the invitation to download, of the reference to [the defendant's] license terms hidden below the "Download" button on the next screen."

Registration on Facebook's site is like registering for the site in *Specht* (except rather than clicking a "Download" button, a Facebook user must click a "Sign Up" button) because the user is never required to view or assent to the terms to which Facebook would have them be bound. (Supp. Smith Decl., ¶ 2; Ex. K). In fact, Facebook's homepage does not even contain a warning near the "Sign Up" button that the user is agreeing to the terms of service by signing up; the only notice is a tiny "Terms" link at the very bottom of the page hidden among eight other links. (*Id.*).

Courts often refuse to enforce one-sided, lack-of-notice browsewrap agreements. *See, e.g. Ticketmaster v. Tickets.com, Inc.*, 2000 U.S. Dist. LEXIS 12987 at *6 (C.D. Cal. Aug. 10, 2000) (despite the homepage's notice that users were agreeing to terms of service and the existence of a hyperlink to the terms at bottom of page, *no agreement formed* because users were not required to click "I accept."); *In re Broadcast.com, Inc.*, 2000 U.S. Dist. LEXIS 22899 at *14-*17 (E.D. Tex. Aug. 30, 2000) (refusing to enforce forum selection clause in a browsewrap agreement due to lack of "reasonable communication" of the terms of service).

Facebook's cases are inapposite. Facebook cites three for the proposition that "Courts routinely enforce such provisions when determining personal jurisdiction." (Opp. at 14:15-16) (Docket No. 76). However, none concerned internet forum selection/jurisdiction clauses and two ultimately held that the party contesting jurisdiction <u>had not</u> consented to personal jurisdiction.[9]

*Carnival Cruise v. Shute* enforced a forum selection clause in a cruise ticket adhesion contract, but the Court explicitly stated "we do not address the question of whether respondents had sufficient notice of the forum selection clause before entering the contract for passage. Respondents essentially have conceded that they had notice of the forum-selection provision." 499 U.S. 585, 590 (1991). Given that StudiVZ does <u>not</u> concede that it had notice of Facebook's forum selection provision, *Carnival Cruise* is irrelevant.

Facebook's only case involving an internet forum selection clause, *Cairo, Inc. v. Crossmedia Services, Inc.*, is distinguishable because it upheld the clause's validity because (1) the contesting party admitted to actual knowledge of the terms of use (as was so in *Carnival Cruise*), and (2) unlike Facebook's site, the website in *Cairo* displayed a notice on every page stating "By continuing past this page and/or using this site, you agree to abide by the Terms of Use for this site." 2005 U.S. Dist. LEXIS 8450, Case No. C 04-04825 JW at *4, *13 (N.D. Cal. April 1, 2005). StudiVZ made no such admission and Facebook's site contains no such repeated notice. (Supp. Smith Decl., ¶ 3).

In short, Facebook has provided <u>no</u> authority supporting the enforcement of the forum selection/jurisdiction provision contained in its Terms of Use as applied to StudiVZ, and courts examining similar provisions have found them unenforceable.[10]

---

[9] *Hunt v. Sup. Ct.*, 81 Cal.App.4th 901, 909 (2000) (forum selection clause *invalid due to its lack of notice* to non-drafting party; thus, *Hunt* supports StudiVZ's argument that lack of notice and assent invalidate an otherwise enforceable forum selection clause); *S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) (did not involve forum selection clause; instead examined whether an intervening party consents to personal jurisdiction by intervening. Although inapposite, the *S.E.C.* court found the contesting party <u>did not</u> consent to personal jurisdiction).

[10] Facebook also argues that California Penal Code Section 502 provides an independent basis for jurisdiction over StudiVZ (Opp. at 14:1-10). This cannot be so. California's long-arm statute authorizes the exercise of jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 106 (1987) (*citing* Cal. Civ. Proc. Code § 410.10). Therefore, all jurisdictional analysis is already at the bounds of the U.S. constitution, and a California statute cannot confer jurisdiction on any broader basis.
Facebook's argument makes no sense in any event. If every person who merely accesses a website were to thereby subject himself to jurisdiction in California, then nearly every person in the world would be subject to jurisdiction here given (1) the disproportionate number of computer servers located in California, and (2) the widespread use of the internet around the world. Section 502 was simply not created for the purpose of hailing everyone into California's state and federal courts, and Facebook presents no authority for such proposition.

