STEPHEN S. SMITH (SBN 166539)
SSmith@GreenbergGlusker.com
WILLIAM M. WALKER (SBN 145559)
WWalker@GreenbergGlusker.com
AARON J. MOSS (SBN 190625)
AMoss@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendants StudiVZ Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STUDIVZ LTD., , HOLTZBRINCK NETWORKS GmbH, HOLTZBRINCK VENTURES GmbH, and DOES 1-25,<br><br>Defendants. | Case No. 5:08-CV-03468 JF<br>Assigned To: Hon. Jeremy Fogel<br><br>**SUPPLEMENTAL REPLY IN SUPPORT OF STUDIVZ LTD.'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS***<br><br>[Holtzbrinck's Supplemental Reply, Supplemental Declarations of Dr. Anton Maurer and Karsten Butzke Filed Concurrently]<br><br>Date: April 17, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 3<br><br>Complaint Filed: July 18, 2008 |

37106-00002/1683570.5

STUDIVZ'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

Facebook's supplemental brief is a last-ditch, tortured attempt to prove via rampant speculation that a zebra might not have stripes. Yes, Facebook is a California-resident plaintiff. But *all* other factors weigh *heavily* in favor of Germany as the appropriate forum. The lengths to which Facebook goes to try to show otherwise demonstrate the point better than anything else. The law and sound common sense mandate dismissing this case for *forum non conveniens*.

## I. GERMANY IS THE PROPER FORUM FOR THIS CASE.

Facebook (i) sent June 2006 and January 2007 demand letters to StudiVZ threatening suit in Germany under German law based on the same conduct that Facebook asserts here; (ii) went to the *only source* of the alleged infringement, Germany, to file suit, seeking sweeping damages, injunctive, and other relief under many German statutes; (iii) recently filed a massive new amendment to its German case seeking broad additional relief; and (iv) trial is set to commence in Germany on April 28, 2009. Facebook's claim that Germany is not the proper forum is meritless.

### A. Germany is An Adequate Alternative Forum

Facebook first argues that its Computer Fraud and Abuse Act and trade dress claims are so "unique" that a German court cannot decide them. (Docket No. ["Dk."] 145 at 1:19-2:1). Yet *Facebook's own German pleadings,* which make similar claims under German law, refute that argument. Facebook does not show how its German claims are inadequate, and its argument that a German injunction would not be enforceable in the U.S. (*id.* at 2:2-3) is a red herring and untrue.

#### 1. Facebook's German Damages and Injunction Claims are Adequate.

StudiVZ does business *only in Germany*; it has no U.S. facilities, employees, bank accounts or assets. Any injunction must be enforced in Germany. *Creative Tech., Ltd. v. Aztech System PTE, Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995) is on point. There, the district court dismissed a U.S. copyright case for *forum non conveniens*. Creative argued "the territorial limits of the Singapore Copyright Act renders the High Court of Singapore incapable of protecting Creative's United States copyright interests." *Id.* at 702. The Ninth Circuit held Creative's claim was *"belied by the scope of Creative's own Singapore counterclaim,"* which sought *"both monetary and permanent injunctive relief* for all acts of infringement from both the development of the [goods] in Singapore *and their distribution abroad.*" *Id.* (emphasis added). "[T]he High Court

37106-00002/1683570.5      1
STUDIVZ'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

of Singapore is capable of granting Creative the relief it seeks despite the territorial limitations of the Singapore Copyright Act....[L]ack of extraterritorial reach should not prevent the High Court of Singapore from *subsuming* the amount of damages incurred by Aztech Labs' alleged illegal distribution of pirated sound cards within the United States in the amount of damages awarded under the Singapore Copyright Act for Aztech's alleged infringing acts occurring in Singapore." *Id.* (emphasis added). Here, the German court may do the same thing. (Maurer Decl., ¶¶ 5-6).

The Ninth Circuit also addressed the injunction issue, noting that it was *"unable to conceive of a more effective means* of protecting Creative's United States copyright interests than by *shutting off the pipeline of infringing goods at the source*. Thus, *regardless* of whether the High Court of Singapore has jurisdiction to adjudicate acts of copyright infringement occurring outside Singapore, we believe that Court is capable of offering Creative an adequate monetary or injunctive remedy under the Singapore Copyright Act." *Id.* (emphasis added). The same is true here. Assuming purely for the sake of argument that Facebook's claims have any merit, the best remedy is to stop the alleged infringement *at the source* in Germany.[1]

### 2. Overseas Judgments are Enforceable in California.

Facebook is also wrong about the enforceability of a German judgment in California. That is governed by state law. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1212 (9th Cir. 2006). In California, foreign injunctions *are* enforceable based on comity unless "the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or of the State where recognition is sought." *Id.* at 1213-14; *In re Stephanie M.*, 7 Cal.4th 295, 314 (1994).[2]

---

[1] Facebook claims that its allegations are "essentially undisputed." (Dk. 145 at 1:3). This is absurd. StudiVZ is vehemently disputing Facebook's claims on the merits *in Germany*.

