1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

    FACEBOOK, INC.,              )  CV-08-3468-JF
5                                )
                 PLAINTIFF,      )  SAN JOSE, CALIFORNIA
6                                )
          VS.                    )
7                                )  MAY 1, 2009
    STUDIVZ, LTD, ET AL,         )
8                                )
                 DEFENDANT.      )  PAGES 1-32
9    _____)

10

11          TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE JEREMY FOGEL
12        UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15

16   FOR THE PLAINTIFF:   ORRICK HERRINGTON & SUTCLIFFE
                          BY:  THOMAS J. GRAY
17                        4 PARK PLAZA, STE 1600
                          IRVINE, CA 92614
18

19   FOR THE DEFENDANT:  GREENBERG GLUSKER
                         BY:  STEPHEN SMITH
20                            WILLIAM WALKER
                         1900 AVENUE OF THE STARS
21                       STE 2100
                         LOS ANGELES, CA 90067
22

23        (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25   OFFICIAL COURT REPORTER: SUMMER CLANTON, CSR,
                             CERTIFICATE NUMBER 13185

                                                      1

Dockets.Justia.com

1    FOR THE PLAINTIFF:   ORRICK HERRINGTON & SUTCLIFFE
                          BY:  JULIO AVALOS
2                         1000 MARSH ROAD
                          MENLO PARK, CA 94025
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    SAN JOSE, CALIFORNIA          MAY 1, 2009

2                P R O C E E D I N G S

3              (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5              THE COURT:  THE NEXT AND FINAL MATTER IS

