

# ORRICK



**FILED**

**MAY 1 4 2009**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ORRICK, HERRINGTON & SUTCLIFFE LLP
4 PARK PLAZA
SUITE 1600
IRVINE, CALIFORNIA 92614-2558

tel +1-949-567-6700
fax +1-949-567-6710

www.orrick.com

May 6, 2009

Thomas J. Gray
(949) 852-7764
tgray@orrick.com

*VIA FACSIMILE (408.535.5410)*

Honorable Magistrate Judge Howard Lloyd
Federal District Court for the Northern District of California
280 South 1st Street
Fifth Floor, Courtroom 2
San Jose, CA

Re:     *Facebook v. StudiVZ LTD., et al,* Case No. 08 CV 03468 JF

Dear Judge Lloyd:

I write to call to your attention the Order issued Monday, May 4, 2009, by Judge Fogel in the above captioned case. [Attached for the Court's convenience]. Specifically, Judge Fogel has lifted the stay of discovery and provided a schedule for furthering briefing related to Defendants' Motions to Dismiss. Pursuant to the Order, Facebook's supplemental opposition brief is due June 26, 2009. With respect to the parties' discovery dispute, this Court has given Defendants ample opportunity to describe what discovery they could live with, yet they have not done so. Since time is now of the essence, Facebook respectfully requests that the Court issue an Order on the pending motion to compel filed by Facebook.

Very truly yours,

Thomas Gray

Attachment

cc: Steve Smith, Esq. - Counsel for Defendants (via email)

OHS West:260655564.1

1   variously bearing the name Holtzbrink ("the Holtzbrink entities," collectively "Defendants")

2   are responsible for the creation of an illegal "knock-off" version of Facebook's popular social

3   utility website. StudiVZ launched its original website in 2005. The site, which bears a

4   disputed degree of visual and functional similarity to Facebook, was oriented towards

5   university students. As the site became increasingly popular in Germany, StudiVZ launched

6   several other services targeting other age groups. Believing that the StudiVZ websites

7   infringed its proprietary trade dress, Facebook sent a demand letter to StudiVZ in 2006. The

8   letter was written in German and alleged a series of potential claims for infringement of

9   Facebook's intellectual property rights under German law. A similar letter was sent in January

10  2007.

11          After various entities within the Holtzbrink publishing conglomerate became interest-

12  holders in StudiVZ in August 2006 and October 2007, Facebook entered into negotiations to

13  purchase the StudiVZ websites. Shortly after the negotiations broke down, Facebook sent

14  demand letters to the Holtzbrink entities. On July 18, 2008, StudiVZ filed a declaratory

15  judgment action against Facebook in the German district court for the district of Stuttgart.[2] On

16  the same day, Facebook filed the instant action, alleging claims similar to those outlined in the

17  2006, 2007, and 2008 demand letters. On October 22, 2008, Defendants filed the instant

18  motions to dismiss for lack of personal jurisdiction and on the ground that Germany is a more

19  convenient forum. On November 19, 2008, Facebook filed a separate lawsuit against StudiVZ

20  in the German district court for the district of Cologne, alleging a series of claims under

21  German law. While there can be little dispute that the two actions filed by Facebook are based

22  on essentially the same alleged conduct, the parties dispute the extent to which the claims in

23  the German action duplicate those alleged here.

24          Since the filing of Defendants' motions to dismiss, multiple discovery disputes have

25  impeded the resolution of the jurisdictional issues. In an earlier administrative motion,

26  Facebook requested a continuance of the hearing on Defendants' motions, claiming that it

27  _____

28          [2] Trial in this action was set to begin on April 28, 2009.

