1  I. NEEL CHATTERJEE (STATE BAR NO. 173985)
   nchatterjee@orrick.com
2  JULIO C. AVALOS (STATE BAR NO. 255350)
   javalos@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA  94025
   Telephone:   +1-650-614-7400
5  Facsimile:    +1-650-614-7401

6  THOMAS J. GRAY (STATE BAR NO. 191411)
   tgray@orrick.com
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   4 Park Plaza
8  Suite 1600
   Irvine, CA  92614-2558
9  Telephone:   +1-949-567-6700
   Facsimile:    949-567 6710
10
   Attorneys for Plaintiff
11 FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> v. <br><br> STUDIVZ LTD., HOLTZBRINCK NETWORKS GMBH, HOLTZBRINCK VENTURES GMBH, DENNIS BEMMANN, MICHAEL BREHM, AND DOES 1-25, <br><br> Defendants. | Case No.  5:08-cv-03468 JF <br><br> **FACEBOOK'S OPPOSITION TO DEFENDANTS' MOTION TO QUASH THIRD-PARTY SUBPOENAS** <br><br> Date:  June 23, 2009 <br> Time:  10:00 a.m. <br> Room:  Courtroom 2, 5th Floor <br><br> Judge:  Hon. Howard R. Lloyd |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................................3

    A. Defendants Renege On Their Initial Agreement To Produce Personal Jurisdiction Discovery ...........................................................................................3

    B. Defendants Renege On Their Second Agreement To Produce Personal Jurisdiction Discovery ...........................................................................................4

    C. Defendants' Refusal To Produce Personal Jurisdiction Discovery Causes First Continuance Of Motion to Dismiss Hearing ................................................4

    D. Defendants Renege On Third Agreement To Produce Personal Jurisdiction Discovery, Defying A Court Order In The Process .............................................5

    E. With An Order Compelling Discovery Imminent, Defendants Move To Stay The Personal Jurisdiction Portions Of Their Motions to Dismiss. .................7

    F. On May 4, 2009, Judge Fogel Determines That Personal Jurisdiction Discovery Is Required After All ...........................................................................7

III. ANALYSIS .............................................................................................................................8

    A. This Court Cannot Quash Subpoenas Issued By Foreign Courts .........................8

    B. Judge Fogel's May 9, 2009 Order Lifted The Stay of Personal Jurisdiction Discovery So That Facebook Might Obtain The Exact Discovery Defendants Now Seek to Quash ............................................................................9

    C. Facebook's Discovery Requests Are Narrowly Tailored To Obtain Material Discovery And Defendants' Have No Knowledge As To The Burden That Such Requests Would Present To Third-Parties .................................................10

    D. Facebook's Subpoenas Comply With FRCP 45(b)(1) ........................................13

IV. CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Blankenship v. Hearst Corp.*,
 519 F.2d 418 (9th Cir. 1975) ................................................................................... 11

*Keithley v. Homestore.com*,
 2006 U.S. Dist. LEXIS 42101 ............................................................................. 8, 9

*Lofton v. Bank of America Corp.*,
 2008 U.S. Dist. LEXIS 41005 ................................................................................ 11

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
 894 F.2d 1318 (Fed. Cir. 1990) .............................................................................. 11

**STATE CASES**

*Ustarcom, Inc. v. Starent Networks Co.*,
 2005 WL. 1397507 .................................................................................................. 11

**FEDERAL STATUTES**

Fed. R. Civ. P. 5(b)(2)(C) ............................................................................................. 13

Fed. R. Civ. P. 45(b)(1) ................................................................................................ 13

Fed. R. Civ. P. 45(c)(3) ............................................................................................ 8, 11

I.      INTRODUCTION

For nearly four years, Defendants have engaged in blatant piracy of Facebook's intellectual property. Just a little over a year after the launch of its infringing, copycat website, StudiVZ attracted the attention of the Holtzbrinck Defendants (subsidiaries of one of the largest media conglomerates in the world). In 2007, the Holtzbrinck Defendants reportedly bought StudiVZ for over $100 million dollars. Flush with Holtzbrinck's money and knowing encouragement, StudiVZ expanded from a local German knockoff into a full-blown global piracy enterprise, brazenly opening offices throughout Western Europe and gaining customers from dozens of countries, including the United States and California. There is no question that Defendants possess large amounts of evidence documenting their sustained, tortious attacks on Facebook's Silicon Valley-based servers. But for the past seven months, Holtzbrinck's money has been bankrolling a sustained (and thus far effective) effort by a team of sophisticated lawyers to keep these gigabytes of smoking gun personal jurisdiction evidence from seeing the light of day. Defendants' Motion to Quash third party discovery is the latest try.

