1   STEPHEN S. SMITH (SBN 166539)
    SSmith@GreenbergGlusker.com
2   WILLIAM M. WALKER (SBN 145559)
    WWalker@GreenbergGlusker.com
3   GREENBERG GLUSKER FIELDS
    CLAMAN & MACHTINGER LLP
4   1900 Avenue of the Stars, 21st Floor
    Los Angeles, California  90067-4590
5   Telephone:  310.553.3610
    Fax:  310.553.0687
6
7   Attorneys for Defendants studiVZ Ltd.,
    Holtzbrinck Networks GmbH, and
8   Holtzbrinck Ventures GmbH

9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11
                          SAN JOSE DIVISION
12

13
    FACEBOOK, INC.,                    Case No.  5:08-CV-03468 JF
14
              Plaintiff,               Assigned To:  Hon. Jeremy Fogel
15
    v.                                 **REPLY IN SUPPORT OF MOTION OF
16                                     DEFENDANTS FOR PROTECTIVE
    STUDIVZ LTD., , HOLTZBRINCK        ORDER RE FACEBOOK'S THIRD
17  NETWORKS GmbH,                     PARTY SUBPOENAS**
    HOLTZBRINCK VENTURES
18  GmbH, and DOES 1-25,
                                       Date:           June 19, 2009
19            Defendants.              Time:           2:00 p.m.
                                       Dept./Place:    Courtroom 2, 5th Floor
20                                                     Hon. Howard R. Lloyd

21                                     Complaint Filed: July 18, 2008

22

23

24

25

26

27

28

37106-00002/1691180.4

REPLY RE MOTION FOR PROTECTIVE ORDER

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..............................................................................................1

II. BACKGROUND ..............................................................................................2

    A. The Discovery Dispute Has Existed Since September 2008 ...............2

    B. The Dispute Existed When Facebook Served Its First Set of Discovery .................................................................................................3

    C. Defendants Produced Most of What Facebook Requested .................3

    D. Facebook Canceled Every Deposition It Ever Noticed ......................4

    E. Facebook's First Motion to Continue..................................................4

    F. Facebook's Second Motion to Continue .............................................5

    G. The Hearing of the Motions to Dismiss .............................................6

III. ARGUMENT ...................................................................................................7

    A. This Court May Issue the Requested Protective Order........................7

    B. Facebook's Authorities Confirm That This Court May Grant the Requested Relief...................................................................................9

    C. Facebook's Nonparty Discovery is Not "Narrowly Tailored"...........10

    D. Facebook Was Not Permitted to Serve the Subpoenas.....................13

    E. Facebook's Remaining Arguments are Meritless..............................14

        1. Facebook Bears the Burden of Justifying the Subpoenas........14

        2. A Protective Order Cannot Save Facebook's Subpoenas........15

        3. Facebook Violated Federal Rule of Civil Procedure 45(b)(1) ...........................................................................................15

IV. CONCLUSION ...............................................................................................15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Blankenship v. Hearst Corp.,*
519 F.2d 418 (9th Cir. 1975) ............................................................ 13

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.,*
334 F.3d 390 (4th Cir. 2003) ............................................................ 12

*Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.,*
230 F.3d 934 (7th Cir. 2000) ............................................................ 12

*ConnectU LLC v. Zuckerberg, et al.,*
Case No. C07-10593 DPW (N.D. Cal.) .......................................... 8, 9

*Jazini v. Nissan Motor Co.,*
148 F.3d 181 (2d Cir. 1998) ............................................................ 12

*Keithley v. Homestore.com, Inc.,*
2006 U.S. Dist. LEXIS 42101 (N.D. Cal. June 12, 2006) .................... 8

*Lofton v. Bank of America Corp.,*
2008 U.S. Dist. LEXIS 41005 (N.D. Cal. May 12, 2008) .................. 13

*Micro Motion, Inc. v. Kane Steel Co., Inc.,*
894 F.2d 1318 (Fed. Cir. 1990)................................................... passim

*Mitan v. Feeney,*
497 F.Supp.2d 1113 (C.D. Cal. 2007)........................................ 12, 13

*Protrade Sports, Inc. v. Nextrade Holdings, Inc.,*
2006 U.S. Dist. LEXIS 6631 (N.D. Cal. Feb. 2, 2006).................... 13

*Static Control Components, Inc. v. Darkprint Imaging,*
201 F.R.D. 431 (M.D. N.C. 2001) ...................................................... 7

*Utstarcom, Inc. v. Starent Networks Corp.,*
2005 WL 1397507 (N.D. Cal. June 14, 2005)................................. 13

*Wells v. GC Services Ltd. Partnership,*
2007 U.S. Dist. LEXIS 29447 (N.D. Cal. Apr. 10, 2007) ................ 7

**OTHER AUTHORITIES**

Fed.R.Civ.P. 11 .................................................................................. 14

Fed.R.Civ.P. 26 ........................................................................... passim

Fed.R.Civ.P. 30(b)(6) .......................................................................... 4

Fed.R.Civ.P. 45 ................................................................... 7, 11, 14, 15

Local Rule 6-3 .................................................................................... 13

REPLY RE MOTION FOR PROTECTIVE ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     **INTRODUCTION.**

Facebook wrongly claims that this Court has no jurisdiction to hear this motion.  Under Federal Rule of Civil Procedure 26, well-established case law, previous Orders of this Court and Facebook's own authority, this Court may do so.

