1 | I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
2 | JULIO C. AVALOS (STATE BAR NO. 255350)
javalos@orrick.com
3 | ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
4 | Menlo Park, CA 94025
Telephone:    +1-650-614-7400
5 | Facsimile:    +1-650-614-7401

6 | THOMAS J. GRAY (STATE BAR NO. 191411)
tgray@orrick.com
7 | ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza
8 | Suite 1600
Irvine, CA 92614-2558
9 | Telephone:    +1-949-567-6700
Facsimile:    949-567 6710
10 |
Attorneys for Plaintiff
11 | FACEBOOK, INC.

12 |

13 | UNITED STATES DISTRICT COURT

14 | NORTHERN DISTRICT OF CALIFORNIA

15 | SAN JOSE DIVISION

16 |

17 | FACEBOOK, INC.,                              Case No.  5:08-cv-03468 JF

18 |              Plaintiff,                       **FACEBOOK INC.'S REPLY IN
                                                   SUPPORT OF MOTION TO
19 |       v.                                      COMPEL FURTHER RESPONSES
                                                   RE: SECOND ROUND OF
20 | STUDIVZ LTD., HOTLZBRINCK                      DISCOVERY REQUESTS**
      NETWORKS GmBH, HOLTZBRINCK
21 | VENTURES GmBH, DENNIS BEMMANN,                Hearing: June 19, 2009
      MICHAEL BREHM, and DOES 1-25,
22 |
               Defendants.
23 |

24 |

25 |

26 |

27 |

28 |

OHS West:260675487.3

REPLY IN SUPPORT OF SECOND MOT. TO COMPEL
CASE NO.: 5:08-CV-03468

Dockets.Justia.com

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT .........................................................................................................2

    A.     Facebook Is Entitled to Discovery...........................................................2

        1.     Judge Fogel Had Full Knowledge Of Facebook's Second Round of Discovery Prior To The May 1, 2009 Hearing on Defendants' Motion to Dismiss For Forum Non Conveniens ...................................2

        2.     To Suit Their Specious Arguments, Defendants Invent a New Term For The October 23, 2008 Joint Stipulation.................................4

        3.     The Court Has Already Discounted Defendants' Prima Facie Objections ......................................................................................5

        4.     The Calder "Effects Test" Applies .........................................................6

        5.     Fielding v. Hubert Is Inapposite To The Current Facts...........................8

    B.     The Second Round of Discovery Relates to Personal Jurisdiction.......................10

    C.     Facebook Has Not Waived Its Right to Compel Discovery...............................11

    D.     The Requests for Admissions to the Holtzbrinck Defendants Are Not Duplicative ...........................................................................................12

III.   CONCLUSION ....................................................................................................14

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*America West Airlines, Inc. v. GPA Group, Ltd.*,
    877 F.2d 793, 801 (9th Cir. 1986).......................................................5

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) .........................................................5

*Calder v. Jones*,
    465 U.S. 783 (1984) .............................................................7, 8, 9, 13

*Fielding v. Hubert Burda Media, Inc.*,
    2004 WL. 532714 ...........................................................8, 9, 10

*Flowserve Corp. v. Midwest Pipe Repair*,
    2006  U.S. Dist. LEXIS 4315 .................................................9

*Gault v. Nabisco Biscuit Co.*,
    184 F.R.D. 620 (D. Nev. 1999)................................................12

*Gibson v. Chrysler Corp.*,
    877 F.2d 793 (9th Cir. 1986) ................................................5

*Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*,
    205 F.3d 1244 (10th Cir. 2000).................................................7, 9

*Keeton, [Keeton v. Hustler Magazine*,
    465 U.S. 770 (1984)].........................................................7

*Licciardello v. Lovelady*,
    2008 U.S. App. LEXIS 21376 ............................................9, 13

*Lofton v. Bank of America Corp.*,
    2008 U.S. Dist. LEXIS 41005 (N.D. Cal., May 12, 2008)....................8

*Orchid Biosciences, Inc. v. St. Louis University*,
    198 F.R.D. 670 (S.D. Cal. 2001)..............................................5

*Panavision Int'l L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998)T .........................................7, 9

*Peridyne Tech. Solutions, LLC v. Matheson Fast Freight, Inc.*,
    117 F. Supp. 2d 1366 (N.D. Ga. 2000)....................................9

*Purnell v. Arrow Financial Services, LLC*,
    2007 U.S. Dist. LEXIS 7630 (E.D. Mi., Jan. 23, 2007) ......................12

*In re Sulfuric Acid Antitrust Litigation*,
    231 F.R.D. 331 (N.D. Ill. 2005) ...........................................12

**TABLE OF AUTHORITIES**
(continued)

Page

*West v. Miller,*
    2006 U.S. Dist. LEXIS 56243 (N.D. Ill., Aug. 11, 2006) .................................................... 12

