# EXHIBIT B
# PART 1 OF 2

Dockets.Justia.com



heymann

ⓗ Heymann & Partner Rechtsanwälte ı Taunusanlage 1 ı 60329 Frankfurt am Main

Heymann & Partner
Rechtsanwälte

Taunusanlage 1
60329 Frankfurt am Main

T: +49-69-768 063 - 0
F: +49-69-768 063 - 15
E: info@heylaw.de

www.heylaw.de

Oberlandesgericht Köln
Reichenspergerplatz 1
50670 Köln

**Vorab per Telefax: 0221 / 7711-600**

Dr. Friedrich Klinkert

Thomas Heymann

Adi Seffer

Dr. Katharina Scheja

Prof. Dr. Jens Ekkenga

Dr. Lars Lensdorf

Dr. Sabine Pittrof
LL.B. (Univ. N.S.W.)

Titus Walek

Dr. Andreas Müller-Driver
LL.M. (Georgetown),
Attorney-at-Law (N.Y.)

Dr. Henning Bloß
LL.M. (London)

Piet Bubenzer

Walter Born
Fachanwalt für Arbeitsrecht

Nora Keßler

Eva Prinz

Dr. Peter Gumnior

Unser Zeichen: 0249.002 KS/CMW
(bitte bei Antwort angeben)

19. Juni 2009

**Berufung**

**der Facebook Inc., 471 Emerson Street, CA 94301-1605 Palo Alto, USA, vertreten durch ihre Board-Mitglieder Mark Zuckerberg, Jim Breyer, Peter Thiel und Marc Andreessen,**

**- Klägerin und Berufungsklägerin -**

Prozessbevollmächtigte:   Rechtsanwälte Heymann & Partner,
                          Frau Rechtsanwältin Dr. Katharina Scheja,
                          Taunusanlage 1, 60329 Frankfurt am Main

**gegen**

**die StudiVZ Ltd., Saarbrücker Straße 38, 10405 Berlin, vertreten durch ihre Geschäftsführer Markus Berger-de-Léon und Dr. Clemens Riedl,**

**- Beklagte und Berufungsbeklagte -**

Prozessbevollmächtigte:   I. Instanz: Rechtsanwälte CMS Hasche Sigle,
                          Herr Rechtsanwalt Dr. Klaus Ikas,
                          Schöttlestraße 8, 70597 Stuttgart

**Az. I. Instanz: 33 O 374/08**

Heymann & Partner Rechtsanwälte ı Partnerschaftsgesellschaft ı Sitz Frankfurt am Main ı AG Frankfurt am Main PR 1537



zeigen wir hiermit an, dass wir die Klägerin und Berufungsklägerin in der II. Instanz vertreten. Namens und in Vollmacht der Klägerin und Berufungsklägerin legen wir gegen das per Fax zugegangene Urteil des Landgerichts Köln vom 16. Juni 2009, derzeit noch nicht zugestellt, Az.: 33 O 374/08,

**Berufung**

ein.

Eine einfache Abschrift des vorab als Telefax zugesandten vollständigen Urteils vom 16. Juni 2009 fügen wir anliegend bei.

Die Antragstellung sowie Begründung erfolgt mit gesondertem Schriftsatz.

Dr. Katharina Scheja
Rechtsanwältin

16-JUN-2009  12:08                                                                S.01



# LANDGERICHT KÖLN
## IM NAMEN DES VOLKES
## URTEIL

Verkündet am 16.6.2009          (Schlürscheid)
                                 Justizhauptsekretärin

als Urkundsbeamtin der Geschäftsstelle

– 33 O 374/08 –

In dem Rechtsstreit

der Facebook Inc., vertr.d. d. Board-Mitglieder Mark Zuckerberg, Jim Breyer, Peter
Thiel und Marc Andreessen, 471 Emerson Street,, 1605 Palo Alto, CA, Vereinigte
Staaten,

Klägerin,

Prozessbevollmächtigte:          Rechtsanwälte Heymann & Partner, Tau-
                                 nusanlage 1, 60329 Frankfurt am Main,

g e g e n

StudiVZ Ltd., vertr.d.d. Gf. Markus Berger-de León, Claas van Delden, Konstantin
Urban, Martin Weber, Dr. Clemens Riedl, Saarbrücker Sstr. 38, 10405 Berlin,

