BETH S. BRINKMANN
Deputy Assistant Attorney General
DOUGLAS N. LETTER
Terrorism Litigation Counsel
JOSEPH H. HUNT
Director, Federal Programs Branch
VINCENT M. GARVEY
Deputy Branch Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
MARCIA BERMAN
Senior Trial Counsel
PAUL E. AHERN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 514-4782
Fax: (202) 616-8460

*Attorneys for the Government Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE NATIONAL SECURITY AGENCY TELECOMMUNICATIONS RECORDS LITIGATION | **No. M:06-cv-01791-VRW** |
| This Document Relates Solely To:<br><br>*Shubert et al. v. United States of America et. al.* (Case No. 07-cv-00693-VRW) | **EXHIBIT 1 TO GOVERNMENT DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**<br><br>**PUBLIC DECLARATION OF DENNIS C. BLAIR, DIRECTOR OF NATIONAL INTELLIGENCE**<br><br>Date: December 15, 2009<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Chief Judge Vaughn R. Walker |

I, Dennis C. Blair, do hereby state and declare as follows:

## INTRODUCTION

1. I am the Director of National Intelligence (DNI) of the United States. I have held this position since January 29, 2009. In 2002, I retired as an Admiral from the United States Navy after a 34-year career, which included my service as Commander-in-Chief of the U.S. Pacific Command. During my naval career, I also served as Director of the Joint Staff and as Associate Director of Central Intelligence for Military Support, as well as in policy positions on the National Security Council staff. From 2003 to 2006, I was President and CEO of the Institute for Defense Analyses, an organization that analyzes and makes recommendations on national security policy matters.

2. The purpose of this declaration is to formally assert, in my capacity as the Director of National Intelligence and head of the United States Intelligence Community, the military and state secrets privilege (hereafter "state secrets privilege") and a statutory privilege under the National Security Act, *see* 50 U.S.C. § 403-1(i)(1), in order to protect intelligence sources and methods that are at risk of disclosure in this case. The statements made herein are based on my personal knowledge as well as on information provided to me in my official capacity as the Director of National Intelligence.

## SUMMARY

3. In the course of my official duties, I have been advised of this lawsuit and the allegations at issue in the plaintiffs' Amended Complaint. In personally considering this matter, I have executed a separate Classified *In Camera, Ex Parte* Declaration dated October 30, 2009. Moreover, I have read and personally considered the information contained in the Public and in the Classified *In Camera, Ex Parte* Declarations of Lieutenant General Keith B. Alexander, Director of the National Security Agency, executed on October 30, 2009 (hereafter "Public NSA

Declaration" and "Classified NSA Declaration"). Disclosure of the information covered by this privilege assertion reasonably could be expected to cause exceptionally grave damage to the national security of the United States and, therefore, the information should be excluded from any use in this case. In addition, it is my judgment that sensitive state secrets are so central to the subject matter of the litigation that any attempt to proceed in the case will substantially risk the disclosure of the classified privileged national security information described herein and will therefore risk exceptionally grave damage to the national security of the United States.

**BACKGROUND ON DIRECTOR OF NATIONAL INTELLIGENCE**

4. The position of Director of National Intelligence was created by Congress in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending sections 102 through 104 of Title I of the National Security Act of 1947). Subject to the authority, direction, and control of the President, the Director of National Intelligence serves as the head of the U.S. Intelligence Community and as the principal adviser to the President, the National Security Council, and the Homeland Security Council for intelligence matters related to the national security. *See* 50 U.S.C. § 403(b)(1), (2).

5. The United States "Intelligence Community" includes the Office of the Director of National Intelligence; the Central Intelligence Agency; the National Security Agency; the Defense Intelligence Agency; the National Geospatial-Intelligence Agency; the National Reconnaissance Office; other offices within the Department of Defense for the collection of specialized national intelligence through reconnaissance programs; the intelligence elements of the military services, the Federal Bureau of Investigation, the Department of the Treasury, the Department of Energy, the Drug Enforcement Administration, and the Coast Guard; the Bureau of Intelligence and Research of the Department of State; the elements of the Department of

Homeland Security concerned with the analysis of intelligence information; and such other elements of any other department or agency as may be designated by the President, or jointly designated by the DNI and heads of the department or agency concerned, as an element of the Intelligence Community. *See* 50 U.S.C. § 401a(4).

6. The responsibilities and authorities of the Director of National Intelligence are set forth in the National Security Act of 1947, as amended. *See* 50 U.S.C. § 403-1. These responsibilities include ensuring that national intelligence is provided to the President, the heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof. *See* 50 U.S.C. § 403-1(a)(1). The DNI is also charged with establishing the objectives of, determining the requirements and priorities for, and managing and directing the tasking, collection, analysis, production, and dissemination of national intelligence by elements of the Intelligence Community. *Id.* § 403-1(f)(1)(A)(i) and (ii). The DNI is also responsible for developing and determining, based on proposals submitted by the heads of agencies and departments within the Intelligence Community, an annual consolidated budget for the National Intelligence Program for presentation to the President, and for ensuring the effective execution of the annual budget for intelligence and intelligence activities, and for managing and allotting appropriations for the National Intelligence Program. *Id.* § 403-1(c)(1)-(5).