## II. THE COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*.

### A. Facebook's German Lawsuit Proves Germany is an Adequate Alternative Forum.

On November 19, 2008, Facebook filed an 82-page complaint against StudiVZ in Cologne, Germany based on the same conduct alleged in the instant case (the "German Complaint"). (Docket Nos. 69, 70 and 70-2). The German Complaint was not a response to the negative declaratory relief action that StudiVZ filed in Stuttgart, Germany on July 18, 2008. Rather, Facebook went to a separate jurisdiction within Germany to file a new, affirmative claim as a plaintiff. (Docket Nos. 69, 70, 70-2 and 130, ¶ 5). And, as stated by Magistrate Judge Lloyd, "[t]here is no apparent dispute that the issues in the German Action are substantially similar (if not identical) to those raised here." (Order, Docket No. 68 at 4:27-28).

Per German practice, Facebook had to present its entire case in its German Complaint. Thus, the complaint contains its legal claims, requests relief greater than that demanded in its U.S. lawsuit, lists its evidence and its witnesses, contains lengthy written and graphic analysis in the form of two written expert opinions (49 and 41 pages respectively), attaches dozens of exhibits, and contains a legal brief citing the law under which Facebook seeks relief. (*Cf.* German Complaint at pp.66-81 to Facebook's U.S. Complaint at pp.12-15). On February 24, 2009, StudiVZ filed an 81-page response to Facebook's German Complaint. That response contained StudiVZ's evidence and briefing in opposition to Facebook's case, including documents, witness lists, and a written expert report that refutes all of Facebook's claims. (Docket Nos. 120-2 and 120-3). On March 13, 2009, Facebook filed yet another, extensive amendment to its German Complaint in Cologne, Germany. That amendment asks for even more forms of relief and attaches further expert reports in support of its claims. (March 27, 2009 Supplemental Declaration of William M. Walker ["Supp. Walker Decl."], ¶¶ 4, 5, 7; Exs. G, I). The trial in Facebook's Cologne, Germany case will commence on April 28, 2009. (Supp. Walker Decl., ¶6; Ex. H).

Incredibly, even though this was the subject of defendants' supplemental brief filed on December 18, 2008 (Docket No. 69) and is <u>directly</u> relevant to *forum non conveniens*, Facebook does not mention its German Complaint anywhere in its opposition. That is telling.

///

37106-00002/1673761.9　　　　　　　　　10
STUDIVZ'S REPLY IN SUPPORT OF MOTION TO DISMISS

Beginning with Facebook's June 8, 2006 and January 3, 2007 German demand letters, Facebook has repeatedly identified Germany as the proper forum. Now Facebook is vigorously pursuing its German case and has a trial scheduled to commence 18 days after the hearing of this motion. Germany is clearly the more appropriate forum.

**B.     Any Differences Between German and U.S. Law are Irrelevant.**

Facebook claims that Germany is not an appropriate forum because it alleges in this case violations of U.S. and California statutes and because Germany does not allow punitive damages. (Opp. at 18:19-25). Neither argument has any merit.

Any difference between Germany and California concerning the legal basis for relief, or the relief itself, is irrelevant unless the available remedy is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981); *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 768, 769 (9th Cir. 1991). "[I]t is only in 'rare circumstances' . . . where the remedy provided by the alternative forum . . . is so clearly inadequate or unsatisfactory, that it is no remedy at all,' [and] that this requirement is not met." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001), *citing Lockman*, 930 F.2d at 768 (*quoting Piper*, 454 U.S. at 254), *Ceramic Corp. v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir. 1993). And many cases find "Germany to be [an] adequate [forum] despite its differences in civil procedure." *Flex-N-Gate Corp. v. Wegen*, 2008 U.S. Dist. LEXIS 105781 at *5 (S.D.N.Y. Dec. 29, 2008).

The unavailability of punitive damages does not make an alternative forum inappropriate. *Kearney v. Litton Precision Gear*, 1988 WL 236112, at *1 (C.D. Cal. 1988); *Nolan v. Boeing Co.*, 762 F.Supp. 680, 681-82 (E.D. La. 1989). Even severely restricted damages in the alternative forum do not matter. *Lueck*, 236 F.3d at 1143, 1144; *Gonzalez v. Chrysler Corp.*, 301 F.2d 377, 381, 383 (5th Cir. 2002) (affirming dismissal of case based on *forum non conveniens* in favor of Mexico even though Mexico did not provide strict tort liability and capped damages at $2,500).