[2] Facebook's lone cite supports defendants. In *Jackson v. Grupo Industrial Hotelero*, rapper "50 Cent" sued a Mexican nightclub that used his image and U.S. trademarks without permission. 2008 WL 4648999 at 1-2 (S.D. Fla. 2008). Unlike here, *more than half* of the club's customers were U.S. citizens, and the club used the image and marks to advertise in the U.S. *Id.* at 2. The court held Mexico was inadequate because (1) trademarks were enforced by an administrative entity, not the Mexican courts, (2) civil trademark actions were theoretically available but never used, (3) the judicial system was slow and ineffective in complex intellectual property litigation, (4) there was no private right to injunctive relief for copyright, trademark, trade secret or patent infringement, and (5) it was "impossib[le to] obtain[] damages, profits and attorney's fees" in the administrative enforcement proceedings. *Id.* at 11. *No* such issues exist here. In fact, *Jackson* noted that "*this Court sees no reason why an appropriate foreign court cannot adequately apply the Lanham Act* if called upon to do so." *Id.* at 11 n.11 (emphasis added).

## II. THE PRIVATE AND PUBLIC INTEREST FACTORS FAVOR GERMANY.

**A. The Vast Bulk of Any Alleged Harm Occurred in Germany**: Facebook claims defendants "injured Facebook here." (Dk. 145 at 2:6-7). Not so. This Court already noted that "the alleged harm appears to have been experienced primarily in Germany." (Dk. 138, Order, at 3:17-18). The vast majority of StudiVZ's users are in Europe. Less than .01% are in California. (Dk. 47 at 4:8-16). If there has been any consumer "confusion," virtually all of it has occurred in Germany and Europe and not in California.

**B. Convenience of the Witnesses Favors Germany**: Facebook argues that "most material witnesses are here." (Dk. 145 at 2:7). The Court preliminarily noted the weakness of this argument. (Dk. 138 at 3:12-18).

Facebook now claims that "there are a number of Facebook employees that reside in the Northern California area that will testify and provide evidence in support of Facebook's federal and California claims against defendants." (Howitson Decl. at 1:8-9). However, *nowhere* does Facebook say who they are, how many there are, or exactly what they know or would say.

Facebook also claims 5 former StudiVZ employees generally "possess relevant information" related to Facebook's "look and feel," "the success of Facebook" or alleged "harm suffered by Facebook." (Dk. 145 at 2:19-23; Howitson Decl., ¶ 2). But again Facebook *nowhere* says their testimony is unique, key, or cannot come from other sources. Facebook's German filings do not even list them as witnesses. (Dk. 70-2; Dk. 134-2).

Finally, Facebook says two ex-StudiVZ "executives" live in North Carolina. (Dk. 145 at 3:4-6). Not so. Taylor Mingos was no "executive." While in college, he spent a semester in Berlin in 2006 and was briefly an unpaid StudiVZ *intern;* he was not an employee. (Butzke Decl., ¶ 2). Tobias Walter was an intern from June 19, 2006 to August 19, 2006, and Chief *Marketing* Officer from January 2007 to September 2007. He was only responsible for *marketing* StudiVZ's now defunct Polish, French, Spanish and Italian websites. (Butzke Decl., ¶ 3).[3]

**C. Convenience of the Parties Favors Germany**: Facebook says it would be

---

[3] Facebook's "third party witnesses" are irrelevant. Intetics is an outsourcer that sends its work to *Ukraine*. (Dk. 140, Exh. 13 at 4). StudiVZ's contracts with Apple and Panther at most concern general personal jurisdiction (which Facebook does not assert); Facebook *nowhere* says how they concern the creation or design of StudiVZ's websites.

| 1 | "greatly inconvenienced" by litigating in Germany. (Dk. 145 at 3:11-12). But that cannot be
2 | taken seriously while Facebook prosecutes the same case in Germany. Anyway, documents and
3 | testimony are often provided in English without translation to German courts, which often function
4 | in English and German. (Maurer Decl., ¶ 7). Indeed, Facebook has not translated into German *any*
5 | English language evidence it filed in Cologne or the English report by its U.S. expert, Mr. Lampe.
6 | (*Id.*). And, Facebook's case concerns alleged misconduct by current and former *StudiVZ*
7 | employees working in Germany, so Facebook cannot seriously say that "few German witnesses"
8 | are involved. (Dk. 145 at 3:22). Facebook's interrogatories demanded the names of *all* present and
9 | former StudiVZ employees with any involvement in the design, programming and maintenance of
10 | any StudiVZ website; all are Germans working in Germany. (Dk. 91 at 16:6-15 and 27-28).