6    FACEBOOK VERSUS STUDIVZ.

7              MR. SMITH:  GOOD MORNING, YOUR HONOR.

8              STEVEN SMITH AND WILLIAM WALKER ON BEHALF

9    OF DEFENDANTS STUDIVZ, HOLTZBRINCK NETWORKS AND

10   HOLTZBRINCK VENTURES.

11             MR. GRAY:  GOOD MORNING, YOUR HONOR.

12             TOM GRAY AND JULIO AVALOS ON BEHALF OF

13   FACEBOOK.

14             THE COURT:  GOOD MORNING.

15             WELL, LET ME ASK STUDIVZ A QUESTION.

16   THERE ARE SEVERAL MOTIONS THAT ARE BUMPING AROUND.

17   THERE ARE JURISDICTIONAL MOTIONS THAT ARE NOT

18   BEFORE THE COURT THIS MORNING BECAUSE OF SOME

19   ONGOING DISCOVERY DISPUTES.

20             I THINK IT'S KIND OF A DISCRETIONARY

21   DETERMINATION FOR THE COURT TO MAKE, WHETHER IT

22   WANTS MAKE UP THE FOREIGN NON CONVENIENS MOTION

23   BEFORE THE JURISDICTIONAL ISSUES ARE FULLY

24   PRESENTED.

25             I'M PREPARED TO DO IT, AND I'M PREPARED

1      NOT TO DO IT.  I'D LIKE TO GET FEEDBACK FROM BOTH

2      PARTIES.  I KNOW FACEBOOK HAS BEEN ANXIOUS TO GET

3      THESE MATTERS HEARD, BUT WHAT'S YOUR VIEW?

4              MR. SMITH:  STUDIVZ AND HOLTZBRINCK'S

5      VIEW IS THEY SHOULD BE HEARD NOW, SEPARATE AND

6      APART FROM JURISDICTION, FOR REASONS WE BRIEFED

7      BEFORE.

8              BRIEFLY, THE SINOCHEM CASE, WHICH IS THE

9      U.S. SUPREME COURT CASE, TALKS ABOUT CIRCUMSTANCES

10     THAT ARE PRESENT HERE THAT FORM CAN BE CONSIDERED

11     FIRST.

12             THE COURT:  I KNOW I HAVE SINOCHEM.  IF

13     IT SAYS NOTHING ELSE, IT SAYS I HAVE DISCRETION TO

14     DO IT.  I'M TRYING TO DETERMINE WHAT YOUR

15     PREFERENCE IS.

16             MR. SMITH:  MY PREFERENCE TO HAVE THE

17     FORUM NON CONVENIENS HEARD FIRST.

18             WE DO HAVE AN OUTSTANDING DISCOVERY

19     DISPUTE THAT IS A -- ALTHOUGH WE RESPECTFULLY

20     DISAGREED WITH FACEBOOK'S ISSUE ON IT, IT'S A

21     COMPLICATED ISSUE.  SO THE FORUM ISSUE SHOULD BE

22     HEARD FIRST BECAUSE IT'S CLEAN.

23             THE COURT:  AND FACEBOOK, I TAKE IT,

24     DISAGREES WITH THAT?

25             MR. GRAY:  YES, YOUR HONOR, WE DO.

4

1          YOUR HONOR, I THINK YOU'VE HIT THE NAIL

2     ON THE HEAD WITH RESPECT TO WHAT THIS MOTION TODAY

3     IS ALL ABOUT IN TERMS OF PREVENTING AND AVOIDING

4     DISCOVERY IN THIS ACTION.

5          THE COURT:  WHY ISN'T THAT A GOOD THING?

6          MR. GRAY:  WELL, IT'S NOT A GOOD THING

7     BECAUSE PLAINTIFF HAS RIGHTFULLY BROUGHT U.S. AND

8     CALIFORNIA-BASED CLAIMS HERE BEFORE THIS COURT FOR

9     INJURY IT SUFFERED HERE.

10         BUT TO ANSWER YOUR QUESTION REGARDING

11    SINOCHEM, I'M NOT SURE THAT SINOCHEM DOES GRANT YOU

12    FULL DISCRETION TO HEAR THE FORUM NON CONVENIENS

13    PORTION OF THEIR MOTION AT THIS TIME.

14         IF YOU LOOK AT SINOCHEM, PAGE 433, 549 US

15    433, THE COURT SAYS THERE SHOULD BE NO ASSUMPTION

16    OF LAW DECLARING POWER UNLESS THE COURT FINDS THAT

17    THE FORUM NON CONVENIENS MOTION IS SO CLEAR, AS IT

18    DID IN THE SINOCHEM CASE, WHERE IT WAS ALL FOREIGN

19    PARTIES DISPUTING EVENTS THAT OCCURRED IN A FOREIGN

20    LOCALE.

21         THE COURT:  YOU ARE DISTINGUISHING

22    SINOCHEM ON ITS FACTS.  THE COURT HAS DISCRETION,

23    AND LIKE MOST DISCRETION THERE ARE LIMITS ON IT,

24    BUT THE COURT CAN STILL LOOK AT THE FORUM FACTORS

25    AND DECIDE IF THEY ARE CLEAR.

5

1          I AGREE THEY HAVE TO BE PRETTY STRONG AND

2     THE JURISDICTIONAL ISSUES HAVE TO BE STICKY, WHICH

3     THEY ARE HERE, AND UNDER THOSE CIRCUMSTANCES THE

4     COURT HAS DISCRETION.

5          YOU ARE SAYING THAT I THINK, ULTIMATELY,

6     THAT THE FORUM FACTORS ARE NOT NEARLY AS CLEAR IN

7     SINOCHEM.

8          MR. GRAY:  THAT'S CORRECT, YOUR HONOR.

9          I THINK, IN THIS INSTANCE, THERE'S A LOT

10    OF DISPUTE OF FACTUAL ISSUES.

11         THE COURT:  I STARTED WITH COUNSEL, BUT

12    I'M GOING TO FOCUS MY QUESTIONS ON YOU AT THIS

13    POINT.

14         YOU KNOW, GERMANY ISN'T EXACTLY -- WHO DO

15    I INSULT HERE -- GERMANY ISN'T SOMALIA, IT'S NOT A

16    FAILED STATE WITH NO LEGAL SYSTEM AND NO RECOURSE.

17    IT'S A VERY SOPHISTICATED LEGAL SYSTEM.  AND, IN

18    FACT, THESE VERY PARTIES ARE LITIGATING CLOSELY

19    RELATED CLAIMS IN GERMANY.

20         SO GIVEN THAT, GIVEN THAT THERE ARE

21    STICKY JURISDICTIONAL QUESTIONS, GIVEN THERE'S NO

22    REASON TO THINK THAT A GERMAN COURT WOULDN'T OR

23    COULDN'T CONSIDER THE UNIQUE CALIFORNIA CLAIMS

24    FACEBOOK HAS, WHY SHOULD THERE BE LITIGATION GOING

25    ON IN TWO DIFFERENT FORUMS OVER CLOSELY RELATED

1    ISSUES WHEN A LOT OF THE CRITICAL DEFENSE WITNESSES

2    ARE IN GERMANY, A LOT OF THE MISCONDUCT THAT'S

3    ALLEGED TOOK PLACE IN GERMANY?

4            IT MAY NOT BE SINOCHEM, BUT IT STRIKES

5    ME, AT LEAST SUPERFICIALLY, AS BEING PRETTY CLOSE

6    THAT THERE ARE A LOT OF CONVENIENCE FACTORS AND

7    JUDICIAL ECONOMY FACTORS THAT ARE IN FAVOR OF

8    GERMANY.

9            I NEED TO UNDERSTAND WHAT CAN'T FACEBOOK

10   GET IN GERMANY THAT IT COULD GET IN CALIFORNIA?

11   WHAT'S THE HARM?

12           MR. GRAY:  FIRST OFF, TAKING A STEP BACK,

13   OBVIOUSLY, THE DEFENDANTS RELY HEAVILY ON THE FACT

14   THAT THERE IS ANOTHER CASE IN GERMANY, AS WE

15   POINTED OUT IN OUR BRIEF, THE ADELSON CASE, THE

16   DOLE CASE, THE HAYES CASE, ALL OF THESE CASES SAY

17   THAT DUPLICATIVE LITIGATION ISN'T A FACTOR UNDER

18   FORUM NON CONVENIENS ANALYSIS.

19           THE COURT:  WELL, DOLE, IT JUST SO

20   HAPPENS -- THERE'S SERENDIPITY, BUT IF YOU ARE A

21   JUDGE LONG ENOUGH THESE THINGS HAPPEN.

22           I WAS ON THE PANEL IN DOLE, AND THE

23   ANALYSIS IN THAT CASE IS WHERE IS THE BRUNT OF THE

24   HARM?  WHERE IS THE CENTER OF GRAVITY OF THE

25   DISPUTE?  AND, YOU KNOW, I THINK THERE'S A DESCENT

```
1    ARGUMENT THAT THE CENTER OF GRAVITY IN THIS CASE IS
2    IN GERMANY.
3              MR. GRAY:  THE CENTER OF GRAVITY OF THE
4    HARM TO FACEBOOK, AS A LOCAL ENTITY WITH ITS
5    PRINCIPAL PLACE OF BUSINESS RIGHT UP THE STREET IN
6    PALO ALTO, CALIFORNIA.
7              YES, THEY'VE GOT USERS IN GERMANY THAT
8    THEY UNFAIRLY AND IMPROPERLY GAINED BECAUSE OF
9    THEIR ACTIONS IN GERMANY, BUT THE BRUNT OF ECONOMIC
10   INJURIES ARE SUFFERED HERE.
11             AND WE ALSO HAVE TO LOOK, WHICH THE
12   DEFENDANTS DON'T LOOK AT MUCH AT ALL, THERE ARE
13   DEFENDANT USERS IN CALIFORNIA AND THROUGHOUT THE
14   UNITED STATES.
15             SO THERE IS HARM TO FACEBOOK'S
16   INTELLECTUAL PROPERTY RIGHT HERE IN CALIFORNIA WITH
17   OVER 11,000 USERS, AND PROBABLY TENS OF THOUSANDS,
18   IF NOT HUNDREDS OF THOUSANDS OF USERS, THROUGHOUT
19   THE UNITED STATES.
20             AGAIN, AT THIS EARLY STAGE OF THIS CASE
21   WITH NO DISCOVERY PROVIDED FOR MANY PARTS OF THE
22   DESIGN DEVELOPMENT AND THE ACTIONS TAKEN BY
23   DEFENDANTS IN GERMANY, FACEBOOK IS AT A
24   DISADVANTAGE OF COMING FORTH --
25             THE COURT:  TO GET BACK TO MY EARLIER
```