2

1  required additional discovery that Defendants improperly were withholding. The Court denied
2  Facebook's request except with respect to the issue of personal jurisdiction over StudiVZ.
3  Nonetheless, for reasons of judicial economy, the Court continued the hearing on all pending
4  motions to April 10, 2009. Subsequently, StudiVZ moved to postpone consideration of the
5  personal jurisdiction component of its motion and to stay related discovery. In a separate
6  motion, Facebook requested a further continuance as to both issues in order to resolve the
7  discovery disputes. Facebook opposed any "bifurcation" of the issues of personal jurisdiction
8  and *forum non conveniens*. On March 30, 2009, the Court issued an order granting a separate
9  hearing on the *forum non conveniens* issue. The hearing ultimately was set for May 1, 2009.
10  To ensure the presentation of all relevant argument, the Court authorized each party to submit
11  a five-page supplemental brief.

12       Having considered the current record and the parties' written and oral arguments, the
13  Court is inclined to dismiss the instant action on the ground that Germany is the more
14  appropriate forum. Such a determination would be procedurally reasonable: given the
15  difficulty of personal jurisdiction discovery in this case and the strength of Defendants'
16  arguments with respect to *forum non conveniens*, a determination that the instant dispute
17  should be hear in Germany would appear to be within the Court's discretion under *Sinochem*
18  *International Trading Company v. Malaysia International Shipping Corp.*, 549 U.S. 422
19  (2007). Nonetheless, because the procedural gloss of *Sinochem* makes the question of *when* to
20  decide *forum non conveniens* a relatively close one in the instant case, the Court will defer
21  ruling on *forum non conveniens* until the issue of personal jurisdiction is ripe for
22  consideration.

23                          **II. LEGAL STANDARD**

24       Under the doctrine of *forum non conveniens*, courts have broad discretion to decline
25  jurisdiction in favor of a more convenient forum outside of the United States. *American*
26  *Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994). A party moving to dismiss on grounds of
27  *forum non conveniens* must show: (1) the existence of an adequate alternative forum; and (2)
28  that the balance of private and public interest factors weighs in favor of dismissal. *Piper*

3

1    *Aircraft v. Reyno*, 454 U.S. 235, 238 (1981); *Creative Tech., Ltd. v. Aztech Syst. PTE Ltd.*, 61

2    F.3d 696, 703 (9th Cir. 1995). The determination of whether to dismiss an action on the

3    ground of *forum non conveniens* involves a three-step analysis:

4         At step one, a court determines the degree of deference properly accorded the
          plaintiff's choice of forum. At step two, it considers whether the alternative forum
5         proposed by the defendants is adequate to adjudicate the parties' dispute. Finally,
          at step three, a court balances the private and public interests implicated in the
6         choice of forum.

7    *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). Under proper

8    circumstances, a *forum non conveniens* determination may occur before a court asserts

9    jurisdiction over the parties or the subject matter of the lawsuit. *Sinochem*, 549 U.S. at 436.

10                                    **III. DISCUSSION**

11   **A.    *Forum non conveniens***

12        As the Court will explain in considerably greater detail if required to do so at a future

13   date, Defendants' motions to dismiss on the basis of *forum non conveniens* have considerable

14   merit. Under the relevant legal authorities, the high level of deference that ordinarily would be

15   accorded Facebook's choice of forum must be discounted substantially because: (1) Facebook

16   is a multinational company with a significant business presence in Germany, *see Reid-Walen*

17   *v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991); *Contact Lumber Co. v. P.T. Moges Shipping*

18   *Co., Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990); (2) Facebook currently is litigating an action in

19   Germany that is extremely similar to the instant action, *see EFCO Corp. v. Aluma Systems*

20   *USA, Inc.*, 145 F. Supp. 2d 1040, 1046-47 (S.D. Iowa 2000); and (3) the conduct complained

21   of appears to have occurred principally in Germany, *see LaSala v. UBS, AG*, 510 F. Supp. 2d

22   213, 224 (S.D.N.Y. 2007); *First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 447

23   (S.D.N.Y. 2001), *aff'd sub nom., First Union Nat'l Bank v. Arab African Int'l Bank*, 48 Fed.