Unable to coax Defendants into complying with their discovery obligations, Facebook has sought out alternate avenues of discovery, recently uncovering a number of U.S. non-party witnesses who likely possess probative evidence relevant to Defendants' jurisdictional and *forum non conveniens* challenges. According to Defendants' motions to dismiss, which rest on the theory that the StudiVZ websites were somehow hermetically developed by German programmers with no contacts with Facebook, California or the United States, these witnesses should not exist. It is small wonder then, that Defendants would spend tens of thousands of dollars to suppress allegedly irrelevant and "unduly burdensome" discovery even though the production of that discovery would cost them nothing. Defendants go so far as to disparage the nature of the businesses Facebook has subpoenaed, accusing Facebook of seeking discovery from "such irrelevant sources as a t-shirt company." But American law does not exclude t-shirt companies from the Federal Rules of Civil Procedure, especially when they are likely to possess discovery highly material to a plaintiff's jurisdictional case.

Nor does federal law recognize Defendants' proposed rule that a plaintiff combating

jurisdictional and forum challenges is allowed one and only one round of discovery or that no third-party discovery should issue unless the plaintiff somehow knows of, identifies, and serves that discovery upon all possible non-party witnesses simultaneously with that first round of discovery. Defendants ask the Court to adopt this rule but are not able to point to any precedent for it, failing to cite to even a single case, rule or court order in support. Ironically, Defendants rely mainly on Judge Fogel's May 4, 2009 order in which he deferred his "ruling on *forum non conveniens* until the issue of personal jurisdiction fairly can be presented." In order to ensure the fair presentation of the jurisdictional issues, the May 4 Order <u>expressly lifted the stay of personal jurisdiction discovery</u>, which is the exact discovery Defendants now claim the Order precluded. And as incoherent as this argument is, it is not even the most fatal flaw of Defendants' brief.

In their haste to keep the Court from even hearing what these non-parties have to say, Defendants have ignored one fundamental and unambiguous provision of the Federal Rules: only a court which issues a subpoena may quash it. Here, only two of the ten subpoenas Defendants seek to quash were issued by this Court. All others were issued by district courts in foreign states, beyond this Court's quashing power. Which is not to say that Defendants' motion fares any better as to the two remaining subpoenas than to the first eight. Based on little more than misplaced clichés regarding "fishing expeditions," Defendants would have the Court prevent Facebook from obtaining personal jurisdiction discovery from a sophisticated Silicon Valley-based technology company and one of its employees even though that company, during at least a portion of the time relevant to Facebook's Complaint, employed and made available computer programming resources to StudiVZ's original Chief Technical Officer and primary programmer of StudiVZ's infringing websites. Defendants claim that Facebook's subpoenas are unduly broad or burdensome, but they themselves have no idea how burdensome the third-parties served with the subpoenas find them. As a matter of law, Defendants' simply cannot meet the burden required to quash a subpoena.

The Court should no longer tolerate Defendants' obstructionist tactics. Facebook respectfully requests that Defendants' Motion for Protective Order be denied, that Facebook's concurrently-filed Motion to Compel Second Round of Discovery Responses be granted, and that

OHS West:260665973.4 - 2 - FACEBOOK'S OPPOSITION TO DEF. MOT. TO QUASH THIRD-PARTY SUBPOENAS
CASE NO.: 5:08-CV-03468

the Court issue a ruling on Facebook's still-pending Motion to Compel Further Responses to Facebook's First Round of Discovery Requests.

## II. FACTUAL BACKGROUND

### A. Defendants Renege On Their Initial Agreement To Produce Personal Jurisdiction Discovery.

Defendants' Motion is the latest in a seemingly endless series of desperate attempts to withhold personal jurisdiction discovery.