In addition, Facebook ignores the stipulated time limits that the parties placed on discovery.  Facebook admits that "to allow time to take discovery and resolve discovery disputes, Facebook and Defendants negotiated a proposed stipulation regarding the scheduling of Defendants' motions to dismiss and the filing of Facebook's opposition thereto," which the "Court entered" on November 4, 2008. (Dkt. 77 at 2:26-3:5; Dkt. 41, 42, 48 and 54).  Although Facebook later got relief from the hearing date, it never asked the Court for, or got, relief from its stipulation to "take discovery" within the stipulated time.  Indeed, before June 3, 2009, when it filed its most recent motion to enlarge time, Facebook ***never*** told the presiding Court about the Subpoenas or its intent to serve the Subpoenas.

Facebook also mischaracterizes Court Orders.  Two Orders noted that Facebook's only basis to ask to continue the hearing was to get discovery that Facebook alleged Defendants "***were withholding***."  (Dkt. 138 at 2:3-7; Dkt. 155 at 2:25-3:2).  By definition, Defendants were ***not*** withholding anything related to the Subpoenas (or the second set of discovery), as they did not exist at that time.

Also, Judge Fogel ***never*** said "personal jurisdiction discovery is ***required***." (Opp. at 7:23-24) (emphasis added).  The presiding Court lifted the stay and continued the hearing "out of prudence" until personal jurisdiction "fairly can be presented."  (Dkt. 155 at 8:1-6).  It left the decision of "required" discovery, if any, to the Magistrate Court.  Judge Fogel also noted on March 30, 2009, before the Subpoenas were even served, that "Defendants have shown that discovery related to personal jurisdiction has grown complicated and burdensome."  (Dkt. 138 at 3:3-4).

Finally, Facebook's claim that the Subpoenas are proper is meritless.  The Subpoenas are a last minute, costly, overbroad, unduly burdensome diversion based

on speculation and suspicion.  The Subpoenas (and Facebook's second set of discovery) clearly show that Facebook no longer pretends to seek jurisdictional discovery, but instead seeks discovery related solely to the merits.  Black letter law, Facebook's authorities, this Court's Orders and the language of the Subpoenas show the Subpoenas are improper and should be quashed.

## II.   BACKGROUND.

Facebook's motion begins with 7 ½ pages of shrill accusations that Defendants have "reneged" on their "initial" and "second" agreements "to produce personal jurisdiction discovery."  Facebook's accusations are false.  Defendants' position has been clear and consistent from September 2008 until today.  Defendants were always willing to produce discovery that fairly relates to the issues of personal jurisdiction and *forum non conveniens*.  They agreed to Facebook's stipulation for the three months it requested to take such discovery.  They agreed to move the motion to dismiss hearing date so that Facebook could seek to have its first motion to compel resolved.  And, by the end of the stipulated time period, very few issues were left in dispute.  It was ***after*** that point in time that Facebook first served its second set of discovery.  It was long ***after*** that point in time that Facebook served the Subpoenas. With this new discovery, Facebook no longer even pretends to be interested in jurisdiction or forum.

### A.   The Discovery Dispute Has Existed Since September 2008.

Facebook first sought discovery via its September 9, 2008 Motion for Expedited Discovery.  (Dkt. 11).  In opposition, Defendants argued "Facebook's true motive was to take massive early discovery on issues that go well beyond personal jurisdiction."  (Dkt. 22 at 11:20-14:4).  Defendants argued that Facebook's discovery was improper because it was overbroad and was not limited to material disputed issues concerning personal jurisdiction.  (*Id.*)

This dispute was expressly discussed in the parties' October 9, 2008 Rule 26(f) conference.  The Joint Rule 26(f) Report notes that the parties ***disagreed*** about

1  the scope of discovery.  Again, Defendants believed discovery should be limited to

2  material disputed issues of personal jurisdiction.  (Dkt. 50 at 1:4-3:1).