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006) ............................................................................................ 7

1    I.    **INTRODUCTION**

2           Defendants' oppositions to Facebook's second motion to compel are unavailing.

3    Defendants resuscitate eight month's worth of discovery objections, mixing and matching

4    disparate theories, facts and legal standards in a blatant attempt to make Facebook's

5    straightforward motion seem overcomplicated.  In a further attempt to confuse and distract,

6    Defendants even invent new terms to a scheduling stipulation the parties entered into eight

7    months ago.  Contrary to Defendants' arguments, the Court's role is not to micro-manage this

8    litigation or to divine the import and meaning of prior meet and confer exchanges, briefs, oral

9    arguments, and orders.  The Court should decline Defendants' invitation to wade unnecessarily

10   into the quagmire and instead resolve this matter by applying straightforward and well-

11   established standards governing the production of discovery.

12          Moreover, most of Defendants' arguments are moot in light of Judge Fogel's May 4, 2009

13   Order in which he lifted the stay of personal jurisdiction discovery and invited Facebook to

14   introduce new evidence in its upcoming supplemental opposition brief.  Despite Defendants'

15   claims to the contrary, Judge Fogel was well aware of Facebook's second round of discovery at

16   issue in the present motion.  Indeed, Defendants themselves raised this discovery in their March

17   19, 2009 motion to stay, which was the basis for Judge Fogel's Order staying discovery.  *See*

18   Docket Nos. 119 and 120.  And Facebook addressed the issue in its March 24, 2009 opposition to

19   the motion.  Therefore, when Judge Fogel lifted the stay, it necessarily applied to Facebook's first

20   and second rounds of discovery.  Therefore, we are left with a simple inquiry:  will responses to

21   Facebook's discovery requests "inform" Facebook's jurisdictional theories.  Facebook

22   respectfully submits that it easily clears this broad standard and that Defendants should be

23   compelled forthwith to produce discovery responsive to both the first and second rounds of

24   discovery requests.

25   ///

26   ///

27   ///

28   ///

1   **II.     ARGUMENT**

2         **A.     Facebook Is Entitled to Discovery.**

3                 **1.     Judge Fogel Had Full Knowledge Of Facebook's Second Round of
                            Discovery Prior To The May 1, 2009 Hearing on Defendants' Motion
4                           to Dismiss For *Forum Non Conveniens*.**

5         At the core of Defendants' oppositions is the notion that Facebook somehow intentionally

6   misled Judge Fogel regarding its second round of discovery requests. They repeatedly speculate

7   that Facebook purposefully kept its intention to serve the discovery a secret and then repeated that

8   clandestine pattern with its secret motion to compel. "Facebook," Defendants argue, "was clearly

9   lying in wait." StudiVZ's Opposition to Second Motion to Compel ("SVZ Opp.") at 10:13.

10  Defendants conclude that because Facebook never apprised Judge Fogel of these hidden requests,

11  he "never gave permission to serve new discovery." *Id*. at 10:7-8.

12        Contrary to Defendants' specious allegations, Judge Fogel had full knowledge of

13  Facebook's second round of discovery as early as March 19, 2009. Judge Fogel gained that

14  knowledge because Defendants themselves briefed the issue to him. In their March 19, 2009

15  Motion to Stay the Personal Jurisdiction Portion of Their Motions to Dismiss, Defendants wrote:

16              Also, on February 2, 2009, Facebook served new sets of
                jurisdiction-related discovery on all Defendants. Defendants
17              believe that this new discovery violates the Court's January 28,
                2009 Order and have, therefore, objected to it. That will inevitably
18              cause more motion practice.

19  Dkt. No. 119 at 3:18-20. In his supporting declaration, Defense counsel Stephen S. Smith

20  devoted a full four paragraphs alerting Judge Fogel of Facebook's second round of discovery.

21  Dkt. 120 ¶¶ 6 – 9. In his declaration, Mr. Smith went into granular detail regarding the second

22  round of discovery, listing each individual set as well as providing Judge Fogel with a full

23  argument as to why that discovery was objectionable. *Id*.

24              ¶8.     Therefore, in granting in part Facebook's request for a
                continuance on the hearing for the Motions to Dismiss, the Court
25              made its decision based upon the then-pending discovery requests
                and without any knowledge of Facebook's intent to serve
26              Defendants with additional jurisdictional discovery. Likewise,
                StudiVZ did not oppose Facebook's request to continue the hearing
27              on the personal jurisdiction portion of StudiVZ's Motion to Dismiss
                based upon the existing discovery, and the disputes related thereto,
28              and with no knowledge of Facebook's intent to serve Defendants

1    with additional jurisdictional discovery.