Beklagte,

Prozessbevollmächtigte:                 Rechtsanwälte CMS Hasche  Sigle Eschen-
                                        lohr Peltzer Schäfer, Schöttlestraße 8, 70597
                                        Stuttgart,

hat die 33. Zivilkammer des Landgerichts Köln
auf die mündliche Verhandlung vom 28.4.2009
durch den Vorsitzenden Richter am Landgericht Dr. Schwitanski,
den Richter am Landgericht Wuttke sowie
die Richterin am Landgericht Chang-Herrmann

für RECHT erkannt:

    I.   Die Klage wird abgewiesen.

    II.  Die Kosten des Rechtsstreits trägt die Klägerin.

    III. Das Urteil ist gegen Sicherheitsleistung in Höhe von 110% des zu
        vollstreckenden Betrages vorläufig vollstreckbar.

## TATBESTAND

Beide Parteien sind Betreiber von Sozialen Internet Netzwerken. Die Klägerin ist mit
ihrem Sozialen Netzwerk „facebook" seit dem 4.2.2004 in den USA auf dem Markt.
Das Netzwerk der Klägerin richtete sich zunächst nur an Studierende der Universität
Harvard. Es wurde nach und nach auf alle Studenten und Schüler in den USA und
anschließend auf Kanada erweitert. Jedenfalls seit September 2006 ist offiziell ein
Zugriff von E-Mail Adressen auf facebook möglich, die nicht aus Nordamerika stam-
men. Inwieweit bereits im Jahre 2005 ein Zugriff für deutsche Nutzer möglich war, ist
zwischen den Parteien streitig. Seit Anfang 2008 gibt es Facebook auch in einer
deutschsprachigen Version auf dem deutschen Markt.

Die Klägerin ist Inhaberin einer deutschen Bildmarke, Register-Nr. 30663271.3 (Bl.174 d.A.). Wegen der Gestaltung der Bildmarke wird auf die Abbildung auf S. 73 der Klageschrift vom 19.11.2008 (Bl. 73 d.A.) Bezug genommen.

Die Beklagte ist seit dem 11.11.2005 mit ihrem Netzwerk „StudiVZ", seit dem 21.2.2007 mit „SchülerVZ" und seit dem 28.2.2008 mit „meinVZ" auf dem deutschen Markt.

Die Klägerin behauptet, dass die Beklagte die Gestaltung und den sog. „Look & Feel" ihrer Webseite nachgeahmt habe. Ein Vergleich der Seiten aus der Anfangs-zeit des Netzwerks der Beklagten belege, dass sich die Webseiten optisch nur mar-ginal von den Webseiten der Klägerin aus 2005/2006 unterschieden. Die Beklagte habe lediglich eine andere Grundfarbe gewählt und ein eigenes Logo eingesetzt. Ansonsten sei das Aussehen der Seiten in Aufbau, Schriftbild und Funktionalitäten derart ähnlich, dass eine Verwechslungsgefahr bestehe und der gute Ruf der Kläge-rin beeinträchtigt würde. Diese Gefahren hätten sich zum Teil schon realisiert, wie diverse Blog-Beiträge und auch Artikel mit Plagiatsvorwürfen im Internet belegten. Die Stylesheets der Webseiten seien quasi identisch, so dass sie untereinander aus-tauschbar seien. Wegen der Einzelheiten zum „Look & Feel" der klägerischen Web-seite wird auf die S. 13-16 der Klageschrift (Bl. 13-16 d.A.) verwiesen. Wegen der Plagiatsvorwürfe wird auf das Anlagenkonvolut K 13 (Bl. 267-397 d.A.) Bezug ge-nommen. Wegen der Einzelheiten bzgl. der Übereinstimmungen insbesondere der Stylesheets der Parteien bezieht sich die Klägerin auf die Ausführungen des Privat-gutachters Schrader (Anlage K 12, Bl. 226-266 d.A.). Hinsichtlich der Rufschädigung wird auf die Ausführungen auf den S. 59-62 der Klageschrift (Bl. 59-62 d.A.) verwie-sen.