7. In addition, the National Security Act of 1947, as amended, provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). Consistent with this responsibility, the DNI establishes and implements guidelines for the Intelligence Community for the classification of information under applicable law, Executive orders, or other Presidential directives and access to and dissemination of intelligence. *Id.* § 403-1(i)(2)(A), (B). In particular, the DNI is responsible

for the establishment of uniform standards and procedures for the granting of access to Sensitive Compartmented Information ("SCI") to any officer or employee of any agency or department of the United States, and for ensuring the consistent implementation of those standards throughout such departments and agencies. *Id.* § 403-1(j)(1), (2).

8. By virtue of my position as the Director of National Intelligence, and unless otherwise directed by the President, I have access to all intelligence related to the national security that is collected by any department, agency, or other entity of the United States. *See* 50 U.S.C. § 403-1(b); Executive Order 12333 § 1.3(a), as amended. Pursuant to Executive Order No. 12958, 3 C.F.R. § 333 (1995), as amended by Executive Order 13292 (March 25, 2003), reprinted as amended in 50 U.S.C.A. § 435 at 93 (Supp. 2004), the President has authorized me to exercise original TOP SECRET classification authority.

**ASSERTION OF STATE SECRETS PRIVILEGE**

9. After careful and personal consideration of the matter, based upon my own knowledge and information obtained in the course of my official duties, including the information contained in the Public and Classified *In Camera*, *Ex Parte* Declarations of Lieutenant General Keith B. Alexander, Director of the National Security Agency, I have determined that the disclosure of certain information—as set forth herein and described in more detail in my classified declaration and in the Classified NSA Declaration—would cause exceptionally grave damage to the national security of the United States and, therefore, must be protected from disclosure and excluded from this case. Thus, as to this information, I formally assert the state secrets privilege. In addition, it is my judgment that sensitive state secrets are so central to the subject matter of the litigation that any attempt to proceed in the case will substantially risk the disclosure of the privileged information described herein and in more detail in the classified declarations, and will therefore risk exceptionally grave damage to the national

security of the United States.

**ASSERTION OF STATUTORY PRIVILEGE UNDER NATIONAL SECURITY ACT**

10. Through this declaration, I also hereby invoke and assert a statutory privilege held by the Director of National Intelligence under the National Security Act to protect the information described herein. *See* 50 U.S.C. § 403-1(i)(l). My assertion of this statutory privilege for intelligence sources and methods is coextensive with and protects the information subject to my state secrets privilege assertion.

**INFORMATION SUBJECT TO ASSERTIONS OF PRIVILEGE**

11. In general and unclassified terms, the following categories of information are subject to my state secrets and statutory privilege assertions:

A. Information concerning the specific nature of the al-Qaeda terrorist threat; and

B. Information that may tend to confirm or deny whether the plaintiffs have been subject to any alleged NSA intelligence activity that may be at issue in this matter; and

C. Any information concerning NSA intelligence activities, sources, or methods that may relate to or be necessary to adjudicate plaintiffs' allegations, including allegations that the NSA, with the assistance of telecommunications carriers, indiscriminately intercepts the content of communications and also, to the extent applicable to plaintiffs' claim, the communications records of millions of Americans as part of an alleged "Program" authorized by the President after 9/11. *See, e.g.*, Amended Compl. ¶¶ 1-8.

The scope of this assertion includes but is not limited to:

(i) Information concerning the scope and operation of the now inoperative "Terrorist Surveillance Program" ("TSP") regarding the interception of the content of certain one-end international communications reasonably believed to involve a member or agent of al-Qaeda or an affiliated terrorist organization, and any other information related to demonstrating that the NSA does not otherwise engage in the content surveillance dragnet that the plaintiffs allege; and

(ii) Any other information concerning NSA intelligence activities, sources, or methods that would be necessary to adjudicate the plaintiffs' claims, including, to the extent applicable, information that would tend to confirm or deny whether or not the NSA obtained from telecommunications companies communication transactional records; and

(iii) Information that may tend to confirm or deny whether any telecommunications carrier has provided assistance to the NSA in connection with any alleged activity.

**DESCRIPTION OF INFORMATION AND HARM OF DISCLOSURE**

12. As set forth in my classified declaration submitted solely for the Court's *in camera* and *ex parte* review, disclosure of information in the foregoing categories would cause exceptionally grave harm to national security. I briefly summarize below, in unclassified terms, the information subject to my privilege assertion and the harms to national security that would result from disclosure of this information.