Further, if Facebook believes that its California and U.S. statutory claims provide the opportunity for some form of relief that German law does not, there is nothing to prevent Facebook from seeking to have the Cologne, Germany court consider such claims. *Creative Technology, Ltd. v. Aztech Systems Pte., Ltd.*, 61 F.3d 696, 701 (9th Cir. 1995); *Contact Lumber Co. v. P.T. Moges*

*Shipping Co., Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990); *Cheng v. The Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983).

### C. **Facebook's Choice of Forum is Not Determinative.**

Facebook repeatedly argues that its forum choice is dispositive. (Opp. at 19:5). Facebook is wrong. Any "deference due to plaintiff[] . . . is far from absolute." *Lockman*, 930 F.2d at 767; *Contact Lumber*, 918 F.2d 1449-1450. "A citizen's forum choice should not be given dispositive weight . . . [I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft*, 454 U.S. at 256 n.23. "A plaintiff's choice of forum is also given reduced emphasis where . . . the operative facts upon which the litigation is brought bear little material connection to the chosen forum." *Flex-N-Gate*, *supra*, 2008 U.S. Dist. LEXIS 105781 at *3-*4 (dismissing case filed by U.S. plaintiff in favor of Germany because the core alleged misconduct occurred in Germany).

In addition, Facebook is doing business in Germany. Thus, Facebook "should expect to litigate claims relating to those business ventures in Germany." *Id.* at *3-*4. "[T]he deference due an American plaintiff is diminished where plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts." *Id.* at *4; *Contact Lumber*, 918 F.2d at 1450. As a U.S. company present and doing business in Germany, Facebook expects to, and does, litigate in Germany. Facebook's U.S. complaint shows that this dispute concerns alleged damages to Facebook's German and other European operations because of allegedly improper conduct by Germans in Germany. (U.S. Complaint, Docket No. 1, at ¶¶ 1, 3-6, 12, 28, 40-41).

Also, Facebook has not chosen California as its only forum for this dispute. It has brought the same dispute in Germany too. Thus, Facebook's choice of California as a forum should be given substantially less weight. *EFCO Corp. v. Aluma Systems USA, Inc.*, 145 F.Supp.2d 1040, 1046-47 (S.D. Iowa 2000) (fact that U.S. resident plaintiff had also sued in Canada led court to discount the plaintiff's choice of forum).

### D. **The Private Interest Factors Favor Germany.**

**(i) Residence of Parties and Witnesses**: Facebook's complaint alleges that the conduct occurred in Germany and was committed by German citizens. (Docket No. 1, ¶¶ 1, 3-6, 12,

28, 40-41). Although Facebook notes that its own witnesses are here, it does not say who they are or what they might add to this case. Totally without any competent evidence, Facebook claims that the German founders of StudiVZ spent time in the U.S. long ago and so concludes that the "initial creation and development of the StudiVZ site . . . appears to have occurred on U.S. soil." (Opp. at 22:10-14). But that is wild speculation and contradicts Facebook's own complaint, which states that StudiVZ was built by German residents from computers in Germany in "October 2005" and launched in Berlin, Germany. (Docket No. 1, ¶ 28).

**(ii) Convenience to Litigants**: Defendants and Facebook both have a presence in Germany. Facebook does regular, continual business in Germany. It has pursued its legal claims in Germany for over 2 ½ years, beginning with its June 2006 demand letter and continuing through its pending Cologne, Germany lawsuit. Defendants on the other hand have no presence of any kind whatsoever in California. The balance of the convenience to the litigants tips heavily in favor of Germany. *See Contact Lumber*, 918 F.2d at 1450 ("[P]arties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.").

**(iii) and (v) Access to Physical Proof and Cost of Bringing Witnesses to Trial**: The key witnesses are in Germany. They speak German, and many have little English proficiency. The vast majority of relevant documents are also in Germany.

**(iv) Compelling Unwilling Witnesses**: Facebook names only two people, Messrs. Dariani and Bemmann, as allegedly culpable. (Docket No. 1, ¶¶ 28, 31, 36, 37). Neither works for StudiVZ now. Both live in Germany and are subject to German process and jurisdiction. They are not subject to the process of this Court and cannot be compelled to testify at trial. It will likely be very difficult to compel them to testify even at deposition.