11       **D.**     <u>**Enforceability Favors Germany:**</u> This issue is subsumed within § II.A above.

12       **E.**     <u>**There is Little Local Interest:**</u> Although Facebook is in California, California
13 | has a slim interest in this case. The alleged misconduct was in Germany. Facebook says
14 | defendants "hatched their plan" in the U.S, but Facebook's claims do not arise from "hatching a
15 | plan." They arise from alleged *injury*, which Facebook alleges arose from acts occurring only in
16 | Germany. The vast bulk of any alleged injury to Facebook would have been in Europe, as
17 | Facebook's original complaint admits. (Dk. 1, ¶¶ 1, 3-6, 12, 28, 40-41; Dk. 47 at 4:8-16).

18       **F.**     <u>**Local Court Burden Favors Germany:**</u> Facebook wrongly argues that the
19 | German court would be as or more burdened than this Court. *StudiVZ's* conduct is at issue. Its
20 | documents and testimony will be in German. The burden of translating German documents into
21 | English here is much greater than translating a limited amount of English documents into German
22 | in Germany. Plus, German courts often accept evidence and testimony in English without
23 | German translation; in its German case, Facebook has not bothered to translate its English
24 | exhibits or a 49 page English expert report into German. (Maurer Decl., ¶ 7).

25       **G.**     <u>**The Pending German Litigation Favors Germany:**</u> Facebook calls StudiVZ's
26 | Stuttgart action "preemptive." In doing so, Facebook ignores its demand letters from 2006 and 2007
27 | and its own lawsuit in Cologne. Facebook never tried to dismiss or stay the Stuttgart action in favor
28 | of this action. Instead, *Facebook chose Germany* as a forum even after the motions to dismiss were

filed here. Facebook's argument that the German actions are irrelevant is contrary to Supreme Court and Ninth Circuit law. *Sinochem Int'l Co. v. Malaysia Int'l Shipping*, 549 U.S. 422, 428, 435 (2007) (judicial economy "disserved by continuing" U.S. case given case in China); *Contract Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1551-53 (9th Cir. 1990) ("There are significant advantages in having all the parties...assert their claims in one forum, not only to avoid inconsistent factual findings, but also to spare the litigants the additional costs of duplicate lawsuits.").

III. **FACEBOOK'S TERMS OF USE ARGUMENT HAS NO MERIT.**

Facebook ignores StudiVZ's arguments about the terms of use (including that Facebook violated or waived them by suing StudiVZ in Cologne for breach thereof). (Dk.133 at 7-9, 14-15).[4] Instead, Facebook only says "in at least the 2005-2006 timeframe" it required users to click a box agreeing to them. (Dk. 148 at 2, ¶ 4.) But that is very vague and contradicts Facebook's complaints: "2005-2006 timeframe" *could* mean December 2005 until January 2006, i.e. after StudiVZ was launched, but Facebook does not say. Facebook admits that, through June 28, 2005, when defendants allegedly "hatched their plan," the terms did *not* provide California venue, (Dk. 1, Ex. 2 at 29, 31), and also admits that, today, it does *not* require its users to agree to anything but simply provides a barely noticeable link to its "Terms." Indeed, both Facebook complaints say users "agree" to the terms in Exhibit 3 thereto. (Dk. 1 at 5-6, ¶ 22; Dk. 140 at 7, ¶ 24). Yet Exhibit 3 reflects *no* means that manifests such agreement; it shows only an inconspicuous link to "Terms" under the login information. Finally, the terms expressly do *not* require California venue for ***Facebook's claims***. The clause applies only to claims "not subject to arbitration." The very next clause says ***Facebook*** must ***arbitrate*** any claim arising out of or related to the terms of use or the use of the site or service (Dk. 140, Ex. 2 at pp. 19 and 32 of 34); that covers *all* of Facebook's claims here.

DATED: April 10, 2009  GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: /s Stephen S. Smith
STEPHEN S. SMITH
Attorneys for Defendant StudiVZ Ltd.

---

[4] Facebook claims that "Defendants impliedly concede that the ToS are valid." (Brief at 5, fn. 21). This is untrue. StudiVZ devoted four pages of its reply arguing that they were not.