1    QUESTION, WHAT CAN'T YOU GET IN GERMANY THAT YOU

2    CAN GET IN CALIFORNIA?  I REALIZE THAT'S NOT THE

3    ONLY QUESTION THE COURT HAS TO LOOK AT, BUT JUST IN

4    TERMS OF CONVENIENCE AND ECONOMY.

5              IF YOU HAVE YOUR WAY, WE ARE GOING TO

6    HAVE PARALLEL LITIGATION GOING ON IN TWO DIFFERENT

7    CONTINENTS ABOUT SOME OF THE SAME DISPUTED FACTS

8    AND INVOLVING A LOT OF THE SAME PEOPLE.

9              WHY DOES THAT MAKE SENSE?  WHY DO THE

10   EQUITIES FAVOR THAT RATHER THAN HAVING ONE COURT IN

11   A CIVILIZED INDUSTRIAL COUNTRY MAKING A

12   DETERMINATION OF THE PARTIES' RIGHTS.

13             MR. GRAY:  BECAUSE THE CLAIMS ARE

14   DIFFERENT HERE, YOUR HONOR.  THESE ARE LARGELY U.S.

15   BASED FEDERAL CLAIMS.

16             AGAIN, IT'S DEFENDANT'S BURDEN TO COME

17   FORWARD TO SHOW THAT THESE CLAIMS WOULD BE

18   DUPLICATIVE, THAT ALL THE WITNESSES AND ALL THE

19   EVIDENCE WOULD BE DUPLICATIVE OF WHAT'S GOING ON IN

20   GERMANY.

21             AND THEY CAN'T DO THAT BECAUSE THE TRADE

22   DRESS CLAIMS HAS DIFFERENT ELEMENTS AND DIFFERENT

23   ISSUES AND WOULD REQUIRE DIFFERENT TESTIMONY FROM

24   DIFFERENT WITNESSES THAT WOULD BE GOING FORWARD ON

25   THE UNFAIR COMPETITION OF COPYRIGHT CLAIMS.

1          THE COURT:  THEY ARE CLOSELY RELATED,

2     THOUGH, AREN'T THEY?  I MEAN, IT'S A FORM OF UNFAIR

3     COMPETITION -- IT'S NOT COMMON LAW AND UNFAIR

4     COMPETITION, BUT IT'S MISUSING A PARTY'S PRESENCE

5     IN THE MARKETPLACE IN A WAY THAT'S UNFAIR.

6          THERE'S A COMMON THREAD IN ALL OF THESE

7     THINGS.

8          MR. GRAY:  THERE'S CERTAINLY A COMMON

9     THREAD IN THE FACT THAT, YOU KNOW, IT'S A TRADEMARK

10    RELATED ISSUE AND UNFAIR COMPETITION IS TRADEMARK

11    RELATED.  BUT THE TRADE DRESS CLAIM HERE HAS AN

12    ELEMENT THAT THE DESIGN HAS TO BE A NON-FUNCTIONAL

13    DESIGN.

14         THAT'S NOT AN ELEMENT AT ISSUE IN THE

15    GERMAN CASE.  THAT WILL REQUIRE DIFFERENT

16    TESTIMONY, DIFFERENT EXPERTS, DIFFERENT DOCUMENTS

17    THAT WILL BE HERE, AND FACEBOOK WILL BE

18    INCONVENIENCED FOR HAVING TO BRING ALL THOSE PEOPLE

19    TO GERMANY.

20         SO THAT IS ONE ASPECT.  BUT THERE'S ALSO

21    THE COMPUTER TRESPASS CLAIMS.  THOSE ARE NOT AT

22    ISSUE IN THE GERMAN CASE.  THOSE ARE VERY DISTINCT

23    U.S. BASED CLAIMS, CALIFORNIA-BASED CLAIMS, THAT

24    AGAIN, WILL HAVE DIFFERENT WITNESSES REGARDING THE

25    ACTIONS ON THE PALO ALTO, U.S. BASED SERVERS THAT

1    FACEBOOK OWNS.

2              ONCE WE CAN GET DISCOVERY TO SEE HOW MANY

3    PEOPLE -- THE EXTENT OF THE INTERACTION ON

4    FACEBOOK'S CALIFORNIA SERVERS, WE CAN GO LOOK AND

5    SEE EXACTLY WHAT THEY'VE DONE.

6              BUT THOSE ARE VERY, VERY BROAD CLAIMS

7    THAT PREDICT THE EXACT TYPE OF ACTION WE HAVE HERE,

8    UNAUTHORIZED USE OR ACCESS TO A COMPUTER SYSTEM,

9    AND THAT UNAUTHORIZED USE WILL REQUIRE, AGAIN,

10   DIFFERENT WITNESSES AND DIFFERENT TESTIMONY,

11   DIFFERENT DOCUMENTS, DIFFERENT EVIDENCE THAT

12   CURRENTLY RESIDES RIGHT HERE IN CALIFORNIA THAT

13   WOULD NOT BE NEEDED IN THE CURRENT GERMAN --

14             THE COURT:  OKAY.  HOW FAR OFF ARE WE IN

15   TERMS OF GETTING THE JURISDICTIONAL MOTIONS TEED

16   UP?  I KNOW YOU'RE IN THE MIDST OF OBJECTIONS AND

17   MOTIONS AND SO FORTH.

18             MR. GRAY:  I THINK WE ARE BEYOND THAT.

19   IT'S NO SURPRISE THAT DEFENDANTS SWITCHED GEARS

20   AFTER JUDGE LLYOD INDICATED THAT HE WAS READY TO

21   REQUIRE THEM TO PRODUCE DISCOVERY REGARDING THE

22   DESIGN AND DEVELOPMENT DOCUMENTS RELATED TO THEIR

23   ACTIONS HERE IN THE U.S. ON THE U.S. SERVERS AND

24   HOW THEY DESIGN THEIR PRODUCT.

25             AS SOON AS JUDGE LLYOD INDICATED THAT

1   THAT WAS GOING TO HAPPEN, THEY PULLED BACK ON THEIR

2   PERSONAL JURISDICTION MOTION AND SAID, LET'S GO

3   FORWARD WITH THE FORUM --

4            THE COURT:  THAT'S A STRATEGIC

5   OBSERVATION.

6            I'M SAYING -- MY QUESTION IS EXTREMELY