24   Appx. 801 (2d Cir. 2002).

25        In addition, Germany clearly is an adequate forum. An inadequate forum will be found

26   only in "[i]n rare circumstances . . . where the remedy offered by the other forum is clearly

27   unsatisfactory," for example, where the alternative forum "does not permit litigation of the

28   subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 255 n.22. The alternative forum

                                              4

1   need not offer the same claims, legal theories, or remedies as the domestic forum, *see, e.g.,*

2   *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 381-83 (5th Cir. 2002), and the "assert[ion] [of]

3   distinctively U.S. and California-based claims," Supp. Opp. at 1:19, including claims under

4   the Lanham Act, is immaterial, *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d

5   764, 768-69 (9th Cir. 1991); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406,

6   431 (9th Cir. 1977); *Fluoroware, Inc. v. Dainichi Shoji K.K.*, 999 F. Supp. 1265, 1271 (D.

7   Minn. 1997). To the extent Facebook argues that it cannot obtain meaningful relief in

8   Germany, that argument "is belied by the scope of [Facebook's] own [German complaint][,] . .

9   . . [which] seeks both monetary and permanent injunctive relief for all alleged acts of

10  infringement" implicated by the instant action. *Creative Tech.*, 61 F.3d at 702.

11          Turning to the private interest factors, Facebook has offered some explanation as to

12  what U.S. witnesses it will require in this action, which appears to turn principally on conduct

13  that occurred in Germany. Nonetheless, Facebook has not explained (1) why the testimony of

14  five witnesses purportedly relevant to its trade dress claims will be critical or unique, (2) why

15  the testimony of a U.S.-based former summer intern and a U.S.-based former marketing

16  director at StudiVZ will be relevant to the alleged infringement, (3) why the testimony of

17  unspecified individuals connected with an Illinois programming company that outsources it

18  work to the Ukraine will be relevant, or (4) how the potentially critical testimony of StudiVZ's

19  two co-founders, who reside in Germany, and of numerous other likely German witnesses, can

20  be compelled in this Court. With respect to the enforceability of a putative judgment,

21  Facebook still has not suggested what "more effective means [there could be] of protecting

22  [Facebook's] United States [trademark] interests than by shutting off the pipeline of infringing

23  goods at the source," i.e., Germany. *Creative Tech.*, 61 F.3d at 702

24          The majority of the public interest factors are neutral. Neither this Court nor the

25  German courts appear to be particularly overburdened. *Cf. Weisel Partners LLC v. BNP

26  Paribas*, No. C 07-6198 MHP, 2008 WL 3977887, at *9 (N.D. Cal. Aug. 26, 2008). Nor

27  would "retaining this action . . . avoid[] the problem of having to apply foreign law[,] . . .

28  [since] [Facebook's] complaint necessarily implicates the legality of infringing acts occurring

5

1  in [Germany][,] . . . [rendering] an application of foreign law . . . likely inevitable, regardless

2  of which forum adjudicates this controversy," *Creative Tech.*, 61 F.3d at 704.[3]  Even the local

3  interest factor may not favor retention.  Citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325,

4  1336-37 (9th Cir. 1984), Facebook notes that a U.S. court ordinarily would have an interest in

5  protecting a resident corporation from trademark infringement abroad.  But in *Jenson*, the

6  Ninth Circuit already had found that a choice-of-law clause required the application of

7  Arizona law to the subject contract dispute.  *Id.*  Thus, Arizona was substantively "interested"

8  in the dispute because it had an "interest in interpreting its own laws," and because those laws

9  presumably expressed an "interest in protecting [Arizona] companies from trademark

10  infringement abroad to preserve the state's economic vitality."  *Id.*  In the instant case, the

11  Court is not required to undertake a choice-of-law analysis at this stage of the proceedings,[4]

12  and Facebook has not urged it to do so.  Facebook thus incorrectly conflates the local interest

13  served by the assertion of adjudicatory versus legislative or prescriptive jurisdiction.[5]  In any

14  _____

15  ⠀⠀[3] No choice-of-law determination is required here because neither the Lanham Act nor the
16  CFAA contains a special venue provision.  *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1148
    (9th Cir. 2001); *see also Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983) (recognizing
17  that "the necessity of applying American law may add weight to the factors favoring retention of
    jurisdiction" but finding no abuse of discretion in *forum non conveniens* dismissal even where
18  U.S. law might or might not have applied to the subject international dispute).