Facebook propounded its First Set of Discovery Requests on jurisdictional issues over seven months ago. *See* Declaration of Julio C. Avalos In Support of Facebook's Opposition to Defendants' Motion For Protective Order Quashing Third-Party Subpoenas ("Avalos Decl.") 2. On October 22, 2008, one week after receiving Facebook's requests, Defendants StudiVZ Ltd. ("StudiVZ"), Holtzbrinck Networks GmbH ("HNG") and Holtzbrinck Ventures GmBH ("HVG") (HVG and HNG herein collectively referred to as "Holtzbrinck" or the "Holtzbrinck Defendants"), filed two Motions to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens* (herein the "Motions to Dismiss"). *See* Dkt. Nos. 41 and 42. As Defendants acknowledge in their Motion to Quash, "[t]he motions were set for hearing on February 13, 2009 – a date selected in consultation with Facebook **to allow Facebook time to take discovery concerning personal jurisdiction and forum**." Defendant's Motion to Quash ("Def. Mot.") at 2:16-20 (emphasis added).

Despite Defendants' explicit early acknowledgement that Facebook was entitled to personal jurisdiction discovery, they soon discovered that under this Circuit's *Calder* effects test of personal jurisdiction, at least some of the personal jurisdiction discovery Facebook was entitled to would also touch upon Defendants' illegal activities. Thus, only a week after agreeing to a hearing date selected "to allow Facebook time to take discovery concerning personal jurisdiction and forum," Defendants filed a Motion for Protective Order seeking, *inter alia*, a stay of all discovery unrelated to "disputed material issues raised by the Motions to Dismiss." Dkt. No. 51 at 3:18-21. Of course, Defense counsel's interpretation of "disputed material issues" did not encompass any discovery material to Facebook's *Calder* effects theory. It is important to note

that Facebook served its personal jurisdiction discovery on October 14, 2008, *a week before Defendants brought their Motions to Dismiss and before consulting with Facebook over the February 13, 2009 hearing date*. Thus, Defendants agreed to cooperate in producing personal jurisdiction discovery prior to the February 13 hearing date with full knowledge of the scope of discovery Facebook was seeking. In this context, every subsequent attempt to fight personal jurisdiction discovery must be taken for what it is – a flagrant, unambiguous attempt to delay this matter, increase its cost, and, most importantly, to suppress unfavorable evidence.

### B. Defendants Renege On Their Second Agreement To Produce Personal Jurisdiction Discovery.

Following Defendants' sudden about-face, Facebook insisted on a number of well-documented meet and confers to determine why Defense counsel was now taking a position diametrically opposed to their earlier representations. S*ee* Dkt. No. 107 ¶¶ 2-18. During those meet and confers, Defense counsel once again agreed to produce various categories of documents related to Facebook's jurisdictional theories. *Id*. These documents consisted of so-called "access" documents, design documents and documents relating to the identity of StudiVZ employees tasked with accessing Facebook's website. *Id*. Facebook believed that an agreement had been reached regarding the imminent production of that discovery and said so in open court on December 16, 2008. *Id*. ¶ 10. Defense counsel agreed with Facebook's representation of the meet and confers and withdrew his motion for protective order. *Id*. However, later when Defendants served their production, none of the agreed-upon discovery was included. *Id*. ¶ 14.

### C. Defendants' Refusal To Produce Personal Jurisdiction Discovery Causes First Continuance Of Motion to Dismiss Hearing.

Without this discovery, Facebook was precluded from adequately responding to Defendants' Motions to Dismiss. When Facebook counsel requested a stipulation for a continuance, Defense counsel initially agreed, but true to form, reneged on the agreement two days before Facebook's deadline to oppose. Facebook then timely filed its opposition on January 16, 2009. *See* Dkt. No. 76 and supporting documents. Because of the prejudice inherent in responding to the motions without the discovery it required and was entitled to, Facebook

requested that Judge Fogel continue the February 13 hearing and permit Facebook to file a Supplemental Opposition once it had obtained discovery necessary to oppose Defendants' motions. *See* Dkt. No. 77. Specifically, Facebook wrote:

> "Facebook respectfully requests an order (1) continuing the February 13 hearing on Defendants' motions to dismiss for 90 days **in order to allow the parties to complete personal jurisdiction and forum discovery**, and (2) granting Facebook the right to file a supplemental opposition once it receives the necessary discovery from Defendants. Alternatively, even if the Court does not believe **additional discovery** is warranted, Facebook respectfully requests additional time to file supplemental opposition papers…."