3      **B.      The Dispute Existed When Facebook Served Its First Set of**

4              **Discovery**

5          On October 14, 2008, before the motions to dismiss were filed, Facebook

6  served written discovery that it claimed was related to personal jurisdiction.  The

7  parties then met and conferred about an appropriate hearing date for the motions to

8  dismiss.  Facebook wrote:

9          "***In order to allow time to take discovery and resolve discovery***

10         ***disputes***, Facebook and Defendants negotiated a stipulation regarding

11         the scheduling of Defendants' motions to dismiss and the filing of

12         Facebook's opposition thereto.  The Court entered the Proposed

13         Stipulated Scheduling Order on November 4, 2008, which provides

14         that Facebook's deadline was to be January 16, 2009 to file and serve

15         its opposition to Defendants' motions to dismiss.  *Id.*; *see* Docket No.

16         54.  Defendants were given two weeks from that date to file their

17         Reply papers.  *Id.*  The hearing on Defendants' motions to dismiss was

18         set for February 13, 2009.  *Id.*"

19  (Dkt. 77 at 2:26-3:5 (emphasis added); Dkt. 41, 48 and 54).  Facebook's suggestion

20  that Defendants initially agreed in October to produce documents in response to all

21  of Facebook's discovery, only to then renege on that agreement later (Opp. at 3:4-

22  4:7), contradicts its ***own*** description of the parties' stipulation.

23      **C.      Defendants Produced Most of What Facebook Requested.**

24         Defendants timely answered the discovery on November 17, 2008.  Facebook

25  complained that the responses were inadequate.  The parties then resolved most

26  disputes.  Facebook served 30 document demands and 23 interrogatories.  StudiVZ

27  answered 18 interrogatories (78%) and 22 document demands (73%) to Facebook's

28  satisfaction.  (Dkt. 94 at 5:5-11; Dkt. 91).  Facebook ***never*** moved to compel on

1   those responses.  The Holtzbrinck Defendants answered everything initially to

2   Facebook's satisfaction.  (Dkt. 95 at 2:4-21; Dkt. 97 at ¶¶ 27-28; Dkt. 92).  As

3   Facebook told the Court: "We have largely been able to work out every issue, and

4   there remain, I believe, Your Honor, very few issues that would come back before

5   this court . . . ."  (Ex. A to Avalos Decl., Dkt. 78-2 [Reporter's Transcript] at 4:23-

6   5:4).  So, again, Facebooks' cries of obstructionism and "reneging" on deals to

7   produce jurisdictional discovery (Opp. at 4:8-20) are wrong.

8            **D.    Facebook Canceled Every Deposition It Ever Noticed**

9            In October 2008, Facebook served Rule 30(b)(6) deposition notices on each

10  Defendant covering 18 topics each, but later withdrew them.  Facebook implied that

11  it might re-draft and re-serve them, but never did.  (Dkt. 97 at ¶ 31).  Facebook also

12  said that it would seek the depositions of Dennis Bemmann and Ehssan Dariani, the

13  two people that Facebook claims founded StudiVZ, through the Hague Evidence

14  Convention.  But, again, it never did.  (*Id.*).  Facebook then asked to depose

15  Michael Brehm and Martin Weber, the main declarants in support of the motions to

16  dismiss.  Defendants agreed to produce them on the dates Facebook requested.

17  Facebook noticed the depositions, but canceled them two days later.  (Smith Decl.

18  in Support of Defendants' Motion for Sanctions, Dkt. 84, at ¶¶ 2-20; and 84-2).

19           **E.    Facebook's First Motion to Continue**

20           On January 23, 2009, Facebook filed its first motion to continue the hearing

21  on the motions to dismiss.  (Dkt. 77 at 1:25-2:3; Dkt. 77-2).  Facebook did not say

22  it needed time to propound new discovery; the entire focus was the ***then-existing***

23  discovery dispute.  (Dkt. 77 at 1:4, 1:8-9, 1:24-25; 2:22-23, 4:9-10, 4:18-19).

24           This is also how the presiding Court read Facebook's request.  The Court's

25  March 30 Order states: "By a previous administrative motion, Facebook requested a

26  continuance of the hearing on Defendants' motions on the ground that it required

27  additional discovery that it claimed Defendants ***were*** withholding improperly."

28  (Dkt. 138 at 2:3-7) (emphasis added).  The Court's May 4 Order says: "In an earlier

1   administrative motion, Facebook requested a continuance of the hearing on

2   Defendants' motions, claiming that it required additional discovery that Defendants

3   improperly **were** withholding." (Dkt. 155 at 2:25-3:2). By definition, the discovery

4   Defendants allegedly "were withholding" could only have been that which they had

5   already been asked to produce.