2        ¶9.    Had StudiVZ been aware of Facebook's plan to propound
         six additional sets of discovery (including more document demands
3        to StudiVZ than had been propounded before) two days after the
         Court issued its ruling on Facebook's Motion to Enlarge Time,
4        StudiVZ would have opposed Facebook's request to continue even
         the personal jurisdiction portion of StudiVZ's Motion to Dismiss.

5

6    *Id*.

7        In its Opposition to Defendants' Motion, Facebook alerted Judge Fogel: "Defendants

8    point to the supposedly deepening discovery dispute between the parties, but whatever deepening

9    has occurred is of their own making . . . the new round of discovery did not expand the scope of

10   discovery – it was a direct response to Defendants' refusal to comply with discovery and repeated

11   objections to the previous discovery requests.  Facebook still seeks essentially the same

12   categories of discovery."  Dkt. No. 124 at 2:22 – 23; 3:4-6.

13       This record is indisputable.  Far from being ignorant of the second round of discovery, as

14   Defendants outrageously claim, Judge Fogel was fully briefed on the subject.  Indeed, Facebook's

15   second round of discovery seems to have been *the impetus* behind the stay of personal jurisdiction

16   discovery ordered by Judge Fogel on March 30, 2009.  Dkt. No. 138.  In that Order, Judge Fogel

17   observed: "In the instance case, Defendants have shown that discovery related to personal

18   jurisdiction has grown complicated and burdensome."  *Id.* at 3:3-4.  This is a direct reference to

19   the disputes arising from both rounds of Facebook discovery. [1]

20       Accordingly, Judge Fogel's May 4, 2009 Order lifting the stay of personal jurisdiction

21   discovery was issued with full knowledge of both rounds of discovery.  In light of this

22   unambiguous evidence, Facebook respectfully submits that Defendants' objections to Facebook's

23   motion to compel should be denied and that Facebook be entitled to recovery of costs and fees

24   associated with combating Defendants' unethical delay tactics.

25   ///

26   ///

27

28   [1] In light of their own unambiguous efforts to mislead the Court by failing to mention that
     Defendants themselves raised the issue of the second round of discovery, Defendants' attempts to
     attack the credibility of Facebook's counsel are particularly egregious.

2.    **To Suit Their Specious Arguments, Defendants Invent a New Term For The October 23, 2008 Joint Stipulation.**

Adding further insult to injury, Defendants' next argument invents a stipulation term to suit there improper means.  Defendants argue that "Facebook was not permitted to use the extra time created by the continuance of the motion to dismiss to propound new discovery."  SVZ Opp. At 9:11-12; Holtzbrinck Defendants' Opposition to Second Motion to Compel ("Holtz. Opp.") at 7:25-26.  For support, Defendants write:  "Facebook stipulated to 'take discovery' related to the motions to dismiss on a particular schedule."  SVZ Opp. at 9:13-14, *citing*, Dkt. No. 77 at 2:26-3:5 (emphasis added).  A reader presented with this sentence might reasonably assume that "Dkt. No. 77" refers to the October 23, 2008 Joint Stipulation entered into by the parties and that the quotation "take discovery" is a direct quote from that stipulation.  However, neither of these assumptions would be correct.  In fact, the phrase "take discovery" does not appear in the parties' Joint Stipulation and "Dkt. No. 77" refers not to the stipulation but to a January 23, 2009 motion to enlarge time.

In actuality, the October 23 Stipulation contained only two terms, neither one of which features the "take discovery" language Defendants now wishfully seek to insert:

> 1.  On or before Friday, January 16, 2009, Facebook will file and serve its Oppositions to Defendants' Motions to Dismiss for Lack of Personal Jurisdiction Or, In the Alternative, For *Forum Non Conveniens* which were e-filed with the Court on October 22, 2008; and

> 2.  On or before Friday, January 30, 2009, Defendants will file their reply papers to Facebook's Oppositions to Defendants' motions.

Dkt. No. 48.  The idea, of course, was that the parties would be able to complete personal jurisdiction discovery in the allotted three months.  However, after Defendants reneged on their agreements and began to sabotage the discovery process, (*see* Dkt. No. 161 for a fuller factual history), it became clear that discovery would not be completed by January 16.  Facebook accordingly sought and, on January 28, 2009, received permission from Judge Fogel "to file a supplemental opposition with respect to whether this Court has personal jurisdiction over StudiVZ in light of any newly discovered material."  Dkt. No. 92.  (emphasis added) Facebook

- 4 -    REPLY IN SUPPORT OF SECOND MOT. TO COMPEL

1   never requested a continuance only to complete the first round discovery that had already been

2   served, nor did Judge Fogel ever so order.

3         Other than their invented stipulation language, Defendants are unable to point to any

4   language in any order that would support the extreme position that Facebook was entitled to just

5   one round of jurisdictional discovery.  Nor are Defendants able to point to any supporting case

6   law.  This is unsurprising, as jurisdictional discovery is intentionally broad and intended to allow

7   a plaintiff to access evidence necessary to oppose Defendants' jurisdictional challenges.  *See*

8   *Gibson v. Chrysler Corp.*, 877 F.2d 793, 801 (9th Cir. 1986).