Die Klägerin behauptet, dass sie bereits im Oktober 2005 Mitbewerber, jedenfalls potentieller Mitbewerber und auf dem deutschen Markt bekannt gewesen sei. Seit diesem Zeitpunkt habe sie begonnen, ihr Netzwerk auf internationale Schulen und Universitäten im europäischen Raum auszuweiten. Auch deutschen Nutzern sei ein Zugriff möglich gewesen entweder durch eine Einladung oder als Austauschschüler/-student. Ende 2005 hätten bereits etwa 14.000 Nutzer aus Deutschland das Netz-werk der Klägerin genutzt. Wegen des weiteren diesbezüglichen Vorbringens wird auf die S. 9-12 des Schriftsatzes vom 6.4.2009 (Bl. 991-994 d.A.) verwiesen.

Des Weiteren handelt es sich nach Ansicht der Klägerin um eine unlautere Nachah-mung, weil die Beklagte über Jahre hinweg zeitlich versetzt systematisch die wesent-lichen technischen Funktionen, die die Klägerin auf ihrer Webseite anbietet, über-

Seite 4

nommen habe und auch weiter übernehme. So seien die Kernfunktionen der Web-seite der Klägerin, die poke-Funktion, die wall-Funktion sowie die groups-Funktion übernommen worden. Zu den weiteren diesbezüglichen Ausführungen wird auf die S.12-15 (Bl. 752-755 d.A.) des Schriftsatzes vom 13.3.2009 verwiesen. Aus jüngerer Zeit seien die ahead-type- Funktion und die Freundeslistenfunktion zu nennen. We-gen der Einzelheiten zu den Funktionsübernahmen bezieht sich die Klägerin auf die S. 15-17 des Privatgutachtens der Sachverständigenbüros Streitz (Bl. 801-803 d.A.). Weiter wird auf die S. 11-16 des Schriftsatzes vom 13.3.2009 (Bl. 751-756 d.A.) ver-wiesen.

Die Kenntnisse zur Nachahmung ihrer Seite hätte die Beklagte – so die Klägerin – auf unlautere Weise erhalten.

Die Klägerin behauptet weiter, dass die Beklagte durch die Einführung ihrer Na-chahmung den Markteintritt der Klägerin mit ihrem „Originalnetzwerk" behindert ha-be. Die Besonderheiten des Marktes für Soziale Netzwerke führten dazu, dass das erste Soziale Netzwerk am Markt auf lange Sicht auch das größte bliebe. Wegen des diesbezüglichen weiteren Vorbringens der Klägerin wird auf die S. 71 der Klage-schrift (Bl. 71 d.A.) Bezug genommen.

Weiter sieht die Klägerin in der Verwendung des Aussehens der Seiten eine Verlet-zung ihrer Rechte an ihrer Marke. Wegen der diesbezüglichen Einzelheiten wird auf die S. 72—79 der Klageschrift (Bl. 72-79 d.A.) Bezug genommen.

Schließlich behauptet die Klägerin, dass die Beklagte nicht nur das Aussehen und den „Look & Feel" ihrer Webseiten nachgeahmt habe, sondern dass die Beklagte unberechtigt ihren PHP-Quellcode verwendet habe. Als Indizien für eine Übernahme gibt sie an:
- die optische Identität der Webseiten,
- der identische Funktionsumfang,
- das Auftreten identischer, lediglich ins Deutsche übersetzter Texte,
- der identische Ablauf der Dialogfolgen,
- die Übereinstimmung der Stylesheets,
- die Identitäten bei PHP- und HTML-Dateinamen,
- die Übereinstimmung in Aufbau und Struktur (Dokumentinhaltsbaum) der Webseiten,
- die Auskommentierungen im HTML-Code,
- die für eine Nachahmung vollkommen unnötigen buchstabengetreuen und by-tegrößengenauen Übereinstimmungen im HTML-Text.