13. First, I am asserting privilege over information that would reveal whether particular individuals, including the named plaintiffs in this lawsuit, have been subject to the alleged NSA intelligence activities. Disclosure of such information would cause exceptionally grave damage to the national security. The NSA cannot publicly confirm or deny whether any particular individual is subject to surveillance activities. If the NSA were to reveal that an individual is the target of surveillance, the collection capability of that individual would certainly be compromised. On the other hand, if the NSA were to reveal that an individual is not the target of surveillance, adversaries would know that a particular individual has avoided surveillance and is a secure source for communicating. Moreover, providing assurances to those individuals that are not being targeted quickly becomes unworkable when faced with a case in which the individual has in fact been targeted. If the NSA were to confirm that any specific

individual is not the target of surveillance, but later refuse to confirm or deny that information in a case involving an actual target, it would be apparent that surveillance was occurring in the latter case. The only recourse for NSA is to neither confirm nor deny whether someone has been targeted or subject to NSA activities, regardless of whether the individual has been targeted or not. To say otherwise when challenged in litigation would result in the frequent, routine exposure of NSA information, sources, and methods, and would severely undermine surveillance activities in general.

14. Second, I am also asserting privilege over any other facts concerning NSA intelligence activities, sources, or methods that may relate to or be necessary to adjudicate the plaintiffs' claims, including, but not limited to, allegations that the NSA, with the assistance of telecommunication companies, has indiscriminately intercepted the content and obtained large quantities of communications records as part of the Program authorized by the President after 9/11. *See, e.g.*, Amended Compl. ¶¶ 1-4, 58. As noted above, my privilege assertion encompasses (1) facts concerning the operation of the now-defunct Terrorist Surveillance Program, including any facts needed to demonstrate that the TSP was limited to the interception of the content[1] of one-end foreign communications reasonably believed to involve a member or agent of al-Qaeda or an affiliated terrorist organization, and that the NSA does not otherwise conduct a dragnet of content surveillance as the plaintiffs allege; and, to the extent relevant, (2) information concerning whether or not the NSA obtains communication transactional records from telecommunications companies.

15. As the NSA indicates, *see* Public NSA Decl. ¶ 19, the NSA's collection of the content of communications under the TSP was directed at international communications in which a participant was reasonably believed to be associated with al-Qaeda or an affiliated

[1] The term "content" is used herein to refer to the substance, meaning, or purport of a communication, as defined in 18 U.S.C.§ 2510(8).

organization. Thus, as the Government has previously stated, plaintiffs' allegation that the NSA has indiscriminately collected the content of millions of communications sent or received by people inside the United States after 9/11 under the TSP is false. I concur with the NSA that to the extent it must demonstrate in this case that the TSP was not the content dragnet plaintiffs allege, or demonstrate that the NSA has not otherwise engaged in the alleged content dragnet, highly classified NSA intelligence sources and methods about the operation of the TSP and other NSA intelligence activities would be disclosed or at risk of disclosure which would cause exceptionally grave harm to national security.

16. To the extent implicated by the plaintiffs' allegations in this case, I am also asserting privilege over information concerning whether or not the NSA obtained from telecommunications companies the transactional records of those companies' customers, including the plaintiffs. *See* Amended Compl. ¶¶ 5-8, 58. I concur with the NSA that confirmation or denial of any information concerning this allegation would cause exceptionally grave harm to national security, including by risking disclosure of whether or not the NSA utilizes particular intelligence sources and methods and, thus, the NSA's capabilities or lack thereof.

17. Likewise, I am asserting privilege over information that may tend to confirm or deny whether or not any telecommunications provider has assisted the NSA with alleged intelligence activities. The disclosure of any information that would tend to confirm or deny allegations of such assistance would cause exceptionally grave harm to the national security. Confirming or denying such allegations, again, would reveal to foreign adversaries whether or not the NSA utilizes particular intelligence sources and methods and, thus, would either compromise actual sources and methods or disclose that the NSA does not utilize a particular source or method. Such confirmation or denial would also replace speculation with certainty for

hostile foreign adversaries who are balancing the risk that a particular channel of communication may not be secure against the need to communicate efficiently.

18. Finally, to the extent specific information about the al-Qaeda threat is relevant to litigation of plaintiffs' allegations as to post-9/11 actions taken to meet that threat, such information could not be disclosed without revealing intelligence sources, methods, and information of the United States and thereby causing exceptionally grave damage to the national security. Therefore, I assert the state secrets and DNI statutory privilege to protect such information from disclosure.

19. I am unable to describe further on the public record the information covered by my privilege assertion and the national security harms associated with the disclosure of such information. Accordingly, I respectfully refer the Court to my classified declaration, along with the NSA's classified declaration, both of which are submitted in this case solely for the Court's *in camera* and *ex parte* review.

## CONCLUSION

20. In sum, I am asserting the state secrets privilege and the DNI's statutory privilege set forth in 50 U.S.C. § 403-1(i)(1) to protect the classified national security information described herein, in my classified declaration and in the Classified NSA Declaration. Moreover, because proceedings in this case risk disclosure of privileged and classified intelligence-related information, I respectfully request that the Court not only protect that information from disclosure, but to take all steps necessary, including dismissal of this action, to protect the

intelligence information, sources, and methods described herein in order to prevent exceptionally grave harm to the national security of the United States.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: 30 Oct 2009

DENNIS C. BLAIR
Director of National Intelligence