**(vi) Judgment Enforceability**: Any judgment --whether German or U.S. -- must be enforced in Germany. That is where StudiVZ (and all of its assets) are located. It is easier and cheaper to enforce a German judgment in Germany than a U.S. judgment, especially where at least one aspect of a possible U.S. judgment -- punitive damages -- is unenforceable in Germany.

Bundesgerichtshof [BGH] [Federal Court of Justice] June 4, 1992, 118 Entscheidungen des Bundesgerichtshofes in Zivilsachen [BGHZ] 312 (F.R.G.) (copy attached).

**(vii) Other Considerations**: Costs and delays associated with the enormous amount of German translation that will be required are real, significant, and completely unnecessary in light of Facebook's German lawsuit. A few witnesses speak respectable English, but even they will likely need some translation. The rest will require substantial translation.

### E. The Public Interest Factors Also Favor Germany.

**(i) Local Interests:** This case is based on events in Germany, involving alleged misconduct by Germans in Germany, and purported damage to Facebook in the German and European markets. (Docket No. 1, ¶¶ 1, 3-6, 12, 28, 40-41).

**(ii) Familiarity with Governing Law**: There will be complex disputes over choice of law because the alleged acts were committed in Germany. And, a German court is more able than a U.S. court to analyze German and European markets under applicable law and to assess any harm that Facebook allegedly suffered in Germany or Europe.

**(iii), (iv) and (v) Burden on Local Court, Court Congestion and Costs Related to Resolving a Dispute that is Unrelated to the Forum**: This Court and the jury would be unduly burdened because the witnesses are Germans located in Germany who speak German and the documents are in Germany and in German. Interpreting the testimony of every key witness and translating every document from German into English will greatly prolong the trial and increase expense for everyone, including this Court. This is unnecessary and wasteful, especially given Facebook's pursuit of its nearly identical German lawsuit.

**(vi) Pending Litigation in Alternate Forum**: This factor obviously favors Germany. Facebook has initiated the same action as a plaintiff in Cologne, Germany and is defending against the negative declaratory relief action filed by StudiVZ in Stuttgart, Germany.

### F. Facebook's German Lawsuit Moots its Terms of Use Argument.

Facebook also claims that, under its terms of use, *forum non conveniens* cannot be asserted. (Opp. at 25:9-12). Facebook is wrong.

First, Facebook is wrong for all of the reasons set forth in Section I.B.4 above.

1    Second, Facebook may not argue that defendants are subject to a mandatory forum provision in its terms of use, while it simultaneously initiates the same claims -- <u>including claims for violation of its terms of use</u> -- in Cologne, Germany.  Either the terms of use are not mandatory, or Facebook has waived them by its conduct.  *Holland Am. Line*, *supra*, 485 F.3d at 458 (noting that forum selection clauses are subject to "general contract principals" – e.g., waiver)

Third, even if such terms of use might otherwise apply, *forum non conveniens* is always in the Court's discretion, especially where, as here, the forum selection clause is, as proven by Facebook's own actions, permissive.  *See Advanta Corp. v. Dialogic Corp.*, 2006 U.S. Dist. LEXIS 28214 at *9-*10 (N.D. Cal. May 2, 2006) (permissive forum selection clause not enforced and case conditionally dismissed based on *forum non conveniens* without even considering forum selection clause); *McNeil v. Stanley Works*, 33 Fed.Appx. 322, 324 (9th Cir. 2002) (affirming *forum non conveniens* dismissal despite permissive forum selection clause).  Even if the Court considers the forum selection clause, "the presence of a forum selection provision . . . even a mandatory one . . . is 'simply one of the factors that should be considered and balanced in the normal forum non conveniens analysis.'"  *American Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F.Supp. 2d 749, 768 (N.D. Cal. 2004), *citing Royal Bed & Spring Co. v. Famossul*, 906 F.2d 45, 51 (1st Cir. 1990).  And, in any event, courts may raise *forum non conveniens sua sponte*, without regard to the parties' choice of forum. See *Vogt-Nem, Inc. v. M/V Tramper*, 263 F.Supp.2d 1226, 1233-1234 (N.D. Cal. 2002); *Corporacion Mexicana v. The M/T Respect*, 89 F.3d 650, 656 n.1 (9th Cir. 1996).

### III. <u>CONCLUSION</u>

For all the above reasons, StudiVZ respectfully requests that its Motion to Dismiss be granted.

DATED: March 27, 2009

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By:   /s Stephen S. Smith
      STEPHEN S. SMITH
Attorneys for Defendant StudiVZ Ltd.