7   SIMPLE.  HOW LONG WOULD IT TAKE -- IF I DENIED THE

8   FORUM NON CONVENIENS MOTION, HOW LONG WOULD IT TAKE

9   FOR THE JURISDICTION, PERSONAL SUBJECT MATTER

10  JURISDICTION -- I'M SORRY, PERSONAL JURISDICTION.

11  HOW LONG WOULD IT TAKE FOR THAT MOTION TO BE READY

12  TO BE HEARD?

13           MR. GRAY:  OF COURSE, IT DEPENDS ON THE

14  DISCOVERY.  IF WE CAN GET DISCOVERY IN 30 DAYS, THE

15  MOTION CAN BE HEARD 35 DAYS AFTER THAT, YOUR HONOR.

16           THE COURT:  SO YOU DON'T KNOW, IN OTHER

17  WORDS.

18           MR. GRAY:  WE DON'T KNOW BECAUSE THEY'VE

19  BEEN DRAGGING THEIR FEET.

20           THE COURT:  IT WILL BE A COUPLE OF

21  MONTHS, AT LEAST.

22           MR. GRAY:  CERTAINLY.  A COUPLE OF MONTHS

23  TO GET THE DISCOVERY REVIEW, THE DISCOVERY, AND

24  WRITE UP THE SUPPLEMENTAL BRIEFS.

25           BUT IT SHOULD NOT BE SIX MONTHS OR A

1    YEAR, IT SHOULD BE RELATIVELY QUICK IF DEFENDANTS

2    COMPLY WITH THE DISCOVERY ISSUES.

3            THE COURT:  AND APART FROM THE LEGAL

4    ANALYSIS THAT THERE ARE FREESTANDING U.S. CLAIMS,

5    THE PRACTICAL IMPACT OF THE CASE IN GERMANY IS THAT

6    FACEBOOK'S WITNESSES ON THE TRADE DRESS CLAIM AND

7    ON THE COMPUTER CLAIM ARE NOT WITNESSES WHO

8    OTHERWISE WOULD BE CALLED IN THE GERMAN ACTION AND

9    THEY WOULD HAVE TO GO TO GERMANY TO PARTICIPATE.

10           MR. GRAY:  THAT'S THE INCONVENIENCE ON

11   THE PRIVATE FACTOR.  BUT, OF COURSE, WE THINK THIS

12   COURT HAS SUBSTANTIAL PUBLIC INTEREST IN

13   ADJUDICATING THESE CLAIMS FROM A U.S. PLAINTIFF, OF

14   A LOCAL PLAINTIFF, THAT HAS SUFFERED FINANCIAL

15   INJURY HERE LOCALLY REGARDING U.S. BASED CLAIMS,

16   NOVEL AND SOMEWHAT UNIQUE U.S. BASED CLAIMS, AS WE

17   POINT OUT IN OUR BRIEF.

18           THE COURT:  OVER A PARTY THAT IT MAY OR

19   MAY NOT HAVE JURISDICTION OVER.  I MEAN, I DON'T

20   KNOW THAT.  I MEAN, I SUPPOSE I COULD SPECULATE AS

21   TO HOW THAT'S GOING TO TURN OUT.  THERE'S,

22   OBVIOUSLY, A MESSY FIGHT ABOUT JURISDICTION.  IT'S

23   NOT A SELF-EVIDENT TYPE OF THING.

24           MR. GRAY:  WELL, IT'S A MESSY FIGHT NOW.

25   WE THINK THERE'S CLEARLY JURISDICTION BASED ON THE

1    CONTEXT.

2              THE COURT:  THAT'S WHY YOU SUED THEM

3    HERE.

4              MR. GRAY:  EXACTLY.  THAT'S WHY WE SUED

5    THEM HERE.

6              AND WE'RE ALSO NOT DEALING WITH THE FORUM

7    SELECTION CLAUSE AND TERMS OF USE.  AND DEFENDANTS

8    RAISE SOME RED HERRING ISSUES WITH RESPECT TO

9    WHETHER THERE'S AN ARBITRATION PROVISION AFTER

10   DECEMBER 2006, OR WHETHER BOSTON SHOULD HAVE BEEN

11   THE FORUM BEFORE JUNE OF 2005.

12             BUT AS WE SUBMITTED, DURING THE CRUCIAL

13   RELEVANT TIME PERIOD HERE JUNE 2005 THROUGH 2006,

14   THERE WAS A CLICK THROUGH LICENSE --

15             THE COURT:  I DON'T KNOW THAT YOU WANT TO

16   GO THERE, THOUGH.  THAT'S AN INTERESTING FORUM

17   SELECTION CLAUSE BECAUSE THEY CONSENT TO

18   JURISDICTION BUT IT CERTAINLY IS NOT AN EXCLUSIVE

19   JURISDICTION.

20             WHEN I SAY "THEY," I MEAN WHOEVER,

21   ASSUMING THAT A PARTY IS BOUND BY THAT, THEY

22   CONSENT TO JURISDICTION, BUT IT'S NOT AN

23   EXCLUSIVE --

24             MR. GRAY:  I WOULD DISAGREE, YOUR HONOR.

25   I WOULD SAY THAT THAT ARBITRATION PROVISION SAYS

14

1    THAT ACTIONS WILL BE CONDUCTED HERE IN

2    SANTA CLARA COUNTY RELATED TO THE BREACH OF THE

3    AGREEMENT AS WELL AS --

4         THE COURT:  DOES IT SAY -- AND REFRESH ME

5    IF I'M WRONG ABOUT THIS.  I DON'T BELIEVE IT SAYS

6    THAT THE COURT'S, FEDERAL AND STATE COURTS OR

7    WHATEVER OF SANTA CLARA COUNTY, SHALL HAVE

8    EXCLUSIVE AND SOLE EXCLUSIVE JURISDICTION.  I DON'T

9    THINK THERE'S ANY LANGUAGE LIKE THAT.

10        MR. GRAY:  IT CERTAINLY DOES MENTION THE

11   COURTS OF THIS JURISDICTION.

12        THE COURT:  AND THERE'S NO QUESTION ABOUT

13   THAT, BUT I DON'T RECALL SEEING THE WORD

14   "EXCLUSIVE" IN THERE.