19  ⠀⠀[4] *See supra* note 3.

20  ⠀⠀[5] Whether or not StudiVZ's website infringes Facebook's intellectual property rights, this
21  Court in no way suggests that a German court would be less likely to protect, or less capable of
    protecting, Facebook from trademark infringement, either under German or U.S. law.  *See*
22  *Creative Tech.*, 61 F.3d at 702-03.  Absent a prior choice-of-law determination--which, as noted
23  above, is not required or even necessarily proper at this stage of the litigation--the Court considers
    highly suspect the proposition that domestic courts should assert adjudicatory jurisdiction to
24  "protect" domestic plaintiffs.  Undoubtedly, in the context of what is often called legislative or
    prescriptive jurisdiction--the issue of which country's laws should apply to a given act or course
25  of conduct--domestic courts may well have a distinct legal duty to enforce policy decisions made
26  by the national (or state) legislature.  A court's assessment of that duty plays a central role in
    most modern choice-of-law regimes.
27  ⠀⠀By contrast, where the question solely is whether to assert adjudicatory jurisdiction over a
    controversy that properly may be governed by foreign *or* domestic law, the notion that a court
28  should assert such jurisdiction in order to protect the interests of a domestic plaintiff improperly

6

1   event, with respect to either type of jurisdiction, it is far from clear that the predominantly

2   economic injury that Facebook may have sustained in California outweighs Germany's interest

3   in deciding a controversy whose outcome may affect the availability of a website used by

4   millions of its citizens. *See In re Donald G. Atteberry, DVM, P.A.*, 159 B.R. 1, 9 (D. Kan.

5   1993) (affirming bankruptcy court's dismissal of action on ground of *forum non conveniens*

6   and observing, in connection with local interest factor, that the action "has little to do with the

7   United States, other than the plaintiff lives here").

8   **B.      Sinochem**

9           As should be clear from the brief preceding discussion, the relevant *forum non*

10  *conveniens* considerations suggest that dismissal may be appropriate.  Nonetheless, this

11  Court's discretion to decide *forum non conveniens* interchangeably with other non-merits

12  grounds for dismissal is not without limits.  The Supreme Court has admonished that "the

13  consideration ordinarily accorded the plaintiff's choice of forum 'should impel [a] federal

14  court to dispose of [jurisdictional] issue[s] first.'"  *Sinochem*, 549 U.S. at 436 (quoting

15  *Ruhrgas*, 526 U.S., at 587-588).  Only "where subject-matter or personal jurisdiction is

16  difficult to determine, and *forum non conveniens* considerations weigh *heavily* in favor of

17  dismissal, [does] the court properly takes the less burdensome course."  *Id.* (emphasis added).

18  This Court directed the parties to appear at the May 1, 2009 hearing for the purpose of

19  determining just how "heavily" the relevant *forum non conveniens* considerations might weigh

20  in favor of dismissal.  Notwithstanding the apparent strength of Defendants' arguments with

21  respect to *forum non conveniens*, the *Sinochem* question presents a closer call.  The efficiency

22  considerations raised by Defendants are legitimate, but it is possible, as Facebook has

23  suggested, that the personal jurisdiction inquiry meaningfully will inform the Court's ultimate

24

25  suggests that the domestic court may "side with" that plaintiff in interpreting the applicable law.
    Without some indication that particular foreign courts or a particular foreign jurisdiction's

26  choice-of-law regime systematically favors the application of domestic law, this Court discerns
    few legitimate interests to be vindicated by the assertion of adjudicatory jurisdiction for its own

27  sake.  Indeed, the same principles that underlie diversity jurisdiction might suggest that
    Defendants should be able to "remove" this action to a court in some more "neutral" location

28  such as Alabama or Michigan.