*Id*. at 5:15-24 (emphasis added).

On January 28, 2009, Judge Fogel issued an order granting Facebook's request for a stay of the February 13 hearing. *See* Dkt. No. 92. Judge Fogel's order stated:

> " . . . [B]ecause a brief continuance is unlikely to prejudice any party, the Court will grant Facebook's motion for a continuance. Facebook will be permitted to file a supplemental opposition with respect to whether this Court has personal jurisdiction over StudiVZ **in light of any newly discovered material**. The continuance will be for sixty days only. Accordingly, Defendants' motions to dismiss will be heard on April 10, 2009 at 9 a.m."

*Id*. at 2:15-23 (emphasis added). Significantly, neither Facebook's request nor Judge Fogel's January 28 Order contemplated limiting Facebook's ability to propound additional discovery requests.

### D. Defendants Renege On Third Agreement To Produce Personal Jurisdiction Discovery, Defying A Court Order In The Process.

On January 27, 2009, one day before Judge Fogel issued this order, Facebook filed a Motion to Compel the production of the jurisdictional and forum-related discovery that Defendants' counsel acknowledged Defendants had, but were withholding. *See* Dkt. No. 91. At the March 3, 2009 hearing on the motion, the Court indicated that it was inclined to compel at least some of the discovery Facebook requested. Specifically:

> THE COURT: What I'm struggling with right now it to decide whether to give anything or nothing. I'm not inclined to give him nothing, I'm inclined to give him something, and I'm struggling to define a something in a way that's reasonable.

*Id*., Ex. A. As he did at the December 16, 2008 hearing on similar issues, Defense Counsel Stephen Smith responded by once again indicating that he was willing to compromise and

OHS West:260665973.4 - 5 - FACEBOOK'S OPPOSITION TO DEF. MOT. TO QUASH THIRD-PARTY SUBPOENAS
CASE NO.: 5:08-CV-03468

produce certain documents to Facebook, even proffering a proposal of documents that he would agree to produce:

> MR. SMITH: I understand. My proposal is that he – that access [categories of documents relating to StudiVZ's accessing of Facebook's servers] is okay if it is for the purpose of copying the design, look, feel, whatever other word we want to use, of Facebook's own website, and as long as it is limited to a fair group of people and a fair amount of time, meaning a particular period of time. If we go beyond that, we start getting into these line drawing problems that Your Honor has already noted …

*Id*. Later, the Court stated, "I'm dealing with the reality that I think they [Facebook] should get something." *Id*. Mr. Smith responded, "**And I'm quite willing to work with your Honor to get them something**" (emphasis added). *Id*. No doubt taking Mr. Smith's representation of a willingness to compromise at its word, the Court stated:

> THE COURT: All right . . . I don't think further discussion about this would be particularly profitable. What I will do is I will give you both until 9:00 o'clock tomorrow morning to submit a letter to the court and specifically what I'm interested in is your proposal for what an order would say in terms of further discovery, if any, and I've already indicated I'm inclined to give some on the issues we've been discussing: access to the websites, the design and development of the websites, the adhesion contracts, and depositions . . .
>
> …
>
> And I would suggest to you when you write this letter to me that you – that you have in mind that what you're proposing to me is something that you could live with, not what you would rather have, not your druthers. Your druthers, Mr. Smith, would be nothing, and your druthers, Mr. Gray, would be everything. So I'm not interested in your druthers, but in what you could live with. And I'm not committing to accept either of your language, but I would like some guidance and some further – I'm going to give this some further thought, too.

*Id*.