6        On January 28, 2009, the Court issued its Order, finding that "Facebook has

7   failed to demonstrate any reason to continue the February 13, 2009 hearing as to

8   either defendant with respect to *forum non conveniens*, or as to Holtzbrinck with

9   respect to personal jurisdiction." (Order, Dkt. 92, at 2:15-17). Facebook was only

10  "permitted to file a supplemental opposition with respect to whether this Court has

11  personal jurisdiction over StudiVZ in light of any newly discovered material." (*Id.*

12  2:20-22). The Court moved the hearing for "judicial economy" and "because a

13  brief continuance is unlikely to prejudice any party." (*Id.* at 2:18-19).[1]

14       **F.**    **Facebook's Second Motion to Continue**

15       Two months later, on March 20, 2009, Facebook filed its second motion to

16  continue the hearing of the motions to dismiss. Facebook referenced no need for

17  the Subpoenas or any other discovery. (Dkt. 122). Facebook argued "in light of the

18  **pending** threshold discovery issue, Facebook respectfully requests that the Court

19  hold in abeyance or take off calendar Defendants' Motions to Dismiss currently

20  scheduled for April 10, 2009." (Dkt. 122 at 2:19-21) (emphasis added). In its

21  proposed order, Facebook asked that the motions to dismiss be continued "until

22  such time as the underlying discovery dispute **currently pending** before Magistrate

23  Judge Lloyd is resolved." (Dkt. 122-2 at 1:6-8) (emphasis added). The only

24  "pending" dispute was the motion to compel that was heard on March 3, 2009.

25       On March 30, 2009, the Court denied Facebook's motion, and granted

26  StudiVZ's cross-motion for administrative relief, staying personal jurisdiction in

27

28  [1] The Court never said Facebook showed that it was entitled to a continuance of StudiVZ's motion to dismiss, even as to personal jurisdiction. The Court simply noted StudiVZ had not opposed that part of Facebook's motion.

1   order to hear *forum non conveniens* first.  (Dkt. 138).  The Court noted "Defendants

2   have shown that discovery related to personal jurisdiction has grown complicated

3   and burdensome."  (*Id.* at 3:3-4).

4   ### G.   The Hearing of the Motions to Dismiss

5   At the May 1, 2009 hearing of the motions to dismiss, the Court expressly

6   raised with Facebook the subject of outstanding discovery.  The Court noted that

7   "you're in the midst of objections and motions and so forth."  The Court twice

8   asked Facebook how much time it needed to get personal jurisdiction "teed up" and

9   "ready to be heard."  (Dkt. 157 at 11:14-17, 12:11-12).  Facebook downplayed the

10  disputes, responding: "I think we are beyond that. . ." (i.e., beyond being in the

11  "midst of objections and motions and so forth.").  Facebook only referenced the

12  existing dispute before the Magistrate Court, saying that jurisdiction could be ready

13  "relatively quick if Defendants comply with the discovery issues."  (*Id.* at 11:16 -

14  13:2).  It never mentioned the Subpoenas or the second set of discovery.

15  On May 4, 2009, the Court issued an Order stating that it was "inclined to

16  dismiss" the action on *forum non conveniens* grounds, but deferred the final

17  decision until the personal jurisdiction issues could be "fairly presented."  The

18  Court set a new hearing date for July 10, 2009 and lifted the stay.  (Dkt. 155).

19  The Court did ***not*** find that ***any*** further jurisdictional discovery was

20  "required" as Facebook presumptuously contends.  (Opp. at 7:23-24).  Nor did the

21  Court "invite[] Facebook to take and produce personal jurisdiction discovery that

22  might meaningfully inform the Court's *forum non conveniens* analysis as well as its

23  jurisdictional analysis."  (Opp. at 9:27-10:4).  ***Nowhere*** does Facebook cite to

24  ***anything*** in the May 4 Order that "invites" Facebook to do that.[2]

25  ---

[2]  Judge Fogel's complete sentence on the issue is instructive.  It says: "***[t]he efficiency considerations raised by
26  Defendants are legitimate***, but it is possible, as Facebook has suggested, that the personal jurisdiction inquiry
meaningfully will inform the Court's ultimate decision with respect to *forum non conveniens*.  Out of prudence, the
Court will defer its ruling on *forum non conveniens* until the issue of personal jurisdiction fairly can be presented."
27  (Dkt. 155 at 7:21-8:2) (emphasis added).  Defendants' efficiency considerations were legitimate even when the only
discovery being considered was the four categories of materials in Facebook's motion to compel.  Facebook's scorched
28  earth, merits-based Subpoenas make things much worse, and to scant purpose.  Given their great overbreadth and focus
on the merits, they are not necessary to "fairly" present the jurisdiction issue, and are not designed to do so.

1    On May 8, 2009, Facebook served the Subpoenas.  On May 19, 2009,

2    Defendants moved for a protective order under Rule 26, **not** Rule 45.  (Dkt. 159 at

3    i:12).