9          **3.**     **The Court Has Already Discounted Defendants' *Prima Facie*
10                 Objections.**

11        StudiVZ spends nearly a third of its brief arguing that Facebook is not entitled to personal

12  jurisdiction discovery because it has failed to make a *prima facie* showing of personal

13  jurisdiction.  SVZ Opp. 15:5-19:25.  It is certainly cause for concern (if not even more sanctions)

14  that after eight months of wrangling over *what* discovery Facebook is entitled to recover,

15  Defendants would still argue over *whether* Facebook is entitled to the discovery at all.  Whatever

16  good faith dispute Defendants may have had for raising this objection early in the litigation has

17  long since extinguished.  The argument is meritless.  It is unsupported by relevant law. *See, e.g.,*

18  *Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 673 (S.D. Cal. 2001) ("[i]t

19  would . . . be counterintuitive to require a plaintiff, prior to conducting discovery, to meet the

20  same burden that would be required in order to defeat a motion to dismiss").[2]  It is contrary to

21  Defense counsel's unambiguous promises to Facebook's counsel regarding the imminent

22  _____

23  [2] The logic of the rule is obvious.  In order to defeat a motion to dismiss for lack of personal
jurisdiction, a plaintiff is required to make a *prima facie* showing of personal jurisdiction.
24  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  The purpose of personal jurisdiction
discovery is to permit a plaintiff the opportunity to obtain evidence sufficient to make that
25  showing.  *See, e.g., Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (personal
jurisdiction discovery is "available in federal court to establish the presence of personal
26  jurisdiction in that court);  *America West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801
(9th Cir. 1986) ("[w]here pertinent facts bearing on the question of jurisdiction are in dispute,
27  discovery should be allowed").  If Defendants' renewed objection were correct, no personal
jurisdiction discovery would ever issue as the plaintiff meeting the standard to obtain it would
28  have already made a showing sufficient to defeat the motion to dismiss itself.  This illogical
conclusion is not the law.

- 5 -

REPLY IN SUPPORT OF SECOND MOT. TO COMPEL

production of discovery.  *See*, *e.g.*, Dkt. No. 12 ¶ 15-17.  And, more importantly, it is contrary to

Defense counsel's clear and repeated representations to this Court that he understood that

Facebook is entitled to and should get jurisdictional discovery that also goes to the merits of the

case.  *See*, *e.g.*, Dkt. No. 78; Ex. A at 3:14-12:14 (defense counsel Stephen S. Smith clarifying

that his motion for protective order was not intended to block personal jurisdiction discovery that

is intertwined with merits);  Dkt. No. 162; Ex. A at 34:13-14 (Defense counsel stating that he was

"quite willing to work with your Honor to get them something"); Dkt. No. 164, Ex. B at 17:19-24

(Defense counsel stating:  "My proposal is that he – that access [categories of documents relating

to StudiVZ's accessing of the Facebook website] is okay if it is for the purpose of copying the

design, look, feel, whatever other word we want to use, of Facebook's own website, and as long

as it is limited to a fair group of people and a fair amount of time, meaning a particular period of

time").  Moreover, the "*prima facie* objection" has already been rejected by this Court, which has

indicated that it is struggling not with whether Facebook is entitled to personal jurisdiction

discovery but what the scope of that discovery should be.  *See* Dkt.  No. 164, Ex. B at 17:15-18

(Excerpt from the March 3, 2009 hearing transcript where the Court observed, "I'm not inclined

to give him [Facebook's counsel] nothing, and I'm struggling to define a something in a way

that's reasonable");  *see also* Dkt. No. 155 at 8:1-10 (May 4, 2009 Judge Fogel Order lifting the

stay of personal jurisdiction discovery so as to allow the "fair presentation" of the jurisdictional

issues in this case).

### 4.    The *Calder* "Effects Test" Applies.

With a similar intention of over-complicating Facebook's motion, Defendants next build

on their *prima facie* objection, putting forth a series of unsupported arguments that conflate,

confuse, or misstate at least three different legal concepts.

First, Defendants argue that Facebook cannot make a *prima facie* argument of personal

jurisdiction because "Facebook has never made any attempt to show that it suffered the brunt of

alleged harm in California or the United States because it is undisputed that it did not."  SVZ

Opp. at 18:5-7.[3]  For starters, Defendants' "focus on the brunt of the harm," SVZ Opp. at 18:22, fn 9, is misplaced.  This Circuit does not employ that test.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).  In *Yahoo!*, the Ninth Circuit held:

> We take this opportunity to clarify our law and to state that the "brunt" of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.  In so stating, we are following *Keeton*, [*Keeton v. Hustler Magazine*, 465 U.S. 770 (1984)] decided on the same day as *Calder*, in which the Court sustained the exercise of personal jurisdiction in New Hampshire even though "it is undoubtedly true that the bulk of the harm done to petitioner occurred outside New Hampshire.