Eine Übernahme des auf dem Server der Klägerin befindlichen PHP-Quellcodes sei auch nicht ausgeschlossen, da es immer wieder zu Sicherheitslücken kommen könne, wie etwa geschehen im Jahre 2007. Des Weiteren stützt die Klägerin ihre Behauptung darauf, dass einer der Mitbegründer von StudiVZ während seines Amerikaaufenthaltes die Seite der Klägerin eingehend studiert habe und es diesem gelungen sei, innerhalb von wenigen Monaten nach Rückkehr die StudiVZ-Seite auf den Markt zu bringen. Neben den weitergehenden Aufgaben wie die Finanzierung, die Bewerbung des Netzwerks könne -- so die Klägerin -- nicht genügend Zeit für eine eigenständige Programmierung verblieben sein. Die Klägerin hält eine hinreichende Wahrscheinlichkeit einer Urheberrechtsverletzung für dargetan. Wegen des diesbezüglichen Vorbringens wird auf den Schriftsatz vom 6.4.2009 (Bl. 983 ff. d.A) verwiesen.

Da die Beklagte schuldhaft gehandelt habe, stehe ihr sowohl der Auskunftsanspruch als auch ein Schadensersatzanspruch zu. Der Schadensersatzanspruch ergebe sich zudem aus der Verletzung von vertraglichen Nebenpflichten. Ein Gründer der Beklagten hätte entgegen der AGB der Klägerin die Informationen über das Aussehen, die Funktionalitäten u.a. im Rahmen seiner Mitgliedschaft bei facebook erlangt. Die AGB der Klägerin würden jedoch eine Klausel enthalten (Bl. 81 d.A.), nach der die Seiteninhalte nicht verwertet werden dürften.

Die Klägerin beantragt,

> die Beklagte zu verurteilen, es zu unterlassen,

> 1) a) im geschäftlichen Verkehr zu Zwecken des Wettbewerbs beim Angebot eines Sozialen Netzwerks eine Bildschirmoberfläche, wie aus den Anlagen A1 bis A4 ersichtlich, zu verwenden oder verwenden zu lassen,
> b) im geschäftlichen Verkehr die Bildmarke der Klägerin Registernummer 30663271.3 wie aus Anlage A5 ersichtlich zu benutzen, insbesondere unter dem Zeichen Dienstleistungen anzubieten oder zu erbringen, wie in Anlagenkonvolut K 5 geschehen,
> c) den Quellcode wie auf der DVD in Anlage K22 ersichtlich oder Bearbeitungen hiervon zu vervielfältigen oder vervielfältigen zu lassen,

> 2) festzustellen, dass die Beklagte verpflichtet ist, der Klägerin wegen der Handlungen gem. Klageantrag 1 für die Zeit seit dem 1.1.2005 Scha-

densersatz für die dadurch eingetretenen und künftig noch eintreten-
den Schäden zu leisten,

3) die Beklagte zu verurteilen, der Klägerin, bezogen auf den in Klagean-
   trag zu 2) genannten Zeitraum, schriftlich Auskunft zu erteilen und
   Rechnung zu legen über Zeitpunkte und Umfang von Handlungen
   nach Klageantrag zu 1) sowie in welcher Höhe die Beklagte Erlöse in-
   folge der Handlungen gemäß Klageantrag zu 1) erzielt hat, insbeson-
   dere – aber nicht darauf beschränkt – aus Werbung und Kooperatio-
   nen mit anderen Unternehmen, und wie hoch die diesen Erlösen ge-
   genüberstehenden Gemeinkosten sind,

4) durch einen vom Gericht bestellten Sachverständigen die Besichtigung
   anzuordnen
   a) des Source Codes der von der Beklagten für ihre Internetseite
   www.studiVZ.de/net, www.schuelervz.net sowie www.meinvz.net entwi-
   ckelten Software in allen Versionsnummern, insbesondere, aber nicht
   ausschließlich, der Programmfunktionalitäten „about.php", „announ-
   ce.php", „contact.php", „login.php", „help.php", „jobs.php", „policy.php",
   „register.php", „reset.php", „terms.php", „poke.php", „groups.php",
   „wall.php", „myfb.css" sowie „studivz.js".
   b) sowie des Source Codes der Beklagten in den Versionen wie sie nach
   den Zeitpunkten gemäß der auf Bl. 742 f. d.A. aufgeführten Tabelle von
   der Beklagten eingesetzt wurden, insbesondere aber nicht ausschließlich,
   in Bezug auf die genannten Funktionen,
   c) unmittelbar mit dem Source Code in Zusammenhang stehender techni-
   scher Dokumentationen, wie Ausdrucke des Source Codes, Ablaufpläne,
   Strukturübersichten, Grob- und Feinkonzepten, Mechanismen zur Verbin-
   dung von Programmmodulen, bestehende Datenstrukturen, Handbücher
   und technischer Beschreibungen,