15        IF IT'S IN THERE, I MISSED IT.  AND THE

16   NINTH CIRCUIT HAS HAD A LOST CASES ON THIS AND THEY

17   FOCUS ON THE PRESENCE OR ABSENCE OF THAT.

18        OKAY.  WELL, I THINK THIS IS BOTH A LEGAL

19   AND A PRACTICAL INQUIRY.  I APPRECIATE YOUR

20   COMMENTS.

21        LET ME GET A RESPONSE FROM THE

22   DEFENDANTS.

23        MR. SMITH:  THERE WERE A NUMBER OF THINGS

24   SAID THERE, YOUR HONOR.  I WILL TRY TO BE AS BRIEF

25   AS POSSIBLE.

1          YOUR FIRST QUESTION FOCUSED, THOUGH, ON

2    WHAT TYPE OF RELIEF FACEBOOK IS UNABLE TO GET IN

3    GERMANY THAT IT CAN GET HERE.

4          WITH ALL DUE RESPECT, I THINK IF YOU LOOK

5    AT THE COMPLAINTS IN GERMANY, AND THERE ARE NOW TWO

6    IN THE CLONE ACTION, I THINK AN 82 PAGE FIRST ONE

7    AND THEN AN AMENDED ONE THAT WAS FILED MORE

8    RECENTLY ABOUT A MONTH OR TWO AGO, EVERY SINGLE

9    FACTUAL ALLEGATION AND EVERY TYPE OF RELIEF THAT IS

10   BEING SOUGHT IN THIS CASE IS BEING SOUGHT THERE.

11         YES, THEY ARE CALLED DIFFERENT THINGS IN

12   GERMANY.

13         THE COURT:  THERE'S DIFFERENT THEORIES,

14   BUT WHAT THEY ARE LOOKING FOR IS THE SAME.

15         MR. SMITH:  THAT IS CORRECT.

16         AND THE LAW IS QUITE CLEAR, I THINK, IN

17   THE FORUM.  THERE IS A LOT OF LAW ON THIS ISSUE,

18   BUT YOU DON'T HAVE TO HAVE THE SAME LABEL ON THE

19   CLAIM; AND IN FACT, IT'S EVEN REALLY BETTER FOR US

20   THAT WE DON'T NEED IT HERE.

21         THE COURT:  WELL, BASICALLY WHAT COUNSEL

22   IS SAYING, WHEN IT COMES DOWN TO IT, IS THAT THERE

23   ARE SOME SETS OF WITNESSES GIVEN THESE CLAIMS THAT

24   AREN'T IN THE GERMAN CASE WHO WOULD BE

25   INCONVENIENCED; AND I THINK THAT'S CERTAINLY

1    ENTITLED TO SOME WEIGHT.

2             AND THE OTHER THING HE'S SAYING, WHICH I

3    THINK IS PROBABLY THE MORE COMPELLING POINT, IS

4    THIS IS A LOCAL COMPANY WHICH IS ENTITLED TO EXPECT

5    THE PROTECTIONS OF A LOCAL FORUM.

6             AND, CLEARLY, SOME OF THE RELEVANT FACTS

7    IN THIS CASE ARISE HERE.  IT'S NOT -- NOTHING IS

8    HAPPENING IN PALO ALTO.  AND THEY BELIEVE THEY HAVE

9    A GOOD ARGUMENT ON PERSONAL JURISDICTION WHICH THE

10   COURT HASN'T BEEN ABLE TO ADDRESS YET.

11            SO AT LEAST UNTIL THE COURT IS ABLE TO

12   ADDRESS THAT, WHY SHOULD WE SAY TO A LOCAL PARTY

13   THAT HAS A RIGHT TO RELY ON ACCESS TO THE LOCAL

14   COURTS, PARTICULARLY WHERE THERE IS A FORUM

15   SELECTION CLAUSE AND WHETHER IT'S EXCLUSIVE AND

16   BINDING IN EVERY CASE -- WHICH IS SOMETHING I

17   HAVEN'T DETERMINED YET -- WHY SHOULD WE SAY YOU

18   NEED TO GO TO GERMANY BECAUSE THERE'S A CASE

19   PENDING OVER THERE THAT INVOLVES SOME OF THE SAME

20   PARTIES AND CLAIMS?

21            IF WE DON'T HAVE JURISDICTION OVER YOUR

22   CLIENT THEN IT'S EASY, THEN YOU HAVE TO GO TO

23   GERMANY.  BUT IF THERE IS STILL A DETERMINATION TO

24   BE MADE AS TO WHETHER YOUR CLIENT IS SUBJECT TO

25   JURISDICTION, WHY SHOULD THE COURT JUMP THE GUN AND

17

1    SAY, GO AWAY?

2              MR. SMITH:  WELL, LEGALLY, FOR THE EXACT

3    SAME REASONS IN SINOCHEM.  AND WE CAN DISCUSS WHAT

4    THE FACTS ARE ON POINT WITH THE SINOCHEM VERSUS NOT

5    WITH THE LAW ON POINT.

6              THAT LAW IS ALSO ON POINT THAT A RESIDENT

7    PLAINTIFF, ALTHOUGH IT IS A FACTOR THAT IS ENTITLED

8    TO WEIGHT AND WE NEVER CLAIMED THE CONTRARY, IT IS

9    NOT A DISPOSITIVE FACTOR IN AND OF ITSELF.

10             AND IN THIS CASE IT'S NOT -- I HATE TO

11   PICK ON LITTLE OLD LADIES, BUT IT'S NOT A LITTLE

12   OLD LADY IN CALIFORNIA, WHOSE HUSBAND -- BECAUSE

13   ONE OF THE CASES INVOLVES THIS -- WHOSE HUSBAND WAS

14   KILLED BY TERRORISTS IN EGYPT AND HER ASKING US TO

15   GO TO EGYPT TO SEEK REDRESS.

16             THIS IS A MULTINATIONAL COMPANY BY TWO

17   HUNDRED MILLION, BY THEIR OWN ESTIMATION --

18             THE COURT:  AND A CORPORATE PRESENCE IN

19   GERMANY.

20             MR. SMITH:  WITH A WEB SITE IN GERMANY

21   OPERATING ALL OVER THE WORLD.  THE CONTACT LUMBER

22   CASE DISCUSSES THAT PARTICULAR ISSUE DIRECTLY.

23             IN ADDITION, THEY, THEMSELVES, ARE

24   LITIGATING.  WE ARE NOT -- WE ARE NOT TRYING TO

25   FORCE THEM INTO SOME FORUM --

1        THE COURT:  THEY'RE THE PLAINTIFF.

2        MR. SMITH:  THAT'S CORRECT.  THEY ARE THE

3   PLAINTIFF, YES THE STUTTGART ACTION WHICH WAS A

4   DECLARATORY RELIEF ACTION STUDIVZ FILED, WAS FILED

5   FIRST.  THERE ARE TWO CASES WE SIGHT BOTH CREATIVE

6   AND LOCKMAN, WHERE THAT EXACT SAME THING HAPPENED.

7   THE COURT DID NOT HAVE ANY ISSUE WITH THAT.

8        THE COURT ACTUALLY DID RELY UPON THE FACT

9   THAT THERE WAS ANOTHER PIECE OF LITIGATION ALREADY

10   PENDING.  SOME CONTRARY, WITH ALL DUE RESPECT TO

11   MR. GRAY'S STATEMENT, BUT IT'S NOT A FACTOR.  IT'S

12   A FACTOR IN SINOCHEM, IT'S A FACTOR IN CREATIVE,