Case No. C 08-3468 JF
ORDER DEFERRING RULING ON MOTIONS TO DISMISS
(JFLC3)

1  decision with respect to *forum non conveniens*. Out of prudence, the Court will defer its

2  ruling on *forum non conveniens* until the issue of personal jurisdiction fairly can be presented.

3  **IV. CONCLUSION**

4  For the foregoing reasons, the Court will defer consideration of Defendants' motions to

5  dismiss on the ground of *forum non conveniens*. The stay of personal jurisdiction discovery is

6  hereby lifted. The hearing on Defendants' motions to dismiss will be re-scheduled for July 10,

7  2009 at 9:00 AM. Not later than June 26, 2009 at 5 PM PDT, Facebook may file a

8  supplemental opposition brief not to exceed fifteen pages in length. Not later than July 3,

9  2009 at 5 PM PDT, Defendants may file supplemental reply briefs individually not to exceed

10  fifteen pages in length.

11

12  **IT IS SO ORDERED.**

13  DATED: 5/4/09

14

15  JEREMY FOGEL

16  United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 08-3468 JF
ORDER DEFERRING RULING ON MOTIONS TO DISMISS
(JFLC3)

1   This Order has been served upon the following persons:

2   Annette L. Hurst     ahurst@orrick.com

3   Gary Evan Weiss     gweiss@orrick.com, sdonlon@orrick.com

4   I. Neel Chatterjee     nchatterjee@orrick.com, adalton@orrick.com, htsutsui@orrick.com,
    kmudurian@orrick.com, mawilliams@orrick.com

5   Julio Cesar Avalos     javalos@orrick.com, aako-nai@orrick.com, adalton@orrick.com

6
    Stephen Shannon Smith , Esq     ssmith@greenbergglusker.com
7
    Thomas J. Gray     tgray@orrick.com
8
    Warrington S. Parker , III     wparker@orrick.com
9
    William Mielke Walker     wwalker@greenbergglusker.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9



# ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

tel  -1-650-614-7400
fax  -1-650-614-7401
WWW.ORRICK.COM

## FAX TRANSMISSION

**DATE**    5/6/2009

| | **NO. OF PAGES** (INCLUDING COVER SHEET) | **11** |

**FROM**

| name | tel |
| --- | --- |
| Thomas Gray | (949) 852-7764 |

**TO**

| name | company/firm | tel | fax |
| --- | --- | --- | --- |
| Mag. Judge Howard R. Lloyd | USDC, San Jose | 40.535.5365 | **408.535.5410** |

**RE**    Facebook v. StudiVZ, et al
      Case No.: 5:08-cv-03468 JF

**MESSAGE**

Please see attached letter on behalf of Plaintiff Facebook, Inc.

---

**C·M·A**    16069-2005                              Originals Will Follow By Regular Mail

**IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL KELLY PAYAN AT 949-852-7769 AS SOON AS POSSIBLE.**

*notice to recipient*
THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS INTENDED TO BE SENT ONLY TO THE STATED ADDRESSEE OF THE TRANSMISSION.  IT MAY BE PROTECTED FROM UNAUTHORIZED USE OR DISSEMINATION BY THE ATTORNEY-CLIENT PRIVILEGE, THE ATTORNEY WORK-PRODUCT DOCTRINE, OR ANY OTHER APPLICABLE PRIVILEGE.  IF YOU ARE NOT THE STATED ADDRESSEE, YOUR RECEIPT OF THIS TRANSMISSION WAS UNINTENDED AND INADVERTENT, AND YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  YOU ARE ALSO ASKED TO NOTIFY US IMMEDIATELY BY TELEPHONE AND TO RETURN THE ORIGINAL DOCUMENT TO US IMMEDIATELY BY MAIL AT THE ADDRESS ABOVE.  THANK YOU IN ADVANCE FOR YOUR COOPERATION.
OHS WEST:260620817.1