In keeping with the bait-and-switch strategy Defense counsel has implemented throughout this litigation, rather than submitting a proposal (or even memorializing the proposal that he had made in open court), Mr. Smith first requested a one-week extension in order to permit StudiVZ's general counsel to speak with its Board of Directors, *see* Dkt. No. 114, and then after the one-week extension was granted, *see* Dkt. No. 116, reversed course completely, stating in a new letter

1    that he would not submit any proposed language and arguing that StudiVZ felt that it should not
2    have to produce any discovery at all. *See* Dkt. No. 117. Mr. Smith's letter contained no new
3    facts or arguments that would explain the sudden divergence from his in-court promise to the
4    Court that he was "quite willing to work with your Honor to get them something." In fact, Mr.
5    Smith's letter simply proposed what the Court had expressly instructed Mr. Smith not to propose
6    – StudiVZ's "druthers" that they be forced to produce nothing at all.

        E.        **With An Order Compelling Discovery Imminent, Defendants Move To Stay The Personal Jurisdiction Portions Of Their Motions to Dismiss.**

9    Aware that they would soon be faced with a Court order requiring them to produce at least
10   some discovery, Defendants scrambled for a last-minute method of keeping their incriminating,
11   personal jurisdiction evidence hidden. On March 19, 2009, Defendants filed a Motion for
12   Administrative Relief Staying The Personal Jurisdiction Portion of Defendants' Motions to
13   Dismiss Pending The Outcome of the *Forum non Conveniens* Portion Of Those Motions. *See*
14   Dkt. No. 119. In short, Defendants argued again that they should not be forced to produce
15   anything and that if necessary, they would drop their jurisdictional challenge in order to keep
16   from producing any personal jurisdiction discovery. Defendants argued "[i]t is . . . a waste of this
17   Court's time and resources to address all of the issues that will arise from discovery related solely
18   to the issue of personal jurisdiction over StudiVZ when *forum non conveniens* can be decided
19   separately and forthwith." *Id*. at 2:4-6.
20   On March 30, 2009, Judge Fogel agreed that personal jurisdiction discovery should be
21   stayed in order to see whether the case might be disposed of on *forum non conveniens* grounds
22   and thus negate the necessity for the personal jurisdiction discovery. *See* Dkt. No. 138.

        F.        **On May 4, 2009, Judge Fogel Determines That Personal Jurisdiction Discovery Is Required After All.**

25   On May 4, 2009, after a flurry of back and forth briefing and oral argument, Judge Fogel
26   determined that although he perceived Defendants' *forum non conveniens* theory to have some
27   merit, the ruling was not so clear cut as to allow dismissal of the case prior to permitting
28   Facebook to complete personal jurisdiction discovery. *See* Dkt. No. 155. Holding that "it is

OHS West:260665973.4     - 7 -     FACEBOOK'S OPPOSITION TO DEF. MOT. TO QUASH THIRD-PARTY SUBPOENAS
CASE NO.: 5:08-CV-03468

possible, as Facebook has suggested, that the personal jurisdiction inquiry meaningfully will inform the Court's ultimate decision with respect to *forum non conveniens*," "[o]ut of prudence, the Court will defer its ruling on *forum non conveniens* until the issue of personal jurisdiction fairly can be presented." *Id*. at 7:22 – 8:2. Accordingly, Judge Fogel ordered: "The stay of personal jurisdiction discovery is hereby lifted." *Id*. at 8:5-6. The broad language of the ruling simply did not contain or imply the limitation that Defendants now seek to read into it, namely, that the lifting of a stay of personal jurisdiction discovery is somehow tantamount to a ruling precluding Facebook from serving additional personal jurisdiction discovery.

### III.   ANALYSIS

#### A.   This Court Cannot Quash Subpoenas Issued By Foreign Courts.

The majority of Defendants' Motion to Quash fails as a matter of procedural law as the Court does not have the power to quash subpoenas issued by foreign courts. Third-party subpoenas are governed by Federal Rule of Civil Procedure 45. Under Rule 45(c)(3), there are only two instances in which a subpoena may be quashed or modified, Required Quashing and Permissive Quashing. In the first case, the Rule provides that "[o]n timely motion, **the issuing court** must quash or modify a subpoena" under a given set of circumstances. Fed. R. Civ. P. 45(c)(3)(A) (emphasis added). For Permissive Quashing, the Rule states: "To protect a person subject to or affected by a subpoena, **the issuing court** may, on motion, quash or modify the subpoena." Fed. R. Civ. P. 45(c)(3)(B) (emphasis added). Thus, under the plain language of the Rule, only the district court that issues a subpoena may quash it, as this Court has consistently confirmed. *See, e.g.*, *Keithley v. Homestore.com*, 2006 U.S. Dist. LEXIS 42101, at *4-5, Case No. C-03-04447 MJJ (EDL) (N.D. Cal. June 12, 2006) (holding that under Rule 45(c)(3) "this Court lacks jurisdiction to quash" subpoenas issued by other district courts).