4    **III.    ARGUMENT.**

5        **A.    This Court May Issue the Requested Protective Order.**

6        Rule 26(c) states that a protective order may be sought in the court where the

7    underlying action is pending "in order to protect a party or person from annoyance,

8    embarrassment, oppression, or undue burden or expense."  Federal Rule of Civil

9    Procedure 45(c) does not change that.  The Advisory Committee Notes to Rule 45

10   show that when Rule 45(c) was added in 1991, it was "not intended to diminish

11   rights conferred by Rules 26-37 or any other authority."  Fed. R. Civ. P. 45,

12   Advisory C'ttee Notes, 1991 Amendment, Subdivision (c); *see also Static Control*

13   *Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D. N.C. 2001)

14   (granting motion for protective order under Rule 26(c); although Rule 45(c) directs

15   the court which issued the subpoena to rule on motions to quash, this "rule does not

16   alter the broader concept that the district court in which an action is pending has the

17   right and responsibility to control the broad outline of discovery.").

18       In *Wells v. GC Services Ltd. Partnership*, 2007 U.S. Dist. LEXIS 29447, Case

19   No. C06-03511 RMW HRL (N.D. Cal. Apr. 10, 2007), this Court faced the same

20   issue.  There, defendant served seven nonparty subpoenas through district courts

21   outside of the Northern District of California.  *Id*. at *1.  Plaintiff moved to quash the

22   subpoenas.  *Id*.  This Court decided that "***this court could properly address a motion***

23   ***for a protective order***, ***and this court has the right to define the scope of discovery***.

24   Federal Rule of Civil Procedure 26 allows 'the court in which the action is pending'

25   to make 'any order which justice requires to protect a party or person from

26   annoyance, embarrassment, oppression, or undue burden or expense'….Therefore, the

27   court deems plaintiff's motion to be a motion for a protective order against defendant

28   ... and addresses the matter on its merits." *Id*. at *2 (emphasis added).  Ultimately,

1   this Court ordered the defendant to "withdraw all subpoenas served on [the] creditors"

2   and stated that defendant could later issue new subpoenas complying with the proper

3   scope of discovery as defined by this Court. *Id.* (citations omitted).  This Court can

4   address, and decide, the issues raised in defendants' motion.[3]

5        Moreover, a prior ruling of this Court in another Facebook case (involving

6   the same counsel that represents Facebook here) supports Defendants' right to bring

7   the instant motion.  In a case brought by social networking website ConnectU

8   against Facebook and Facebook founder Mark Zuckerberg for stealing ConnectU's

9   intellectual property, ConnectU issued four nonparty subpoenas from the Northern

10  District of California and moved to compel as to each (N.D. Cal. Case Nos. C07-

11  80055-MISC RMW (HRL) -- C07-800585-MISC RMW (HRL)).  Case No. C07-

12  80055-MISC, Dkt. 15 at 1 (April 19, 2007 "Interim Order on Plaintiff's Motions to

13  Compel Discovery from Nonparties").  The subpoenas concerned the underlying

14  lawsuit *ConnectU LLC v. Zuckerberg, et al.*, Case No. C07-10593 DPW, pending in

15  the District of Massachusetts.  *Id.*  Because motions to compel were pending in the

16  underlying Massachusetts case, "this court STAY[ED] the nonparty subpoenas and

17  administratively terminate[d] the associated discovery motions.  Once the

18  Massachusetts court rules on the related discovery issues, plaintiff may renotice its

19  four discovery motions before this court on the normal law and motion calendar."

20  *Id.* at 2:10-13. This Court added that:

21       "Parenthetically, this court is of the opinion that the Massachusetts

22       District Court, with its greater familiarity with the core factual and

23       legal issues in the underlying case, would likely be a better forum to

24       rule on the allowable scope of the discovery from the four nonparties

25       located in this District.  That is particularly so where, apparently,

26       plaintiff is looking for some of the same discovery from the defendants

---

[3] *Keithley v. Homestore.com, Inc.*, 2006 U.S. Dist. LEXIS 42101, Case No. C-03-04447 MJJ (EDL) at *4-*5 (N.D. Cal. June 12, 2006), cited by Facebook (Opp. 8:21, 9:2), is not contrary.  There, the court addressed neither Rule 26 nor its inherent power to define the scope of discovery.

1   themselves as it is from the four nonparties.  It is this court's belief

2   that, if they choose to submit to the jurisdiction of the Massachusetts

3   court, the four nonparties could move there for a protective order

4   under Federal Rule of Civil Procedure 26(c) and in that manner obtain

5   a ruling on the allowable scope of plaintiff's discovery from them."

6   *Id*. at 2:14-21.

7       Accordingly, this Court may hear Defendants' motion and, as discussed

8   herein and in the motion, should issue the requested protective order.

9       **B.      Facebook's Authorities Confirm That This Court May Grant the**

10          **Requested Relief.**

11      Facebook's own authorities show that this Court may grant the requested

12  relief.  *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318 (Fed. Cir. 1990)

13  (Opp. at 11:7-8) is particularly instructive.

14      There, the plaintiff (Micro Motion) in a California district court case filed an

15  ancillary proceeding to compel damages discovery from a New Jersey nonparty

16  ("K-Flow") on which Micro Motion had served a subpoena through the U.S.