*Id.*, citing, *Keeton*, 465 U.S. at 780.  Thus, Defendants' argument that *Calder* somehow does not apply in this case because the harm caused to Facebook in Germany may outweigh the substantial harm suffered by Facebook in California is meritless.

Second, it is hardly "undisputed" that Facebook did not suffer significant harm in California.  Nor is it true that that "Facebook has never made any attempt" to show that it suffered significant harm here in its home forum.  For instance, in its recent supplemental opposition to Judge Fogel on the *forum non conveniens* issue, Facebook wrote that it had suffered harm here in California "in the form of lost revenues and increased marketing and promotional costs because of Defendants' infringing copycat websites.  [Further,] Defendants do business here and consumer confusion likely has occurred in this forum."  Dkt. No. 145 at 4:9-18, *citing*, *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (although alleged trademark violations occurred in cyberspace, harm was suffered at principal place of business in California) (citing *Dakota Indus., Inc. v. Dakota Sportswear*, 946 F.2d 1384, 1388-89 (8th Cir. 1991) (finding that economic injury is suffered in forum where plaintiff resides); *see also Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1248-49 (10th Cir. 2000)

---

[3] This puzzling argument is made all the more so by the section's title: "The *Calder v. Jones* 'Effects Test' Does Not Apply."  Although the heading states that the test does not apply, the body of the opposition (to the extent Facebook understands it) argues that the test does apply but that Facebook has not made the requisite showing to meet it.

OHS West:260675487.3

REPLY IN SUPPORT OF SECOND MOT. TO COMPEL

1   (holding that out-of-state defendant's continued transmission of email over plaintiff's servers

2   cause injury to plaintiff in its home state even though all of the harmful activity occurred

3   elsewhere).

4           Third, in their baseless attempt to distinguish *Calder*, Defendants once again revive the

5   misguided "merits-based discovery" arguments that they unequivocally withdrew in open Court

6   on December 16, 2008.   *See* Dkt. No. 78; Ex. A (transcript from December 16, 2008 hearing

7   where they withdraw their motion).   In support of their *prima facie* objection, Defendants

8   complain that Facebook is seeking to conduct "discovery about all issues" in the case.   SVZ Opp.

9   at 17:22-26.

10          This worn-out argument is nonsense.   Facebook is not seeking "discovery about all issues

11  in a case."   Facebook is not seeking discovery related to damages, confusion in the relevant

12  markets, performance and quality complaints by Defendants' customers, and a host of other

13  issues not related to the creation, design and development of the StudiVZ sites.   As Facebook has

14  previously briefed, and Defendants conceded, the fact that jurisdictional discovery may also go

15  the merits of the dispute does not bar such discovery.   *See* Dkt. No. 59.   This Court has held that

16  merits-based discovery should not be denied when discovery on the merits "may inform"

17  plaintiff's opposition to a jurisdictional motion.   *Id.* at 8:16-17, *quoting*, *Lofton v. Bank of*

18  *America Corp.*, 2008 U.S. Dist. LEXIS 41005, *4-5 (N.D. Cal., May 12, 2008) (Illston, J.).

19  Facebook is accordingly entitled to its requested discovery.

20          **5.      *Fielding v. Hubert* Is Inapposite To The Current Facts.**

21          Defendants seek to liken this case to *Fielding v. Hubert Burda Media, Inc.*, 2004 WL

22  532714, Case No. Civ.A.3:03-CV-0872 (N.D. Tex. Feb. 11, 2004).   In fact, Defendants claim that

23  "this case is identical in all relevant respects" to *Fielding*.   That conclusion is grossly in error.

24          In *Fielding*, a former Swiss ambassador to Germany and his Texan wife sued a number of

25  German publishing companies for libel, intentional infliction of emotional distress, tortious

26  interference with prospective business relations and civil conspiracy.   *Id.* at *1.   The claims arose

27  out of Plaintiffs' allegations that the German companies "undertook a campaign to impugn the

28  reputations of Plaintiffs in Europe and the United States" by publishing magazine articles

1  detailing an alleged affair between the former Swiss ambassador and a European model.  *Id.*

2  "[T]he articles were originally published by the German media" in Germany.  *Id.*  Afterwards,

3  "some of the allegations set forth in those stories were published in the United States via the

4  Associated Press, Dallas Morning News, and other domestic media."  *Id.*  The Court found that

5  Texas was not the "geographic focus" of the complaint as "[t]he articles were published in

6  Germany, in German, and distributed almost exclusively to readers in Europe."

7       Not only is *Fielding* not "identical in all relevant respects" to the instant case, it isn't even

8  close.  Facebook has alleged that Defendants committed **<u>intentional torts</u>** aimed at Facebook's

9  computer servers located in California, knowing that Facebook was located in California and

10  knowing that Facebook would be harmed here.  The *Fielding* defendants did nothing similar.  In

11  fact, the *Fielding* court expressly observed that "Plaintiffs' allegations of republication **<u>do not</u>**

12  **<u>invoke an intentional tort</u>**," and cited to language from the *Calder* opinion "specifically noting"

13  that "mere untargeted negligence" did not amount to "intentional and allegedly tortious actions."