5) den Sachverständigen zu beauftragen, die bei der Beklagten pro-
   rammierte und/oder eingesetzte Software, wie sie sich aus Ziff. 4a er-
   gibt, insbesondere, aber nicht ausschließlich die Skripte „about.php",
   „announce.php", „contact.php", „login.php", „help.php", „jobs.php", „po-
   licy.php", „register.php", reset.php", „terms.php", „poke.php",
   „groups.php", „wall.php", „myfb.css" sowie „studivz.js" – insbesondere
   aus dem Zeitraum Ende August 2005/Anfang 2006, aber auch spätere
   Versionen und Bearbeitungen für die Seiten StudiVZ, SchülerVZ und

MeinVZ – und hiermit in Zusammenhang stehende Unterlagen daraufhin zu untersuchen, ob diese unter Einsatz des in Anlage A6/K22 übergebenen Source Codes der Klägerin oder Teilen hiervon oder Mitteln der Klägerin wie in Ziff. 4 c beschrieben, erstellt worden sind.

Die Beklagte beantragt,
          die Klage abzuweisen.

Die Beklagte bestreitet die Mitbewerbereigenschaft der Klägerin zum Zeitpunkt der Markteinführung der Seite StudiVZ Ende 2005. Jedenfalls sei die Seite der Klägerin zum damaligen Zeitpunkt in Deutschland unbekannt gewesen, so dass weder eine Herkunftstäuschung noch eine Rufausbeutung in Betracht komme. Zu den Einzelheiten wird auf die S. 62-66 der Klageerwiderung (Bl. 501-505 d.A.) sowie die S. 3-5 des Schriftsatzes vom 24.4.2009 (Bl. 1105-1107 d.A.) verwiesen.

Eine Behinderung des Markteintritts der Klägerin durch die Beklagte habe ebenfalls nicht vorgelegen. Die Anfangsschwierigkeiten hätten allein an dem fehlenden Einführungskonzept der Klägerin gelegen. Die Klägerin habe mittlerweile eine deutschsprachige Version eingeführt und ihr Konzept geändert, was auch Wirkung zeige. Wegen der weiteren Einzelheiten zum diesbezüglichen Vortrag der Beklagten wird auf die S. 8-10 und 57-58 der Klageerwiderung vom 20.2.2009 (Bl. 447-449, 496-498 d.A.) Bezug genommen.

Die Beklagte räumt zwar ein, dass ihr das Netzwerk der Klägerin – neben anderen Sozialen Netzwerken - als Vorbild gedient habe. Die übernommenen Gestaltungen und Funktionen seien jedoch nicht wettbewerblich eigenartig gewesen. Vielmehr hätten sie dem Stand der Technik zum damaligen Zeitpunkt entsprochen. Wegen der näheren Einzelheiten zur fehlenden wettbewerblichen Eigenart des Look & Feel von facebook wird auf die S. 10-34 der Klageerwiderung (Bl. 449-473 d.A.) verwiesen. Die Beklagte bestreitet ferner, dass ein systematisches Nachahmen der Funktionalitäten vorliege.

Einen Anspruch aus der Marke könne die Klägerin nicht herleiten, da der Bildmarke keine Kennzeichnungskraft zukomme, die Beklagte die Gestaltung der Seite nicht markenmäßig verwende und auch nicht die Mindestvoraussetzung der Zeichenähnlichkeit gegeben sei. Wegen des weiteren Vortrags wird auf die S. 73-76 der Klageerwiderung (Bl. 513-515 d.A.) Bezug genommen. Hilfsweise beruft sie sich darauf, dass ihr die ältere Benutzungsmarke zustehe (Bl. 515-517 d.A.).