13   IT'S A FACTOR IN CONTACT LUMBER, AND IT'S A FACTOR

14   IN LOCKMAN.

15        IT'S A FACTOR IN ALL KINDS OF CASES.  AND

16   IT'S USUALLY QUITE AN IMPORTANT FACTOR FOR THE

17   REASON YOUR HONOR ALREADY NOTED, WHICH IS, IT

18   DOESN'T MAKE SENSE, FROM A JUDICIAL ECONOMY

19   PERSPECTIVE, TO FIGHT OVER THE SAME FACTS SEEKING

20   THE SAME RELIEF IN TWO DIFFERENT PLACES.

21        IN ADDITION, SPECIFICALLY AS TO THE

22   COMPUTER ABUSE ACT, WE'VE NOTED THIS IN OUR BRIEFS

23   AND IT'S IN THE PLEADINGS IN GERMANY.  THEY ARE

24   SEEKING REDRESS SPECIFICALLY FOR THAT.  RIGHT NOW

25   THERE IS PENDING A REQUEST FOR A NEUTRAL EXPERT

1    SEARCH OF THE ENTIRE PREMISES, INSPECTION OF ALL

2    THE COMPUTER SYSTEMS, ALL THE SERVERS, ALL OF THE

3    SOURCE CODE, TO GET INTO WHETHER OR NOT THAT TYPE

4    OF ACCESS THAT THEY'RE TALKING ABOUT DID, IN FACT,

5    OCCUR.

6         SO YES, THEY DON'T CALL IT THE COMPUTER

7    ABUSE ACT, BUT WITHIN THE CASE, AS A FACTUAL AND

8    LEGAL MATTER UNDER A DIFFERENT LABEL, THE EXACT

9    SAME THING IS BEING LAID.

10        THE COURT:  CAN I ASK YOU THIS -- THIS

11   MAY COME OUT OF LEFT FIELD -- BUT I HAVE DISCRETION

12   UNDER 1404 TO STAY AS WELL AS DISMISS, CORRECT?

13        MR. SMITH:  I BELIEVE SO, YOUR HONOR.

14        THE COURT:  I COULD JUST SAY, WELL, LET'S

15   JUST STOP THE BLEEDING IN THIS CASE AND GO FIGHT

16   GERMANY FOR A WHILE, AND THEN IF THINGS ARE -- IF

17   YOU CAN'T GET A COMPLETE RESOLUTION BETWEEN THE

18   PARTIES, THEN THIS CASE CAN BE TAKEN OUT OF THE

19   FREEZER AT A LATER DATE.

20        THAT'S AN OPTION THE COURT HAS, ISN'T IT?

21        MR. SMITH:  THAT'S CORRECT.  AND ALTHOUGH

22   THAT'S A SECONDARY OPTION --

23        THE COURT:  THAT'S NOT WHAT YOU ASKED FOR

24   BUT IT'S SOMETHING THE COURT CAN DO.

25        MR. SMITH:  RELEVANT TO THAT, YOUR HONOR,

1    BECAUSE THIS HEARING GOT MOVED A COUPLE OF WEEKS

2    BECAUSE OF DEFENSE COUNSEL'S VACATIONS WHICH IS

3    FINE, THE COMMENCEMENT OF THE TRIAL DID, IN

4    GERMANY, STARTED JUNE -- THERE IS A DATE NOW

5    JUNE 16TH FOR THE RENDITION OF A JUDGMENT.

6            NOW, I DON'T WANT TO SAY THAT MEANS THEY

7    WILL RENDER A FINAL JUDGMENT, I DON'T WANT TO

8    MISLEAD THE COURT, BUT IT IS A DATE TO EITHER

9    DECIDE, ARE WE GOING TO RENDER A FINAL JUDGMENT, A

10   PARTIAL JUDGMENT, OR ARE WE GOING TO ASK FOR

11   SOMETHING MORE?

12           SO THERE IS THAT NEXT DATE OUT THERE.

13   AGAIN, I DON'T -- I THINK THE FORUM ISSUE HERE IS

14   TEED UP, AND WITH THE FACTORS WEIGHING SO HEAVILY

15   IN OUR CLIENT'S FAVOR, IT SHOULD BE DISMISSED

16           THE COURT:  BUT IF I WERE TO STAY THIS

17   CASE UNTIL AFTER A JUDGMENT IS RENDERED IN THE

18   GERMAN COURT, THEN AT THAT POINT WE COULD

19   RECONVENE, WE COULD CONSIDER WHAT THE PRECLUSIVE

20   EFFECT, IF ANY, OF THAT JUDGMENT IS AND WHERE IT

21   LEAVES THE PARTIES, AND THEN THE COURT COULD DECIDE

22   WHETHER TO GO FORWARD IN THIS CASE OR NOT.

23           THAT'S ANOTHER OPTION THE COURT HAS.

24           MR. SMITH:  THAT IS CORRECT.

25           AND JUST ONE EFFORT TO PERSUADE

1    YOUR HONOR OF THE FIRST OPTION, LET ME MAKE THIS

2    POINT, WHICH IS:  I THINK WE SHOULD STEP BACK HERE

3    FOR A SECOND AND TALK ABOUT WHAT'S ACTUALLY BEING

4    SOUGHT.  BECAUSE IF WE LOOK AT WHAT'S GOING ON

5    HERE, FACEBOOK IS TRYING TO RECOVER FOR HARM THAT

6    IS OCCURRING IN GERMANY.

7            IF YOU LOOK AT THEIR SUPPLEMENTAL REPLY

8    THEY FILED, THEY HAVE THE NUMBER $100 MILLION IN

9    DAMAGES.  THAT'S A TELLING STATEMENT BECAUSE

10   THERE'S NO WAY THERE'S $100 MILLION IN DAMAGES FOR

11   ACTIVITY THAT OCCURRED IN THE UNITED STATES.

12   THAT'S THE ENTIRE VALUE OF STUDIVZ.  THEY ARE

13   SEEKING AN INJUNCTION TO SHUT DOWN STUDIVZ

14   ALTOGETHER.

15           SO THERE'S BEEN NO ARGUMENT THAT WE

16   SHOULD BE ALLOCATING SOMETHING TO THE UNITED STATES

17   ONLY HERE.  SO WHAT'S GOING TO HAPPEN IN GERMANY --

18   AND THE GERMAN COURT IS WELL AWARE OF THE PENDENCY

19   OF THIS CASE BECAUSE IT WAS DISCUSSED ON THE

20   APRIL 28TH TRIAL.  MAYBE WE WAIT TO SEE AND I CAN

21   BRIEF IT AND GO THROUGH IT, BUT IT'S CLEAR IT'S

22   GOING TO HAVE A PRECLUSIVE EFFECT.

23           AND IN THE CASE -- ONE OF THE CASES SAID

24   WHEN YOU HAVE THE INFRINGEMENT OCCURRING FROM

25   SINGAPORE, THE BEST PLACE TO GO, IF YOU ARE GOING

1    TO SHUT DOWN THE INFRINGING PARTY, IS THE SOURCE.

2          THE COURT:  YEAH.

3          MR. SMITH:  AND THAT'S EXACTLY WHAT THEY

4    ARE DOING.

5          THE COURT:  ALL RIGHT.

6          LET ME GET A REACTION FROM COUNSEL,

7    BECAUSE I DON'T WANT TO SPRING A SURPRISE ON

8    ANYBODY.

9          WHAT WOULD THE EFFECT BE ON FACEBOOK IF

10    THE COURT SIMPLY SAID, ALL RIGHT, STOP THE

11    CALIFORNIA ACTION IN ITS TRACKS UNTIL THE GERMAN