Here, eight of the ten third-party subpoenas Facebook has served were issued by district courts from other states: five subpoenas were issued by the District Court for the Eastern District of North Carolina, one subpoena was issued by the District Court for the Western District of Pennsylvania; another subpoena was issued by the District Court for the Northern District of Illinois; and a final subpoena issued by the District Court for the District of Colorado. *See* Avalos

Decl., Ex. B (attaching subpoenas). This Court lacks the power to quash these subpoenas. *See Keithley*, 2006 U.S. Dist. LEXIS at *4-5. Accordingly, Defendants' Motion to Quash is invalid as to these eight subpoenas.

  **B.**  **Judge Fogel's May 9, 2009 Order Lifted The Stay of Personal Jurisdiction Discovery So That Facebook Might Obtain The Exact Discovery Defendants Now Seek to Quash.**

  Defendants' primary argument in favor of quashing Facebook's third-party subpoenas is contrary to the express language of Judge Fogel's May 4 Order. Defendants claim that "[w]hen viewed in the context from which they arose, Judge Fogel's orders provide one last, short continuance of the [motion to dismiss] hearing date in order to allow the parties to wrap up their ***previously existing***, previously stayed disputes as to the issues raised in Facebook's motion to compel." Def. Mot. at 6:22-26 (emphasis in original). Nothing could be further from the truth. Defendants cite to nothing in Judge Fogel's May 4 Order limiting the lifting of the stay of personal jurisdiction discovery to "previously existing" discovery requests because no such language exists. Nor is there any support for Defendants' argument in the "context from which" Judge Fogel's order arose.

  On March 30, Judge Fogel issued an order accepting Defendants' invitation to stay personal jurisdiction discovery. *See* Dkt. No. 138. He did so in order to determine whether this case might be efficiently disposed of on *forum non conveniens* grounds and thus sidestep the personal jurisdiction issues (and the attendant need for personal jurisdiction discovery) altogether. *Id*. However, after full briefing and oral argument on the *forum non conveniens* question, Judge Fogel determined on May 4 that the answer to this question was "No," and held that the case should not be dismissed on *forum non conveniens* grounds until after "the issue of personal jurisdiction fairly can be presented." Dkt. No. 155 at 8:1-2. And in order for the issue to be fairly presented, Judge Fogel determined that Facebook "required additional discovery," *Id*. at 3:1, and thus ordered that "[t]he stay of personal jurisdiction discovery is hereby lifted." *Id*. at 8:5-6.

  There is nothing in any order limiting personal jurisdiction discovery in the manner Defendants suggest. If anything, the May 4 Order implies a broadened scope of personal jurisdiction discovery as the Court determined that it was possible "that the personal jurisdiction

inquiry meaningfully will inform the Court's ultimate decision with respect to *forum non conveniens*," *id*. at 7:22-8:1, therefore inviting Facebook to take and produce personal jurisdiction discovery that might meaningfully inform the Court's *forum non conveniens* analysis as well as its jurisdictional analysis. In this context, it is difficult to imagine discovery more appropriate under the May 4 Order than the third-party subpoenas that Facebook has served on a variety of Defendants' U.S.-based business partners and former U.S.-based employers of StudiVZ's founders. These witnesses are likely to possess information regarding Defendants' California and U.S.-based contacts. The former employers, who hired StudiVZ's founders at precisely the time that they are alleged to have begun pirating Facebook's intellectual property, are also likely to possess emails and other documents evidencing the beginning of StudiVZ's counterfeiting efforts.