17  District Court for the District of New Jersey.  *Id*. at 1319-1320.  The ancillary court

18  denied most of a motion to quash by K-Flow, finding "Micro Motion need only

19  show that the requested information sought 'somehow relates to its pending

20  California action.'"  *Id*. at 1320, 1321.

21      The Federal Circuit reversed, ruling "[w]e conclude that Micro Motion has

22  established no right under the Federal Rules of Civil Procedure to the discovery it

23  requested and hold that K-Flow's motion to quash should have been granted in its

24  entirety."  *Id*. at 1320.  Notably, the Federal Circuit said that "***[t]he California***

25  ***court*** did not rule on whether any of Micro Motion's proposed theories were too

26  tenuous or too burdensome on court proceedings to be tried.  ***Unquestionably it [i.e.***

27  ***the California court] is in the best position to determine*** whether Micro Motion's

28  damages theories are viable."  *Id*. (emphasis added).  The Federal Circuit found that

1   "[w]hile we could remand for the New Jersey court to consider remitting the parties

2   *to the California court* at Micro Motion's expense, it is unnecessary to do so"; and

3   ordered that the entire motion be granted.  *Id.*  (emphasis added).

4        As in *Micro Motion*, this Court - which presides over the underlying action -

5   "is in the best position to determine" the scope of discovery.  Fed.R.Civ.P. 26(c).

6        **C.    Facebook's Nonparty Discovery is *Not* "Narrowly Tailored".**

7        Facebook's claim that the Subpoenas are "narrowly tailored" is absolutely

8   false; rather, they are part of a scorched earth plan to get merits discovery, based on

9   mere suspicion and speculation.  The Subpoenas seek, *inter alia*:

10       • "All documents relating to StudiVZ or the StudiVZ websites."

11       • "All documents relating to Facebook and the Facebook websites."

12       • "All documents relating to similarities between the Facebook website

13          and the StudiVZ websites."

14       • "All communications between you and StudiVZ Ltd., Holtzbrinck

15          Ventures GmbH, Holtzbrinck Networks GmbH, Verlagsgruppe Georg

16          von Holtzbrinck and/or any other entities or persons reasonably related

17          to StudiVZ or the StudiVZ websites."

18       • "All documents relating to any litigations or lawsuits, whether

19          pending, ongoing, or otherwise, between Facebook, StudiVZ, and/or

20          the other Defendants to this matter."

21       • "All documents and/or communications between you and any person

22          or persons employed by, representing, or otherwise associated with

23          StudiVZ Ltd., Holtzbrinck Ventures GmbH, Holtzbrinck Networks

24          GmbH, Verlagsgruppe Georg von Holtzbrinck and/or any other entity

25          or persons reasonably related to StudiVZ or the StudiVZ websites

26          whether currently or previously so employed."

27   (Dkt. 160-1).  These demands are accompanied by wildly overbroad "Definitions

28   and Instructions" that make their scope infinite and indiscernible.

1    This discovery is not tailored to jurisdiction or *forum non conveniens*. How

2    does it comply with Facebook's burden to "take reasonable steps to avoid imposing

3    undue burden or expense on a person subject to the subpoena"? FRCP 45(c)(1).

4    Facebook cites *Micro Motion* for the notion that "discovery 'is allowed to

5    flesh out a pattern of facts already known to a party to an issue necessarily in the

6    case.'" (Opp. at 11:6-8). But Facebook hides what came next: "At the other

7    extreme, requested information is not relevant to 'subject matter involved' in the

8    pending action ***if the inquiry is based on the party's mere suspicion or speculation***";

9    the court also said that Rule 26(b)(1) "does not justify wholly speculative discovery."

10   894 F.2d at 1326 & n.7. It further stated "[a] bare allegation of wrongdoing ... is not

11   a fair reason for requiring a defendant to undertake financial burdens and risks to

12   further a plaintiff's case.... The discovery rules are designed to assist a party to prove

13   a claim it reasonably believes to be viable *without discovery,* not to find out if it has

14   any basis for a claim.... That the discovery might uncover evidence showing that a

15   plaintiff has a legitimate claim does not justify the discovery request." *Id.* at 1327

16   (emphasis in original; citations omitted). The Federal Circuit added "a litigant may

17   not engage in merely speculative inquiries in the guise of relevant discovery" and go

18   "unmoored and trolling" on a fishing expedition. *Id.* at 1328.

19   That is what Facebook is doing. Facebook bases its Subpoenas on mere

20   suspicion and speculation. Facebook has no idea whether its Subpoenas will turn

21   up anything of use on personal jurisdiction or *forum non conveniens*.