14  *Id.*, citing, *Calder v. Jones*, 465 U.S. 783, 789 (1984).

15       On the other hand, courts have repeatedly confirmed that the type of conduct alleged by

16  Facebook constitutes a tort and that the harm from that tort is felt in Facebook's home residence.

17  *See, e.g.*, *Licciardello v. Lovelady*, 2008 U.S. App. LEXIS 21376, *20, Case No. 07-14086 (11th

18  Cir. October 10, 2008) (holding that the out-of-state Defendant's unauthorized use of the

19  plaintiff's trademark and misappropriation of his name and reputation for commercial gain

20  satisfied the *Calder* effects test); *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321-22 (9th

21  Cir.1998) (affirming the exercise of jurisdiction in a trademark infringement action over a

22  nonresident defendant whose sole contact with the forum was his posting of plaintiff's trademarks

23  on his internet website); *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244,

24  1248-49 (10th Cir. 2000) (holding that out-of-state defendant's continued transmission of email

25  over plaintiff's servers caused injury to plaintiff in its home state); *Peridyne Tech. Solutions, LLC

26  v. Matheson Fast Freight, Inc.,* 117 F. Supp. 2d 1366, 1371-73 (N.D. Ga. 2000) (exercising

27  jurisdiction over non-resident defendants who accessed plaintiff's computer system over the

28  Internet in furtherance of their tortious activity); *Flowserve Corp. v. Midwest Pipe Repair,* 2006

1   U.S. Dist. LEXIS 4315, *10, Case No. 3:05-cv-1357-N (N.D. Tex. 2006) (jurisdiction proper

2   over a "hacker" who accessed plaintiff's servers, where the servers were related to plaintiff's

3   claims).  Thus, the trespass to Facebook's California servers and the financial harm that Facebook

4   suffered in Palo Alto, California significantly distinguishes the current case from *Fielding*.

5          In addition, Defendants have directly entered the California market with their infringing

6   product.  StudiVZ has admitted to having well over 11,000 income-generating users in California.

7   Dkt. No. 71; Ex. 2.  The *Fielding* defendants sent fewer than 40 copies of their magazines to

8   Texas.  *Id*. at *6.  The *Fielding* magazines were written entirely in German and intended merely

9   for a German audience; the StudiVZ defendants now operate one of their primary websites in

10  English, also have sites in Spanish, and regularly enter into contracts with, correspond with, and

11  alter their source code to cater to thousands of registered users in California.  Even if the StudiVZ

12  sites were entirely in German, the *Fielding* court noted that "there might be instances where an

13  article written in a foreign language is directed towards the State of Texas."  *Id*.

14         In sum, Defendants' claim that this case is "identical in all relevant respects" to *Fielding*

15  is absurd in the extreme.

16     **B.     The Second Round of Discovery Relates to Personal Jurisdiction.**

17         Defendants argue that "***most*** of Facebook's new discovery requests have nothing to do

18  with personal jurisdiction."  SVZ Opp. at 13:6-7 (emphasis in original).[4]  Consistent with their

19  pattern of substituting hyperbole for reasoned analysis, Defendants enumerate a number of

20  Facebook discovery requests that they argue are so unrelated to personal jurisdiction as to cross

21  "the line from aggressive advocacy to a violation of Rule 11."  *Id*. at 15:1-4.  According to

22  Defendants, "[t]here is no conceivable argument that these requests are directed at personal

23  jurisdiction."  *Id*. at 15:1-4.  Given that the majority of these requests deal with categories of

24  discovery that the Court was inclined to grant to Facebook at the March 3, 2009 hearing, the

25  Court would do well to look skeptically upon Defendants' conclusions.

26

27  _____

[4] By identifying the 22 discovery requests they feel do not relate to personal jurisdiction,
Defendants impliedly concede that they agree that the remaining requests do in fact relate to
28  personal jurisdiction.