12    COURT RULES AND THEN WE WILL SEE WHAT'S GOING ON?

13          MR. GRAY:  WELL, THE DEVIL WOULD BE IN

14    THE DETAILS THEN, YOUR HONOR.

15          ARE WE SAYING FACEBOOK HAS TO BRING ITS

16    CALIFORNIA AND U.S. BASED CLAIMS IN THE GERMAN

17    ACTION?  BECAUSE THEN, AGAIN, WE FEEL THAT'S NOT

18    WARRANTED AND PROPER IN THIS INSTANCE BASED ON THE

19    STRONG DEFERENCE THAT SHOULD BE PROVIDED TO

20    FACEBOOK FOR LITIGATING THESE CLAIMS IN THIS

21    COURTROOM.

22          THE COURT:  I'M NOT EVEN SURE THAT'S

23    POSSIBLE IF THE COURT HAS ALREADY CONDUCTED AN

24    EVIDENTIARY PROCEEDING.

25          MR. GRAY:  OKAY.  LET ME CLARIFY THAT.

1          WITH ALL DUE RESPECT TO COUNSEL, THAT

2   JUNE --

3          THE COURT:  THAT'S ABOUT THE THIRD TIME I

4   HEARD THAT PHRASE TODAY, I'M GETTING WORRIED.

5          MR. GRAY:  WELL, MAYBE -- BECAUSE HE

6   VASTLY OVERSTATES WHAT'S GOING ON IN GERMANY.

7       THERE HAS NOT BEEN A TRIAL.  WHAT OCCURRED ON

8   TUESDAY WAS ESSENTIALLY A STATUS CONFERENCE.  THE

9   PARTIES CAME IN, THEY DISCUSSED THE CASE, FACEBOOK

10  WAS GIVEN AN OPPORTUNITY TO DISCUSS -- TO BRIEF,

11  ADDITIONALLY, THE CLAIM THAT HE'S TALKING ABOUT

12  WHICH IS A COPYRIGHT INSPECTION CLAIM, IT IS NOT

13  THE COMPUTER FRAUD TRESPASS CLAIM.

14          SO GOING INTO STUDIVZ AND THE DEFENDANT'S

15  HEADQUARTERS TO GET ALL THE DOCUMENTS AND ACCESS TO

16  THE COMPUTERS, IS AN INSPECTION OF THEIR SOURCE

17  CODE CLAIM.  IT IS NOT RELATED TO THE COMPUTER

18  FRAUD AND ABUSE ACT --

19          THE COURT:  LET ME REPHRASE MY QUESTION

20  WITH PARTICULARITY.

21          IS WHAT EMANATES FROM THE GERMAN COURT IN

22  JUNE LIKELY TO HAVE SOME TYPE OF PRECLUSIVE EFFECT

23  ON THE CLAIMS THAT FACEBOOK HAS BROUGHT IN

24  CALIFORNIA?

25          MR. GRAY:  IT MAY.

1          BUT MY UNDERSTANDING IS WHAT'S GOING TO

2     HAPPEN IN JUNE IS THE COURT IS GOING TO SET THE

3     SCHEDULE FOR THE SOURCE CODE INSPECTION CLAIM, THE

4     SOURCE CODE COPYRIGHT CLAIM, WHICH MAY TAKE SIX TO

5     NINE MONTHS TO ADJUDICATE, AND THEN THERE WILL BE A

6     TRIAL ON THE MERITS -- EVIDENTIARY HEARING ON THE

7     MERITS AFTER THAT.

8          THE COURT:  SO IT WOULD BE CLEANER IF THE

9     COURT SAID YAY OR NAY WITH THE REGARD TO THE FORUM

10    NON CONVENIENS.

11         MR. GRAY:  IT'S CLEANER -- I DON'T THINK

12    THERE'S ANY REASON TO DELAY UNTIL AFTER JUNE

13    BECAUSE I DON'T THINK JUNE IS GOING TO BE

14    DISPOSITIVE.

15         THE COURT:  THAT'S MY QUESTION.

16         SO A STAY REALLY WOULDN'T GET YOU

17    ANYWHERE.  YOU'D RATHER EITHER GET SENT THERE AND

18    AND/OR NOT GO THERE AT ALL; AND OBVIOUSLY, YOU

19    PREFER THE LATTER.

20         MR. GRAY:  RIGHT.  I THINK WE DESERVE TO

21    BE HERE.

22         AND I THINK WHAT COUNSEL HAS SAID

23    REGARDING THE GERMAN CASE IS LARGELY INDICATIVE OF

24    WHAT WE'VE GOT HERE.  THERE'S A BIG DISPUTE AGAIN,

25    A FACTUAL DISPUTE, TO THE SIMILARITY OF THE GERMAN

1    CASE VERSUS THE CASE HERE.

2              AND AS THESE CASES HAVE DISCUSSED, THE

3    RECORD OF DEFENSE COUNSEL AND PLAINTIFF'S COUNSEL

4    SAYING WHAT THEIR INTERPRETATION IS OF WHAT'S GOING

5    ON IN THE ALTERNATIVE FORUM REALLY DOESN'T CARRY

6    THE DAY FOR THE DEFENDANTS UNDER A FORUM NON

7    CONVENIENS ANALYSIS.

8              THEY NEED TO COME IN AND SHOW THAT IT IS

9    DUPLICATIVE, AND ALL WITNESSES AND ALL TESTIMONY

10   WOULD BE --

11             THE COURT:  AND THAT'S THE CALL I NEED TO

12   MAKE.  THAT'S WHAT SINOCHEM SAYS.  THAT'S THE

13   STANDARD.  I MEAN, IT'S GOT TO BE, ESSENTIALLY, THE

14   SAME CASE.  AND YOU GOT A COUPLE BELLS AND WHISTLES

15   ON IT HERE THAT THEY DON'T HAVE THERE, BUT IN ORDER

16   FOR THE COURT TO TRANSFER AT THIS STAGE IT WOULD

17   HAVE TO FIND IT WAS ESSENTIALLY THE SAME CASE, IT

18   WAS ARISING OUT OF THE SAME DISPUTE, AND OF COURSE

19   THERE'S DIFFERENT CLAIMS FOR RELIEF AND DIFFERENT

20   LEGAL THEORIES AND LEGAL SYSTEMS.

21             MR. GRAY:  BUT BEYOND THAT, IT'S

22   DEFENDANT'S BURDEN TO COME FORWARD TO OVERCOME THE

23   SUBSTANTIAL DEFERENCE HERE.  AND IF WE LOOK AT THE

24   ADELSON CASE, THE HAYES BICYCLE CASE, THE ALNWICK

25   V. EUROPEAN MICRO, 137 F. SUPP.2D 112, IN WHICH IT

1    SPECIFICALLY SAYS THE AFFIDAVITS OF THE ATTORNEYS

2    IS INSUFFICIENT TO SHOW THE DUPLICATIVE NATURE OF

3    THE TWO LITIGATIONS, AND THEREFORE IT SHOULDN'T BE

4    GIVEN ANY WEIGHT WHATSOEVER WITH RESPECT TO FORUM

5    NON CONVENIENS.

6             EVEN THOUGH IN THESE CASES ADELSON AND

7    HAYES BICYCLE AND DOLE, PLAINTIFFS THEMSELVES FILED

8    SUIT IN THE OTHER JURISDICTION.

9             IF I MAY, YOUR HONOR, THE CREATIVE AND

10   THE LOCKMAN CASE ARE CLEARLY DISTINGUISHABLE.  THE

11   REASON THAT THE ALTERNATIVE FORUMS WERE AT ISSUE IN