In sum, there is no language in any order supporting Defendants' limited reading of the state of personal jurisdiction discovery in this case. Judge Fogel was fully briefed on the pending discovery disputes between the parties. Had he wished to limit personal jurisdiction discovery to only those "previously existing, previously stated disputes as to the issues raised in Facebook's motion to compel," Def. Mot. 6:24-25, he would have so ordered. Instead, after careful analysis, Judge Fogel determined that the issue of personal jurisdiction needed to be "fairly presented" and that the stay of "**personal jurisdiction discovery**"—not a stay on this Court's ruling on Facebook's First Motion to Compel nor a stay of "previously existing, previously stayed disputes"—needed to be lifted. Accordingly, Defendants' argument is without merit and their request to quash Facebook's third-party subpoenas should be denied.

      **C. Facebook's Discovery Requests Are Narrowly Tailored To Obtain Material Discovery And Defendants' Have No Knowledge As To The Burden That Such Requests Would Present To Third-Parties**

Defendants make two final unpersuasive arguments in favor of their motion to quash. First, Defendants seek to cast Facebook's discovery requests as out of control fishing expeditions, "ridiculously overbroad discovery requests" indicative of "Facebook's complete unwillingness to attempt to tailor discovery requests to anything related to limited personal jurisdiction and *forum non conveniens*." *Id*. at 9:3-15. Defendants' hyperbole betrays the impotence of their argument.

OHS West:260665973.4      - 10 -      FACEBOOK'S OPPOSITION TO DEF. MOT. TO QUASH THIRD-PARTY SUBPOENAS
CASE NO.: 5:08-CV-03468

1         Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery, not privileged, that is "relevant to any party's claims or defense." "The discovery standard is intentionally broad: requested discovery is relevant if it 'appears reasonably calculated to lead to the discovery of admissible evidence' relating to the claims or defenses of any party." *Ustarcom, Inc. v. Starent Networks Co.*, 2005 WL 1397507, at *1, Case No. C-04-1122PVT (N.D. Cal. June 14, 2005) (internal citations omitted). Thus, discovery "is allowed to flesh out a pattern of facts already known to a party relating to an issue necessarily in the case." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990).

        Accordingly, a party seeking to quash or modify a subpoena under the instant circumstances bears the burden of establishing that the subpoena, *inter alia*, "subjects a person to undue burden," "requires disclosure of privileged or other protected matter" or where the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3); *See also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (holding that a party seeking to prevent discovery has a "heavy burden" to make a "strong showing" as to why the discovery should not be produced); *Lofton v. Bank of America Corp.*, 2008 U.S. Dist. LEXIS 41005 at *4, Case No. C 07-05892 SI (N.D. Cal. May 12, 2008) (party seeking to prevent discovery must make more than a "conclusory statement that discovery would cause undue burden and expense").

        Defendants have offered nothing but conclusory statements regarding Facebook's discovery requests. In the unlikely event that a trade secret is implicated by Facebook's subpoenas, the affected parties themselves may seek a protective order. Nor have Defendants established that Facebook's subpoena subjects the third-parties to "undue burden." Defendants have put forth no evidence as to what sort of burden Facebook's discovery requests place on the third-parties. They have offered no evidence as to the quantity of information each non-party would be forced to produce, no evidence regarding the cost of conducting a search for information responsive to Facebook's subpoena, and no evidence regarding why cooperating with Facebook's subpoena would be a burden. Other than the cost of reviewing discovery produced by the third-parties (which would be nothing if Defendants are to be believed that these third-

parties possess nothing relevant to this matter), there is no cost or burden to Defendants in allowing a third-party to cooperate with Facebook's subpoena.

Nor can there be any question that Facebook's discovery requests are narrowly aimed at uncovering highly probative evidence relating to personal jurisdiction or *forum non conveniens*. *See* Avalos Decl. ¶ 15; Ex. B. For instance, despite Defendants' discovery stonewall, Facebook has learned that StudiVZ's founder Ehssan Dariani first learned of Facebook and hatched his plan to copy Facebook while working as an intern at Pennsylvania-based company Spreadshirt Inc. *See* Dkt. No. 140 ¶¶ 31-32. Facebook believes that Mr. Dariani and his co-founders developed their plan to rip-off Facebook through email communications on Spreadshirt email accounts. Clearly an email on a Spreadshirt server from one StudiVZ founder to another detailing efforts to access Facebook's California-based servers in order to copy intellectual property contained thereon would be relevant to both personal jurisdiction and *forum non conveniens* analysis. Unable to disagree with this obvious truth, Defendants' Motion instead levels *ad hominem* attacks on Spreadshirt's business selling t-shirts, writing: "Does it really make sense for that t-shirt company to now produce '[a]ll documents relating to the internship and/or employ of Ehssan Dariani at Spreadshirt.'" Def. Mot. at 8:15-19. Under well-established law, the answer to Defendants' question is a resounding, "yes."