22   For example, Facebook says that the ten nonparties are "likely to possess

23   information regarding Defendants' California and U.S.-based contacts" and that

24   "[t]he former employers (*i.e.* Spreadshirt and Xilinx), who hired StudiVZ's

25   founders at precisely the time that they are alleged to have begun pirating

26   Facebook's intellectual property, are also likely to possess emails and other

27   documents evidencing the beginning of StudiVZ's counterfeiting efforts." (Opp. at

28   7-11). ***Nowhere***, though, does Facebook say why these things are "likely."

1    Facebook states that it "learned" that StudiVZ founders Dariani and

2  Bemmann "hatched [a] plan to copy Facebook while working" as interns in the U.S.

3  But it gives no support for that claim, other than a cite to its own, unverified first

4  amended complaint.  (Opp. at 12:6-8) (*citing* Dkt. 140).  Facebook states that it

5  "believes" that they "developed their plan" while they were interns "through email

6  communications on Spreadshirt email accounts." (Opp. at 12:8-9).  But, again,

7  nowhere does Facebook say on what this belief is based.

8    Facebook says that the outsourcing firm Intetics, which sends its work to

9  Ukrainian companies (May 4, 2009 Order, Dkt. 155, at 5:16-18), "is believed to be

10  at least partly in charge of scripting StudiVZ's infringing source code" and "likely"

11  has data about "possible misappropriation of Facebook's source code."  (Opp. at

12  12:20-23).  Again, on what is this speculation and suspicion based?  How can one

13  "likely" have information about something that is merely "possible"?  As to Xilinx

14  and the two Xilinx employees subpoenaed, Facebook speculates that they "provided

15  tutorship and programming resources to Mr. Bemmann and it is likely that they

16  possess information relevant to Facebook's jurisdictional arguments."  Based on

17  what?  And what is the basis for Facebook's speculation that a former Duke

18  University undergraduate intern and a former employee who worked at StudiVZ for

19  a limited time have anything relevant to jurisdiction and forum?  (Opp. at 13:1-5).

20    This is why courts do not allow discovery, or strictly limit its scope, unless the

21  plaintiff first proves a *prima facie* case that personal jurisdiction exists.  *Central*

22  *States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*,

23  230 F.3d 934, 946 (7th Cir. 2000) ("Foreign nationals should not be subjected to

24  extensive discovery in order to determine whether personal jurisdiction over them

25  exists."); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998) (denying

26  discovery where the plaintiff "did not establish a prima facie case that the district

27  court had jurisdiction"); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs.,*

28  *Inc.*, 334 F.3d 390, 402-03 (4th Cir. 2003); *Mitan v. Feeney*, 497 F.Supp.2d 1113,

1  1118 (C.D. Cal. 2007) ("In order to obtain discovery on jurisdictional facts, the

2  plaintiff must at least make a 'colorable' showing that the Court can exercise

3  personal jurisdiction over the defendant."); *Protrade Sports, Inc. v. Nextrade*

4  *Holdings, Inc.*, 2006 U.S. Dist. LEXIS 6631, Case No. C05-04039 MJJ at *9 (N.D.

5  Cal. Feb. 2, 2006) (a plaintiff is not entitled to early discovery concerning personal

6  jurisdiction unless it first makes a "colorable" showing of personal jurisdiction).[4]

7  ### D.     <u>Facebook Was Not Permitted to Serve the Subpoenas</u>

8       The motion and Facts above show Facebook was not allowed to use the extra

9  time from the continuance of the motions to dismiss to propound new discovery.

10       Facebook admits that it stipulated to take the discovery related to the motions

11  to dismiss and resolve the disputes related thereto by January 16, 2009.  (Dkt. 77 at

12  2:26-3:5).  Facebook never asked Defendants to modify or amend that stipulation.

13  And, Facebook's January 23 motion to enlarge time made no such request to the

14  Court; as of then, no other discovery existed, and Facebook mentioned no need for

15  new discovery.  Facebook simply said it wanted further responses to earlier

16  discovery.  (Dkt. 77 at 1:4, 1:8-9, 1:24-25; 2:22-23, 4:9-10, 4:18-19).

17       The January 28 Order neither relieved Facebook from its prior stipulation, nor

18  allowed Facebook to serve new discovery. The "discovery" addressed in the January

19  28 Order could only be the discovery that Facebook had already served.  The Court

20  would not have known to consider other discovery because Facebook never

21  mentioned it.  That is why Local Rule 6-3 requires the movant to state the bases for

22  its motion "with particularity."  As the only reason stated was the need to resolve

23

24  [4] Facebook's other cases either support defendants or are distinguishable.  Facebook cites *Utstarcom, Inc. v. Starent Networks Corp.*, 2005 WL 1397507, Case No. C-04-1122PVT (N.D. Cal. June 14, 2005) for the notion that the

25  discovery test is "intentionally broad," but fails to mention the next sentence, which says "[d]iscovery, however, is not unlimited. The Court may 'make any order which justice requires to protect a party ... from annoyance, embarrassment, oppression, or undue burden or expense, including ... that certain matters not be inquired into, or that the scope of the