1    For instance, a number of the requests that Defendants dismiss as outlandish in fact relate

2    to so-called "access" or "design" documents.  Such documents, as discussed extensively at the

3    March 3 hearing before this Court, directly relate to StudiVZ's tortious acts aimed at computer

4    servers located in California and that are likely to reveal that StudiVZ copied Facebook's trade

5    dress and perhaps even its source code in violation of federal and state law.  *See* RFP Nos. 42, 45-

6    47, 51-52, 58, 60-62; RFA Nos. 4, 21.  Other allegedly sanctionable discovery requests are

7    tailored to uncover the truth about Defendants' consumer contacts with California and the United

8    States as well as its business connections with U.S. investors or business partners.  *See* RFP Nos.

9    43-44, 53, 57, 59; RFA Nos. 18-20.  They clearly relate to Defendants' contacts with, and

10   conduct in, California and the U.S., and, as such, are relevant to personal jurisdiction.

11   Request for Admission No. 16, which Defendants argue has no conceivable relation to the

12   Court's personal jurisdiction analysis, reads: "Admit that users of StudiVZ are required to agree

13   to terms of use prior to receiving full access to the StudiVZ websites."  StudiVZ has admitted to

14   having over 11,000 registered users in California alone.  Dkt. No. 71; Ex. 2.  Facebook believes

15   that each and every one of these users was first required to enter into a contract with StudiVZ

16   prior gaining full access to the site.  Accordingly, not only is the connection between this request

17   and personal jurisdiction analysis "conceivable," it is self-evident.

18   In sum, there is no doubt that Facebook's requests "may inform" its jurisdictional

19   oppositions.  Accordingly, Defendants' objections as to relevance should be overruled.

20   **C.    Facebook Has Not Waived Its Right to Compel Discovery.**

21   Facebook vigorously denies that it ever misled the Court, consciously or otherwise,

22   concerning the second round of discovery.  That Facebook chose not to burden the Court with a

23   second discovery dispute while the first was pending does not support Defendants' inflammatory

24   charges of a vast conspiracy to pull the wool over the Court's eyes.  Indeed, Defendants' logic

25   would implicate them in the conspiracy as well, as they never mentioned the then already-pending

26   second round of discovery either at the March 3 hearing on Facebook's first motion to compel or

27   in the briefing leading up to that hearing.  Moreover, as discussed above, Judge Fogel was fully

28   apprised of the second round of discovery as of March 19, when **Defendants** filed their motion to

1    stay.

2         Defendants cite to case law that purportedly supports the notion that "[u]nder these

3    circumstances, the Court should find that Facebook has waived its right to compel."  SVZ Opp. at

4    12:17-22.  However, Defendants' reliance on these cases is misplaced.  In each one, the court

5    found that a party had waived the right to compel further production because it had brought its

6    motion either after or on the eve of the discovery cut-off.  *See Gault v. Nabisco Biscuit Co.*, 184

7    F.R.D. 620, 622 (D. Nev. 1999) (finding untimely a motion to compel served "seventy-six (76)

8    days after the close of discovery and one hundred thirty-six (136) days after the receipt" of

9    [Defendant's] discovery responses);  *Purnell v. Arrow Financial Services, LLC*, 2007 U.S. Dist.

10   LEXIS 7630, at *1 (E.D. Mi., Jan. 23, 2007) (finding untimely a motion to compel brought nearly

11   five months after the discovery deadline);  *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331

12   (N.D. Ill. 2005) (finding untimely a motion to compel brought on the last day of discovery,

13   responses to which would have required an extension of the discovery deadline);  *West v. Miller*,

14   2006 U.S. Dist. LEXIS 56243, at *17 (N.D. Ill., Aug. 11, 2006) (finding untimely a motion to

15   compel brought just eleven days before the discovery cutoff after "four months of discovery

16   inaction").  This precedent is inapposite here, where Facebook's second motion to compel was

17   brought well before the discovery cutoff and shortly after Judge Fogel lifted the five-week stay of

18   discovery.  Indeed, in Defendants' *Gault* opinion, the court expressly noted that "[a] motion to

19   compel filed during the discovery period would rarely be considered untimely."  184 F.R.D. at

20   622.  Given the vigorous dispute over discovery in this matter, and the temporary stay of

21   discovery, it is preposterous for Defendants to claim that Facebook has somehow slept on its

22   rights or otherwise not been diligent in pursuing production.

23        **D.      The Requests for Admissions to the Holtzbrinck Defendants Are Not
                    Duplicative.**

24

25        The Holtzbrinck Defendants raise a series of misguided objections to Facebook's

26   Requests for Admissions.  Facebook's argument for personal jurisdiction over the Holtzbrinck

27   Defendants relies in part on the theory that they knowingly and intentionally contributed to the

28   ongoing piracy of Facebook's product and services.  Facebook also alleges that the Holtzbrinck

Defendants knowingly and intentionally contributed to, profited from, and abetted StudiVZ's unlawful access to Facebook's California servers. These assertions would, if proven, plainly be sufficient to establish personal jurisdiction because Defendants would have *knowingly harmed a California resident in California and caused harm here*. *See Licciardello v. Lovelady*, 2008 U.S. App. LEXIS 21376, *20, Case No. 07-14086 (11th Cir. Oct. 10, 2008) (holding that the out-of-state Defendant's unauthorized use of the plaintiff's trademark and misappropriation of his name and reputation for commercial gain satisfied the *Calder* effects test).