12   THOSE CASES IS BECAUSE ALMOST ALL OF THE OTHER

13   ACTIONS OCCURRED IN THOSE ALTERNATIVE FORUMS.

14            IN THE CREATIVE LABS CASE, THE PARTIES,

15   ALTHOUGH THEY WERE SUING UNDER THEIR AMERICAN

16   SUBSIDIARIES, THE COURT RECOGNIZED THAT THE PRIMARY

17   PARTIES WERE THE SINGAPORE COMPANIES.

18            THEY WERE FIGHTING OVER THE MANUFACTURE

19   OF SINGAPORE PRODUCTS MANUFACTURED IN SINGAPORE.

20   THE PRIMARY PARENT COMPANIES WERE BOTH SINGAPORE

21   COMPANIES.  THE INFRINGEMENT WAS OCCURRING IN

22   SINGAPORE BUT THEY DECIDED TO COME TO THE U.S.  THE

23   COURT SAID NO IN ADELSON.

24            AND WHAT THE COURT DID SAY ON PAGE TEN OF

25   THAT OPINION IS, IT'S NOT A CASE OF PIRACY OF

1     AMERICAN MADE PRODUCTS INVOLVING AMERICAN

2     COMPANIES.

3              THIS IS A CASE OF AMERICAN MADE PRODUCTS

4     AND PIRACY, ESSENTIALLY, COPYING -- WHOLESALE

5     COPYING OF THE LOOK AND FEEL --

6              THE COURT:  BY A GERMAN COMPANY --

7              MR. GRAY:  YES.  AND THAT IS

8     DISTINGUISHABLE.  THE COURT IN CREATIVE SAID, NO,

9     THEY ARE SINGAPORE COMPANIES.

10             THE COURT:  RIGHT.

11             MR. GRAY:  AND, ADDITIONALLY, IN THE

12    LOCKMAN CASE THE MAIN ISSUE IN THAT CASE WAS THE

13    JAPANESE COPYRIGHT ISSUE.  IT FLOWED THROUGH EVERY

14    CLAIM THAT THE PLAINTIFF WAS TRYING TO BRING.

15       THE PLAINTIFF HAD A 30-YEAR RELATIONSHIP WITH

16    THE ASIAN COMPANY THAT IT THEN TURNED AROUND AND

17    SUED.  ALL OF THE COPYRIGHT ISSUES WERE IN JAPAN

18    AND ASIA AND THE PRODUCTS SOLD WERE IN JAPAN AND

19    ASIA.

20             SO WE ARE LOOKING AT ANOTHER SUIT BECAUSE

21    ALL THE UNDERLYING ACTIONS WERE THERE, AND

22    ESSENTIALLY THE HARM FOR THOSE JAPANESE COPYRIGHTS

23    WAS IN JAPAN.

24             THE COURT:  OKAY.

25             MR. GRAY:  ONE OTHER POINT I'D LIKE TO

1    MENTION, YOUR HONOR, IN TERMS OF THE GERMAN AND

2    U.S. CASE --

3              THE COURT:  YES.

4              MR. GRAY:  FACEBOOK SHOWED ITS INDICATION

5    TO BE HERE IN THIS FORUM.  COINCIDENTALLY ENOUGH,

6    WE BOTH FILED SUIT ON THE SAME DAY.

7              SO THEY FILED IN GERMANY THEIR

8    DECLARATORY RELIEF ACTION AND WE FILED HERE, SAME

9    DAY.  WE CLEARLY INDICATED OUR INTENT TO BE HERE.

10             AGAIN, COUNSEL IS APPLYING U.S. THOUGHT

11   AND U.S. PROCEDURES TO THE CLAIMS IN GERMANY.  YES

12   WE ARE PLAINTIFF IN COLOGNE, BUT AS WE POINTED OUT

13   IN THE KATHARINA SCHEJA DECLARATION, I THINK DOCKET

14   NUMBER 126, THAT PROCEDURE IS LARGELY A

15   COUNTERCLAIM TO A DECLARATORY RELIEF ACTION.

16             WE DIDN'T HAVE THE SAME OPPORTUNITIES TO

17   STAY OR DISMISS THOSE CLAIMS IN GERMANY.  IT'S A

18   DIFFERENT SYSTEM WITH DIFFERENT PROCEDURES.

19             THE FACT WE ARE PLAINTIFF IN COLOGNE IS

20   JUST COUNTERCLAIMS TO THE DECLARATORY JUDGMENT

21   ACTION TIMED BY THESE FOLK.

22             THE COURT:  WELL, BEST EFFORTS IN A

23   DECLARATORY JUDGMENT ACTION, ANYWAY.

24             THE POINT IS IT'S LARGELY THE SAME

25   DISPUTE.  AND YOU ARE REALLY ARGUING ABOUT WHERE IT

1    OUGHT TO BE HEARD.

2           MR. GRAY:  WELL, WE DISAGREE WITH THAT,

3    OBVIOUSLY, AS WE'VE TALKED ABOUT.  WE DON'T THINK

4    IT'S LARGELY THE SAME DISPUTE.  BUT FOR THEIR

5    FILING THE DECLARATORY RELIEF ACTION, WE WOULD NOT

6    BE HERE, FACEBOOK WOULD NOT BE IN GERMANY.

7           THE COURT:  I THINK WE'VE HAD A GOOD

8    DISCUSSION, AND I WILL GIVE THE MATTER SOME THOUGHT

9    AND I'LL GET A DECISION OUT SOON.

10          MR. GRAY:  THANK YOU, YOUR HONOR.

11          MR. SMITH:  I DID WANT TO RESPOND TO ONE

12    POINT.

13          THE COURT:  REALLY?  YOU DON'T THINK

14    YOU'VE HAD ENOUGH ORAL ARGUMENT?  YOU'VE HAD HALF

15    AN HOUR.  THAT'S ABOUT TEN TIMES MORE THAN MOST

16    PARTIES GET.

17          MR. SMITH:  THE LAWSUIT DOESN'T START

18    JULY 18TH, 2008.  THEY SENT DEMAND LETTERS IN

19    JANUARY 2007.  WE ACTUALLY FILED IN COURT IN

20    GERMANY WHICH WAS AN ANTICIPATED DEFENSE.

21          SO THE GERMAN-NESS OF THIS DISPUTE IS

22    IT'S GENESIS.

23          THE COURT:  OKAY.  WELL, I'M ACTUALLY

24    GOING TO GO BACK AND LOOK AT THE FILINGS AND I WILL

25    MAKE MY OWN JUDGMENT OF THAT.

1          THANK YOU.

2          MR. SMITH:  THANK YOU, YOUR HONOR.

3          MR. GRAY:  I'M SORRY, YOUR HONOR THIS IS

4    REALLY -- ARE WE ON FOR THE CMC CALENDAR --

5          THE COURT:  I'M NOT GOING TO DO THE CMC

6    UNTIL I DECIDE THE CASE.  I WILL GIVE YOU NOTICE.

7          THANK YOU.

8          (WHEREUPON, THE PROCEEDINGS IN THIS

9    MATTER WERE CONCLUDED.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22                        _____
                          SUMMER A. CLANTON, CSR
23                        CERTIFICATE NUMBER 13185

24

25