Any business contacts between Defendants and the United States would arguably be relevant to Facebook's personal jurisdiction and *forum non conveniens* analysis. But the non-parties targeted by Facebook's subpoenas are more than mere business contacts. Intetics, based in Wilmette, Illinois, is believed to be at least partly in charge of scripting StudiVZ's infringing source code. Accordingly, they are likely to possess technical data highly relevant to StudiVZ's development of its websites and possible misappropriation of Facebook's source code. Again, any trade secrets implicated by the subpoena may easily be protected through a protective order. San Jose-based Xilinx Corporation and its two subpoenaed employees employed and worked closely with StudiVZ founder Dennis Bemmann during precisely the time that Mr. Bemmann is supposed to have begun copying Facebook's intellectual property. Xilinx Corporation provided tutorship and programming resources to Mr. Bemmann and it is likely that they possess

information relevant to Facebook's jurisdictional arguments. The North Carolina subpoenas are aimed at two individuals who <u>worked for StudiVZ</u> during the critical early days following the StudiVZ launch. At least one of these individuals was a **<u>Vice President</u>** at StudiVZ and thus likely to possess crucial information relevant to the motions to dismiss pending before Judge Fogel.

Defendants' objections to these subpoenas as irrelevant or untimely or unduly burdensome are meritless and should be denied.

### D. Facebook's Subpoenas Comply With FRCP 45(b)(1)

Defendants' final, last ditch effort to quash Facebook's third-party subpoenas is equally meritless. Defendants' half-hearted argument is mooted by the fact that they were in fact served with notices of the third-party subpoenas prior to the service of those subpoenas upon any third-party. Avalos Decl. ¶¶ 4 - 15. It is black-letter law that service by mail is completed at the time of mailing. *See* Fed. R. Civ. P. 5(b)(2)(C) ("service is complete upon mailing"). Defendants were served with the subpoenas by mail on Friday, May 8, 2009 at approximately 3:30 p.m. *Id*. ¶ 4. Xilinx Corporation was hand-served approximately one hour later, at 4:30 p.m. PST. *Id*. ¶ 5. Spreadshirt, Inc. was not served until May 11, 2009. *Id*. ¶ 9. Intetics was served on May 12, 2009. *Id*. ¶ 7. Shoeboxed Inc. was served on May 11, 2009. *Id*. ¶ 6. Taylor Mingos was served on May 20, 2009. *Id*. ¶¶ 11-12. Finally, Tobias Walter was served on May 20, 2009. *Id*. ¶¶ 13-14. Accordingly, all third-party subpoenas complied with Rule 45(b)(1).[1]

## IV. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court no longer tolerate Defendants' time-wasting efforts to keep suppress material personal jurisdiction discovery from seeing the light of the day. Facebook requests that the Court deny Defendants' motion for a protective order quashing Facebook's third-party subpoenas, that it grant the concurrently-filed

---

[1] Defendants also mistake the application of Federal Rule 45(b)(1). According to the Rule, "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party." Thus, even if the Court did not have the power to quash subpoenas issued by foreign district courts (which it clearly does not), Rule 45(b)(1) would be inapplicable to Facebook's two subpoenas seeking deposition testimony rather than the production of documents.

Motion to Compel Responses to Facebook's Second Round of Discovery, that it schedule further briefing and oral argument on both Motions on an expedited basis as requested in the concurrently-filed Motion to Shorten Time, and that it issue an order granting Facebook's still-pending Motion to Compel Further Responses to Facebook's First Round of Discovery.

Dated: May 26, 2009  ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ Julio Avalos /s/
JULIO C. AVALOS
Attorneys for Plaintiff
FACEBOOK, INC.

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 26, 2009.

Dated: May 26, 2009.                    Respectfully submitted,

                                        /s/ Julio C. Avalos
                                        Julio C. Avalos