26  disclosure or discovery be limited to certain matters. Fed.R.Civ.P. 26(c)(4)."  The Court granted the protective order on all deposition questions except one. *Id.* at 1-2. *See also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (party witness deposition ordered to proceed; unlike here, case did not involve overbroad and unduly burdensome

27  nonparty discovery based only on speculation and suspicion); *Lofton v. Bank of America Corp.*, 2008 U.S. Dist. LEXIS 41005, Case No. C 07-05892 SI (N.D. Cal. May 12, 2008) (cited by Facebook for proposition that "party seeking to prevent discovery must make more than a 'conclusory statement that discovery would cause undue burden and

28  expense'" (Opp. at 11:17-18); defendants respectfully submit that they have done so here).

1   disputes about pre-existing discovery, Facebook should be held to that basis alone.

2       The Court thought Facebook wanted more time *only* to have the discovery

3   dispute on the first set of discovery heard.  The Court's March 30 Order states: "By

4   a previous administrative motion, Facebook requested a continuance of the hearing

5   on Defendants' motions on the ground that it required additional discovery that it

6   claimed Defendants *were* withholding improperly."  (Dkt. 138 at 2:3-7) (emphasis

7   added).  In its May 4 Order, the Court wrote:  "In an earlier administrative motion,

8   Facebook requested a continuance of the hearing on Defendants' motions, claiming

9   that it required additional discovery that Defendants improperly *were* withholding."

10  (Dkt. 155 at 2:25-3:2).  The only discovery Defendants "were withholding" as of

11  January 23, 2009 was discovery that had been served by that date.

12      In sum, the Subpoenas violate the parties' stipulation, and were not a basis for

13  Facebook's request to continue the hearing date or the Court's Order continuing the

14  hearing date.  The motion should be granted.

15          **E.**    **Facebook's Remaining Arguments are Meritless.**

16              **1.**    **Facebook Bears the Burden of Justifying the Subpoenas.**

17      It is Facebook's burden to "take reasonable steps to avoid imposing undue

18  burden or expense on a person subject to the subpoena".  FRCP 45(c)(1).  As

19  shown above, Facebook did not meet this burden.

20      As also shown, Facebook's case, *Micro Motion*, says "Rule 26(g) specifically

21  requires that the party or his attorney seeking discovery must *certify* that he has

22  made a 'reasonable inquiry' that the request is warranted.  This 'reasonable inquiry'

23  is also imposed by Rule 11."  894 F.2d at 1322, 1323 (emphasis in original;

24  citations omitted).  Facebook did not do so; the Subpoenas are grossly overbroad

25  and burdensome, merits based, and improperly based on speculation and suspicion.[5]

26  ///

27

28

---

[5] Facebook tries to impose a "heavy burden" on defendants on this motion, but its cases do not concern a protective order directed at improper nonparty subpoenas and so are inapplicable.  (Opp. at 11:13-16).  Rather, the burdens lie with Facebook.

1

### 2.     A Protective Order Cannot Save Facebook's Subpoenas.

2      Facebook claims a protective order can save its Subpoenas.  But Facebook's

3  own case, *Micro Motion*, aptly states "a protective order which limits to whom

4  information may be disclosed ***does not eliminate*** the requirements of relevance and

5  need for the information." *Micro Motion*, 894 F.2d at 1325 (emphasis added).

6  Indeed, "[i]ts purpose … is to prevent harm by limiting disclosure of *relevant* and

7  *necessary* information." *Id*. (emphasis in original).  In other words, protective

8  orders cannot somehow make non-discoverable information discoverable.

9

### 3.     Facebook Violated Federal Rule of Civil Procedure 45(b)(1).

10      Lastly, Facebook's subpoenas are invalid because they did not comply with

11  FRCP 45(b)(1).  Facebook does not try to argue that it complied with that rule;

12  instead, it says that it mailed the subpoenas to defendants at 3:30 p.m. on Friday

13  afternoon, May 8 -- ensuring that defense counsel would not see them until the next

14  week -- while the subpoenas had apparently already been sent out for personal

15  service on the nonparties, with the first personal service on a nonparty effected at

16  4:30 p.m. that same day.  That does not meet the requirements of Rule 45(b)(1).

17

## IV.   CONCLUSION.

18      Defendants respectfully ask that the Court issue the requested protective order.

19

20  DATED:  June 9, 2009                       GREENBERG GLUSKER FIELDS
                                                       CLAMAN & MACHTINGER LLP
21

22

23                                              By:     /s Stephen S. Smith
                                                       STEPHEN S. SMITH
24                                              Attorneys for Defendants studiVZ Ltd.,
                                                       Holtzbrinck Networks GmbH, and
25                                              Holtzbrinck Ventures GmbH

26

27

28