Accordingly, it is important for Facebook to establish the Holtzbrinck Defendants' knowledge of, and participation in, StudiVZ's infringing activities. To that end, Facebook served the Holtzbrincks with five, narrowly tailored Requests for Admissions.[5] Defendants rebuff these Requests by citing mainly to expert reports filed in the German action pending between the parties. According to Defendants, "there can be no doubt that the Holtzbrinck Defendants would have noticed similarities simply by being aware that both sites existed." Holtz. Opp. at 12:12-18. But a representation by an attorney in an opposition brief does have near the same evidentiary value as an admission from the parties themselves. Defendants inexplicably feel vindicated in ignoring their duty to answer the Requests for Admissions because "[t]his topic is already thoroughly developed by both parties in the German case. Thus, there is no need for a new, separate set of discovery in this case on the same topic." *Id.* at 12:22-23. Defendants provide no support for this astonishing conclusion. The German matter is different than the present case. If, however, Defendants are correct and the issues have been "thoroughly developed" in Germany,

---

[5] "(1) Admit that at the time YOU acquired an interest in STUDIVZ you were aware of accusations by FACEBOOK that STUDIVZ was infringing FACEBOOK'S legal rights, including, but not limited to, intellectual property rights;
(2) Admit that YOU have knowledge that STUDIVZ accessed the FACEBOOK WEBSITE for commercial purposes.
(3) Admit that YOU have knowledge that STUDIVZ accessed the FACEBOOK WEBSITE for the purpose of modeling at least one of the STUDIVZ WEBSITES after the FACEBOOK WEBSITE.
(4) Admit that YOU have knowledge of similarities between the FACEBOOK WEBSITE and the STUDIVZ WEBSITES, including, but not limited to, visual similarities, functional similarities, feature similarities, and layout similarities.
(5) Admit that the time YOU acquired an interest in STUDIVZ you were aware of similarities between the FACEBOOK WEBSITE and the STUDIVZ WEBSITES, including, but not limited to, visual similarities, functional similarities, feature similarities, and layout similarities."

1    responding to give requests for admission would seem remarkably easy.  Facebook respectfully

2    requests that the Court order Defendants to vacate their specious objections and answer

3    Facebook's Requests for Admissions relating to their knowledge of StudiVZ's wrongdoing.

4        The Holtzbrinck Defendants' remaining objections are equally meritless.  Defendants

5    argue that because they have produced some evidence indicating that they were aware of

6    Facebook's claims against StudiVZ, they are precluded from responding to a Request for

7    Admission confirming this fact to be the case.  Holtz. Opp. at 12:24-13:7.  This objection is

8    contrary to Federal Rule of Civil Procedure 36 and is unsupported by precedent.  Defendants then

9    argue that they should not have to respond to additional requests regarding StudiVZ's access of

10   Facebook because "Facebook already knows (or has at least assumed) that the Holtzbrinck

11   Defendants were not aware of any access by StudiVZ of Facebook's website." *Id.* at 13:8-11.

12   The opposite true.  Facebook has alleged that the Holtzbrinck Defendants did have knowledge.

13   Defendants claim that Facebook could have pried answers from these requests by deposing

14   Martin Weber.  But prior to that deposition Defendants flip-flopped on the issue of questioning

15   regarding "access."  *See* Dkt. No. 96.  And in any event, that aborted deposition has nothing to do

16   with Defendants' responsibility to answer Facebook's Requests.  Parties are permitted to use all

17   forms of discovery.  Even in the Weber deposition had gone forward, that would not preclude

18   Facebook from subsequently serving Requests for Admission.

19       Accordingly, Facebook respectfully requests that the Holtzbrinck Defendants be

20   compelled to comply with their discovery obligations and respond to Facebook's Requests for

21   Admissions.

22   **III.**    **CONCLUSION**

23       Under clear federal law originating out of this very Court, Facebook is entitled to any

24   discovery that "may inform" its oppositions to Defendants' motions to dismiss for lack of

25   personal jurisdiction.  For the foregoing reasons, Facebook respectfully submits that its discovery

26   requests easily clear this standard.  Accordingly, Facebook requests that the Court grant its

27   motion to compel further responses to Facebook's Second Round of Discovery Requests.

28

1    Dated:  June 11, 2009                          ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3
     _____
4                                                        JULIO C. AVALOS
                                                        Attorneys for Plaintiff
5                                                        FACEBOOK, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF SECOND MOT. TO COMPEL

OHS West:260675487.3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 11, 2009.

Dated:  June 11, 2009.                    Respectfully submitted,

/s/ Julio C. Avalos /s/

Julio C. Avalos
